**4**

# AMENDMENT AND RESTATEMENT OF DECLARATION OF TRUST OF THE NORTHERN TRUST GLOBAL INVESTMENTS QUANTITATIVE MANAGEMENT COLLECTIVE FUNDS TRUST

NORTHERN TRUST INVESTMENTS, N.A., a national banking association, ("NTI"), hereby amends and restates, effective as of January 31, 2006, the Declaration of Trust of the Northern Trust Global Investments-Quantitative Management Collective Funds Trust, originally effective November 22, 2002, and subsequently amended, which shall, as of such effective date, be designated the "Declaration of Trust of the Northern Trust Global Investments Collective Funds Trust." NTI hereby declares that it shall act as trustee and shall hold and administer, in trust, on the terms and conditions set forth in this Declaration of Trust, all property that may be transferred to or received by it from time to time as trustee hereunder.

It is intended that the Trust and each Fund (as those terms are hereafter defined) shall qualify as a group trust under Internal Revenue Service Revenue Ruling 81-100, 1981-1 C.B. 326, or any successor ruling, regulation, or similar pronouncement, and this Declaration of Trust shall be construed, and the Trust and each Fund shall be administered, to give effect to that intention.

## ARTICLE 1. DEFINITIONS

1.01 "Bank" means any bank or trust company described in Section 581 of the Code which is a member of an affiliated group (within the meaning of Section 1504 of the Code) that includes NTI.

1.02 "Business Day" means a day on which NTI is open for business.

1.03 "Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.04 "Declaration of Trust" means this Declaration of Trust, as amended and restated, and, unless the context indicates otherwise, the Fund Declaration of each Fund.

1.05 "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.06 "Fund" means a separate trust fund established and maintained as a part of the Trust for investment purposes in accordance with Section 3.01.

1.07 "Fund Declaration" means a supplement to the Declaration of Trust executed by the Trustee pursuant to Section 3.01 for the purpose of establishing a Fund.



1.08 "Liquidating Account" means a segregated account established and maintained in accordance with Section 3.08.

1.09 "Participating Trust" means any of the following with respect to which NTI or a Bank acts as trustee, investment manager, managing agent, custodian, or agent, and which the Trustee, in its discretion, has accepted as a Participating Trust:

(a) a trust which is

(1) a pension, profit-sharing, or other employee benefit trust exempt from Federal income taxation under Section 501(a) of the Code by reason of qualifying under Section 401(a) of the Code and, if such trust covers one or more self-employed individuals within the meaning of Section 401(c)(1) of the Code, which satisfies the applicable requirements of the Securities Act of 1933, as amended from time to time (or Rule 180 of the Securities and Exchange Commission thereunder, or any successor ruling, regulation, or similar pronouncement), regarding participation in a collective investment trust; and

(2) maintained pursuant to a plan or trust instrument which authorizes it to participate in the Trust or in any other common, collective, or commingled trust fund and which specifically or in substance and effect adopts this Declaration of Trust or the declaration of trust or other governing instrument under which such common, collective, or commingled trust fund is maintained, as a part of the plan of which such trust is a part; or

(b) any of the following plans which satisfies the applicable requirements of the Securities Act of 1933 and the Investment Company Act of 1940, as each is amended from time to time (or any applicable rules of the Securities and Exchange Commission thereunder), regarding participation in a collective investment fund:

(1) a plan established and maintained for its employees by the U.S. Government, by the government of any State or political subdivision thereof, or by any agency or instrumentality of the foregoing, within the meaning of Section 414(d) of the Code;

(2) an eligible deferred compensation plan within the meaning of Section 457(b) of the Code established and maintained by an eligible governmental employer described in Section 457(e)(1)(A) of the Code; and

(3) any other governmental plan or unit described in Section 818(a)(6) of the Code or to which the Railroad Retirement Act of 1935 or 1937 applies and which is financed by contributions required under that Act and any plan of an international organization which is exempt from Federal income taxation by reason of the International Organization Immunity Act; or

(c) a separate account maintained in connection with a contract of an insurance company which consists solely of the assets of trusts and plans described in (a) and (b) of this Section; or

(d) any common, collective, or commingled trust fund, including, without limitation, any such fund maintained by NTI or a Bank (including a Fund administered under this Declaration of Trust), which

(1) consists solely of the assets of trusts and plans described in (a), (b), and (c) of this Section;

(2) is exempt from Federal income taxation under Section 501(a) of the Code by reason of qualifying as a "group trust" under Revenue Ruling 81-100; and

(3) is maintained pursuant to an instrument which authorizes it to participate in the Trust or in any other common, collective, or commingled trust fund and which specifically or in substance and effect adopts this Declaration of Trust or the declaration of trust or other governing instrument under which such other common, collective, or commingled trust fund is maintained, as a part thereof.

1.10 "Revenue Ruling 81-100" means Revenue Ruling 81-100 issued by the Internal Revenue Service, 1981-1 C.B. 326, as amended and supplemented from time to time, and any successor ruling, regulation, or similar pronouncement.

1.11 "Trust" means the "Northern Trust Global Investments Quantitative Management Collective Funds Trust" established by this Declaration of Trust. Any reference herein to the Trust shall, unless the context indicated otherwise, be deemed to refer to each Fund established and maintained hereunder.

1.12 "Trustee" means Northern Trust Investments, N.A., as trustee of the Trust, or any trustee succeeding NTI in accordance with Section 5.01.

1.13 "Unit" means a book-entry record used to determine the value of the beneficial interest of each Participating Trust in the Trust and each Fund thereof.

