**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>    Defendants. | Case No. 09-7203<br><br>Hon. Robert W. Gettleman<br><br>Magistrate Judge Susan E. Cox<br><br>JURY TRIAL DEMANDED<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL** |
| NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>    Third-Party Plaintiffs,<br><br>    v.<br><br>THE BOARD OF TRUSTEES FOR THE LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES FOR THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM,<br><br>    Third-Party Defendants. | |
| THE NORTHERN TRUST COMPANY,<br><br>    Counter-Plaintiff,<br><br>    v.<br><br>PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO,<br><br>    Counter-Defendant. | |

1

## I.  INTRODUCTION

The Plaintiffs, four public pension plans (the "Plans"), bring this motion so that discovery can begin.  Defendants Northern Trust Investments, N.A. and The Northern Trust Company ("Northern Trust"), however, maintain that the Illinois Banking Act (sometimes "Act") keeps them from producing any client information and thus mandates extensive redaction – and that even if they were allowed to produce the information, it would be too burdensome.  Northern Trust is wrong on both counts, but its position has prevented the parties from reaching agreement on an ESI protocol.  In turn, Northern Trust, relying on the absence of an ESI protocol, has produced no documents in response to the Plans' July 2011 discovery requests.  This impasse will continue indefinitely without this Court's intervention, which the Plans now seek.

## II.  BACKGROUND

On July 1, 2011, the Plans propounded their First Request for the Production of Documents Directed to Defendants.  Northern Trust responded to the Requests on August 5, 2011, and included a total of twenty-eight General Objections.  General Objection No. 27 objected to "producing documents that would identify client names; client identifying information; and client banking, financial, and other information."  Decl. of Laura R. Gerber ("Gerber Decl."), Ex. 1, at 7.  General Objection No. 28 objected to "producing any and all documents that would violate any provision of any and all applicable laws, rules, and practices concerning and protecting client names; client identifying information; and client banking, financial, and other information."  *Id.* at 8.

On August 10, September 28, and October 3, 2011, the parties held discovery telephone calls and discussed these two General Objections (among other matters), as they relate both to the Plans' document requests and the parties' proposed ESI protocol.  Counsel for Northern Trust took the position that under the Illinois Banking Act, Northern Trust is prohibited from

disclosing information that would identify its securities lending clients – even where there is a valid document request and a stipulated protective order governing disclosure of documents designated "confidential." Gerber Decl. ¶ 6. It is Plaintiffs' understanding that all references to client information in, for example, contracts, client communications, and spreadsheets, would be redacted. Gerber Decl. Ex. 5 at 2.

At the same time, the parties were negotiating the terms of an ESI protocol. The parties reached agreement on all terms, other than on the production of certain document categories in native file format, which the Plans requested and Northern Trust opposed. As a compromise, the Plans requested that Northern Trust produce in native format documents such as spreadsheets, databases, and similar files in which data and functionality is not preserved unless produced in native. *Id.*, Exs. 2 and 3. In response, Northern Trust asserted that spreadsheets and databases requiring redaction could not be produced in native format. *Id.*, Ex. 4. While information traditionally requiring redaction – information subject to the attorney-client privilege or work-product doctrine – would not normally be found in a party's spreadsheets and databases, Northern Trust's broad assertion of the Act means that there will be extensive redaction of spreadsheets and databases, which would then not be produced in native format.

As a result, the Plans are not only frustrated from exploring information about the members of the class – information Northern Trust has suggested should be the first priority of discovery – but cannot obtain any discovery because Northern Trust's assertion of the Act is preventing agreement on an ESI protocol that would facilitate the production of documents.

### III.  ARGUMENT

**A.     Defendants' Justifications For Concealing Client Information Make No Sense**

In the meet and confers the parties have held, Northern Trust has made two arguments to defend its concealment of client information. It says that the Illinois Banking Act absolutely

prohibits it from disclosing that information, and that even if the Act allows disclosure, it would be too burdensome. These arguments do not make sense.

> 1. **The Illinois Banking Act Allows For Unredacted Production In These Circumstances**

The Illinois Banking Act provides that a bank customer's "financial records" can only be disclosed under certain conditions. 205 ILCS 5/48.1(a), (c). One of those conditions is disclosure "in response to a lawful subpoena, summons, warrant, citation to discover assets, or court order." *Id.* 5/48.1(c)(2). This condition applies here. In *Dufour v. Mobil Oil Corp.*, 703 N.E.2d 448 (Ill. App. Ct. 1998), a party relied on the Act to oppose both interrogatories directed to him regarding his bank accounts and a subpoena issued to the third-party bank. *See id.* at 450-51, 453. The court rejected the contention that the Act prohibited disclosure of financial records in response to legitimate civil discovery, pointing to the fact that the Act allows disclosure when there is a lawful subpoena, summons, warrant, or court order. *Id.* at 453. The Act expressly provides for disclosure under these circumstances, and disclosure should be compelled.

Even if the Act did not explicitly allow disclosure here, Northern Trust's concealment of client identities would still be improper. Under the Federal Rules, statutes that provide for the confidentiality of information "do not bar limited disclosure in judicial proceedings, including court-supervised discovery." *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987). "[T]he mere fact that a statute generally prohibits the disclosure of certain information does not give parties to a civil dispute the right to circumvent the discovery process." *Marks v. Global Mortg. Group Inc.*, 218 F.R.D. 492, 496 (S.D. W. Va. 2003). Thus, even where there is a confidentiality statute, "the test of discoverability is the relevance standard of Rule 26(b)(1)," and nothing else. *Laxalt*, 809 F.2d at 889. Further, Defendants have taken the position that the information sought

4

is relevant, but that the statute bars disclosure. Gerber Decl., ¶ 6. That information should therefore be produced.

