# EXHIBIT 2




September 19, 2011

**By Email and U.S. Mail**

Todd J. Ehlman, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703

Re: *Firefighters' Retirement Systems v. Northern Trust Investments, N.A. et al.*, No. 09-cv-7203 (N.D. Ill.)

Dear Todd,

I write on behalf of Plaintiffs to memorialize and follow up on our conference call of Thursday, September 15, 2011 regarding ESI production protocols in this case. Working off your letter to Rebecca Boon of September 9, 2011, we were able to agree on certain issues, but were not able to reach agreement on Plaintiffs' proposal that spreadsheets and similar documents be produced in native format.

During the call, Plaintiffs reiterated that all spreadsheets and other documents where an image file does not adequately represent the files as maintained in the ordinary course of business should be produced in native format. In your letter of September 9, 2011, and again during our telephone conference, you stated that Defendants will not produce any native format files in the first instance. You propose instead that spreadsheets and other such documents be produced as image files in TIFF format, and that Defendants will entertain follow-up requests for particular documents in native format where they determine that the TIFF format of the document is not reasonably usable or does not appear to adequately represent the documents contents. Defendants will then produce the requested documents in native format if "otherwise appropriate." As we understand your position, the principal justification for refusing to produce spreadsheets in native format is that doing so will impose an undue burden on Defendants and their attorneys arising from the additional need to review the hidden cells and formulae of the voluminous number of spreadsheets that are likely to be produced. Plaintiffs do not find this stated justification persuasive.

First, while we agree that Defendants' counsel have the right and responsibility to review the entirety of every document it produces for privileged material, we do not see how a review of the documents in native format will impose any additional burden apart from your ordinary obligations. Presumably, you and your client will already be reviewing the entirety of each document produced, including hidden cells, for the purpose of determining whether the document, including that portion of the document that would





not appear in a TIFF version, contains relevant information responsive to our document requests. Your position that the review of spreadsheets in native file format is more burdensome concedes our point that there is additional data in native files that will ultimately be removed once the document is converted to a TIFF version. As this is a critical element of your burden argument, we would appreciate clarification. Are Defendants stating that they only intend to review potentially responsive documents in a non-native format, after they are imaged as TIFFs, before they decide whether to produce them?

Second, Defendants have not supported their burden argument with any facts or even hypothetical scenarios. You stated that you are confident that a voluminous number of spreadsheets or similar documents will likely be produced in this case; however you were unable to quantify that contention either in absolute numbers or as a percentage of the production. Moreover, any additional burden arises only to the extent that certain spreadsheets contain hidden material that Defendants and their counsel would not otherwise review if permitted to produce the documents in non-native format. Apart from your obligation to review such material to determine whether it should be produced, many spreadsheets do not have any hidden cells and would not require any greater review than the imaged file. Further, to the extent that you are concerned about the disclosure of the underlying formulae in a spreadsheet, we are unable to conceive of any reason such formulae would be privileged or require careful review. They simply provide information about the underlying source of the numbers in the spreadsheet, information which Plaintiffs are entitled to receive. We also noted during the call that the production of spreadsheets and similar documents in native format will actually be less burdensome for Defendants because there would be no need to have documents converted from their native format to TIFF images. In response to your concern that the "pages" of a spreadsheet in native format could not be Bates numbered, we noted, and you agreed, that it is commonplace for electronic files in native format to be assigned a single Bates number, using a placeholder document or embedded in the file name.

Defendants' proposal that Plaintiffs review imaged documents first and then request production in native format of particular documents is not a satisfactory alternative to the production of spreadsheets and similar documents in native format in the first instance. Plaintiffs cannot know what relevant information might be contained in such documents that does not appear in the imaged version of the documents. Nor will the imaged document necessarily provide a clue as to the existence or nature of such hidden information. Moreover, as discussed below, it is not just the non-disclosure of hidden information that is of concern to Plaintiffs. As you no doubt know, spreadsheets, like databases, are designed and utilized for the purpose of storing, sorting and manipulating data and permitting the analysis or display of relationships between data, as well as the ability to draw conclusions based upon the application of formulae or the re-





ordering of the data. When such files are converted to TIFFs or other images, that functionality is lost, and the document's usability is significantly degraded if not destroyed.[1]

