# EXHIBIT 3



SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

September 27, 2011

**By Email and U.S. Mail**

Todd J. Ehlman, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703

      Re:   *Firefighters' Retirement Systems v. Northern Trust Investments, N.A. et al.*, No. 09-cv-7203 (N.D. Ill.)

Dear Todd,

      I am writing on behalf of Plaintiffs to confirm the contents of the parties' further telephone conference on ESI production protocols held September 26, 2011, and also to respond to Defendants' proposal described during that call.

      First, with respect to some of the incidental points I raised on page 4 of my September 19, 2011 letter, you advised us as follows:

1) You intend to de-dupe custodians so that only one custodian's copy of emails will be produced.

2) You will produce TIFF images with OCR text.

3) You intend to produce an "all custodians" field for emails that are de-duped.

4) You will attempt to provide the "file name," "page count," and "hash value" fields.

5) You don't believe your email archive system replicates the user's email file folder structure and are, therefore, not optimistic that you will be able to provide information on any subfolders created by users and whether emails were found in such subfolders. We will wait to hear further from you on this and would appreciate it if you could also identify the archive system Northern Trust uses.

      Second, in response to Plaintiffs' request that Defendants produce database files, spreadsheets and similar documents in their native format, you proposed, for discussion purposes only at this point, that you would do so subject to the following conditions and exceptions:



Todd J. Ehlman, Esq.
Re: *Firefighters' Retirement Systems v.*
   *Northern Trust Investments, N.A. et al.*,
September 27, 2011
Page 2

1) Plaintiffs will agree that the inadvertent production of any privileged information in a native format document that would not otherwise be visible in non-native format will not constitute a waiver of the privilege;

2) Defendants will also produce a Bates-numbered TIFF of any spreadsheets produced in native format which shall constitute the "official" version of that spreadsheet for use at depositions or presenting to witnesses. Defendants object to the use of other forms of such spreadsheets generated from the native format document but will consider exceptions to this limitation where notice of the intent to use an alternative format is provided within a reasonable period of time prior to the deposition;

3) Where redactions are necessary, only the TIFF version of a document will be produced; and

4) The terms of the agreement shall be reciprocal, so that Plaintiffs will product their ESI documents in the same format and according to the same protocol.

    Having considered each of these elements of your proposal further following our conference call yesterday, we can agree to conditions 1, 2 and 4, but not to 3. As I stated during our call, Plaintiffs fail to understand your concern about producing redacted documents in native format. The distinction you attempted to describe between producing redacted paper copies or TIFFs and redacted documents in native format seems to us an artificial one. In each case, the producing party simply retains the original unredacted version and produces a redacted version with the privileged material removed and replaced with the word "redacted." This can be done as easily with a native format document as with other forms of documents, and with the same effect. The original remains available, while the produced copy omits the privileged information and makes note of the omission.

    As we stated yesterday, Plaintiffs' need to insist on redacted spreadsheets and databases in native format is based on the same rationale we described as the basis for seeking such documents in native format in the first place. If such documents are only produced as TIFFs, as Defendants propose, their usability is significantly degraded. TIFFs do not allow the data or information to be sorted or rearranged in ways that permit the user to view patterns in the data or understand the relationships between different cells or fields. Nor do they permit the application of different formulas or variables that may enable the user to draw conclusions about the data or portions of the data. The production of these types of documents in non-native format would deprive the receiving party of the ability to use the data in the same manner as the producing party.



Todd J. Ehlman, Esq.
Re: *Firefighters' Retirement Systems v.
    Northern Trust Investments, N.A. et al.*,
September 27, 2011
Page 3

       In our experience, moreover, native file redactions are common. We do not understand how native file redactions could be more burdensome than TIFF redactions, particularly in the spreadsheet context.

       We agreed during our call yesterday that another telephone conference would be scheduled to discuss these issues further after Plaintiffs had had an opportunity to consider Defendants' proposal. Based on the above, we should now only need to address condition number 3 of Defendants' proposal regarding the production of documents in native format. In addition, we also agreed to include in that discussion two other issues raised by the Court. These include: 1) the appointment of a discovery liaison by each side, and 2) the scope of preservation of ESI during the pendency of the litigation.

       We look forward to talking to you about this further during our next conference call, the date and time of which is currently being worked out through our separate email communications.

                              Very truly yours,

                              *Mark T. Johnson*

                              Mark T. Johnson

cc: (*via* email)
    Caryn Jacobs, Esq.
    Sharon Almonrode, Esq.
    Garrett W. Wotkyns, Esq.
    Avi Josefson, Esq.
    Rebecca Boon, Esq.
    Brett Van Benthysen, Esq.
    Derek W. Loeser, Esq.
    Laura Gerber, Esq.