**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>NORTHERN TRUST INVESTMENTS, INC., and THE NORTHERN TRUST COMPANY,<br><br>      Defendants. | Case No. 09-7203<br><br>Hon. Robert W. Gettleman<br><br>Magistrate Judge Susan E. Cox |
| NORTHERN TRUST INVESTMENTS, INC., and THE NORTHERN TRUST COMPANY,<br><br>      Third-Party Plaintiffs,<br><br>      v.<br><br>THE BOARD OF TRUSTEES FOR THE LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES FOR THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM,<br><br>      Third-Party Defendants. | |

THE NORTHERN TRUST COMPANY,

    Counter-Plaintiff,

v.

PUBLIC SCHOOL TEACHERS' PENSION &
RETIREMENT FUND OF CHICAGO,

    Counter-Defendant.

**NORTHERN TRUST'S SUBMISSION IN SUPPORT OF
THE PRIORITIZATION OF DISCOVERY**

**Introduction**

In this case, four sophisticated public pension or savings plans complain about certain "securities lending" investment decisions that each plan separately made after engaging in individualized due diligence and contract discussions with The Northern Trust Company ("NTC") or Northern Trust Investments, Inc. ("NTI") (collectively, "Northern Trust"). Each plan, advised by different outside consultants, chose its investments and selected its own program of purchases and sales. Their claim is that they sustained losses from securities lending after Lehman Brothers' unprecedented bankruptcy filing and the ensuing market-wide meltdown. They allege that Northern Trust imprudently failed to predict these events and liquidate or restructure multi-billion dollar portfolios beforehand, even though the plans' themselves chose to buy and hold the investments they now describe as "toxic." Thus, as the Court recognized at the initial status hearing in this case, "it's not one-sided discovery here. You're going to have a lot of discovery of the funds as well." 9/26/11 Tr. at 12 (Ex. A hereto).

A discovery schedule has not yet been set in this case,[1] in part because the plans also purport to sue on behalf of a "class" of other large sophisticated plans and want up-front, full-fledged discovery on all merits-related issues for all potential putative class members *regardless* of whether a class is ever certified. Such an unreasonable stance would impose huge undue burdens on Northern Trust by requiring expensive and wasteful discovery on matters that will likely be dropped from the case.

This Court recognized such risks when it asked, "Is there something less than . . . full-on merits but more than bifurcated that we could do in this action to sort of save on costs?," and acknowledged that "this is going to be a very expensive litigation for everyone . . . . If there's a

---

1. The parties submitted proposed schedules when the case was assigned to Magistrate Judge Mason. Dkt. ##88 & 89.

way that we could at least stage discovery, I think that it's worth thinking about for no better reason than economy." *Id.* at 5, 9-10. Indeed, the Court said that such staging "in this kind of case . . . can be tremendously useful." *Id*. at 10. The Court therefore asked the parties to try to find a "middle ground" of "class-plus discovery" and to file submissions on the prioritization issue — which the parties agreed to limit to five pages — if a "middle-ground" could not be reached. *Id.* at 4-5.[2] Northern Trust proposed such as "class-plus" solution, which we present below. The plans' proposal — which seeks unlimited up-front discovery on most of their requests and makes no effort to tie those requests to disputed threshold issues that could narrow the case — should be rejected.

### Northern Trust's Proposal

As an initial matter, where (as here) plaintiffs serve dozens of overbroad requests (Ex. B hereto) that, as written, would cover hundreds of searches and thousands of hours of attorney-review time, prioritizing discovery responses is a matter of simple logistics. The Federal Rules do not require parties to engage a cast of thousands to enable them to respond to every request at the same time, and rolling productions are typical in litigation. Rolling productions that start with discovery on threshold issues like class certification are even more appropriate.

Here, for example, a class should not be certified *at all*, and all or most of plaintiffs' claims should be dismissed for lack of individual and class-wide standing and damages. The dozens of collective funds and collateral pools that the plans improperly seek to include in the class (and in which they never invested) should be eliminated from the case at the class-certification stage. Even if a class were to be certified (and it should not), it would have to be narrowed in time, scope, class definition, and issues. Thus, a certification ruling would

---

[2]  The parties were not asked to submit positions on the discovery schedule generally. Defendants reserve the right to submit an affidavit to this Court comparing the costs of the phased discovery proposed herein to the discovery that plaintiffs propose.

materially affect the time period of discovery, the documents to be searched, the universe of relevant parties and witnesses, and the claims and alleged damages of potentially hundreds of plans. This is, therefore, a text-book illustration of appropriate prioritization. Indeed, in another securities lending putative class action brought on behalf of ERISA plans against Northern Trust in this district, the court also proposed discovery prioritization. 10/14/10 Tr. at 5-6, *Diebold v. N. Trust Invs., N.A.*, No. 09 C 1934 (Hibbler, J.) (Ex. C hereto). Judge Gettleman's decisions prioritizing class discovery over merits discovery are in accord.[3]

Northern Trust's proposal is simple and workable. Initial searches and productions would focus on document requests relating to the disputed issues that the Court will need to consider in connection with a motion for class certification (including where such requests overlap with the merits). Discovery on pure merits issues — such as the prudence of specific portfolio management decisions made on behalf of commingled securities lending collateral pools — would be secondary in priority. All such discovery would occur in the period for fact discovery on plaintiffs' claims in this case.[4] But Northern Trust does not stop there. Following this Court's instructions to reach a "class-plus" compromise, Northern Trust's proposal includes

