# EXHIBIT A

```
 1                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   LOUISIANA FIREFIGHTERS'     )  No. 09 C 7203
     RETIREMENT SYSTEM, et al., )
 4                               )
                   Plaintiffs,   )
 5                               )
            vs.                  )  Chicago, Illinois
 6                               )
     NORTHERN TRUST INVESTMENTS, )
 7   N.A., and THE NORTHERN TRUST )
     COMPANY,                    )  September 26, 2011
 8                 Defendants.   )  9:00 a.m.

 9                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE SUSAN E. COX, MAGISTRATE JUDGE
10
     APPEARANCES:
11
     For the Plaintiffs:     MS. LAURA R. GERBER
12                            (Keller Rohrback, LLP,
                               1201 Third Avenue, Suite 3200,
13                             Seattle, Washington  98101)

14                           MR. AVI JOSEFSON
                              (Bernstein, Litowitz,
15                             Berger & Grossmann, LLP,
                               2835 North Sheffield Avenue, Site 409,
16                             Chicago, Illinois  60657)

17                           MS. ELIZABETH HOSKINS DOW
                              (Bailey & Glasser, LLP,
18                             1003 Western Avenue,
                               Joliet, Illinois  60435)
19
     For the Defendants:     MS. CARYN L. JACOBS
20                           MR. TODD J. EHLMAN
                              (Winston & Strawn, LLP,
21                             35 West Wacker Drive,
                               Chicago, Illinois  60601)
22

23
                              PATRICK J. MULLEN
24                          Official Court Reporter
                      219 South Dearborn Street, Room 2128,
25                        Chicago, Illinois  60604
                               (312) 435-5565
```

2

```
 1          THE CLERK:  09 C 7203, Louisiana Firefighters' versus
 2  Northern Trust.
 3          MS. JACOBS:  Good morning, Your Honor.  Caryn Jacobs
 4  on behalf of defendants Northern Trust.  Todd Ehlman is here as
 5  well, and Maureen Mosh, assistant general counsel of Northern
 6  Trust, is in the court.
 7          THE COURT:  Okay.
 8          MS. JACOBS:  We are also third-party plaintiffs and
 9  counterplaintiffs.
10          THE COURT:  Good morning.
11          MR. JOSEFSON:  Good morning, Your Honor.  Avi
12  Josefson on behalf of the plaintiffs.
13          MS. GERBER:  Good morning.  Laura Gerber on behalf of
14  the plaintiffs.
15          MS. DOW:  Elizabeth Dow on behalf of the plaintiffs.
16          THE COURT:  Good morning to all of you.  Well, you
17  bounced around a little bit, but now you're with me.  As I
18  understand it from reviewing your submissions, Judge Gettleman
19  didn't set any kind of cutoff in this case.
20          MS. JACOBS:  Correct, Your Honor.  Judge Gettleman
21  referred the case to a magistrate --
22          THE COURT:  Right.
23          MS. JACOBS:  -- for all discovery matters, and that
24  included setting a schedule.
25          THE COURT:  Okay.
```

3

 1          MS. JACOBS:  And we didn't get that far with Judge
 2  Mason.
 3          THE COURT:  No.  So the issues, as I see it, are
 4  first whether we're going to proceed with merits or simply
 5  class-only discovery and, secondly, depending on that decision,
 6  the length of the discovery period that the parties think will
 7  be adequate to address the issues in the case and, third, your
 8  proposed protective orders.  Am I right?  Is there anything
 9  else that we need to resolve today?
10          MS. JACOBS:  Your Honor, I think as to the protective
11  orders and ESI protocols the parties probably are going to be
12  able to reach an agreement.
13          THE COURT:  Okay.
14          MS. JACOBS:  So hopefully that can be done by
15  ourselves without your input needed.
16          THE COURT:  Okay.  See, on the ESI issue, I do
17  subscribe to the pilot project in the Northern District, and I
18  will enter the form standing order on ESI which sort of gives
19  you guidelines -- I'm sure you're all familiar with it -- in
20  terms of governing how you proceed.  It's on the web.  It's on
21  my website, and it's also on the court's website.  I mean,
22  they're fairly broad principles, but they give you some
23  parameters.
24          I'll put this case, for reporting purposes, I'll put
25  it in the program, Vernita, so make a note of that.

