# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>Defendants. | Case No. 09-7203<br><br>Hon. Robert W. Gettleman |

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANTS

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and in accordance with the definitions set forth therein and below, Plaintiffs, the Louisiana Firefighters' Retirement System, Public School Teachers' Pension & Retirement Fund of Chicago, The Board of Trustees of the City of Pontiac Police and Fire Retirement System, and The Board of Trustees of the City of Pontiac General Employees Retirement System (collectively, "Plaintiffs"), hereby request that Defendants Northern Trust Investments, N.A. and The Northern Trust Company (collectively, "Defendants") produce the materials requested below for inspection and copying within 30 days of service hereof at the law offices of Keller

Rohrback L.L.P., 1201 Third Avenue, Suite 3200, Seattle, WA 98101, or such other location as is mutually acceptable to all counsel.

## DEFINITIONS

The following definitions apply to each of the requests for documents set forth herein (the "Requests") and are deemed to be incorporated in each of the Requests.

1. The term "Answer" means Defendants' Answer and Affirmative Defenses to Plaintiffs' Amended Class Action Complaint, filed in this matter on June 30, 2011.

2. The term "Capmark Financial" means Capmark Financial Group, and all parents, affiliates, and subsidiaries.

3. The term "CIT Group" means CIT Group Inc., and all parents, affiliates, and subsidiaries.

4. The term "Collateral Pools" means the collective investment pools Northern Trust used to reinvest cash collateral in connection with the SLP, as defined in the Complaint in ¶¶ 23-27.

5. The term "Commingled Lending Funds" means commingled investment vehicles established and managed by Northern Trust, which in turn participated in the SLP, as defined in the Complaint in ¶¶ 29-30.

6. The term "communication" means any oral, written, or electronic utterance, notation, or statement of any nature whatsoever, draft or final, potential or actual, by and to whomever made or attempted to be made, including correspondence, memoranda, conversations, dialogues, discussions, interviews, consultations, agreements, electronic messages (including electronic mail, text messages, instant messages, company intranet, electronic bulletin board, or internet site posting), and other understandings between two or

more persons. The term "communication" specifically includes any exchange of information by any means of transmission, including face-to-face conversations, mail, electronic mail, telegram, overnight delivery, telephone, facsimile, or telex.

7. The term "Complaint" means the Amended Class Action Complaint filed in this matter on July 16, 2010.

8. The term "concerning" means relating to, referring to, describing, evidencing, commenting on, responding to, showing, analyzing, reflecting, or constituting.

9. The term "document," having the broadest possible meaning accorded to it under Federal Rule of Civil Procedure 34, means any and all electronic data, any medium on which intelligence or information can be recorded or retrieved, including electronic data stored on any computer, network, or electronic media, including active files, deleted files, or fragmentary files, and also including the original and each copy regardless of origin and location, of any book, pamphlet, periodical, letter, memorandum, diary, calendar, telex, electronic mail message, telegram, communication, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, record, drawing, sketch, graph, index, list, tape, stenographic recording, tape recording, computer diskette and/or data, photograph, microfilm, invoice, bill, order form, receipt, financial statement, accounting entry sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graph matter, however produced, reproduced, or stored, which is in your possession, custody, or control, or which was, but is no longer in your possession, custody, or control. The term "document" also means an authentic copy where the original is not in your possession or control and every copy of a document that is not an identical copy of the original.

10. The term "electronic data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means, including all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files, and information concerning electronic mails (including electronic mail receipts and/or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIFF files, batch files, native files, and all ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment. The term "electronic data" also includes any and all items stored on any electronic media, computers, or networks and/or backup files containing electronically stored data. The term "electronic data" also includes the file, folder tabs, and/or containers and labels appended to or associated with any physical storage device associated with each such original and/or copy.

11. The term "employee" means any person who at any time during the Relevant Time Period, as defined herein, acted or purported to act on behalf of an entity, or another person or persons, including all present and former officers, directors, executives, partners,

principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity.

12. The term "Gordian Knot" means Gordian Knot Limited, including any employee, agent, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, representative, and/or any person or entity acting or purporting to act on its behalf.

