**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHERN TRUST INVESTMENTS, INC., and THE NORTHERN TRUST COMPANY, <br><br> Defendants. | Case No. 09-7203 <br><br> Hon. Robert W. Gettleman <br><br> Magistrate Judge Susan E. Cox |
| NORTHERN TRUST INVESTMENTS, INC., and THE NORTHERN TRUST COMPANY, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> THE BOARD OF TRUSTEES FOR THE LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES FOR THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, <br><br> Third-Party Defendants. | |

| |
|---|
| THE NORTHERN TRUST COMPANY, |
|       Counter-Plaintiff, |
|       v. |
| PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, |
|       Counter-Defendant. |

**DECLARATION OF NATHAN T. KIPP IN SUPPORT OF NORTHERN TRUST'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

I, Nathan T. Kipp, declare pursuant to 28 U.S.C. § 1746(b) as follows:

1.     I am an Associate in the Chicago office of Winston & Strawn LLP and one of the attorneys of record that represents Defendants Northern Trust Investments, N.A., and The Northern Trust Company (collectively, "Northern Trust") in the above-captioned matters. I make this Declaration based on my personal knowledge and I am competent to testify to the matters set forth herein, if asked to so testify.

2.     On July 1, 2011, plaintiffs served on Northern Trust their First Requests For The Production Of Documents (the "Requests"). On August 5, 2011, Northern Trust served its Responses And Objections To Plaintiffs' Requests (the "Response"). Relevant excerpts of a true and correct copy of Northern Trust's Response are attached hereto as Exhibit 1.

**Meet-And-Confer Discussions Regarding The ESI Protocol**

3.     A true and correct copy of the letter from Todd Ehlman, counsel for Northern Trust, to plaintiffs' counsel Rebecca Boon, dated September 9, 2011, setting forth Northern Trust's proposed ESI protocol in response to plaintiffs' proposed ESI protocol, is attached hereto as Exhibit 2.

4. On September 9, 2011, the parties held a telephonic meet-and-confer conference regarding the ESI protocol. Among other things, Mr. Ehlman stated that Northern Trust will not agree to producing all documents in native format in the first instance, but will consider any follow-up requests that plaintiffs may have regarding producing certain native-format documents.

5. A true and correct copy of the letter from plaintiffs' counsel Mark Johnson to Mr. Ehlman, dated September 19, 2011, is attached hereto as Exhibit 3. In his letter, Mr. Johnson noted that the parties "reached agreement" with regard to "a number of issues" concerning the ESI protocol, and opined that the parties' discussions regarding the protocol were "productive." He also stated, however, that plaintiffs insist that Northern Trust produce all spreadsheets in native format because a .tiff "image file does not adequately represent the files as maintained in the ordinary course of business."

6. On September 26, 2011, the parties held another telephonic meet-and-confer discussion regarding the ESI protocol. During that discussion, the parties recognized that they had reached an agreement with regard to all aspects of the ESI protocol except for one: the production of spreadsheets, databases, and "similar files" in native format. As to that point, Mr. Brook Long, counsel for Northern Trust, stated that Northern Trust would face undue burdens and quality-control issues if it were required to produce in native format *all* spreadsheets, databases, and "similar files." Despite these burdens, Northern Trust offered to compromise and consider producing native spreadsheets if (a) plaintiffs would agree not to assert that production of any privileged material present in the native file, but not in the .tiff version, had waived any privilege; (b) the parties would agree to use as deposition, brief, or trial exhibits only Bates-stamped .tiff versions of files, if such files also had been produced in native format; and (c) any

files that would require redaction would be produced redacted in .tiff format without a native version because "redacting" files in native format was not feasible. Mr. Long also stated that Northern Trust would consider, on a case-by-case basis, plaintiffs' reasonable requests to examine redacted spreadsheets in native format if plaintiffs stated that they were unable to read or to use the redacted .tiff images. Plaintiffs' counsel Mr. Johnson stated that plaintiffs would consider Northern Trust's proposal.

7. A true and correct copy of the letter from plaintiffs' counsel Mr. Johnson to Mr. Ehlman, dated September 27, 2011, is attached hereto as Exhibit 4.

8. A true and correct copy of the letter from Mr. Long to plaintiffs' counsel Mr. Johnson, dated September 30, 2011, is attached hereto as Exhibit 5.

9. On October 3, 2011, the parties held another telephonic meet-and-confer discussion regarding, among other things, the ESI protocol and the production of spreadsheets. Mr. Ehlman reiterated that, as a baseline, Northern Trust would produce all unredacted spreadsheets in native format. However, because of the burdens, costs, and quality-control issues associated with "redacting" spreadsheets in native format, Northern Trust could produce redacted spreadsheets only after they are converted to .tiff images. In response, plaintiffs' counsel Mr. Johnson and Benjamin Gould stated that Northern Trust's proposal was unacceptable because, among other reasons, .tiff images of spreadsheets were "unusable" in that they would not (a) include the spreadsheets' individual worksheet names (*e.g.*, "Tab 1," "Tab 2," "Tab 1 – Year 2003," etc.); (b) include the spreadsheets' column headings or row names; or (c) "unhide" any hidden columns or rows. Mr. Ehlman and Michael Boland, Northern Trust's ESI liaison, stated that they would explore whether Northern Trust would be able to address and to resolve plaintiffs' concerns.

