# EXHIBIT 3



SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

September 19, 2011

**By Email and U.S. Mail**

Todd J. Ehlman, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703

      Re:    *Firefighters' Retirement Systems v. Northern Trust Investments, N.A. et al.*, No. 09-cv-7203 (N.D. Ill.)

Dear Todd,

    I write on behalf of Plaintiffs to memorialize and follow up on our conference call of Thursday, September 15, 2011 regarding ESI production protocols in this case. Working off your letter to Rebecca Boon of September 9, 2011, we were able to agree on certain issues, but were not able to reach agreement on Plaintiffs' proposal that spreadsheets and similar documents be produced in native format.

    During the call, Plaintiffs reiterated that all spreadsheets and other documents where an image file does not adequately represent the files as maintained in the ordinary course of business should be produced in native format. In your letter of September 9, 2011, and again during our telephone conference, you stated that Defendants will not produce any native format files in the first instance. You propose instead that spreadsheets and other such documents be produced as image files in TIFF format, and that Defendants will entertain follow-up requests for particular documents in native format where they determine that the TIFF format of the document is not reasonably usable or does not appear to adequately represent the documents contents. Defendants will then produce the requested documents in native format if "otherwise appropriate." As we understand your position, the principal justification for refusing to produce spreadsheets in native format is that doing so will impose an undue burden on Defendants and their attorneys arising from the additional need to review the hidden cells and formulae of the voluminous number of spreadsheets that are likely to be produced. Plaintiffs do not find this stated justification persuasive.

    First, while we agree that Defendants' counsel have the right and responsibility to review the entirety of every document it produces for privileged material, we do not see how a review of the documents in native format will impose any additional burden apart from your ordinary obligations. Presumably, you and your client will already be reviewing the entirety of each document produced, including hidden cells, for the purpose of determining whether the document, including that portion of the document that would



not appear in a TIFF version, contains relevant information responsive to our document requests. Your position that the review of spreadsheets in native file format is more burdensome concedes our point that there is additional data in native files that will ultimately be removed once the document is converted to a TIFF version. As this is a critical element of your burden argument, we would appreciate clarification. Are Defendants stating that they only intend to review potentially responsive documents in a non-native format, after they are imaged as TIFFs, before they decide whether to produce them?

Second, Defendants have not supported their burden argument with any facts or even hypothetical scenarios. You stated that you are confident that a voluminous number of spreadsheets or similar documents will likely be produced in this case; however you were unable to quantify that contention either in absolute numbers or as a percentage of the production. Moreover, any additional burden arises only to the extent that certain spreadsheets contain hidden material that Defendants and their counsel would not otherwise review if permitted to produce the documents in non-native format. Apart from your obligation to review such material to determine whether it should be produced, many spreadsheets do not have any hidden cells and would not require any greater review than the imaged file. Further, to the extent that you are concerned about the disclosure of the underlying formulae in a spreadsheet, we are unable to conceive of any reason such formulae would be privileged or require careful review. They simply provide information about the underlying source of the numbers in the spreadsheet, information which Plaintiffs are entitled to receive. We also noted during the call that the production of spreadsheets and similar documents in native format will actually be less burdensome for Defendants because there would be no need to have documents converted from their native format to TIFF images. In response to your concern that the "pages" of a spreadsheet in native format could not be Bates numbered, we noted, and you agreed, that it is commonplace for electronic files in native format to be assigned a single Bates number, using a placeholder document or embedded in the file name.

Defendants' proposal that Plaintiffs review imaged documents first and then request production in native format of particular documents is not a satisfactory alternative to the production of spreadsheets and similar documents in native format in the first instance. Plaintiffs cannot know what relevant information might be contained in such documents that does not appear in the imaged version of the documents. Nor will the imaged document necessarily provide a clue as to the existence or nature of such hidden information. Moreover, as discussed below, it is not just the non-disclosure of hidden information that is of concern to Plaintiffs. As you no doubt know, spreadsheets, like databases, are designed and utilized for the purpose of storing, sorting and manipulating data and permitting the analysis or display of relationships between data, as well as the ability to draw conclusions based upon the application of formulae or the re-

Todd J. Ehlman, Esq.
Re: *Firefighters' Retirement Systems v.*
 *Northern Trust Investments, N.A. et al.*,
September 19, 2011
Page 3

ordering of the data. When such files are converted to TIFFs or other images, that functionality is lost, and the document's usability is significantly degraded if not destroyed.[1]

