# EXHIBIT 5

# WINSTON & STRAWN LLP

BEIJING
CHARLOTTE
CHICAGO
GENEVA
HONG KONG
HOUSTON
LONDON
LOS ANGELES

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601

+1 (312) 558-5600

FACSIMILE +1 (312) 558-5700

www.winston.com

MOSCOW
NEW YORK
NEWARK
PARIS
SAN FRANCISCO
SHANGHAI
WASHINGTON, D.C.

September 30, 2011

**BY E-MAIL**

BROOK R. LONG
Associate
312-558-5994
BLong@winston.com

Mark T. Johnson
Schneider Wallace Cottrell Brayton Konecky LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104

Re: *Louisiana Firefighters' Retirement System v. Northern Trust Investments, N.A., et al.*, No. 09-cv-7203 (N.D. Ill.)

Dear Mark:

    This responds to your letter to Todd Ehlman dated September 28, 2011.

    We appreciate that you have accepted certain portions of our proposal, and we believe genuine progress is being made on these issues. But unfortunately, we cannot agree to your position that redacted spreadsheets must be produced in native format, as such a requirement would impose an undue and unreasonable burden on Defendants.

### Matters for Clarification

    At the outset, it is necessary to clarify a few things to prevent any future misunderstanding.

    In the parties' September 26 meet-and-confer call, we proposed to produce *spreadsheets* in native format subject to the conditions you (mostly correctly) enumerate in your September 28 letter. We have not offered any proposal, or had any discussion with you during our meet and confer calls, about "database files . . . and similar documents." (Johnson 9/28/11 Letter at 1.) In fact, your letter of September 28 is the first time Plaintiffs have requested native production of "database files," which request goes beyond the scope of the ESI format set forth in Plaintiffs' Request for Production. We cannot agree to native production of "similar documents" for the simple reason that we cannot know beforehand when Plaintiffs will contend as to any particular document that the "image file does not adequately represent the files as maintained in the ordinary course of business." (RFP Instruction 4(a).) Thus, our offer relates only to

WINSTON & STRAWN LLP                                    September 30, 2011
                                                                    Page 2

spreadsheets, which have been the sole focus of the parties' discussions of native format during our two telephonic meet and confers.

As for any other documents, as we stated in our September 9, 2011 letter, to the extent Plaintiffs notify Defendants after receiving an image file for a non-spreadsheet document that Plaintiffs believe that the image file is not reasonably usable or does not appear to "adequately represent" the document's contents, Defendants will produce in native format if otherwise appropriate.

Additionally, some clarification is necessary in regards to the conditions we have proposed. With regard to paragraph (1) on page 2 of your September 28 letter, Plaintiffs would waive any right to assert that the production of any privileged information in a native format document that would not otherwise be visible in non-native format constitutes a waiver of the privilege. With regard to paragraph (3) on that page, we wish to clarify that Defendants would produce a redacted TIFF *with OCR text* such that the document is searchable (not "only the TIFF version" without OCR). With regard to paragraph (4) on that page, the "reciprocal" nature of the agreement would require, among other things, that both sides would produce spreadsheets in both TIFF and native formats.

### Spreadsheets in Native Format

We find that your September 28 letter, much like your September 19 letter, does not come to terms with the burdens Defendants would incur in agreeing to produce spreadsheets in native format, much less the additional burdens Defendants would incur in agreeing to "redact" documents "in native format."

At the outset, we reiterate the underlying burden that would result from native production of all spreadsheets, which your September 19 letter unduly discounts. As we have stated on both of our calls with you, we anticipate that there will be many spreadsheets that will be produced to Plaintiffs that are in and of themselves likely to be non-responsive and irrelevant. In some cases, this is because emails that might contain discussion of relevant securities lending issues attach spreadsheets that contain no relevant content. In other cases, one spreadsheet might be relevant but it appears in the same email unit as one or more totally irrelevant spreadsheets. In order to conduct a full privilege review in anticipation of native format production, all spreadsheets, *including totally irrelevant ones*, would need to be reviewed to confirm there are no hidden cells, rows, columns, or values, and if there is such hidden content, to confirm it is not privileged. Such a process is prone to human error, and more importantly, it is very time-consuming and expensive. While your September 19 letter asserted that burden would only arise where hidden content was present, the burden is largely in *determining* whether hidden content is present. In our experience it usually will not be, but it is by confirming that impression that we incur the burden. This added burden would be unnecessary were only visible content produced (which visible content in our experience is highly likely to encompass any and all relevant content). Under our original proposal, which we still believe to be the most reasonable, Plaintiffs would

