# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, | Case No. 09-7203<br><br>Hon. Robert W. Gettleman |

Plaintiffs,

v.

NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,

Defendants.

---

NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,

Third-Party Plaintiffs,

v.

THE BOARD OF TRUSTEES FOR THE LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES FOR THE PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM,

Third-Party Defendants.

THE NORTHERN TRUST COMPANY,

                    Counter-Plaintiff,

       v.

PUBLIC SCHOOL TEACHERS' PENSION &
RETIREMENT FUND OF CHICAGO,

                    Counter-Defendant.

**PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION TO DISMISS THE THIRD PARTY COMPLAINT AND COUNTERCLAIM AND THE MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.     Northern Trust's Failure To Identify The Defendants Is Fatal To Its Claims ........................................................................................................... 1

II.    Northern Trust's Claims For Contribution Under Illinois Law Must Be Dismissed ................................................................................................... 3

III.   Northern Trust's Claim For Contribution Under Michigan Law Must Be Dismissed ................................................................................................... 5

IV.   Northern Trust's Claims for Implied Indemnification Must Be Dismissed .......... 5

V.     Northern Trust's Individual-Capacity Claims Against The Boards Must Be Dismissed And Repleading To Allege Official-Capacity Claims Would Be Futile ...................................................................................................... 7

VI.   The Boards Are Immune From Liability ............................................................. 8

       1.    The Pontiac Boards Are Immune Under Michigan Law ............................. 8

       2.    The CTPF Board Is Immune Under Illinois Law ....................................... 9

       3.    The Firefighters Board Is Immune Under Louisiana Law ...................... 10

VII.   Northern Trust's Individual-Capacity Claims Against The Firefighters and Pontiac Boards Must Be Dismissed For Lack of Personal Jurisdiction ............... 11

VIII.   Northern Trust's Attempt to Cure Its Defective Counterclaim Fails ................... 11

IX.   Plaintiffs' Motion to Strike Affirmative Defenses Should Be Granted ............... 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*American Environmental, Inc. v. 3-J Co.*, 583 N.E.2d 649 (Ill. App. Ct. 1991) ........................... 6

*Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Pension Plan v. Bank of New York Mellon Corp.*, No. 09-CV-6273 (S.D.N.Y. Dec. 9, 2011) ............................... 1

*Bd. of Trs. of Vill. of Barrington Police Pension Fund v. Dep't of Ins.*, 570 N.E.2d 622 (Ill. App. Ct. 1991) .................................................................................................. 4

*Beaman v. Souk*, 2011 WL 832506 (C.D. Ill. Mar. 3, 2011) ......................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 1, 14

*Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599 (7th Cir. 2009)................................. 14

*BP Corp. North America Inc. Savings Plan Investment Oversight Committee v. Northern Trust Investments, N.A.*, 692 F. Supp. 2d 980 (N.D. Ill. 2010)............................. 7, 8

*Bryson v. Gonzales*, 534 F.3d 1282 (10th Cir. 2008) .................................................... 2

*Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2004 WL 2108413 (N.D. Ill. Sept. 21, 2004) ......................................................................... 4

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)......................... 15

*City of Yorkville v. Am. S. Ins. Co.*, 654 F.3d 713 (7th Cir. 2011)............................... 12

*Colton v. State Treasurer*, 521 N.W.2d 620 (Mich. Ct. App. 1994) .............................. 8

*Credit Gen. Ins. Co. v. Midwest Indemn. Corp.*, 916 F. Supp. 766 (N.D. Ill. 1996) .................... 13

*Davis v. Elite Mortg. Servs.*, 592 F. Supp. 2d 1052 (N.D. Ill. 2009)............................ 14

*Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, 2010 WL 1172565 (N.D. Ill Mar. 22, 2010) ............................................................................................................... 4, 5

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007)........................... 2

*Ewanic v. Pepper Constr. Co.*, 712 N.E.2d 852 (Ill. App. Ct. 1999) ............................. 5

*Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984) .............................................................. 8

*Garras v. Bekiares*, 23 N.W.2d 239 (Mich. 1946) ........................................................ 9

*Gawryk v. Firemen's Annuity & Benefit Fund of Chi.*, 2004 WL 5645458 (Ill. Cir. Ct. Jan. 9, 2004)......................................................................................................... 9

*Godfrey v. Kamin*, 1999 WL 756151 (N.D. Ill. Sept. 13, 1999).................................................... 4

*Hadley v. Shaffer*, 2003 WL 21960406 (D. Del. Aug. 12, 2003) ................................................ 11

*Hoffman v. Nationwide Mut. Ins. Co.*, 2011 WL 3158708 (N.D. Ill. July 26, 2011) .................. 13

*Insolia v. Philip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000) ...................................................... 4

*Jackson v. Hammer*, 653 N.E.2d 809 (Ill. App. Ct. 1995)......................................................... 12

*Jadom Furniture Co. v. October Group International, LLC*, 2007 WL 2359767 (N.D. Ill. Aug. 14, 2007) .......................................................................................................... 5, 6