1.14 "Valuation Date" means a day on or as of which the Trustee determines the value of the Units of a Fund as specified in the Fund Declaration of such Fund.

## ARTICLE 2. PARTICIPATION

2.01 <u>Conditions of Participation</u>. A trust or other entity described in Section 1.09 shall become a Participating Trust upon its acceptance by the Trustee, in the Trustee's sole discretion. Any such trust or entity shall establish to the Trustee's satisfaction that it meets the requirements of that Section and shall provide, at the request of the Trustee, written representations (including, without limitation, representations to the effect that its tax-exempt status will not be jeopardized as a result of participation in the Trust) and other information (including, without limitation, a written certificate regarding its status or a copy of a determination letter from the Internal Revenue Service) or other assurances that the Trustee may deem necessary or advisable. A trust or other entity that has been accepted as a Participating Trust shall continue to be eligible to participate in the Trust, subject to the following conditions:

(a) During such time as any assets of a Participating Trust are held in the Trust, (i) this Declaration of Trust shall govern the administration of such assets, and (ii) any inconsistency between the governing instrument of the Participating Trust and this Declaration of Trust relating to the management or administration of the Participating Trust's assets held hereunder or to the rights, powers, responsibilities or liabilities of the Trustee with respect thereto shall be resolved in favor of this Declaration of Trust.

(b) If the Trustee receives actual notice that a Participating Trust no longer satisfies the conditions of Section 1.09, or if the Trustee determines in its sole discretion that a Participating Trust should withdraw for any reason, the Trustee shall take all steps necessary to distribute to such Participating Trust its entire interest in the Trust, other than any interest the Participating Trust may have in a Liquidating Account, as soon as practicable after the Trustee receives such notice.

2.02 <u>Admissions</u>. A Participating Trust may acquire a beneficial interest in the Trust by transferring to the Trustee cash or other property acceptable to the Trustee. If an admission is made in kind, the Participating Trust shall reimburse the costs of transferring the property, as determined by the Trustee in its discretion. All admissions to the Trust shall be made as of a Valuation Date and on the basis of the Unit values determined by the Trustee in accordance with Article 4.

(a) On or before the Valuation Date as of which an admission is to be made, the Trustee shall enter in the Trustee's fiduciary records a written request for or notice of intention of taking such action, indicating the Fund or Funds to which the admission is to be made. No such request or notice may be cancelled or countermanded without the consent of the Trustee, and in no event may be cancelled or countermanded after the Valuation Date as of which such admission is made.

(b) The Trustee, in its discretion, may establish minimum or maximum amounts for initial or subsequent admissions to the Trust or any Fund.

(c) The Trustee, in its discretion, may require that the request or notice referred to in Section 2.02(a) be received by the Trustee up to 15 business days before the

Valuation Date as of which such admission is to be made. Such notice requirement may be set forth in the Fund Declaration or in communications with Participating Trusts.

(d) If a Participating Trust makes an admission in the form of a contribution of property in kind, such admission shall be on the basis of the value of such assets as determined by the Trustee.

2.03 <u>Withdrawals</u>. A Participating Trust may make a withdrawal from the Trust as of a Valuation Date and on the basis of the Unit values determined by the Trustee in accordance with Article 4. The proceeds of such withdrawal shall be distributed to the withdrawing Participating Trust as soon as practicable after the Valuation Date as of which such withdrawal is made, in no case more than 10 business days after such Valuation Date.

(a) On or before the Valuation Date as of which a withdrawal is to be made, the Trustee shall enter in the Trustee's fiduciary records a written request for or notice of intention of taking such action, indicating the Fund or Funds from which the withdrawal is to be made. No such request or notice may be cancelled or countermanded without the consent of the Trustee, and in no event may be cancelled or countermanded after the Valuation Date as of which such withdrawal is made.

(b) The Trustee, in its discretion, may require that the request or notice referred to in Section 2.03(a) be received by the Trustee up to 15 business days before the Valuation Date as of which a withdrawal is to be made, except that, in the case of a withdrawal from a Fund invested in real estate, guaranteed investment contracts issued by insurance companies, or other assets which are not readily marketable, the Trustee may require that the request or notice be received by it up to one year before the relevant Valuation Date. Such notice requirement may be set forth in the Fund Declaration or in communications with Participating Trusts.

(c) The Trustee, in its discretion, may effect withdrawals in cash, ratably in kind, a combination of cash and ratably in kind, or in any other manner which the Trustee shall determine to be appropriate and in the best interests of the Participating Trusts and consistent with applicable law. If a withdrawal is made in kind, the Participating Trust shall reimburse the costs of transferring the property, as determined by the Trustee in its discretion.

2.04 <u>Transaction Costs</u>. The Fund Declaration for a Fund may set forth transaction costs which may be charged to the Participating Trusts in connection with admissions or withdrawals of the Participating Trusts.

2.05 <u>Unit Accounting</u>. A Participating Trust making an admission to or a withdrawal from the Trust shall be considered for accounting purposes to have purchased or sold, respectively, that number of whole or fractional Units having an aggregate value equal to the value of the admission or withdrawal. The price at which Units are purchased or sold for

purposes of this Section shall be the Unit value determined by the Trustee in accordance with Article 4.