Moreover, any production will take place subject to a protective order. Gerber Decl., ¶¶ 6, 10. The unredacted documents will be available, at most, only to the parties and their attorneys and other agents.

### 2. Producing The Client Information Will Not Be Burdensome

The Illinois Banking Act requires that Northern Trust mail to its clients "a copy of the subpoena, summons, warrant, citation to discover assets or court order" requiring disclosure. 205 ILCS 5/48.1(d). Pointing to this provision, counsel for Northern Trust has maintained that even if client information is discoverable, complying with the Act would be unduly burdensome and too expensive.

This argument borders on the frivolous. Mailing costs would be negligible and enclosing a form letter with a copy of the Plans' discovery request or with a copy of an order of this Court would not be complicated. Northern Trust knows who its own clients are, and the fact that the Act explicitly provides the means to accomplish the requisite notice speaks for itself. There is just no good reason to withhold the requested information and insist on burdensome and time-consuming redactions that will conceal relevant information. Northern Trust should be compelled to comply with the Act's notice requirements and produce unredacted responsive documents in this matter so that document production can begin.

**B.    Northern Trust Itself Has Argued That The Information It Wishes To Redact Is Relevant To Class Certification**

At no time in the meet and confer process has Northern Trust once claimed that the client information the Plans seek is irrelevant. *See* Gerber Decl. ¶ 6. Nor could they. As counsel for Northern Trust explained at the September 26 status hearing:

5

> So it's not just that a public pension fund may have invested in the commingled fund that engaged in securities lending. It's beyond that, that *their own individual proprietary* portfolio securities are implicated where each of those giant public funds also engaged in *individual contract negotiations* with Northern Trust relationship managers, of which there are many.

Status Conference Tr. 5:23-25; 6:1-4 (emphasis added). Northern Trust cannot argue that its communications and contracts with class members are relevant to class certification and, therefore, a high priority for discovery, and simultaneously withhold this information from the Plans.

**C.     The Plans Need Production Of Spreadsheets And Similar Documents In Native Format In Order To Understand Them**

Federal courts and the *Sedona Principles* recognize that "[m]aintaining spreadsheets in their native format is necessary to assure the integral elements of a spreadsheet remain undisturbed." *Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146, 150 n.1 (D. Mass. 2009); *see also Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647 (D. Kan. 2005) ("To understand the spreadsheet, the user must be able to ascertain the formula within the cell."); Sedona Conf., *Sedona Principles: Best Practices Recommendations and Principles for Addressing Electronic Document Production* 60 (2007) (recommending that the format of production of electronic documents take into account "the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case"). Northern Trust's initial refusal to produce any spreadsheets and similar documents in native format would deprive the Plans of their ability to access, search and display the information in these documents and would further prohibit the Plans from viewing embedded metadata that would let them understand the source of the data and the data itself. *See* Gerber Decl., Ex. 2.

6

Northern Trust's offer to produce spreadsheets and similar documents in native format only if these documents do not need to be redacted, *id.*, Ex. 4, does not solve this problem. The assertion that the Illinois Banking Act requires redaction of all client financial data effectively renders Northern Trust's offer meaningless, since the vast majority if not all of the spreadsheets and similar documents will be redacted on this basis and thus produced as TIFF images instead of natives.

## IV.  CONCLUSION

For the reasons given above, the Plans respectfully request that Northern Trust be compelled to disclose the identities and securities lending activities of its clients when producing documents, and to comply with the notice provisions of 205 ILCS 5/48.1.

Dated: October 10, 2011

**KELLER ROHRBACK L.L.P.**

By:  s/ Laura R. Gerber
Lynn L. Sarko
Derek W. Loeser
Raymond J. Farrow
Laura R. Gerber
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:  206-623-1900
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
rfarrow@kellerrohrback.com
lgerber@kellerrohrback.com

*Counsel for Plaintiff Firefighters'
Retirement System*

Respectfully submitted,

Avi Josefson
**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
2835 N. Sheffield Avenue, Suite 409
Chicago, Illinois 60657
Telephone:  773-883-5382
avi@blbglaw.com

David Wales
Rebecca Boon
Brett Van Benthysen
**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone:  212-554-1400
dwales@blbglaw.com
rebecca.boon@blbglaw.com
brett@blbglaw.com

*Counsel for Plaintiff Public School Teachers'
Pension & Retirement Fund of Chicago*

Garrett W. Wotkyns
Michael C. McKay
**SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP**
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, AZ 85258
Telephone: 480-607-4368
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com

*Counsel for Plaintiff Firefighters' Retirement System*

Sharon S. Almonrode
**SULLIVAN, WARD, ASHER & PATTON, P.C.**
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48037
Telephone: 248-746-0700
salmonrode@swappc.com

*Counsel for Plaintiffs The Board of Trustees of the City of Pontiac Police & Fire Retirement System and The Board of Trustees of the City of Pontiac General Employees Retirement System*

Elizabeth Hoskins Dow, #6216262
**BAILEY & GLASSER LLP**
1003 Western Avenue
Joliet, IL 60435
Telephone: 815-740-4034
ldow@baileyglasser.com

*Counsel for Plaintiff Firefighters' Retirement System*

8