Both the case law and other sources of authority have recognized, that"[m]aintaining spreadsheets in their native format is necessary to assure the integral elements of a spreadsheet remain undisturbed." *Dahl v. Bain Capital Partners, LLC*, 665 F.Supp.2d 146, 150, n. 1 ( D.Mass. 2009); *see also Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647 (D. Kan. 2005) ("To understand the spreadsheet, the user must be able to ascertain the formula within the cell."). In addition, many of the cases, including those cited above and several cases from the Northern District of Illinois rely on the *Sedona Principles* for guidance in this area.[2] As revised in 2007, Principle 12 recommends that the format of the production of electronic documents take into account "the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case." This revision abandoned a mild presumption against requiring the production of metadata and "placed greater weight on the enhanced accessibility and functionality that metadata provides to the recipients of ESI." *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Security*, 255 F.R.D. 350, 356 (S.D.N.Y 2008).[3]

The spreadsheets and similar documents that Defendants are likely to produce in this case are almost certain to include "embedded metadata" such as mathematical formulas and notes or text in their native format that will be lost in a static or image

---

[1] For example, the "tabs" and "sheets" of an MS Excel spreadsheet are distinct parts of a spreadsheet that generally are not fully retained in the conversion to an imaged document, the result being an inability to interpret the significance and relationships of the data contained in the spreadsheet.

[2] *See The Sedona Principles - Second Edition: Best Practices Recommendations & Principles for Addressing Electronic Document Production*, (Sedona Conference Working Group Series 2007), http://www.thesedonaconference.org/content/miscFiles/TSC_PRINCP_2nd_ed_607.pdf ("Sedona Principles 2d" ).

[3] A similar set of protocols developed for the district court of Maryland suggests that "embedded data" which includes "text, numbers, content, data or other information that is directly or indirectly inputted into a [n]ative [f]ile by a user and which is not typically visible to the user viewing the output display" of the native file, "should be produced as a matter of course." *See*, United States District Court for the District of Maryland, Suggested Protocol for Discovery of Electronically Stored Information 25-28, http:// www.mdd.uscourts.gov/news/news/ESIProtocol.pdf ("Md.Protocol" ).





format. Such information is relevant to an understanding of the data and the source of the data. That fact and the importance of receiving the data in a format that provides Plaintiffs with the same ability as Defendants to access, search and display the information requires that spreadsheets and similar documents be produced in their native format. As the notes to the 2006 amendments to Fed. R. Civ. P. 34 observe:

> . . . [T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Producing spreadsheets and similar documents in a TIFF or PDF format rather than in their native format certainly degrades Plaintiffs' ability to search those documents and use them in the manner in which they were intended. Accordingly, and for each of the reasons discussed above, we ask that Defendants reconsider their position on this point and agree to produce all spreadsheets and other documents where an image file does not adequately represent the files as maintained in the ordinary course of business in their native format.

Apart from the issue of native file document production, we reached agreement on or clarified Defendants' positions on a number of issues. We understand that Defendants intend to de-dupe custodian email productions so that only one custodian's copy will be produced, but the metadata that corresponds with that version will contain a recipient field (to, from, cc, bcc) that will permit the identification of everyone who received that email. You also indicated that the "Recipient" field referred to in your September 9, 2011 letter includes separate cc and bcc fields. Further, you confirmed that Defendants will be producing an OCR version for scanned images.

Finally, you indicated you will need to get back to us on whether Defendants' production will include an "All Custodian" field for non-emails that are de-duped and whether Defendants will be providing the file name and page count for native file docs, the hash values for documents, and an "email folder" file for custodians.

Thank you for your consideration of the above. If you have a different recollection as to any of these points, please let us know. We thought our call was productive and, we will look forward to hearing back from you regarding the open issues and your final position on the issue of producing spreadsheets in native format.





Very truly yours,

Mark T. Johnson

cc: (*via* email)
Caryn Jacobs, Esq.
Sharon Almonrode, Esq.
Garrett W. Wotkyns, Esq.
Avi Josefson, Esq.
Rebecca Boon, Esq.
Brett Van Benthysen, Esq.
Derek W. Loeser, Esq.
Laura Gerber, Esq.