---

3. *See, e.g.*, *Norfolk County Ret. Sys. v. Ustian*, No. 07-CV-7014, slip op. at 3 (N.D. Ill. Sept. 10, 2009) (Gettleman, J.) (scheduling order) ("The Court . . . encourages the parties to structure discovery to avoid taking discovery related solely to the merits until the court decides the motion for class certification."); *Sotelo v. Direct Revenue, LLC*, No. 05-CV-2562 (N.D. Ill. July 18, 2005) (order on motion to bifurcate) (Gettleman, J.) ("[T]he court declines to consider bifurcating discovery until a motion for class certification is filed and briefed. However, the court stays interrogatory and deposition discovery against [defendants] until further order. . . . The parties are directed to meet and confer with respect to plaintiff's document requests against the [defendants], and are to give particular attention to documents that relate to class certification issues . . . ."). *See also Tamburo v. Dworkin,* 2010 WL 4867346, at *3 (N.D. Ill. 2010) (Nolan, M.J.) (ordering the phasing of discovery in light of the proportionality standards of Fed. R. Civ. P. 26(b)(2)(C)(iii) and the guidance provided by the *Sedona Conference Cooperation Proclamation*).

4. As reflected in Northern Trust's proposed discovery schedule, Dkt. #89, discovery on putative class members would have to await a certification order (if any), which would define the scope of and membership in a class. *See Bradford v. WR Starkey Mortg., LLP*, 2007 WL 2302514, at *2 (N.D. Ga. 2007) ("Though discovery on this matter is appropriate with regard to the named plaintiff, it would be improper to allow plaintiff to engage in classwide discovery on this issue prior to class certification.").

prioritizing certain merits-only document requests that imposed a lesser — although still very substantial — burden of production. Specifically, Northern Trust proposes that its initial searches and productions concern the following Requests for Production ("RFP") served by the plans:

- **RFP No. 1:** Certain responsive contracts and e-mails to the extent they pertain to the four named plaintiffs, and a sample set of other investors to be agreed-upon by the parties (versus hundreds of putative class members based on the broadest possible class definition).

- **RFP No. 2:** Guidelines, changes to guidelines, and documents regarding compliance or non-compliance with guidelines, with regard to collateral pools in which the named plaintiffs invested, as well as guidelines for other commingled collateral pools.

- **RFP No. 6:** Certain asset holdings lists for the collateral pools in which the named plaintiffs invested, as well for other commingled collateral pools.

- **RFP Nos. 9, 10(a), 13-14:** Committee-level documents discussing the collateral reinvestment portfolios and other documents relating to economic and market issues.

- **RFP No. 11:** Identification of members of the Northern Trust committees during the relevant time period.

- **RFP Nos. 19, 20-22:** Data on realized losses (if any) and loss calculations for the named plaintiffs and their investments.

- **RFP Nos. 24-25:** Certain documents pertaining to withdrawal and redemption restrictions.

- **RFP No. 27:** Identification of the individuals responsible for investment management or risk management decisions concerning all collateral pools.

- **RFP No. 31(a):** Certain prior document productions to the extent the documents in those productions are responsive to plaintiffs' RFPs.[5]

Several of these RFPs pertain to merits issues, such as asset-holdings lists, committee-level documents, and identification of portfolio-management individuals, and are thus consistent with this Court's instruction to propose a "class-plus" compromise.[6] The plans rejected this

---

[5] The parties continue to be engaged in meet-and-confer discussions and communications concerning the proper scope of these RFPs. Therefore, the categories listed herein are not necessarily reflective of the original RFPs, nor of any final agreement the parties may be able to reach with regard to the scope of any specific RFP.

[6] Lower priority discovery would address document requests concerning pure merits issues to the extent not part of the higher-priority discovery, such as RFPs Nos. 4, 5, 7, 12, 15, 16, 17, 18, 23,

proposal out of hand. By insisting in meet-and-confer sessions that at least 27 of their 36 RFPs be "prioritized" (RFPs Nos. 1-9, 10(a), 11, 13-22, 24-27, and 32-33), they have proposed no compromise at all. The bulk of the discovery they seek early on would involve extremely burdensome, time-consuming, and expensive discovery concerning potentially hundreds of individual, security-by-security buy, hold, and sell decisions over a three-year period that relates to no threshold issues. If not narrowed, these searches could take months (or more) to collect and produce. When asked how such portfolio management issues could affect class-certification issues, the plans had no answer (there is none), nor is there any threshold issue that could narrow or resolve the case to which these requests pertain. And when Northern Trust went further and proposed a compromise that would stipulate, for purposes of class certification, that such buy or sell decisions on behalf of commingled collateral pools were made for each such pool as a whole and did not vary with regard to an individual plan's investment in a commingled pool, the plans rejected that additional proposal without explanation. Finally, the handful of requests that the plans would characterize as low-priority would not effect any true cost reductions as they are wholly objectionable (*e.g.*, RFP No. 34 seeking all documents relating to the "allegations") or duplicative of the plans' high-priority list (*e.g.*, RFP No. 23, concerning a subset of portfolio-management issues).[7] Accordingly, the Court should accept Northern Trust's proposal.

---

26, and 30 (as they relate to the named plaintiffs' claims and subject to defendants' pending objections to and narrowing proposals concerning these RFPs).

       7. In the parties' meet-and-confer sessions, the plans argued that prioritization could result in more than one deposition of the same witness but could give no concrete examples. Such a situation would be unlikely under Northern Trust's proposal because it draws a principled line between portfolio-management-type decisions (and therefore witnesses) and other discovery. Moreover, with or without prioritization, parties may take discovery in various sequences.

Dated: October 11, 2011         Respectfully submitted,

<div style="margin-left:3em">

/s/ Caryn L. Jacobs

Caryn L. Jacobs
Todd J. Ehlman
Brook R. Long
Nathan T. Kipp
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 – Facsimile

Michele L. Odorizzi
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – Facsimile

</div>