```
 1            THE CLERK:  Yes, Judge.
 2            THE COURT:  I guess let me give you some thoughts.  I
 3   certainly understand from the defense point of view why you're
 4   reluctant to do full-board discovery, you know, in a putative
 5   class action.  The problem I see, which I think Judge Gettleman
 6   alluded to and Judge Mason as well, is that when you bifurcate,
 7   what ends up happening is the parties spend a lot of time and
 8   energy and, most importantly, money from their clients'
 9   perspective on what is or what isn't truly merits versus class,
10   and I have found the one time I did it that way I ended up with
11   a lot of disputes along those lines.
12            So I was wondering if there wasn't some middle ground
13   that we could reach here, which I've also done in a couple of
14   class actions that I've managed that were large and complicated
15   as this one seems somewhat to be.  Were you -- were there --
16   and I'm open to some suggestions.  You all know this case
17   extraordinarily well, I would imagine, by this time.
18            Some sort of, you know, class-plus discovery where we
19   would be -- are there topics that truly could be left to a
20   later period until there's certification in the case and
21   everyone, you know, you're passed that stuff, or is it
22   impossible given the allegations in the case and the defenses
23   and the counterclaims?
24            You know, I don't want to just say class only because
25   I just don't think that that's very workable, usually.  I think
```

```
 1   it does disadvantage the plaintiff somewhat and, as I said, it
 2   just creates a lot of work usually for the judge trying to sort
 3   out what's class versus what's not.  What do you think about
 4   that?  Is there something less than, less than full-on merits
 5   but more than bifurcated that we could do in this action to
 6   sort of save on costs?
 7           MS. JACOBS:  Yes, Your Honor.  In fact, we have
 8   already been doing that in another class action involving
 9   securities lending.  Just to bring you up to speed, Your Honor,
10   Judge Hibbler has a putative class action relating to
11   securities lending by certain commingled funds.  It's the
12   Diebold class action.  Half the lawyers in that case are also
13   lawyers for the plaintiffs in this case, and in that case the
14   judge ordered that we prioritize class-related discovery.
15           This case is even bigger and broader and more
16   complicated than Judge Hibbler's case.  Judge Hibbler's case is
17   an ERISA commingled fund putative class which we think should
18   never be certified.  This case is a public fund putative class,
19   so we're talking about 50 state laws, et cetera, and on top of
20   that they layer over and above individual portfolio management
21   decisions of each of the putative class members, which are
22   these giant public pension funds.
23           So it's not just that a public pension fund may have
24   invested in the commingled fund that engaged in securities
25   lending.  It's beyond that, that their own individual
```

```
 1  proprietary portfolio securities are implicated where each of
 2  those giant public funds also engaged in individual contract
 3  negotiations with Northern Trust relationship managers, of
 4  which there are many.
 5            THE COURT:  About how the funds are managed?
 6            MS. JACOBS:  About how they would invest those
 7  portfolios.  It's a classic individual case and should never be
 8  certified.
 9            THE COURT:  From your perspective.  I'm sure the
10  plaintiffs have a different perspective.
11            MS. JACOBS:  I'm sure the plaintiffs will disagree,
12  but a class should never see the light of day here, which is
13  one of the reasons why we're so in favor of bifurcation or
14  alternatively prioritization, as was ordered by Judge Hibbler.
15  I have that transcript here if you want to look at it.  Judge
16  Gettleman, we've looked at his orders.  He has ordered class
17  and discovery prioritization as well, and I could hand those up
18  to you.
19            THE COURT:  No, I know that's true.
20            MS. JACOBS:  I believe -- and I'm prepared to talk
21  about this today -- that we could easily do prioritization
22  here, honestly, and we've been doing it in Diebold with no
23  disputes.  We've never once run in front of the court on a
24  prioritization issue.
25            Beyond that, I would suggest that each side in these
```

```
 1  big cases -- because here discovery is going to be two-way.
 2  Okay?  This is two-way discovery, unlike the Diebold case where
 3  the plaintiff is an individual and, therefore, has limited
 4  discovery.
 5            THE COURT:  Limited to produce.
 6            MS. JACOBS:  Here, even without the counterclaims and
 7  the third-party complaint, we have very significant discovery
 8  against the plaintiffs themselves, who are these public pension
 9  funds.  As you may recall from the BP case, you know, that case
10  alone had 200,000 documents.  That's one putative class member.
11  They want hundreds of those BP cases to be certified.
12            So we think we can do the prioritization, and I have
13  proposals which I've given to the plaintiffs and I could
14  address them with you, Your Honor, if you'd like to hear that.
15            MR. JOSEFSON:  I think counsel's answer highlights
16  why bifurcation is impossible here and prioritization, the way
17  the defendants view it, is difficult or close to impossible.