13. The term "Greenpoint Mortgage" means Greenpoint Mortgage Funding Trust, and all parents, affiliates, and subsidiaries.

14. The terms "include," "includes," and "including" mean including without limitation.

15. The term "Lehman Brothers" means Lehman Brothers Holdings Inc., Lehman Brothers Special Financing, Inc., and all parents, affiliates, and subsidiaries.

16. The term "long-term floating rate note" refers to debt instruments with variable or floating interest rates that had maturity dates equal to 1 year or greater at the time of issuance.

17. The term "meeting" means any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose whether planned, arranged, scheduled, or not.

18. The term "Northern Trust" means The Northern Trust Company, Northern Trust Investments, N.A., and Northern Trust Global Investments, including all parents, affiliates, subsidiaries, employees, or agents.

19. The term "Northern Trust Committees" means the Northern Trust Investment Committee, Securities Lending Committee, Securities Lending Collateral Committee, Securities Lending Investment Risk Committee, Senior Credit Committee, Trust Credit Committee, Trust Investment Committee, Credit Policy Committee, and/or any other

5

committee designed to manage or monitor risk in the SLP or whose purpose it is or was to supervise the investment of cash collateral in connection with the SLP.

20. The term "Northern Trust Economists" means employees of the Economic Research Department or Economic Research Unit of Northern Trust, including Paul Kasriel, Asha Bangalore, Victoria Marklew, James Pressler, and Richard Thies.

21. The term "person" means any natural person or any business, legal, or governmental entity or association.

22. The terms "policy," "policies," or "procedures" mean any rule, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by you in conducting your business, or which was required by you to be recognized or followed by any or all persons with whom you conducted business.

23. The term "Sallie Mae" means SLM Corporation, SLM Student Loan Trust, and all parents, affiliates, and subsidiaries.

24. The term "Sigma" means Sigma Finance Corporation, including all parents, affiliates, and subsidiaries.

25. The term "SIVs" means structured investment vehicles, as defined in ¶ 51 of the Complaint.

26. The term "SLP" means Northern Trust's securities lending program.

27. The term "Theta" means Theta Corporation, including all parents, affiliates, and subsidiaries.

28. The terms "you" or "your" mean Defendants, the person or entity upon which the Requests have been served.

## **INSTRUCTIONS**

1. The Requests shall be deemed to be continuing, and require you to supplement your response based on any documents or other information of which you become aware after you serve your initial responses to the Requests.

2. Documents shall be produced regardless of whether they are in your possession or within the control of your attorneys or their agents, employees, representatives, or investigators.

3. Documents shall be produced in the order in which they appear in their files, and documents shall not be shuffled or otherwise rearranged, unless done so pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i). Documents that were stapled, clipped, or otherwise fastened together in their original condition shall be produced in such form.

4. All ESI is to be produced in an "imaged" file with the corresponding "image load/unitization files," "OCR text files," and the "associated delimited metadata dataset" as set forth below:

    (a) All spreadsheets or other documents where an image file does not adequately represent the files as maintained in the ordinary course of business shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available. A file path to the native file shall be provided in the metadata database as described in 4(c).

    (b) All other documents responsive to the Requests that are maintained in the usual course of business in electronic format shall be produced in properly unitized, single page TIFF (Group IV black & white) files with bates numbers branded to the images so that the numbers print. Document level text files shall be produced for each imaged document containing the document's extracted text where available or OCR. The extracted or OCR text file name shall match the beginning bates or control number of the document it represents. Each document level OCR file shall identify page breaks with the individual bates/control number for each page in the document.

(c) All documents responsive to the Requests shall be provided in a ".dat" file that extracts metadata into fields in a delimited database load file. Documents shall be produced with the metadata normally contained within such documents, including, for all names fields: to, from, cc, bcc, author, recipient, custodian, document title/subject, begin and end bates, begin and end attachment, native file path (for native productions), page count, date and time created, date and time sent, date and time received, last modified, email subject, email folder, email item type (email or attachment), file source path, file name, file type, file source extension, file last edited, modified by, hash value (MD5 or SHA algorithm), as well as the necessary industry standard load file (*e.g.*, Concordance Image (formerly Opticon) .opt or .log or IPro .lfp). Each load file shall provide a document number of each image, the full path name(s) of each TIFF, the document boundaries for each document or family member grouping, in the order that corresponds with each image file. If such metadata is not available, each document shall be accompanied by a listing of all file properties concerning such document, including, all information concerning the date(s) the document was last accessed, created, modified or distributed, and the author(s) and all recipient(s) of the document.