10. On October 21, 2011, the parties held another telephonic meet-and-confer discussion regarding the ESI protocol. I, along with Mr. Boland, explained to plaintiffs' counsel Mr. Johnson and Mr. Gould that, in response to plaintiffs' concerns regarding the "usability" of redacted spreadsheets in .tiff format, Northern Trust was willing to offer another concession in an effort to reach an agreement as to the ESI protocol. Specifically, Northern Trust proposed to produce redacted spreadsheets in .tiff format that would (a) display the worksheets' names within each spreadsheet; (b) display the worksheets' column headings and row numbers; and (c) "unhide" all of the worksheets' previously hidden columns and rows, if any were hidden. Mr. Johnson stated that he appreciated Northern Trust's attempts to address plaintiffs' concerns; Mr. Johnson further stated that, despite Northern Trust's offer to produce all spreadsheets in native format that did not require redaction, plaintiffs were unsure whether they even would need all spreadsheets in native format because of the possibility that a large number of spreadsheets would be nonresponsive to their Requests or irrelevant to their claims. Plaintiffs' counsel stated that they would consider Northern Trust's proposal.

11. As of October 27, 2011, plaintiffs have not responded to Northern Trust's latest proposal regarding the ESI protocol. Plaintiffs also have not stated that the parties otherwise have reached an impasse regarding that proposal.

**Meet-and-Confer Discussions Regarding Plaintiffs' Document Requests**

12. On August 10, 2011, the parties held their first telephonic meet-and-confer conference to discuss certain items related to plaintiffs' Requests. Among other things, the parties discussed Northern Trust's General Objections 27 and 28, through which Northern Trust objected to producing client names, identifying information, and financial information if such production would violate any laws. Caryn Jacobs, counsel for Northern Trust, explained, among

other things, that the Illinois Banking Act governs Northern Trust's actions as it pertains to its document production, regardless of whether any protective order is entered.  Specifically, the Illinois Banking Act would require Northern Trust to notify each of its clients that fell under plaintiffs' putative class definition that it would be producing their confidential information, before any such production could take place, and that Northern Trust could be subject to certain penalties or claims if it failed to abide by the notification requirement.  Ms. Jacobs continued that, because the putative class potentially could implicate thousands of securities lending clients as written, Northern Trust would bear undue burdens and expenses when attempting to ascertain to whom it must provide notice, when actually providing such notice, and then when addressing its clients' concerns that their confidential financial information would be disclosed to unrelated third parties.  Ms. Jacobs therefore suggested that Northern Trust should not be required to produce confidential client information until it became more clear how many clients would be implicated in discovery.  In response, plaintiffs' counsel stated that the parties could address the issue at a later date.

13.     On September 28, 2011, the parties held another telephonic meet-and-confer discussion regarding, among other things, Northern Trust's General Objections 27 and 28 to plaintiffs' Requests.  Mr. Ehlman reiterated that, although the Illinois Banking Act does provide the notice exception, the process of providing such notice to so many clients is unduly burdensome and expensive.  Mr. Ehlman also stated that, when producing documents in *Diebold v. Northern Trust Investments, N.A.*, No. 09-cv-1934 (N.D. Ill.) (Hibbler, J.), plaintiffs' counsel, many of whom are also counsel of record for plaintiffs in this case, allowed Northern Trust to redact clients' names so as to protect their confidential information per the Illinois Banking Act.  Plaintiffs' counsel replied that the parties would revisit the issue.

14. A true and correct copy of the letter from plaintiffs' counsel Ms. Boon to Mr. Ehlman, dated October 5, 2011, is attached hereto as Exhibit 6.

15. Relevant excerpts of a true and correct copy of the transcript of the parties' status hearing before the Court on October 13, 2011, is attached hereto as Exhibit 7.

16. On October 21, 2011, the Court entered an Order governing the prioritization of discovery, including: "[C]ontracts and emails concerning any duty or obligation defendants owed to the four named plaintiffs and a sample set of four other investors to be agreed upon by the parties" (Clause 1); "[D]ata on any realized losses and loss calculations for the four named plaintiffs and a sample set of four other investors to be agreed upon by the parties and their investments" (Clause 6); "[D]ocuments pertaining to withdrawal and redemption restrictions related to (a) the four named plaintiffs and a sample set of four other investors to be agreed upon by the parties and (b) the two collateral pools named in the plaintiffs complaint plus an additional third collateral pool to be named by the plaintiffs" (Clause 7); and certain "internal discussions" addressing the "acceptance of collateral, investment of collateral, decisions to declare collateral deficiencies, risk management decisions, and the effect of market and economic conditions on these issues" as related to "the four named plaintiffs and a sample set of four other investors to be agreed upon by the parties" (Clause 9). (Dkt. #126.) To this date, the parties have not yet met and conferred regarding either the sample set of clients or the other matters set forth in this Court's October 21 Order.

### Notice To BP Plans In The *Diebold* Action

17. On April 5, 2011, in connection with the *Diebold* case, Northern Trust gave notice to the BP Plans, pursuant to the Illinois Banking Act, that it would produce documents to the *Diebold* plaintiffs reflecting the BP Plans' confidential financial information in Northern Trust's

possession.  In response, counsel for the BP Plans objected to the disclosure of the BP Plans' confidential information, which, in turn, led to prolonged negotiations concerning how Northern Trust and the *Diebold* plaintiffs could address the BP Plans' privacy concerns.  The negotiations culminated with the entry of a Supplement to Stipulated Protective Order on June 13, 2011, a true and correct copy of which is attached hereto as Exhibit 8.  Thus, it took nearly ten weeks to resolve the BP Plans' objections to Northern Trust's notice letter.

      I declare under perjury of the laws of the United States of America that the foregoing is true and correct.

DATED this 27th day of October, 2011:    By: /s/ Nathan T. Kipp
                                                      Nathan T. Kipp
                                                    WINSTON & STRAWN LLP
                                                    35 West Wacker Drive
                                                    Chicago, Illinois  60601
                                                    (312) 558-5600
                                                    (312) 558-5700 – Facsimile