Both the case law and other sources of authority have recognized, that "[m]aintaining spreadsheets in their native format is necessary to assure the integral elements of a spreadsheet remain undisturbed." *Dahl v. Bain Capital Partners, LLC*, 665 F.Supp.2d 146, 150, n. 1 ( D.Mass. 2009); *see also Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647 (D. Kan. 2005) ("To understand the spreadsheet, the user must be able to ascertain the formula within the cell."). In addition, many of the cases, including those cited above and several cases from the Northern District of Illinois rely on the *Sedona Principles* for guidance in this area.[2] As revised in 2007, Principle 12 recommends that the format of the production of electronic documents take into account "the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case." This revision abandoned a mild presumption against requiring the production of metadata and "placed greater weight on the enhanced accessibility and functionality that metadata provides to the recipients of ESI." *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Security*, 255 F.R.D. 350, 356 (S.D.N.Y 2008).[3]

The spreadsheets and similar documents that Defendants are likely to produce in this case are almost certain to include "embedded metadata" such as mathematical formulas and notes or text in their native format that will be lost in a static or image

---

[1] For example, the "tabs" and "sheets" of an MS Excel spreadsheet are distinct parts of a spreadsheet that generally are not fully retained in the conversion to an imaged document, the result being an inability to interpret the significance and relationships of the data contained in the spreadsheet.

[2] *See The Sedona Principles - Second Edition: Best Practices Recommendations & Principles for Addressing Electronic Document Production*, (Sedona Conference Working Group Series 2007), http://www.thesedonaconference.org/content/miscFiles/TSC_PRINCP_2nd_ed_607.pdf ("Sedona Principles 2d" ).

[3] A similar set of protocols developed for the district court of Maryland suggests that "embedded data" which includes "text, numbers, content, data or other information that is directly or indirectly inputted into a [n]ative [f]ile by a user and which is not typically visible to the user viewing the output display" of the native file, "should be produced as a matter of course." *See*, United States District Court for the District of Maryland, Suggested Protocol for Discovery of Electronically Stored Information 25-28, http://www.mdd.uscourts.gov/news/news/ESIProtocol.pdf ("Md.Protocol" ).



Todd J. Ehlman, Esq.
Re: *Firefighters' Retirement Systems v.*
   *Northern Trust Investments, N.A. et al.,*
September 19, 2011
Page 4

format. Such information is relevant to an understanding of the data and the source of the data. That fact and the importance of receiving the data in a format that provides Plaintiffs with the same ability as Defendants to access, search and display the information requires that spreadsheets and similar documents be produced in their native format. As the notes to the 2006 amendments to Fed. R. Civ. P. 34 observe:

> . . . [T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Producing spreadsheets and similar documents in a TIFF or PDF format rather than in their native format certainly degrades Plaintiffs' ability to search those documents and use them in the manner in which they were intended. Accordingly, and for each of the reasons discussed above, we ask that Defendants reconsider their position on this point and agree to produce all spreadsheets and other documents where an image file does not adequately represent the files as maintained in the ordinary course of business in their native format.

Apart from the issue of native file document production, we reached agreement on or clarified Defendants' positions on a number of issues. We understand that Defendants intend to de-dupe custodian email productions so that only one custodian's copy will be produced, but the metadata that corresponds with that version will contain a recipient field (to, from, cc, bcc) that will permit the identification of everyone who received that email. You also indicated that the "Recipient" field referred to in your September 9, 2011 letter includes separate cc and bcc fields. Further, you confirmed that Defendants will be producing an OCR version for scanned images.

Finally, you indicated you will need to get back to us on whether Defendants' production will include an "All Custodian" field for non-emails that are de-duped and whether Defendants will be providing the file name and page count for native file docs, the hash values for documents, and an "email folder" file for custodians.

Thank you for your consideration of the above. If you have a different recollection as to any of these points, please let us know. We thought our call was productive and, we will look forward to hearing back from you regarding the open issues and your final position on the issue of producing spreadsheets in native format.



Todd J. Ehlman, Esq.
Re: *Firefighters' Retirement Systems v.
    Northern Trust Investments, N.A. et al.*,
September 19, 2011
Page 5

Very truly yours,

Mark T. Johnson

cc: (*via* email)
    Caryn Jacobs, Esq.
    Sharon Almonrode, Esq.
    Garrett W. Wotkyns, Esq.
    Avi Josefson, Esq.
    Rebecca Boon, Esq.
    Brett Van Benthysen, Esq.
    Derek W. Loeser, Esq.
    Laura Gerber, Esq.

# EXHIBIT 4



**SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY** LLP

September 27, 2011

**By Email and U.S. Mail**

Todd J. Ehlman, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703

Re: *Firefighters' Retirement Systems v. Northern Trust Investments, N.A. et al.*, No. 09-cv-7203 (N.D. Ill.)