WINSTON & STRAWN LLP

September 30, 2011
Page 3

first look at the documents using TIFFs and searchable text, and then ask for native format as to documents where Plaintiffs felt based on a diligent review of the TIFFs that Plaintiffs either needed to check for hidden content or needed to manipulate or sort the contents using native software features. We believe your suggestion that you need this ability as to each and every spreadsheet produced by Defendants (sight unseen) to be speculative and unreasonable. Nonetheless, as a compromise, and as expressed in our September 26 call, Defendants are willing to produce spreadsheets in native format under the terms and conditions stated in that call.

As to your suggestion that we "redact" spreadsheets "in native format," we understand you to mean that we should generate new documents with different hash values, which we would then modify by changing the affected values in spreadsheets to some variation on the word "redacted." We strongly urge you to reconsider your position on this point, as the "redaction" you propose would be extremely burdensome.

Regarding your assertion that redaction is redaction whether in TIFF or native, we strongly disagree and believe the matter is more than semantics. A native redaction is not a redaction at all. It is deleting information from a native file and typing in new information to save a new file that has never existed in our clients' files. Tiffing and redacting a document— merely covering up certain contents—is efficient and standard. Tools have been created specifically for this purpose to make redacting as streamlined and predictable a process as it can be. No such tools exist for altering native files. While you state that a native redaction is common, in our experience, the reality is that the e-discovery industry has not determined how to address this issue.

But even if we agreed with you regarding your conceptual arguments and analogies, the pragmatic reality is that the burden of "native redaction" would be large, and it would also be unjustified given our proposal that Plaintiffs be able to identify particular TIFFs where native features have not been adequately presented.

One large burden is double redaction. Under one condition in our proposal, which we believe is very important and which you have agreed to, the official copy of a produced document will be its TIFF. Thus your proposal about "redaction . . . in native format" will require that each document be redacted twice: once properly redacted in TIFF, and once "redacted" by modifying the native. That is unreasonable, especially since you have advanced nothing in support of your demands but speculation that you *might* need some native features of some unidentified document that we *might* produce and we *might* redact and you *might* deem relevant. In our view, this is something that clearly should be dealt with on a case-by-case basis between the parties, not production-wide.

Even on a spreadsheet-by-spreadsheet level, deleting and replacing information from any individual native spreadsheet would be a very time consuming process and there would be no practical means of effective quality control. In order to alter the native content of a spreadsheet, it is necessary to first launch the native application (Excel) and open the selected file. It is then necessary

WINSTON & STRAWN LLP

September 30, 2011
Page 4

to delete and replace all selected information. While it might seem this could be done using "find and replace" or "drag and replace" type of function, in reality, bulk replace functions of this order could potentially have drastic impact on the document in ways the attorney performing the "redaction" might not notice or intend. Moreover, replacing the contents of a cell, row or column could impact interlinked and dependant cells and formulas, changing the data of the entire document. In order to be sure that there are no such problems, it could be necessary for the attorney to check every number in every cell and every formula to ensure that nothing changed when the original contents of the native file were deleted. This would require detailed knowledge of the formatting of the spreadsheet. All this puts aside the extra effort required to properly ensure the native files redacted by the attorneys are separately tracked to ensure proper categorization within the eventual production. This whole process would dramatically increase review time and cost.

In sum, we have already advanced a proposal that involves substantial burdens on Defendants; the significant additional burden posed by "redacting" spreadsheets in native format is not one we are willing to incur, especially because you have advanced nothing more than speculation in support of your demands for native content across the entire undetermined universe of spreadsheets to be produced.

We look forward to speaking with you at 4:00 p.m. Central time on Monday, October 3.

Very truly yours,

Brook R. Long