*Kinzer v. City of Chicago*, 539 N.E.2d 1216 (Ill. 1989) ............................................................ 9

*Kudlicki v. MDMA, Inc.*, 2006 WL 1308617 (N.D. Ill. May 10, 2006).................................... 4, 5

*McKay v. Kusper*, 624 N.E.2d 1140 (Ill. App. Ct. 1993) ........................................................... 9

*Penn-Daniels, LLC v. Daniels*, 2009 WL 1475277 (C.D. Ill. May 27, 2009) ............................ 12

*People ex rel. Hartigan v. Community Hospital of Evanston*, 545 N.E.2d 226 (Ill. App. Ct. 1989) ...................................................................................................................... 6

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) ................................................. 4

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008)................................................................... 3

*Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897 (N.D. Ill. 2006).............. 14

*Riley Acquisitions, Inc. v. Drexler*, 946 N.E.2d 957 (Ill. App. Ct. 2011) .................................. 6

*Rollins v. Elwood*, 565 N.E.2d 1302 (Ill. 1990)...................................................................... 11

*Ryan v. City of Chicago*, 654 N.E.2d 483 (Ill. App. Ct. 1995) .................................................. 9

*S. Pac. Co. v. Jensen*, 244 U.S. 205 (1917) ............................................................................ 3

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991)................................................................. 3

*Shaw v. Weisz*, 91 N.E.2d 81 (Ill. App. Ct. 1950)................................................................... 6

*Smith v. Jones*, 497 N.E.2d 738 (Ill. 1986) ........................................................................... 7

*Stuart v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 369 N.E.2d 1262 (Ill. 1977) ................... 5, 6

*TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007).................................... 12

*Tersavich v. First Nat'l Bank & Trust*, 551 N.E.2d 815 (Ill. App. Ct. 1990) ................................ 3

*United States v. Giovannetti*, 919 F.2d 1223 (7th Cir. 1990) ........................................................ 12

*WCC Funding Ltd. v. Gan Int'l*, 1994 WL 603084 (N.D. Ill. Oct. 31, 1994) ............................. 13

*Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569 (7th Cir. 2004)........................................ 14

## **Statutes**

29 U.S.C. § 1109.............................................................................................................................. 8

40 ILCS 5/1-114(a) ...................................................................................................................... 8, 9

La. Rev. Stat. Ann. § 11:264.5........................................................................................................ 8

La. Rev. Stat. Ann. § 9:2792.4...................................................................................................... 10

La. Rev. Stat. Ann. § 9:2798.1...................................................................................................... 10

Mich. Comp. Laws § 691.1407........................................................................................................ 8

## **Rules**

Fed. R. Civ. P. 8 .............................................................................................................................. 1

## PRELIMINARY STATEMENT

Northern Trust seeks to recover millions of dollars from potentially dozens of teachers, firefighters and other public servants who serve as pension fund trustees, but does not name a single individual defendant or present a single factual allegation concerning the conduct of any one pension fund trustee. To the contrary – and months after filing its Third Party Complaint – Northern Trust states that it would be "premature" to identify any of the individuals that it is suing. Opp. 28. Northern Trust's inability to name the individuals from whom it seeks to recover violates the Federal Rules of Civil Procedure, and requires the dismissal of the Third Party Claims with prejudice.[1]

Even if Northern Trust could identify those individuals, its claims fail because Northern Trust provides no legal support for its assertion that the Third Party Defendants should be liable to Northern Trust if Northern Trust breached its fiduciary and contractual duties to Plaintiffs. Indeed, no such authority exists. Under every applicable legal theory, Northern Trust could not state a claim against unnamed trustees of the Boards for contribution or indemnification. Thus, it manufactures a cause of action purportedly derived from the "common law of trusts." Because no such claim exists, the Third Party Complaint should be dismissed.

## ARGUMENT

### I. Northern Trust's Failure To Identify The Defendants Is Fatal To Its Claims

The fundamental purpose of the federal pleading regime is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007); *see also* Fed. R. Civ. P. 8(a). It is simply not possible to "alert[] the

---

[1] In the alternative, the Third Party Claims should be dismissed without prejudice as premature because there has not yet been a finding of liability on the part of Northern Trust. *See Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Pension Plan v. Bank of New York Mellon Corp.*, No. 09-CV-6273 (S.D.N.Y. Dec. 9, 2011) (attached hereto as Ex. 2).

defendant to basic, critical factual allegations," *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007), where, as here, the plaintiff has not specified the identity of the defendant. *See Bryson v. Gonzales*, 534 F.3d 1282, 1290 (10th Cir. 2008) (discussing importance of identifying "who exactly has done what to whom" in a personal capacity suit). The teachers, firefighters and other public servants who have been members of the Boards over the past 20 years and from whom Northern Trust seeks millions of dollars do not have notice of any purported claims against them. Northern Trust has failed to even specify a relevant time frame that would apply to its claims. For example, since the Third Party Defendants filed their Motion to Dismiss, two members of the CTPF Board have been replaced by two new members. Whether Northern Trust purports to continue suing the two former members of the Board (if they were ever Third Party Defendants) is just as unclear as whether the two newly elected members of the Board are suddenly Third Party Defendants in this case.