## ARTICLE 3. INVESTMENTS AND ADMINISTRATION

3.01  Funds. The Trust shall consist of such Funds as the Trustee may establish from time to time.

(a)  The Trustee shall establish a Fund by executing a Fund Declaration (i) describing the Fund's investment policy and objectives, and (ii) incorporating the terms of this Declaration of Trust by reference and designating any exception to or exclusion from such incorporation by reference and any other variation in the terms hereof, for purposes of that Fund. Notwithstanding the foregoing, the Fund Declaration of any Fund shall be consistent with the requirements of Revenue Ruling 81-100.

(b)  Each Fund shall constitute a separate trust and the Trustee shall hold, manage, administer, invest, distribute, account for, and otherwise deal with the assets of each Fund separately. Except to the extent otherwise indicate in the Fund Declaration of a Fund, this Declaration of Trust shall apply to each Fund.

3.02  Fund Management. Except as otherwise provided herein, the Trustee may invest and reinvest the assets of each Fund in investments and investment techniques or strategies of any kind, including, without limitation, equity and debt securities of domestic or foreign, private or governmental issuers, derivatives, bank deposits of any kind, interests in real property, including fee interests and leases thereon or loans secured thereby, which are consistent with the investment guidelines, policies, objectives, and restrictions applicable to such Fund, as specified in its Fund Declaration. The Trustee's determination as to whether any investment, investment technique, or strategy is within the class or classes of investments in which a Fund may invest, and as to whether any particular investment technique or strategy is consistent with the guidelines, policies, and objectives of a Fund, shall be conclusive. The Trustee may invest the assets of any Fund in Units of any other Fund established under this Declaration of Trust or otherwise by the Trustee or a Bank where the Trustee, in its discretion, deems such investment to be appropriate and consistent with the investment guidelines, policies, objectives, and restrictions of the investing Fund.

3.03  Short-Term Investments. Except where specifically prohibited or restricted by the Fund Declaration of a Fund, the Trustee may from time to time, in its discretion, invest such portion of the assets of such Fund as it may deem advisable temporarily in short-term money market instruments or vehicles, including, without limitation, U.S. Government obligations, bankers' acceptances, commercial paper, certificates of deposit and other deposit accounts, repurchase agreements, money market mutual funds (including, without limitation, but subject to applicable law, those sponsored or advised by NTI or any of its affiliates), and any short-term investment fund (including, without limitation, but subject to applicable law, any such fund maintained by NTI or any of its affiliates pursuant to this Declaration of Trust or otherwise) for which the Fund is an eligible participant. The governing instrument, as amended from time to

time, of any such fund which is intended to qualify as a group trust under Revenue Ruling 81-100 shall, to the extent of a Fund's participation therein, be incorporated herein and made a part of this Declaration of Trust, and the combining of the assets of any Fund with the assets of other participants in such fund, to be held and administered in accordance with the fund's governing instrument is hereby specifically authorized.

3.04 <u>Cash Balances and Deposits</u>. The Trustee is authorized to hold temporarily uninvested such part of the Trust as may be reasonably necessary for orderly administration of the Trust, and to deposit U.S. cash awaiting investment or distribution in accounts of any bank or savings association, the deposits of which are insured by the Federal Deposit Insurance Corporation, including any Bank which accepts deposits; non-U.S. cash may be held at a foreign branch or office of any Bank or any foreign custodian appointed by any Bank.

3.05 <u>Investments by Participating Trusts</u>. A Participating Trust may acquire and hold Units in more than one Fund and may change its investments in the Funds from time to time in accordance with the procedures for admissions and withdrawals described in Article 2. Each Participating Trust shall have an undivided interest in each Fund in which it may hold Units and shall share proportionately with all other Participating Trusts having an interest in each such Fund in the net income, profits, and losses thereof. The Trustee shall have legal title to the assets of the Trust and no Participating Trust shall be deemed to have individual ownership of any asset.

3.06 <u>Management Responsibility</u>. The Trustee shall have exclusive management and investment authority with respect to the Trust and each Fund, except as a prudent person might delegate responsibilities to others. Subject to the foregoing, the Trustee may retain and consult with such investment advisers or other consultants, including, without limitation, any affiliate of the Trustee, as the Trustee, in its discretion, may deem advisable to assist it in carrying out its responsibilities under this Declaration of Trust. The Trustee may appoint the manager or sponsor of any fund in which the assets of the Trust or any Fund may be invested pursuant to Section 3.03 or 3.07(a) as trustee or investment manager for the Participating Trusts with authority to manage and control such assets in accordance with the fund's governing instrument. For this purpose, the Trustee shall be deemed a "named fiduciary," as defined by Section 402(a)(1) of ERISA, of each Participating Trust with respect to the assets of such Participating Trust investment in the Trust, with responsibilities limited to managing and controlling such assets in accordance with this Declaration of Trust.

3.07 <u>Management and Administrative Powers</u>. The Trustee shall have the rights, powers, and privileges of an absolute owner in the management and administration of the Trust. In addition to and without limiting the powers and discretion conferred on the Trustee elsewhere in this Declaration of Trust, each Fund Declaration, or by applicable law, the Trustee shall have the following discretionary powers.