18  We don't even agree on what it is that Judge Hibbler did in
19  Diebold.  I'm not one of the counsel in that case, but my
20  co-counsel is.  He rejected bifurcation and asked the parties
21  to discuss prioritization.  He didn't say to prioritize class
22  discovery.  So, you know, the parties work on prioritization,
23  and that's fine.  They've done it there.
24            Here we've had meetings since the conference before
25  Judge Mason where he also rejected bifurcation and asked us to
```

```
 1   discuss prioritization.  We don't even agree on what relates to
 2   class certification.  Our view of class certification is that
 3   all these plans simply had pulled Northern Trust and managed
 4   the same portfolio in the same way, and the question is how
 5   that portfolio is managed.
 6            If it was managed the same way for everyone, that
 7   goes to our issue of class certification, and our understanding
 8   from the defendants is that they want to focus on the
 9   individual communications with plan members, which we
10   understand to go to their opposition to class certification,
11   but not our request that the class should be certified and that
12   there's common management.
13            But a couple other points on what counsel mentioned,
14   the individual plaintiffs here have very significant losses.
15   Unlike the plaintiff in Diebold, these individual plans,
16   Chicago Teachers, Louisiana Firefighters, have significant
17   exposure.  We've told counsel before we think this case
18   continues regardless of whether it's a class action or not.  So
19   merit discovery is inevitable.  Our clients are entitled to
20   this information.  They have sustained claims, and they can go
21   forward on these facts regardless of class certification.
22            But in any event, we see such overlap between the
23   merits of how these portfolios were managed and the class issue
24   of showing these portfolios were managed in the same way to all
25   class members that we don't see any possible way to separate
```

```
 1   them.  I'm not going to touch on class certification.
 2   Obviously, we think it's appropriate.
 3              THE COURT:  It's not going to be up to me.
 4              MR. JOSEFSON:  But in any event we don't think these
 5   are issues that go away even if the class is denied, because
 6   our clients have claims that are valuable claims and are
 7   important to them.
 8              With regard to BP, obviously we're not counsel in
 9   that case.  We're familiar with it.  Even though it relates to
10   the same securities lending program, we think the allegations
11   here are different.  There were questions in BP as to whether
12   the client had ever -- the plaintiff had ever determined to go
13   into securities lending, whether that was a decision they had
14   made and whether they understood that, the nature of their
15   investments.
16              That's not an issue that we've put forward.  We put
17   forward simply the question of the management of the lending
18   program.  So regardless of how all the different class members
19   got to securities lending, our question is simply, you know,
20   was it managed appropriately once they were there and how they
21   got there isn't relevant, at least to our point of view.  If
22   counsel wants to develop that as their position, that's fine,
23   but our view is the thrust of the merits of the case and the
24   merits of the class certification overlap significantly.
25              THE COURT:  Well, I guess I would like to see what
```

                                                                              10

1   your proposals are only because I just see that this is going
2   to be a very expensive litigation for everyone, and I'm sure
3   you're mindful of that in representing, you know, public funds.
4   If there's a way that we could at least stage discovery, I
5   think that it's worth thinking about for no better reason than
6   economy.
7          I also think if there's any potential for settlement
8   that, you know, it would be useful in that regard, too, because
9   you may not be able to agree, and if you can't agree then I'll
10  make the decision and you'll live with it.  But I'd like to see
11  from your perspective your best, your best proposal for how we
12  should proceed pre-filing, which he hasn't set so he's waiting
13  for me to make these decisions before he sets, you know,
14  deadlines for your motion, but how you would like to stage it.
15         I'll look at the proposal from the defense, and I'll
16  see if it's workable.  Then if I conclude that it's too
17  complicated or too difficult, then, you know, we'll simply set
18  a discovery cutoff.  But I'd like to see you try because I do
19  think in this kind of case it can be tremendously useful.
20         I don't -- you know, I'm not going to, I'm not going
21  to bifurcate.  I'm not going to say class discovery only, but I
22  do think that there is a potential middle ground here.  So have
23  one more meeting, if you wouldn't mind, and then why don't you
24  submit to me your proposal.  I doubt you'll be able to agree,
25  so give me your two proposals within seven days.  Then I'll

```
 1   make a decision.
 2          MS. JACOBS:  Your Honor, could we have a little more
 3   time for that?  I am completely out of the pocket for about the
 4   next ten days.
 5          THE COURT:  Okay.  How about 14 days?
 6          MS. JACOBS:  Thank you, Your Honor.
 7          THE COURT:  I'm on duty this week, and I've just
 8   gotten some calls that indicate that it's not going to be what
 9   I would call a light week.  So that's fine.  Then if I have any
10   questions, let me set a status within like maybe three days
11   after that.