(d) Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use the ESI. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with Plaintiffs' Counsel. If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information concerning the burden or cost you claim is associated with the search or production of such ESI.

(e) All files that cannot be produced or imaged due to technical issues shall be identified as exception files and included on a log listing the file's name, custodian, and reason for the exception. Common exception files include, without limitation, corruption, password protection, digital rights management, imaging of container files or database (e.g., .pst, .zip, .mdb, etc.), or proprietary software associated to a file.

5. If a portion of any responsive document is protected from disclosure by privilege, work product, or otherwise, such document must be produced with redaction of the portion claimed to be protected.

8

## RELEVANT TIME PERIOD

Unless otherwise specified in an individual request, the Requests seek documents and communications relating to the time period from December 31, 2006 to December 31, 2009 (the "Relevant Time Period"), or that relate to the Relevant Time Period whenever prepared.

## REQUESTS FOR PRODUCTION

1. All documents concerning any duty or obligation owed by Defendants to direct or indirect participants in the SLP.

2. All documents concerning any policies, guidelines, procedures, objectives, or standards for the investment of cash collateral in securities lending cash Collateral Pools, including any changes to the guidelines during the Relevant Time Period.

3. All documents concerning any potential consolidation of the assets of one or more of the Collateral Pools, onto Northern Trust's balance sheet, including:

    a. All documents concerning policies, guidelines, procedures, objectives, or standards, including accounting rules, concerning the circumstances under which Northern Trust could be required to consolidate the assets of one or more of the Collateral Pools, onto Northern Trust's balance sheet; and

    b. All documents concerning the potential impact on Defendants' business of any consolidation of the assets of one or more of the Collateral Pools onto Northern Trust's balance sheet.

4. All documents concerning any credit approval, investment, purchase, sale, or other acquisition or disposition made or directed by Northern Trust in any security that caused losses to the Collateral Pools, including securities issued by Sigma, Theta, Greenpoint Mortgage, Capmark Financial, CIT Group, Lehman Brothers, Sallie Mae or any SIV on behalf of (a) itself

9

or any of its subsidiaries or affiliates; (b) the Collateral Pools; or (c) any account over which Northern Trust exercised discretion at the time of such transaction, including the Commingled Lending Funds.

5. All documents concerning any credit approval, investment, purchase, sale, or other acquisition or disposition by the Collateral Pools in long-term floating rate notes.

6. Documents sufficient to show the assets held in the Collateral Pools during the Relevant Time Period including, as to each asset, the date of purchase and date of sale (if any), the cost at purchase and cost at sale (if any), the credit rating at time of purchase and the legal duration to maturity at time of purchase.

7. All documents concerning any review, audit, assessment, evaluation, or examination of the Collateral Pools, including but not limited to the performance of the Collateral Pools, the assets held in the Collateral Pools, or investment decisions pertaining to the Collateral Pools.

8. All documents concerning the SLP's quarterly and annual performance goals, including how Defendants planned to achieve those goals, actions Defendants took to achieve those goals, the results as compared to the goals, and why Defendants met or failed to meet those goals.

9. All documents authored, edited, sent, received, or reviewed by the Northern Trust Committees, Northern Trust's Board of Directors, and/or Northern Trust's Fixed Income Research Group concerning the Collateral Pools from December 31, 2006 to the present.

10. All documents authored, edited, sent, received, or reviewed by the Northern Trust Committees, concerning:

    a. The subprime mortgage collapse, decline of the United States housing market, or the recent financial crisis; and

    b. Communications between or among Northern Trust Economists and the Northern Trust Committees.

11. Documents sufficient to identify the members of the Northern Trust Committees and documents concerning the removal or departure of any member of any Northern Trust Committee.