Dear Todd,

I am writing on behalf of Plaintiffs to confirm the contents of the parties' further telephone conference on ESI production protocols held September 26, 2011, and also to respond to Defendants' proposal described during that call.

First, with respect to some of the incidental points I raised on page 4 of my September 19, 2011 letter, you advised us as follows:

1) You intend to de-dupe custodians so that only one custodian's copy of emails will be produced.

2) You will produce TIFF images with OCR text.

3) You intend to produce an "all custodians" field for emails that are de-duped.

4) You will attempt to provide the "file name," "page count," and "hash value" fields.

5) You don't believe your email archive system replicates the user's email file folder structure and are, therefore, not optimistic that you will be able to provide information on any subfolders created by users and whether emails were found in such subfolders. We will wait to hear further from you on this and would appreciate it if you could also identify the archive system Northern Trust uses.

Second, in response to Plaintiffs' request that Defendants produce database files, spreadsheets and similar documents in their native format, you proposed, for discussion purposes only at this point, that you would do so subject to the following conditions and exceptions:



Todd J. Ehlman, Esq.
Re: *Firefighters' Retirement Systems v.*
　　*Northern Trust Investments, N.A. et al.,*
September 27, 2011
Page 2

1) Plaintiffs will agree that the inadvertent production of any privileged information in a native format document that would not otherwise be visible in non-native format will not constitute a waiver of the privilege;

2) Defendants will also produce a Bates-numbered TIFF of any spreadsheets produced in native format which shall constitute the "official" version of that spreadsheet for use at depositions or presenting to witnesses. Defendants object to the use of other forms of such spreadsheets generated from the native format document but will consider exceptions to this limitation where notice of the intent to use an alternative format is provided within a reasonable period of time prior to the deposition;

3) Where redactions are necessary, only the TIFF version of a document will be produced; and

4) The terms of the agreement shall be reciprocal, so that Plaintiffs will product their ESI documents in the same format and according to the same protocol.

Having considered each of these elements of your proposal further following our conference call yesterday, we can agree to conditions 1, 2 and 4, but not to 3. As I stated during our call, Plaintiffs fail to understand your concern about producing redacted documents in native format. The distinction you attempted to describe between producing redacted paper copies or TIFFs and redacted documents in native format seems to us an artificial one. In each case, the producing party simply retains the original unredacted version and produces a redacted version with the privileged material removed and replaced with the word "redacted." This can be done as easily with a native format document as with other forms of documents, and with the same effect. The original remains available, while the produced copy omits the privileged information and makes note of the omission.

As we stated yesterday, Plaintiffs' need to insist on redacted spreadsheets and databases in native format is based on the same rationale we described as the basis for seeking such documents in native format in the first place. If such documents are only produced as TIFFs, as Defendants propose, their usability is significantly degraded. TIFFs do not allow the data or information to be sorted or rearranged in ways that permit the user to view patterns in the data or understand the relationships between different cells or fields. Nor do they permit the application of different formulas or variables that may enable the user to draw conclusions about the data or portions of the data. The production of these types of documents in non-native format would deprive the receiving party of the ability to use the data in the same manner as the producing party.



Todd J. Ehlman, Esq.
Re: *Firefighters' Retirement Systems v.*
 *Northern Trust Investments, N.A. et al.*,
September 27, 2011
Page 3

     In our experience, moreover, native file redactions are common. We do not understand how native file redactions could be more burdensome than TIFF redactions, particularly in the spreadsheet context.

     We agreed during our call yesterday that another telephone conference would be scheduled to discuss these issues further after Plaintiffs had had an opportunity to consider Defendants' proposal. Based on the above, we should now only need to address condition number 3 of Defendants' proposal regarding the production of documents in native format. In addition, we also agreed to include in that discussion two other issues raised by the Court. These include: 1) the appointment of a discovery liaison by each side, and 2) the scope of preservation of ESI during the pendency of the litigation.

     We look forward to talking to you about this further during our next conference call, the date and time of which is currently being worked out through our separate email communications.

                        Very truly yours,

                        *Mark T. Johnson*

                        Mark T. Johnson

cc: (*via* email)
    Caryn Jacobs, Esq.
    Sharon Almonrode, Esq.
    Garrett W. Wotkyns, Esq.
    Avi Josefson, Esq.
    Rebecca Boon, Esq.
    Brett Van Benthysen, Esq.
    Derek W. Loeser, Esq.
    Laura Gerber, Esq.