The caption of the Third Party Complaint lists the Boards themselves as Third Party Defendants, and yet the Third Party Complaint states that Northern Trust is suing the Boards in their "individual capacities." Compl. 1. This creates a host of issues: did Northern Trust sue entities or individuals? If Northern Trust intended to sue certain individual members of the Boards, who are they and what is the basis for the liability of each individual? *See* Mem. 18-20. Northern Trust's refusal to clarify the identity of the Third Party Defendants in its Opposition, if anything, has confused the issue further because Northern Trust alternatively claims to have sued "individual trustees," Opp. 23, and then not to have sued individual trustees, Opp. 28. In any event, Northern Trust's "inten[tions]" are irrelevant. Opp. 23. If Northern Trust "intended" to sue individuals, it should have named individuals. Its decision to sue an amorphous group of people does not exempt it from the requirements of the Federal Rules and, instead, should result

in the dismissal of its claims. *See Beaman v. Souk*, 2011 WL 832506, at *5 (C.D. Ill. Mar. 3, 2011) (attached hereto as Ex. 1) ("This type of group pleading is not sanctioned by Rule 8(a) and should be discouraged: these claims should be summarily dismissed.").[2]    Northern Trust responds that it would be "premature" to clarify the relevant time period so that the individual defendants can be identified. Opp. 28. To the contrary, it was premature for Northern Trust to file its claim before it had a reasonable basis to assert claims against any of the individual trustees.

## II.    Northern Trust's Claims For Contribution Under Illinois Law Must Be Dismissed

Under Illinois law, Northern Trust has not and cannot state a claim for contribution.[3] Northern Trust has not cited a single Illinois case that has recognized common-law or equitable contribution for breach of fiduciary duty. Instead, Northern Trust relies on what it vaguely calls "the common law of trusts." Opp. 10, 12. But "[t]he common law is not a brooding omnipresence in the sky" – it "always is ***the law of some state.***" *S. Pac. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting) (emphasis added); *see also Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991). The relevant inquiry, therefore, is ***not*** whether Illinois courts have referred to the "common law" generally as the background against which the Illinois legislature makes laws, *Tersavich v. First Nat'l Bank & Trust*, 551 N.E.2d 815, 818 (Ill. App. Ct. 1990), or whether Illinois courts have accepted the obvious proposition that trustees owe beneficiaries a duty of loyalty. *Bd. of Trs. of Vill. of Barrington Police Pension Fund v. Dep't of*

---

[2] Indeed, Northern Trust has previously taken the position that "group pleading" is improper under Seventh Circuit law. Defs.' Mem., *NECA-IBEW Pension Fund v. N. Trust Corp.,* No. 10-5339 (N.D. Ill. Apr. 1, 2011), ECF No. 35 (excerpts attached hereto as Ex. 5); *see Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

[3] Northern Trust now agrees that the Illinois law of contribution and indemnity governs the Third Party Claims against the Firefighters Board. Opp. 10. The Firefighters Board discussed Louisiana law on contribution and indemnity only because the Third Party Complaint left it unclear what law was being invoked. The Louisiana law of immunity, however, does apply, since the contractual choice-of-law provision to which Northern Trust refers did not purport to deal with questions of immunity from suit.

*Ins.*, 570 N.E.2d 622, 628 (Ill. App. Ct. 1991). Nor is it relevant whether, in dicta, a federal court has cited the Second Restatement of Trusts, *Godfrey v. Kamin*, 1999 WL 756151, at *1 (N.D. Ill. Sept. 13, 1999) (Def. Ex. B).[4]

**Rather**, the question is whether the Illinois state courts have recognized the specific cause of action that Northern Trust asserts. The answer to that question is no, as the lack of case law in Northern Trust's Opposition demonstrates. Because Illinois courts have never affirmatively recognized Northern Trust's claim, it must be dismissed. "[D]istrict courts are encouraged to dismiss actions based on novel state law claims." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000); *accord Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007).

The applicable authority that **does** exist holds that Northern Trust's contribution claim is not recognized under Illinois law. *See* Mem. 6-10. Courts in this district have surveyed Illinois state case law and held that common-law or equitable contribution is "limited . . . to instances where the parties, either by agreement or by statute, were obligated together to a third party for a financial obligation." *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2004 WL 2108413, at *3 (N.D. Ill. Sept. 21, 2004) (Pl. Ex. H); *accord Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, 2010 WL 1172565, at *23 (N.D. Ill Mar. 22, 2010) (Pl. Ex. J); *Kudlicki v. MDMA, Inc.*, 2006 WL 1308617, at *5 (N.D. Ill. May 10, 2006) (Pl. Ex. R). Northern Trust, citing neither the Third Party Complaint nor case law, says that these cases are irrelevant because "the defendants and the Board[s] are jointly and severally liable to plaintiffs as a result of their participation in a single transaction." Opp. 13. But it does not specify what this "transaction" was, or explain how participation in that transaction could create a joint and indivisible obligation when Northern Trust's fiduciary duties to the Plans are distinct and