(a) Except where specifically prohibited or restricted by the terms of the relevant Fund Declaration, to invest and reinvest indirectly in investments through mutual funds, closed-end investment companies, limited partnerships, and other common, collective, commingled, or pooled investment funds including, without limitation, but

subject to applicable law, such funds advised, managed, or maintained by NTI or any of its affiliates, for which the Trust is an eligible participant; and, where such fund is intended to qualify as a group trust under Revenue Ruling 81-100, the fund's government instrument, as amended from time to time, shall, to the extent of the Trust's participation therein, be incorporated into and be a part of this Declaration of Trust, and the combining of the Trust's assets with the assets of other participants in such fund, to be held and administered in accordance with the fund's governing instrument is hereby specifically authorized;

(b) To retain any property received by it at any time; to sell or exchange any property, for cash or on credit, at public or private sale;

(c) To borrow money as may be necessary or desirable to protect the assets of a Liquidating Account and to encumber or hypothecate the assets of such Liquidating Account to secure repayment of such indebtedness; and to borrow money on behalf of any Fund investing in real estate from a lender (other than NTI or an affiliate) and give as security therefor mortgages or other security interests in assets of such Fund, including assets to be purchased with borrowed funds, and to acquire assets for such Fund subject to mortgages or security interests granted in favor of others, and to assume indebtedness secured thereby;

(d) To lend securities of the Trust and to secure the same in any manner, and during the term of the loan to permit the loaned securities to be transferred into the name of and voted by the borrower, the lending agent, which may be the Trustee or any of its affiliates, shall be entitled to reasonable compensation for its services;

(e) To exercise or dispose of any conversion, subscription, or other rights, discretionary or otherwise, including the right to vote and grant proxies, appurtenant to any property held by the Trust at any time; and to vote and grant proxies with respect to all securities held by the Trust at any time;

(f) To renew or extend any obligation held by the Trust;

(g) To participate in and to consent to, or to oppose, any plan of reorganization, consolidation, combination, merger, liquidation, or other similar plan relating to any property, or to any contract, lease, mortgage, purchase, sale, or other action by any person or corporation, and, to the extent permitted by applicable law, to deposit any property with any protective, reorganization, or similar committee; to delegate discretionary power with respect thereto and to pay and agree to pay part of the expenses and compensation of any such committee and any assessments levied with respect to any such property so deposited;

(h) To hold property of the Trust in bearer form or to register or cause to be registered such property in the name of a nominee of the Trustee or any custodian appointed by the Trustee; provided, the records of the Trustee and any such custodian shall show that such property belongs to the Trust;

(i) To deposit securities with a securities depository and to permit the securities so deposited to be held in the name of the depository's nominee, and to deposit securities issued or guaranteed by the U.S. Government or any agency or instrumentality thereof, including securities evidenced by book-entry rather than by certificate, with the U.S. Department of the Treasury, a Federal Reserve Bank, or other appropriate custodial entity; provided, the records of the Trustee or any custodian appointed by the Trustee shall show that such securities belong to the Trust;

(j) Subject to Section 404(b) of ERISA and applicable regulations of the U.S. Department of Labor, to hold securities issued by a foreign government or business entity at a foreign branch or office of the Trustee or any of its affiliates or any foreign custodian appointed by the Trustee or any of its affiliates, or to deposit such securities with a foreign securities depository or bank regulated by a government agency or regulatory authority in the foreign jurisdiction, and to permit the securities so deposited to be held in the nominee name of the depository or bank; provided, the records of the Trustee or any custodian appointed by the Trustee shall show that such securities belong to the Trust;

(k) To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Trust; to commence or defend suits or legal proceedings whenever, in the Trustee's judgment, any interest of the Trust so requires; and to represent the Trust in all suits or legal proceedings in any court or before any other body or tribunal; and to pay from the Trust all costs and reasonable attorneys' fees in connection therewith;

(l) To subdivide, develop, improve, lease (for a term within or beyond the existence of the Trust), grant options to purchase, or purchase options to acquire, any real property held by the Trust; to make ordinary and extraordinary repairs and alterations to buildings; to raze and erect new buildings; and to purchase such insurance on behalf of the Trust and at its expense including, without limitation, public liability, fire, and extended coverage, rent insurance, and such other insurance covering insurable risks as the Trustee may deem appropriate;

(m) To organize or acquire one or more corporations, wholly or partly owned by the Trust, each of which may be exempt from federal income taxation under the Code; to appoint ancillary or subordinate trustees or custodians to hold title to or other indicia of ownership of property of the Trust in those jurisdictions, domestic or foreign, in which the Trustee is not authorized to do business and to define the scope of the responsibilities of such trustee or custodian;

(n) Subject to Section 3.06, to employ suitable agents, including, without limitation, agents or pricing services to perform valuations of the assets of the Trust, custodians, advisers, auditors, depositories, and counsel, domestic or foreign, and, subject to applicable law, to pay their reasonable expenses and compensation from the Trust;

(o) To purchase and sell securities between Funds and other accounts and funds over which the Trustee exercises investment authority; such "cross trading" will be conducted in accordance with applicable individual and class exemptions issued by the U.S. Department of Labor;

(p) To segregate or transfer to brokers, futures commission merchants, counterparties or the custodial agents of counterparties, cash and securities which represent collateral or margin in connection with investments in derivatives; and

(q) To make, execute, and deliver any and all contracts and other instruments and documents deemed necessary and proper for the accomplishment of any of the Trustee's powers and responsibilities under this Declaration of Trust.

3.08 **Liquidating Accounts.** If the Trustee, in its discretion, determines that any investment then held in a Fund has ceased to be lawful or for some other reason should be distributed in kind or liquidated for the benefit of the affected Participating Trusts, the Trustee may transfer the investment to a Liquidating Account. Any such Liquidating Account shall be subject to and governed by all of the provisions of this Declaration of Trust, except as hereinafter provided.