12          MS. JACOBS:  Okay.
13          THE COURT:  Just if I have any questions.  And on the
14   protective order, I think it's important that you set out very
15   specifically what it is you believe is confidential.  I mean, I
16   agree with the plaintiff on that.  Otherwise, it doesn't pass
17   muster in the Seventh Circuit.
18          MR. JOSEFSON:  And, Your Honor, we've made quite a
19   bit of progress on the protective order since meeting with
20   Judge Mason two weeks ago.
21          THE COURT:  Good.
22          MR. JOSEFSON:  I think there are two minor issues
23   we're on the verge of resolving.
24          THE COURT:  Okay.
25          MR. JOSEFSON:  So we should be there very shortly.
```

```
 1         THE COURT:  And on ESI, the most important thing from
 2   my perspective, having now written on this topic a couple of
 3   times and having dealt with it, is the scope of your
 4   preservation.  You know, spend some time talking about that
 5   because a lot of these disputes occur because there's
 6   misunderstandings at the beginning about what each side views
 7   as the other side's duty to preserve the ESI.
 8         The protocol adopted by the Court will give you some
 9   guidelines on that, but your own protocol that you engage in
10   should be very specific about that, particularly in a case, as
11   counsel points out, where you are likely to have a lot of --
12   you know, it's not one-sided discovery here.  You're going to
13   have a lot of discovery of the funds as well.  So it's
14   important that everybody is on the same page about what it is
15   you want to preserve, you know, and why.  Then if there are
16   disputes about the scope of preservation, it's better that we
17   deal with those early on as opposed to later when you have
18   issues.  Okay?
19         So I'm probably not telling you anything that you
20   haven't already figured out, but it seems to me that a lot of
21   the problems that evolve in these kinds of cases occur because
22   there's not enough thought into that from the get-go.  So I'd
23   like to, if you have an agreement, I'd like to make it part of
24   a court order so that there are no misunderstandings.  If you
25   don't have an agreement but you have areas on which you've
```

```
 1   agreed to disagree, I'm happy to make those calls as well.  But
 2   I'd like to get that in place relatively soon, so be thinking
 3   about that over the next couple of weeks as well.
 4           MR. JOSEFSON:  On that issue, Your Honor, the parties
 5   have met and conferred and made a good deal of progress.
 6           THE COURT:  Good.
 7           MR. JOSEFSON:  There's another meet-and-confer we're
 8   going to have this afternoon, so we'll continue to do that.
 9           THE COURT:  Do you have discovery liaisons at your --
10   you know, of the technical people?
11           MR. JOSEFSON:  Yes.
12           THE COURT:  Well, the protocol will ask you to
13   designate people so that if I ever have questions, God forbid,
14   I call them into court and ask them, because lawyers frequently
15   don't know the answers.  I know I never did, you know, and I
16   practiced in a time where this wasn't nearly as, you know,
17   important as it is now.
18           MR. JOSEFSON:  I think both sides have had technical
19   folks on these calls --
20           THE COURT:  Good.
21           MR. JOSEFSON:  -- and made certain that (inaudible).
22           THE COURT:  That's good.  Okay.  So let's see if we
23   can't maybe reach some agreement, and I will see you when,
24   Vernita?
25           THE CLERK:  Judge, the 14 days actually brings us to
```

```
 1   Tuesday, the 11th.
 2             THE COURT:  Okay.
 3             THE CLERK:  So do you want to see them on Thursday,
 4   the 13th?
 5             THE COURT:  Yes, yes, but let's make it at -- what do
 6   I have that day?  Because let's put it at the end of the call
 7   in case we need some time.
 8             THE CLERK:  You only have one thing for 9:30.
 9             THE COURT:  But that's a motion day, so I'll see you
10   at 10:00 if that's convenient.
11             MS. JACOBS:  Thank you, Your Honor.
12             THE COURT:  Thank you.  All right.
13             MR. JOSEFSON:  Thank you, Your Honor.
14        (Proceedings concluded.)
15               C  E  R  T  I  F  I  C  A  T  E
16             I, Patrick J. Mullen, do hereby certify that the
17   foregoing is a true and accurate transcript produced from an
18   audio recording of the proceedings had in the above-entitled
19   case before the Honorable SUSAN E. COX, one of the magistrate
20   judges of said court in Chicago, Illinois, on September 26,
21   2011.
22
23                                     /s/ Patrick J. Mullen
24                                 _____
                                        Official Court Reporter
25                                    United States District Court
                                      Northern District of Illinois
```