12. All documents concerning Paul Kasriel, including:

    a. All documents authored, co-authored, reviewed, received, or sent by Kasriel concerning any actual or potential risks posed by the investment of the cash collateral of any SLP participant in the Collateral Pools from January 1, 2004 through the end of the Relevant Time Period;

    b. All documents authored or co-authored by Kasriel concerning the United States housing market (including the exposure of banks to the housing market), the collapse of the subprime mortgage market, the decline in the United States housing market, or investments in or linked to the United States housing market, including investments in mortgage-backed securities, derivatives linked to or backed by mortgage-backed securities (including SIVs), and investments in banks; and

    c. All documents concerning Kasriel's membership or participation on any of the Northern Trust Committees, as well as documents concerning his removal or departure from any Northern Trust Committee.

13. All reports issued by Northern Trust Global Investments concerning the United States housing market (including the exposure of banks to the housing market), the collapse of the subprime mortgage market, or investments in or linked to the United States housing market, including investments in mortgage-backed securities, derivatives linked to or backed by mortgage-backed securities, the collapse of hedge funds, disclosed losses by Bear Stearns, BNP Paribas, UBS, Merrill Lynch, and Citigroup, or investment in SIVs, Greenpoint Mortgage, Capmark Financial, CIT Group, Lehman Brothers, and Sallie Mae.

14. All documents concerning the collapse and/or bankruptcy of Lehman Brothers, Sigma, Theta, Capmark Financial, Greenpoint Mortgage, CIT Group, Whistlejacket Capital LLC, and/or White Pine Finance LLC.

15. All documents concerning any actual or potential effects on Defendants or the SLP resulting from the occurrence of or Defendants' declaration of a collateral deficiency in the Collateral Pools.

16. All documents concerning any actual or potential effects on Defendants of a realized loss being incurred in one or more of the Collateral Pools.

17. All documents concerning any potential strategy or opportunity to mitigate actual or potential losses in the Collateral Pools, from December 31, 2006 to the present.

18. All documents concerning any security that resulted in a realized loss to the Collateral Pools, including SIVs, Sigma, Theta, Greenpoint Mortgage, Capmark Financial, CIT Group, Lehman Brothers, or Sallie Mae.

19. All documents concerning actual or potential losses as a result of Northern Trust's investment of the cash collateral of any SLP participant through the Collateral Pools in SIVs,

Sigma, Theta, Greenpoint Mortgage, Capmark Financial, CIT Group, Lehman Brothers, or Sallie Mae.

20. All documents concerning any losses incurred or sustained by any direct participant in the SLP as a result of their participation in the SLP or their investments in the Collateral Pools.

21. All documents concerning any losses incurred or sustained by the Commingled Lending Funds as a result of their participation in the SLP or their investments in the Collateral Pools.

22. All documents concerning liability for realized and unrealized losses incurred in the Collateral Pools, from December 31, 2006 to the present.

23. All documents concerning SIVs, including Sigma, Theta, Whistlejacket Capital LLC, and White Pine Finance LLC, including:

   a. Documents concerning the lack of support from SIV sponsors for certain SIVs and the actual or potential impact of this lack of support on such SIVs;

   b. Documents concerning any review or analysis of the SIVs' performance and/or financial viability, including the SIVs' efforts to raise capital and their ability to pay debts when due;

   c. Documents concerning Gordian Knot, including all communications between Northern Trust and Gordian Knot; and

   d. Documents concerning any Capital Support Agreements referenced in the Answer to Paragraph 92 of the Complaint.

24. All documents concerning the withdrawal, termination, departure, or non-renewal of any participant in the SLP.


25. All documents concerning any withdrawal guidelines or restrictions considered, analyzed, implemented, or imposed on the ability of SLP participants to redeem their investments and/or withdraw from any Collateral Pools and/or the SLP.

26. All documents concerning any purported contributions by Northern Trust to the Collateral Pools in October 2008, including documents concerning the calculation of any such contributions.

27. Documents sufficient to identify the individuals responsible for investment management decisions or risk management decisions in the Collateral Pools.

28. All documents concerning any investigation or inquiry of or concerning Northern Trust's SLP by the SEC, Federal Bureau of Investigation, the Federal Deposit Insurance Corporation, the U.S. Attorney's Office, the Attorney General of any state, or any other international, state or federal regulatory agency, including all documents received from or provided to any such agency, all transcripts of any testimony or depositions including exhibits thereto, and all pleadings filed by any such agency.