---

[4] References to "Def. Ex. __" are to the exhibits submitted along with the defendants' and third-party plaintiffs' opposition, and references to "Pl. Ex. __" are to the exhibits submitted along with the plaintiffs' and third party defendants' motion to dismiss and strike.

independent from the Boards' fiduciary duties. *See, e.g.*, *Stuart v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 369 N.E.2d 1262, 1272 (Ill. 1977) (recognizing that a co-trustee had its own duties to the trust, which it breached). Because there is no "common obligation" here, *Kinnavy*, 2010 WL 1172565, at *23-24, there can be no implied contribution.[5]

### III. Northern Trust's Claim For Contribution Under Michigan Law Must Be Dismissed

Northern Trust's argument for contribution under Michigan common law, Opp. 16, ignores the fact that the tort liability that Northern Trust and the Pontiac Boards would share, under Northern Trust's theory, would be tort liability **to the Pontiac Boards**, because, regardless of Northern Trust's decision to bring third party claims against them, the Pontiac Boards are the original plaintiffs in this action. In other words, the purported tort liability of the Pontiac Boards would be to themselves. But it makes no sense to say that a party is liable in tort to itself, and there is no Michigan case that says otherwise. *Cf. Ewanic v. Pepper Constr. Co.*, 712 N.E.2d 852, 855 (Ill. App. Ct. 1999).

### IV. Northern Trust's Claims for Implied Indemnification Must Be Dismissed

Again, Northern Trust cannot identify a single Illinois case that has imposed implied indemnification in similar circumstances. It tries to distinguish *Jadom Furniture Co. v. October Group International, LLC*, 2007 WL 2359767, at *3 (N.D. Ill. Aug. 14, 2007) (Pl. Ex. Q), in which the court stated that it did "not believe that a breach of fiduciary duty can support implied indemnification," on the ground that *Jadom* did not involve "traditional trust law principles." Opp. 20. But traditional trust law principles do not exist in the abstract. They must be instantiated in precedent, and here, there simply isn't any.

---

[5] Northern Trust also tries to distinguish *Canadian Pacific* and *Kudlicki* on the ground that there was no fiduciary duty in those cases. Opp. 13 n.9. But that argument **assumes** that the presence of fiduciary duty matters. In any event, that argument misses the point: *Canadian Pacific* and *Kudlicki* state the governing legal principle that limits equitable contribution to circumstances not present here.

Northern Trust relies on *People ex rel. Hartigan v. Community Hospital of Evanston*, 545 N.E.2d 226, 232-35 (Ill. App. Ct. 1989) and *American Environmental, Inc. v. 3-J Co.*, 583 N.E.2d 649, 653 (Ill. App. Ct. 1991), both of which **dismissed** implied indemnification claims for breach of fiduciary duty. *Community Hospital* and *American Environmental* did no more than acknowledge that certain kinds of non-tort implied indemnification are still viable in Illinois. Implied indemnification for breach of fiduciary duty, however, is not among the implied indemnification claims that are still viable. *Jadom*, 2007 WL 2359767, at *3.

Moreover, Northern Trust has pleaded itself out of court. Blamelessness is a prerequisite for implied indemnification under Illinois law. *See, e.g.*, *Riley Acquisitions, Inc. v. Drexler*, 946 N.E.2d 957, 967 (Ill. App. Ct. 2011).. Yet Northern Trust has alleged circumstances under which it *cannot* be blameless. Northern Trust itself alleges that it was the Plans' agent for securities lending, *e.g.*, *id.* ¶¶63, 103, and the legal theory of its Opposition is that it was a "co-trustee," Opp. 14. Therefore, under well established Illinois law, Northern Trust owed the Plans an **independent** duty of prudent management. *See, e.g.*, *Stuart*, 369 N.E.2d at 1272 (recognizing that a co-trustee had its own duties to the trust, which it breached); *Shaw v. Weisz*, 91 N.E.2d 81, 87 (Ill. App. Ct. 1950) (co-trustee owed duties to beneficiary). At the same time, Northern Trust's indemnification claim can only succeed if the Court finds the investment of Plaintiffs' lending collateral was imprudent. *See, e.g.*, Compl. ¶11. If the Court finds that that investment was imprudent, Northern Trust necessarily breached its independent duty of prudence and is not blameless.[6] Northern Trust therefore has not and cannot state a claim for implied indemnification under Illinois law.