(a) The Trustee shall establish and administer each Liquidating Account solely for the benefit of the Participating Trusts having an interest in the Fund from which the asset was segregated at the time it was placed in the Liquidating Account. The Trustee shall prepare a schedule showing the interest of each affected Participating Trust in the Liquidating Account, and shall hold such schedule as part of its fiduciary records.

(b) The Trustee shall make distributions from a Liquidating Account, in cash or in kind, in accordance with the respective interests of the affected Participating Trusts. The Trustee shall liquidate the assets held in a Liquidating Account and distribute the proceeds as and when the Trustee deems such liquidation and distribution to be in the best interests of the affected Participating Trusts.

(c) No additional money or property shall be invested in a Liquidating Account. However, in order to protect any asset held therein, the Trustee, in its discretion, may borrow money on the security of any asset held in the Liquidating Account.

(d) The value of any asset held in a Liquidating Account shall be excluded in determining the basis upon which admissions to and withdrawals from the Trust are made pursuant to Article 2. However, each Liquidating Account shall be deemed to be a part of the Trust for purposes of the settlement of the accounts of, and the payment of compensation to, the Trustee.

3.09 **Income, Gains, and Losses.** Unless provided otherwise by the relevant Fund Declaration, all net income and realized capital gains of a Fund shall be accumulated and added

to the principal of the Fund at the convenience of the Trustee, and invested and reinvested as a part thereof.

(a) The net income of any Fund that provides for distribution of same shall include all dividends, interest, and other income which the Trustee may determine under generally accepted accounting principles properly to be included in income collected or accrued with respect to the period beginning immediately after the close of business on a Valuation Date and ending at the close of business on the next succeeding Valuation Date, less any allocable expenses, charges, reserves, or other liabilities that are appropriate deductions under generally accepted accounting principles. The Trustee's reasonable determination of the allocation of such liabilities to income among Funds shall be conclusive. Capital gains and losses realized by a Fund shall not be considered in computing net income.

(b) The Trustee shall determine the share of net income of each Participating Trust holding Units of a Fund that provides for distribution of net income by dividing the total amount of such income by the total number of Units of such Fund as of the Valuation Date next preceding the Valuation Date as of which net income is to be distributed, and by multiplying the income per Unit so obtained by the total number of Units beneficially owned by the Participating Trust as of such preceding Valuation Date. The Trustee shall have a reasonable period of time, not to exceed five business days, after the Valuation Date as of which net income is to be distributed within which to make the actual payment.

(c) If accrued but uncollected income is distributed to a Participating Trust in connection with a withdrawal or distribution of income and such accrued income is not actually collected by the Trustee in whole or in part when it should have been paid, the Trustee shall have the right at any time thereafter to charge to and recover from such Participating Trust, or the beneficiaries thereof, the amount so distributed but not actually collected.

(d) Except as may be required in connection with any tax or information return to be filed by the Trust, the Trustee shall not be required to account for any distinction between the income and the principal of the Trust beyond such accounting as may be required to comply with this Section 3.09.

3.10 NTC Stock. To the extent that (i) a Fund's objective is to approximate the risk and return characteristics of the securities in an index, or (ii) investments in a Fund are made in accordance with computer models with the investment objective of approximating the risk characteristics and approximating or exceeding the return characteristics of an index or any portion thereof, or (iii), in the case of an "enhanced" index fund, the objectives of the Fund are to provide investment results that exceed the overall performance of an index through stock selection resulting in different weightings of stocks relative to the index, and such index or portion of an index includes the common stock of Northern Trust Corporation ("NTC"), an affiliate of the Trustee, the Trustee may purchase, sell and retain investments in the common stock of NTC consistent with the investment objectives of a Fund described in (i) or (ii) above

and consistent with the weighting of the common stock of NTC in the relevant index in the case of a Fund described in (iii) above. Notwithstanding the foregoing, however, any transactions in the common stock of NTC may be restricted from time to time in order to assure compliance with the Trustee's (or its affiliates') internal policies and procedures and applicable securities laws. Such restrictions may adversely affect the Trustee's ability to achieve the investment objective of the Fund.

## ARTICLE 4. ACCOUNTING, RECORDS, AND REPORTS

4.01 Units. The Trustee shall divide each Fund into Units of participation for purposes of recording the beneficial interest of the Participating Trusts therein. Each Unit of each Fund shall represent a proportionate, undivided interest in the Fund, and no Unit shall have priority or preference over any other Unit. As of any Valuation Date, the Trustee, in its discretion, may make a uniform change in the Units of a Fund either by dividing the Units into a greater number of Units of lesser value, or combining the Units to produce a lesser number of Units of greater value, provided that the aggregate value of the new Units so created shall be equal to the aggregate value of the pre-existing Units.

4.02 No Certificates. No transferable certificate shall be issued to evidence the interest of any Participating Trust in the Trust or any Liquidating Account. However, a non-transferable certificate of participation may be issued to each Participating Trust having an interest in a Liquidating Account describing the assets held in the Liquidating Account and the Participating Trust's proportionate interest therein.

4.03 Valuation of Units. As of each Valuation Date, the Trustee shall, subject to generally accepted accounting principles, determine the value of the Units of each Fund pursuant to the following procedures:

(a) The Trustee shall determine the value of the assets of each Fund in accordance with the rules set forth in Section 4.04.

(b) The Trustee shall subtract from the value determined under Section 4.03(a) any expenses, charges, or other liabilities incurred or accrued by the Fund as determined by the Trustee in good faith in accordance with procedures consistently followed and uniformly applied. The Trustee's determination of the allocation of such expenses, charges, and liabilities among Funds shall be conclusive and binding on all Participating Trusts.