29. All documents concerning any whistleblower complaint made orally, or in writing, by any Northern Trust employee, relating in any manner to losses in the Collateral Pools, or otherwise pertaining to allegations in the Complaint from December 31, 2006 to the present.

30. All documents concerning the International Securities Lending Association ("ISLA"), including but not limited to your communications with the ISLA concerning securities lending, documents concerning ISLA's "Best Practices," ISLA documents concerning management of securities lending collateral pools (including securities lenders' income), documents concerning your participation in any ISLA committee, and any ISLA studies

concerning the investment of securities lending cash collateral in asset-backed securities from December 31, 2006 to the present.

31. All documents concerning *Diebold v. Northern Trust Investments, N.A., et al.*, No. 09-cv-1934 (N.D.Ill.); *BP Corp. Employee Plans v. Northern Trust Company*, No. 08-cv-6029 (N.D.Ill); *FedEx Corp. v. Northern Trust Company*, No. 08-cv-2827; and *Lockheed Martin Investment Management Co. v. Northern Trust Company*, No. 09-cv-01649, including:

   a. All documents produced by Defendants in the above actions;

   b. All documents concerning any settlement or resolution of the above actions; and

   c. Transcripts of all depositions (including exhibits thereto) taken of any current or former Northern Trust employees, agents, or experts in the above actions.

32. All documents concerning fees or compensation Defendants received from the management of the SLP or the Collateral Pools.

33. All documents concerning the determination or negotiation of the fees paid by the Commingled Lending Funds in connection with their participation in the SLP.

34. All documents concerning the allegations in the Complaint.

35. All documents concerning the Affirmative Defenses asserted in the Answer, or that will be asserted in this lawsuit, including all documents that you claim support such defenses.

36. All documents concerning the destruction, purging, or deletion of any documents or electronic data that would otherwise have been responsive to any of the Requests.

Dated: July 1, 2011

By: /s/ Laura R. Gerber
Lynn L. Sarko
Derek W. Loeser
Laura R. Gerber
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206)-623-1900
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
lgerber@kellerrohrback.com

*Counsel for Plaintiff Firefighters' Retirement System*

Garrett W. Wotkyns
Michael C. McKay
**SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP**
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, AZ 85258
Telephone: 480-607-4368
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com
*Counsel for Plaintiff Firefighters' Retirement System*

Elizabeth Hoskins Dow, #6216262
**BAILEY & GLASSER LLP**
1003 Western Avenue
Joliet, IL 60435
Telephone: 815-740-4034
ldow@baileyglasser.com
*Counsel for Plaintiff Firefighters' Retirement System*

Avi Josefson
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2835 N. Sheffield Avenue, Suite 409
Chicago, Illinois 60657
Telephone: 773-883-5382
avi@blbglaw.com

David Wales
Rebecca Boon
Brett Van Benthysen
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: 212-554-1400
*Counsel for Plaintiff Public School Teachers' Pension & Retirement Fund of Chicago*

Sharon S. Almonrode
**SULLIVAN, WARD, ASHER & PATTON, P.C.**
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48037
Telephone: 248-746-0700
salmonrode@swappc.com
*Counsel for Plaintiffs The Board of Trustees of the City of Pontiac Police & Fire Retirement System and The Board of Trustees of the City of Pontiac General Employees Retirement System*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2011, a true and correct copy of PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANTS was served upon counsel of record via email and U.S. Mail postage prepaid.

| | |
|---|---|
| Caryn L. Jacobs<br>Todd J. Ehlman<br>WINSTON & STRAWN, LLP<br>35 West Wacker Drive<br>Chicago, IL 60601-9703 | Michele Louise Odorizzi<br>John Joseph Tharp, Jr.<br>Nathan T. Kipp<br>MAYER BROWN, LLP<br>71 South Wacker Drive<br>Chicago, IL 60606 |

DATED this 1st day of July, 2011.

Cathy A. Hopkins, Legal Assistant
KELLER ROHRBACK L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384