---

[6] For the same reason, Northern Trust cannot state a claim for common-law indemnification under Michigan law, which imposes independent duties on co-trustees, *see, e.g.*, *Sloan v. Silberstein*, 141 N.W.2d 332, 338 (Mich. Ct. App. 1966) (imposing liability on co-trustee), and which disallows

**V.     Northern Trust's Individual-Capacity Claims Against The Boards Must Be Dismissed And Repleading To Allege Official-Capacity Claims Would Be Futile**

Northern Trust concedes that its Third Party Complaint contains no factual allegations that Board members ever acted outside the scope of their statutory authority.  *See* Opp. 23-24; *see also* Mem. 19.  The Boards, therefore, cannot be liable in their individual capacities.  *See, e.g.*, *Smith v. Jones*, 497 N.E.2d 738, 740 (Ill. 1986) (defining "official capacity").  Indeed, suing a "Board" in its "individual capacity" makes no sense.  *See* Mem. 18-19.  Even if Northern Trust tried to state a claim by naming the Boards in their official capacities, the attempt would fail because the Plans would have to indemnify the Boards for any recovery, thus reducing the amount of the Plans' recovery for Northern Trust's breach.  For this reason, these claims would be foreclosed under *BP Corp. North America Inc. Savings Plan Investment Oversight Committee v. Northern Trust Investments, N.A.*, 692 F. Supp. 2d 980 (N.D. Ill. 2010).

Contrary to Northern Trust's suggestion, Opp. 25 & n.17, such indemnification would indeed be required.  As the text of the statute makes clear, Illinois law includes trustees within the category of "employees" who "shall" be indemnified for any claims arising out of their official duties.  40 ILCS 5/1-108(a).[7]  Northern Trust next argues that mandatory indemnification of Board members should not require dismissal of its Third Party Complaint because *BP Corp.* was decided under ERISA.  However, the provision of ERISA on which *BP Corp.* relied, 29

---

common-law indemnification where the party seeking indemnification was *at all* actively negligent in its own duty to another, *Langley v. Harris Corp.*, 321 N.W.2d 662, 665 (Mich. 1982).

[7] After requiring mandatory indemnification for claims arising out of the official duties of an "employee," the statute goes on to specify the conditions under which such claims may be settled: "[I]f a majority of the board of trustees *who are not a party to the action*" – the action to which mandatory indemnification applies – "determine that the conduct which gave rise to the claim was not intentional, willful or wanton misconduct, the board of trustees may agree to settlement of the proceeding . . . ." 40 ILCS 5/1-108(a) (emphasis added).  The statute, therefore, clearly contemplates that trustees *will* be parties to an action to which mandatory indemnification under section 1-108(a) applies.

U.S.C. § 1109,[8] which provides that a fiduciary is "personally liable to make good to [an ERISA-governed] plan any losses to the plan resulting from [a] breach," has nearly identical counterparts under state law. Just as making a plan itself indemnify the trustees contravenes ERISA's requirement that a trustee be "***personally*** liable" to make good "***any*** losses," 29 U.S.C. § 1109(a) (emphasis added), so indemnification would contravene the verbatim requirements of 40 ILCS 5/1-114(a) (fiduciary "personally liable" for "any losses") and La. Rev. Stat. Ann. § 11:264.5(A) (same).

## VI. The Boards Are Immune From Liability

### 1. The Pontiac Boards Are Immune Under Michigan Law

Northern Trust's argument about immunity under Michigan law is nonresponsive because it relies on an immunity provision dealing with individuals, not agencies. Opp. 27. Yet again, Northern Trust is confused about whom it is suing. Whatever it may have "intended," Northern Trust named the Pontiac Boards as Third Party Defendants.

Under Michigan law, "governmental agenc[ies]" performing "governmental function[s]" are immune from tort liability." Mich. Comp. Laws § 691.1407(1). The Boards are "governmental agenc[ies]": they are "political subdivision[s]" within the meaning of the statute, *id.* § 691.1401(b), and political subdivisions are "governmental agenc[ies]," *id.* § 691.1401(d). Because the Boards were performing "governmental function[s]," *see Colton v. State Treasurer*, 521 N.W.2d 620, 621 (Mich. Ct. App. 1994), they are immune. Even if Northern Trust ***had*** named the individual Pontiac trustees, they would be immune. Northern Trust's position that the trustees are not immune because this case does not involve either "injuries to persons or damages to property" is untenable. Mich. Comp. Laws § 691.1407(5). Plaintiffs allege that Northern

---

[8] *See BP Corp.*, 692 F. Supp. 2d at 986 (citing 29 U.S.C. § 1109; *Free v. Briody*, 732 F.2d 1331, 1337-38 (7th Cir. 1984)).

Trust's breaches of fiduciary duty caused massive financial losses, Am. Class Action Compl. ¶1, and it has long been settled that money *is* property, *Garras v. Bekiares*, 23 N.W.2d 239, 242 (Mich. 1946).