(c) The Trustee shall divide the net value of the Fund assets determined pursuant to Sections 4.03(a) and (b) by the total number of Units of the Fund in existence as of the relevant Valuation Date. The Trustee shall have a reasonable period of time, not extending beyond the earlier of (i) the opening of business on the next Valuation Date, or (ii) ten business days following the Valuation Date for which Unit values are being determined, within which to determine the value of the Units of a Fund and the aggregate value of the beneficial interest of each Participating Trust in such Fund.

4.04 <u>Valuation of Assets</u>. Subject to the following provisions of this Section 4.04, the Trustee shall value the assets of the Trust at market value as of the close of business on the relevant Valuation Date or, in the absence of readily ascertainable market values, at fair value as determined by the Trustee in good faith in accordance with procedures consistently followed and uniformly applied.

(a) The value of each security, including any security issued by a company or corporation organized outside the United States, listed on a generally recognized securities exchange shall be determined from reports containing information as of the Valuation Date. If the Trustee is of the opinion that the value of any such security, as so determined, does not indicate the fair value of such security as of the close of business on the Valuation Date, then the Trustee shall value such security in accordance with the provisions of Section 4.04(b). If a security is traded on more than one generally recognized securities exchange, the Trustee may select and use the applicable last sale or bid price reported for any such exchange. Portfolio securities traded over the counter, and for which market quotations are readily available, shall be valued at the last reported bid price in such market. Sales and bid prices reported in newspapers have wide circulation among those engaged in financial activities, or in standard financial periodicals, or in the records of any recognized exchange, or reported by a reputable pricing or quotation service (any one or more of which may be selected by the Trustee and noticed in its records), shall be accepted as evidence thereof.

(b) Portfolio securities (including restricted securities that are subject to limitations on resale) and other Trust assets for which market quotations are not readily available, or which quotations are not considered to represent market value, shall be valued at fair value as determined by the Trustee in accordance with procedures consistently followed and uniformly applied.

(c) Long-term bonds and U.S. Treasury notes shall be valued at prices obtained from a recognized pricing source, when such prices are available. In other cases, when the Trustee considers it appropriate, such securities shall be valued at the mean between the representative quoted bid and asked prices (or, if not available, at such prices for comparable securities).

(d) U.S. Treasury bills, certificates of deposit issued by banks, corporate short-term notes, and other short-term investments shall be valued at amortized cost.

(e) Shares of investment companies may be valued on the basis of market quotations if the market volume and the depth of the market, as determined by the Trustee, are sufficient to establish that the market quotations appropriately reflect the market values for such securities. Where market quotations do not appropriately reflect market value, such securities shall be valued at their current net asset values.

(f) Except as otherwise provided in applicable Fund Declarations, bank deposits, guaranteed investment contracts issued by insurance companies, or other assets

that provide for payments or withdrawals on a contractual basis without penalty, and which are non-negotiable or with respect to which there is no active trading market, shall be valued at fair value as determined by the Trustee, which value may be the cost or par value of the investment, plus accrued income, where the Trustee determines that such value approximates fair value.

(g) Portfolio securities and other assets of the Trust (as well as liabilities of the Trust), initially expressed in terms of foreign currencies, shall be translated into U.S. dollars at the market rates prevailing as of the close of business on the Valuation Date.

(h) Any security purchased and awaiting payment shall be included for valuation purposes as a security held, and the principal amount due on the purchase, including broker's commissions or other expenses of the purchase, shall be reflected as an amount payable.

(i) Any security sold but not delivered pending receipt of the proceeds shall be valued at the net sale price. However, the Trustee shall not be required to take into account commissions and other expenses of sale which would be incurred if an asset were sold in determining the value of assets not sold.

(j) In determining the value of securities, the Trustee may make such adjustments as it deems necessary under the circumstances to take into account stock splits, cash or stock dividends, or similar events as of the Valuation Date.

(k) Income and expenses shall be recorded on an accrual basis. In determining the value of the assets of a Fund, the Trustee shall take into account any net income of the Fund accrued as of the applicable Valuation Date, any uninvested cash balance of the Fund, and the value of any other asset considered by the Trustee to be an asset of the Fund.

(l) The value of real estate and tangible personal property and of any interests therein shall be the fair value thereof as of the close of business on each Valuation Date as determined by the Trustee. The Trustee shall obtain formal appraisals of such property at least once each year by an appraiser or appraisers employed by the Trustee or one or more qualified independent appraisers. The Trustee shall review and update such formal appraisal informally and may consider such other information or circumstances the Trustee considers relevant. In valuing real estate or tangible personal property subject to a term lease, or in valuing real estate or tangible person property subject to a purchase-leaseback arrangement, if in either case the Trustee considers the value of the investment as based primarily on the obligation of the lessee or any guarantor to pay rent and only secondarily on the underlying real estate or personal property, the Trustee may value the asset in such manner as the Trustee shall deem appropriate without being required to obtain an appraisal thereof. The Trustee, either before or after the purchase of real estate or tangible personal property or any interest therein may at any time obtain an appraisal thereof by one or more qualified independent appraisers and may pay the expense thereof from the assets of the relevant Fund.

(m) In any case where there is no readily ascertainable market value or where the Trustee determines the application of the foregoing rules to be inappropriate, the asset shall be valued on the basis of estimated values computed by the Trustee after taking into account factors the Trustee considers relevant, including, without limitation, cost, valuations furnished by an entity in which the Trust may hold an interest, the value of similar investments for which a market value is readily ascertainable, and values obtained from qualified appraisers or other sources who deal in or are familiar with the type of asset or investment involved.