### 2.    The CTPF Board Is Immune Under Illinois Law

The members of the CTPF Board are likewise immune. Northern Trust does not (because it cannot) rebut the clear Illinois precedent stating that a public officer's performance of his discretionary duties immunizes the officer from individual liability. *Kinzer v. City of Chicago*, 539 N.E.2d 1216, 1220 (Ill. 1989). Northern Trust argues that the common law doctrine of public official immunity does not apply to trustees, but true to form it fails to cite a single case in support. This is because any alleged investment decisions made by the CTPF Board are discretionary acts to which immunity applies. *McKay v. Kusper*, 624 N.E.2d 1140, 1148 (Ill. App. Ct. 1993); *see* Mem. 18-21. Northern Trust next contends that immunity cannot apply because the Illinois Pension Code subjects the CTPF Board to potential liability. 40 ILCS 5/1-114(a); Opp. 24. However, the case law is clear that section 1-114(a) is an avenue of recourse for pension plan participants and beneficiaries (whose standing is not in question), if *they* choose to sue their trustees. *See, e.g.*, *Ryan v. City of Chicago*, 654 N.E.2d 483 (Ill. App. Ct. 1995); *Gawryk v. Firemen's Annuity & Benefit Fund of Chi.*, 2004 WL 5645458 (Ill. Cir. Ct. Jan. 9, 2004) (attached hereto as Ex. 4). Further, Northern Trust ignores section 1-114(b), which states that "[n]o person shall be liable with respect to a breach of fiduciary duty . . . if such breach occurred before such person became a fiduciary or after such person ceased to be a fiduciary." 40 ILCS 5/1-114(b). Because Northern Trust cannot specify which trustees breached their duties or when the actionable breaches occurred, it effectively places all CTPF trustees within the protection of this statute. Indeed, the vast majority, if not all of the members of the

current CTPF Board are immune from any liability here because they weren't on the Board at the time any alleged breach could have occurred.

### 3.     The Firefighters Board Is Immune Under Louisiana Law

The Firefighters Board is also immune from suit.  Northern Trust's reliance on La. Rev. Stat. Ann. § 11:264.5(A) ignores the plain language of La. Rev. Stat. Ann. § 9:2798.1(B), which La. Rev. Stat. Ann. § 11:264.5(A) does not purport to override.  "Liability," provides section 9:2798.1(B), "shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."[9]  Northern Trust does not (because it cannot) contend that the Firefighters Board is not a "public entit[y]" or that its members are not its "officers" or "employees."  Thus, when read in conjunction with section 9:2798.1(B), section 11:264.5(A) imposes liability on non-public fiduciaries that do not enjoy statutory immunity, and on public entities or officials for claims based upon actions taken outside of the scope of their immunity.  Moreover, even if section 11:264.5(A) created liability in these circumstances, the sole statutory remedy is provided by section 11:264.7(B), which states that "[e]xclusive original jurisdiction for proceedings under [section 11:264.5(A)] shall be in the Nineteenth Judicial District Court of Louisiana."  This Court, therefore, lacks jurisdiction over Northern Trust's claims against the Firefighters Board.

---

[9]  In addition to the immunity for public entities and their officers and employees provided by section 9:2798.1(B), Firefighters Board members also enjoy the statutory immunity provided by La. Rev. Stat. Ann. § 9:2792.4.  That section provides immunity to members of state boards and commissions from any claim arising out of the exercise of their judgment in the formation and implementation of policy while acting as a member of the board or commission and within the scope of their functions and duties, unless the damages caused resulted from willful or wanton misconduct.  La. Rev. Stat. Ann. § 9:2792.4.

**VII.    Northern Trust's Individual-Capacity Claims Against The Firefighters and Pontiac Boards Must Be Dismissed For Lack of Personal Jurisdiction**

Northern Trust argues that because the Firefighters and Pontiac Boards decided to engage Northern Trust, an Illinois-based firm, as a lending agent, the Court has jurisdiction over the Board members in their individual capacity. But the Boards made that decision in their official, not in their individual, capacities – and personal jurisdiction over officers in their individual capacity requires purely **personal** contacts with the forum. Acts performed solely in an official capacity, to further the interests of the Plans, are not enough. *See* Mem. 22; *see also Rollins v. Elwood*, 565 N.E.2d 1302, 1318 (Ill. 1990) (holding that Illinois courts cannot assert jurisdiction over one who has entered the state "not to serve his personal interests, but to serve those of his employer or principal"). Northern Trust also relies on *Hadley v. Shaffer*, 2003 WL 21960406 (D. Del. Aug. 12, 2003) (Def. Ex. D), but there it was the individual corporate officers who had originally sued in the district of Delaware – quite different from this case, where the Firefighters **Plan** and Pontiac **Boards** initiated the action.

**VIII.    Northern Trust's Attempt to Cure Its Defective Counterclaim Fails**

Northern Trust's argument in support of its Counterclaim merely underscores the vast pleading deficiencies that CTPF has already identified. *See* Mem. 24-28. Significantly, regardless of who Northern Trust intended to countersue, Northern Trust has now stated **four times** that it **has not suffered any damages from any purported breach.** First, Northern Trust alleges in the Counterclaim itself that "**CTPF's overall program of securities lending pursuant to the SLA was profitable.**" Compl. ¶134. Second, Northern Trust states in its Opposition that "CTPF is required to make those payments . . . so there **will be** sufficient funds available to discharge CTPF's obligation to repay collateral to borrowers, **when all of its loans end and the loaned securities are returned.**" Opp. 30-31. Third, Northern Trust argues that CTPF is

11

required to "make up the shortfall . . . *when the loaned securities are returned.*" Opp. 32. Fourth, Northern Trust argues that "*eventually, Northern Trust . . . would be forced either to make up the difference itself or cause a default.*" *Id.* These arguments are fatal to Northern Trust's claim because it is black letter Illinois law that "to state a claim for breach of contract, one must be able to prove actual damage." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007). Northern Trust's speculative assertions that at some unspecified time in the future it may "eventually" be damaged are insufficient.[10] *See, e.g., Jackson v. Hammer*, 653 N.E.2d 809, 814 (Ill. App. Ct. 1995) ("Damages . . . to be recoverable, must not be merely speculative."); *Penn-Daniels, LLC v. Daniels*, 2009 WL 1475277, at *3 (C.D. Ill. May 27, 2009) (attached hereto as Ex. 6) ("A claim that future damages will be incurred is . . . insufficient.").