(n) The Fund Declaration for a Fund may set forth additional exceptions to the provisions of this Section 4.04.

4.05 Accounting Rules. Except as otherwise provided under Section 4.03, the Trustee shall account for the financial operations of the Trust on an accrual basis, and for any Liquidating Account on a cash basis, in accordance with generally accepted accounting principles. The Trustee shall establish the fiscal year of the Trust and each Fund from time to time, which, unless specified otherwise in the relevant Fund Declaration, shall be the twelve-month period ending July 31.

4.06 Expenses and Taxes. The Trustee may charge to the Trust (i) the cost of money borrowed, (ii) costs, commissions, income taxes, withholding taxes, transfer and other taxes and expenses associated with the holding, purchase and/or sale, and receipt of income from, investments, (iii) the reasonable expenses of an audit of the Trust by independent public accountants, (iv) reasonable attorneys' fees and litigation expenses, and (v) any other expense, claim, or charge properly payable from the Trust under this Declaration of Trust or applicable law.

4.07 Records, Audits. The Trustee shall keep such records as it deems necessary or advisable in its sole discretion to account properly for the operation and administration of the Trust. At least once during each period of twelve months, the Trustee shall cause a suitable audit to be made of the Trust by auditors responsible only to the board of directors of the Trustee.

4.08 Financial Reports. Within 90 days after the close of each fiscal year of the Trust (and of any Fund having a fiscal year different from that of the Trust, as provided in Section 4.05 and the relevant Fund Declaration), the Trustee shall prepare a written financial report, based on the audit referred to in Section 4.07, containing such information as may be required by applicable law and regulations.

(a) A copy of the report shall be furnished, or notice given that a copy thereof is available and will be furnished without charge on request, to each person to whom a regular periodic accounting would ordinarily be rendered with respect to each Participating Trust. In addition, a copy of the report shall be furnished on request to any person and the Trustee may make a reasonable charge therefor. Except as otherwise provided in the preceding sentence, the Trustee shall bear the cost of printing, publication, and distribution of any financial report of the Trust.

(b)     If no written objections to specific items in the financial report are filed with the Trustee within 60 days after the report is sent by the Trustee, the report shall be deemed to have been approved with the same effect as though judicially approved by a court of competent jurisdiction in a proceeding in which all persons interested were made parties and were properly represented before such court, and, to the fullest extent permitted by applicable law, the Trustee shall be released and discharged from liability and accountability with respect to the propriety of its acts and transactions disclosed in the report. Any such written objection shall apply onto to the proportionate share of the Participating Trust on whose behalf the objection is filed and shall not affect the proportionate share of any other Participating Trust. The Trustee shall, in any event, have the right to a settlement of its accounts in a judicial proceeding if it so elects.

4.09    Government Filing. The Trustee intends to file directly with the U.S. Department of Labor the information called for by Department of Labor regulations under Section 103(b)(4) of ERISA (29 C.F.R. §2520.103-9, as amended).

## ARTICLE 5. CONCERNING THE TRUSTEE

5.01    Merger, Consolidation of Trustee. Any corporation or association (i) into which the Trustee may be merged or with which it may be consolidated, (ii) resulting from any merger, consolidation, or reorganization to which the Trustee may be a party, or (iii) to which all or any part of the Trustee's fiduciary business which includes the Trust may be transferred shall become successor Trustee, and shall have all the rights, powers, and obligations of the Trustee under this Declaration of Trust, without the necessity of executing any instrument or performing any further act.

5.02    Limitation on Liability. Except as otherwise provided by applicable law, (i) the Trustee shall not be liable by reason of the purchase, retention, sale, or exchange of any investment, or for any loss in connection therewith, except to the extent such loss shall have been caused by its own negligence, willful misconduct, or lack of good faith, and (ii) the Trustee shall not be liable for any mistake made in good faith in the administration of the Trust if, promptly after discovering the mistake, the Trustee takes whatever action the Trustee, in its discretion, may deem to be practicable under the circumstances.

5.03    Trustee Compensation. The Trustee may charge and pay from the Trust reasonable compensation for its services in managing and administering the Trust, provided that, any Fund management fee (i) is permitted under and complies with the requirements of applicable state law and (ii) does not exceed an amount commensurate with the value of legitimate services of tangible benefit to the Participating Trusts that would not have been provided to the Participating Trusts were they not invested in the Fund.

5.04    Trustee's Authority. No person dealing with the Trustee shall be under any obligation to inquire regarding the authority of the Trustee, the validity or propriety of any transaction, or the application of any payment made to the Trustee.

5.05 Advice of Counsel. The Trustee may consult with legal counsel of its choosing with respect to the interpretation of the Declaration of Trust, the Trustee's rights or responsibilities hereunder, any legal proceeding or question of law, or any act the Trustee proposes to take or omit, and may pay such counsel reasonable compensation from the Trust. The Trustee shall not be liable for any action taken or omitted in good faith pursuant to the advice of such counsel.

5.06 Accountings and Necessary Parties. Except as otherwise required by this Declaration of Trust or applicable law, the Trustee shall have no obligation to render an accounting to any Participating Trust or beneficiary thereof. If at any time the Trustee or any Participating Trust applies to a court of competent jurisdiction for a judicial settlement of the Trustee's accounts, it shall be necessary to join as parties in any such proceeding only the Trustee and each person to whom a regular periodic accounting would ordinarily be rendered with respect to each Participating Trust.