The remainder of Northern Trust's arguments fare no better. Tellingly, Northern Trust fails to cite any authority whatsoever. This is in and of itself is a basis for dismissal.[11] Further, Northern Trust grossly mischaracterizes the relevant facts. The SLA and the 1995 amendment to paragraph 10.3 require *only the CTPF Board in its official capacity* to cover collateral deficiencies, not CTPF as Northern Trust claims. *See* Opp. 30; Mem. Ex. A. Northern Trust simply states that it can sue CTPF because CTPF can sue Northern Trust. Opp. 31. This is not the law. "In Illinois, if a contract is entered into for the direct benefit of a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary." *City of Yorkville v. Am. S. Ins. Co.*, 654 F.3d 713, 716 (7th Cir. 2011). It simply does not follow that a

---

[10] Northern Trust admits that so far the lenders are the only parties to suffer damages, not Northern Trust. *See* Opp. 30. These statements confirm that Northern Trust is only seeking recovery from CTPF so it can have funds available to pay borrowers if in fact the borrowers suffer a loss. However, Northern Trust has not alleged that the borrowers have suffered a loss, and therefore cannot claim that it is somehow damaged from having to fulfill obligations to the borrowers. For this reason, contrary to Northern Trust's argument, this is exactly like a situation "where plaintiffs were complaining about fees they never actually paid." Opp. 32.

[11] *See United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority . . . forfeits the point." (citation omitted)).

party to a contract can countersue a third-party beneficiary for breach of an obligation that was "solely" allocated to a non-party to the action. Indeed, "[Northern Trust] do[es] not provide caselaw to support a finding that a non-party to a contract can breach that contract. In fact, such a claim is ludicrous." *Credit Gen. Ins. Co. v. Midwest Indemn. Corp.*, 916 F. Supp. 766, 772 (N.D. Ill. 1996).

Northern Trust's allegations are otherwise entirely conclusory and fail to adequately plead the elements of breach of contract. Even under a notice pleading standard, the complaint must "at a minimum, allege the terms of the contract, each element of the alleged breach and the resulting damages in a plain simple fashion." *WCC Funding Ltd. v. Gan Int'l*, 1994 WL 603084, at *2 (N.D. Ill. Oct. 31, 1994) (attached hereto as Ex. 7). As outlined above, Northern Trust has not alleged damages – it has alleged that it could possibly incur damages "eventually." Northern Trust has also not specified the terms of the contract that it alleges were breached and instead argues (again citing no authority) that it does not have to. Opp. 31. This argument is wrong. *See, e.g., Hoffman v. Nationwide Mut. Ins. Co.*, 2011 WL 3158708, at *8 (N.D. Ill. July 26, 2011) (Pl. Ex. M) (dismissing contract claim where "Plaintiffs do not identify a . . . contract provision that Defendants allegedly breached"). Moreover, even Northern Trust's effort to correct this defect in its briefing does not explain which "other of its payment obligations" CTPF has allegedly failed to "satisf[y]." Compl. ¶134.[12] Northern Trust's remaining allegations regarding its own performance of the condition precedent set forth in the contract and CTPF's

---

[12] Incorporating the allegations from the Third Party Complaint does not help. The paragraphs Northern Trust references (¶¶130-134) say nothing about CTPF's supposed breach. Opp. 31-32. Further, Northern Trust's attempt to use Plaintiffs' Complaint to bolster the Counterclaim fails, Opp. 31, because nowhere in the Amended Answer, Third Party Complaint, or Counterclaim are the allegations from the Complaint incorporated. *See* Mem. in Opp. to Mot. to Dismiss Countercls., *FedEx Corp. v. N. Trust Co.*, No. 08-2827, 2009 WL 7386408 (W.D. Tenn. Sept. 2, 2009) (ECF # 35) (attached hereto as Ex. 3) (devoting an entire section of its brief to a discussion of why plaintiffs' "own allegations are irrelevant to Northern's indemnification [counter]claim").

alleged breach contain no factual support and are therefore insufficient to state a claim under *Twombly*. 550 U.S. at 547; *see Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). Accordingly, Northern Trust's Counterclaim must be dismissed.