5.07 Reliance on Communications. The Trustee shall be fully protected in acting upon any instrument, certificate, or document believed by it to be genuine and to be signed or presented by the proper person or persons. The Trustee shall have no duty to make an investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

5.08 Action by Trustee. The Trustee may exercise its rights and powers and perform its duties hereunder through such of its officers and employees as shall be authorized to perform such functions by the Trustee's board of directors through general or specific resolutions. However, NTI solely shall be responsible for the performance of all rights and responsibilities conferred on it as Trustee hereunder, and no such officer or employee individually shall be deemed to have any fiduciary authority or responsibility with respect to the Trust.

## ARTICLE 6. AMENDMENT, TERMINATION, AND REORGANIZATION

6.01 Amendment. The Trustee may amend this Declaration of trust at any time. Any such amendment shall take effect as of the date specified by the Trustee. However, any amendment materially changing the investment policy or objective of a Fund shall be effective no earlier than the Valuation Date that is at least ten business days after the Trustee gives notice of such amendment in accordance with Section 6.04.

6.02 Termination. The Trustee may terminate the Trust or any Fund or Funds at any time. In such event, the assets of the Trust or the affected Fund shall be administered and distributed as if it were a Liquidating Account.

6.03 Reorganization. NTI may cause any Fund or Funds to be merged or consolidated or split up or subdivided in a transaction (herein referred to as "reorganization") involving any other Fund or any other collective investment fund or funds maintained by NTI or a Bank outside of this Declaration of Trust.

(a) Any such reorganization shall take effect no earlier than as of the close of business on a Valuation Date which is at least ten business days after notice has been given to an authorized representative of each affected Participating Trust. If any Participating Trust notifies the Trustee of its objection to the reorganization by a date specified by the Trustee, the interest of such Participating Trust shall be withdrawn from each Fund involved in the reorganization as of such Valuation Date.

(b) The value of the beneficial interest of each Participating Trust in any Fund resulting from the reorganization shall be no less than the aggregate value of such Participating Trust's beneficial interest in all of the affected Funds immediately prior to the reorganization. After the Valuation Date as of which the reorganization is effected pursuant to the foregoing procedures, the reorganization shall be binding upon all Participating Trusts having an interest in each Fund resulting from the reorganization and upon all fiduciaries and beneficiaries of such Participating Trusts.

6.04 <u>Notices</u>. The Trustee shall give any notice required by this Declaration of Trust in writing to each person to whom a regular periodic accounting would ordinarily be rendered with respect to each affected Participating Trust. Any such notice or other notice or communication required or permitted hereunder shall be deemed to have been given at the time the Trustee delivers the notice personally or mails the notice first class, postage prepaid, registered, or certified to the address of the appropriate recipient as shown on the Trustee's records.

## ARTICLE 7. GENERAL PROVISIONS

7.01 <u>Diversion, Assignment Prohibited</u>. The following provisions shall apply, notwithstanding any provision of this Declaration of Trust or any amendment hereto to the contrary.

(a) No part of the corpus or income of the Trust which equitably belongs to a Participating Trust, other than that portion required for taxes (if any), reasonable expenses incurred in the administration of the Trust, and Trustee compensation as permitted by this Declaration of Trust and applicable law, shall be used or diverted to any purposes other than for the exclusive benefit of the employees or their beneficiaries entitled to benefits under such Participating Trust.

(b) No Participating Trust may assign all or any portion of its equity or interest in the Trust.

(c) No part of the Trust which equitably belongs to a Participating Trust shall be subject to any legal process, levy of execution, or attachment or garnishment proceedings for payment of any claim against any such Participating Trust or any employee or beneficiary thereof.

(d) Notwithstanding anything to the contrary in this Section 7.01, the assets of any Participating Trust established by or in connection with a plan described in Section 457 of the Code shall be subject to the claims of general creditors of the sponsoring employer of such plan solely to the extent necessary to maintain the plan's qualification under said Section 457.

7.02 <u>Governing Law</u>. This Declaration of Trust shall be construed, and the Trust shall be administered, in accordance with the laws of the State of Illinois to the extent not preempted by ERISA and other applicable federal law.

7.03 <u>Situs of Trust</u>. The Trust is created and shall be held, managed, administered, and maintained at all times as a domestic trust in the United States.

7.04 <u>Inspection</u>. A copy of the Declaration of Trust shall be kept on file at the principal office of the Trustee, available for inspection during normal business hours. A copy of the Declaration of Trust shall be sent upon request to each person to whom a regular periodic accounting would be rendered with respect to each Participating Trust, and shall be furnished to any other person upon request for a reasonable charge.

7.05 <u>Titles</u>. The titles and headings in this Declaration of Trust are for convenience and reference only, and shall not limit or affect in any manner any provision contained therein.

7.06 <u>Invalid Provisions</u>. If any paragraph, section, sentence, clause or phrase contained in this Declaration of Trust is illegal, null, or void, or against public policy, the remaining provisions thereof shall not be affected.

7.07 <u>Status of Instrument</u>. This instrument contains the provisions of the Declaration of Trust and all amendments adopted through the date set forth below.

**DATE OF INSTRUMENT: January 31, 2006**

NORTHERN TRUST INVESTMENTS, N.A.

BY: *[signature: John L. Krieg]*

NAME: John Krieg

TITLE: Senior Vice President