## IX.     Plaintiffs' Motion to Strike Affirmative Defenses Should Be Granted

Northern Trust's Affirmative Defenses also lack any factual support and fail to meet the requirements of Rule 8. *See Davis v. Elite Mortg. Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009). Northern Trust now asserts that these defenses "must all be read against the background of the Third Party Complaint." Opp. 33. Northern Trust's late effort to cure its Answer fails. First, the Third Party Complaint may be dismissed. Second, according to Northern Trust, all of the Third Party Defendants are legally distinct from the Plaintiffs. Opp. 23. Thus, the Third Party Complaint – which is not incorporated by reference in the Answer – is irrelevant to Northern Trust's Affirmative Defenses, which are too conclusory to survive a motion to strike. *See Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006).

Northern Trust provides no support for its contention that the Answer and Affirmative Defenses must be "read against the background of the Third Party Complaint." Opp. 33. But, even if those pleadings are read together, the distinction between the Plaintiffs and the Third Party Defendants shows that, rather than bolstering the Affirmative Defenses, the Third Party Complaint contradicts and undermines those Defenses. For example, the defenses of unclean hands and *in pari delicto* are "intended for situations in which the victim is a participant in the misconduct giving rise to his claim." *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004). Yet in its Opposition, Northern Trust claims that the alleged misconduct was carried out not by Plaintiffs, but by the Third Party Defendants. Nor did Northern Trust attempt to plead the elements of these defenses, as required. *Reis Robotics*, 462 F. Supp. 2d at 907. Similarly, in support of the defense of "actions and/or omissions by Plaintiffs," Northern Trust

14

pleaded no actions and/or omissions *by Plaintiffs*.  Of course, it is appropriate to strike such a defense when no factual support has been pleaded.

The other defenses of failure to mitigate, ratification, acquiescence, and assumption of risk are infirm for the same reasons.  Further, Northern Trust's late attempt to cure its pleading by, for example, asserting in its Opposition that the Boards "understood that they were adopting collateral investment guidelines that created a risk of default and accepted the risk because they wanted the yield that the strategy produced," Opp. 34, is a new statement of "fact" that is unsupported. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).  Plaintiffs therefore respectfully request that the Court strike seven of Defendants' Affirmative Defenses (nos. 15-19, 24 and 25).

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Third Party Defendants', Counterdefendant's, and Plaintiffs' Memorandum in Support of the Motion to Dismiss the Third Party Complaint and Counterclaim and Motion to Strike Certain Affirmative Defenses, Northern Trust's Third Party Claims and Counterclaim should be dismissed with prejudice and its Affirmative Defenses nos. 15-19, 24, and 25 stricken.

Dated: December 12, 2011

**KELLER ROHRBACK L.L.P.**

By: s/ Laura R. Gerber
Lynn L. Sarko
Derek W. Loeser
Raymond J. Farrow
Laura R. Gerber
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206-623-1900
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
rfarrow@kellerrohrback.com
lgerber@kellerrohrback.com

*Counsel for Plaintiff Firefighters'*
*Retirement System*

**SCHNEIDER WALLACE COTTRELL**
**BRAYTON KONECKY LLP**
Todd M. Schneider
Mark T. Johnson
**SCHNEIDER WALLACE COTTRELL**
**BRAYTON KONECKY LLP**
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

Garrett W. Wotkyns
Michael C. McKay
**SCHNEIDER WALLACE COTTRELL**
**BRAYTON KONECKY LLP**
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, AZ 85258
Telephone: 480-607-4368
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com
*Counsel for Plaintiff Firefighters'*
*Retirement System*

Respectfully submitted,

Avi Josefson
**BERNSTEIN LITOWITZ BERGER &**
**GROSSMANN LLP**
2835 N. Sheffield Avenue, Suite 409
Chicago, Illinois 60657
Telephone: 773-883-5382
avi@blbglaw.com

David Wales
Rebecca Boon
Brett Van Benthysen
**BERNSTEIN LITOWITZ BERGER &**
**GROSSMANN LLP**
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: 212-554-1400
dwales@blbglaw.com
rebecca.boon@blbglaw.com
brett@blbglaw.com
*Counsel for Plaintiff Public School Teachers'*
*Pension & Retirement Fund of Chicago*

Elizabeth Hoskins Dow, #6216262
**BAILEY & GLASSER LLP**
1003 Western Avenue
Joliet, IL 60435
Telephone: 815-740-4034
ldow@baileyglasser.com

*Counsel for Plaintiff Firefighters' Retirement*
*System*

Gerard J. Andree
**SULLIVAN, WARD, ASHER &**
**PATTON, P.C.**
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Tel: (248) 746-0700
Fax: (248) 746-2760
gandree@swappc.com

*Counsel for Plaintiffs The Board of*
*Trustees of the City of Pontiac Police &*
*Fire Retirement System and The Board of*
*Trustees of the City of Pontiac General*
*Employees Retirement System*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2011, I electronically filed the:

**PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION TO DISMISS THE THIRD PARTY COMPLAINT AND COUNTERCLAIM AND THE MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

with the Clerk of the Court using the CM/ECF system, which will send notice of such

filing to all known counsel of record.

DATED this 12th day of December, 2011.

/s/ Laura R. Gerber
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

18