IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No.  09 C 7203 |
| v. | ) ) | Judge Robert W. Gettleman |
| NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY, | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, | ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Louisiana Firefighters' Retirement, System, Public School Teachers' Pension

& Retirement Fund of Chicago, the Board of Trustees of the Pontiac Police & Fire Retirement

System, and the Board of Trustees of the City of Pontiac General Employees Retirement System, on behalf of themselves and all others similarly situated, have brought an amended putative class action complaint against defendants Norther Trust Investments, N.A. ("NTI") and the Northern Trust Company ("NTC") alleging breach of fiduciary duties and breach of contract. All of plaintiffs' claims arise out of their investment, either directly, indirectly, or both in defendant NTC's securities lending program ("SLP"). According to plaintiffs' complaint, through that program, NTC arranges loans of securities owned by its customers and/or sponsored funds to pre-approved borrowers, who use the securities for a variety of purposes. The borrowers pledge collateral equal to 102% of the market value of the loaned securities, usually in cash. NTC then invests the cash into fixed-income securities, which pay interest, generating revenue for the participants in the program. When the loans are terminated the collateral is returned to the borrowers, along with an additional payment or "rebate" as compensation for the use of the collateral. If the value of the borrowed securities increases, more collateral must be posted. If the value of the securities decreases, collateral is returned to the borrower.

The collateral is invested in commingled pools operated by defendants (the "Collateral Pools"). Because the amount of cash collateral held by defendants must be adjusted and the collateral must be repaid when the loan is terminated, at least some of the collateral must be held in conservative short-term liquid investments to preserve capital while generating nominal return.[1]

---

[1]A full description of the SLP and plaintiffs' claims can be found in this court's Memorandum Opinion and Order denying (in part) defendants' motion to dismiss. See Louisiana Firefighters' Retirement System v. Northern Trust Invs., N.A., 2011 WL 1770266 (N.D. Ill. 2011).

After the court denied defendants' motion to dismiss, defendants answered the amended complaint, raised 31 separate affirmative defenses, brought a third-party complaint asserting claims for contribution and indemnification against the Board of Trustees of the Louisiana Firefighters Retirement System, the Board of Trustees of the Public School Teachers and Pension and Retirement Fund of Chicago (the "CTPF Board"), the Board of Trustees of the City of Pontiac Police & Fire Retirement System, and the Board of Trustees of the City of Pontiac General Employees Retirement System, and brought a counterclaim for breach of contract against Public School Teachers and Pension and Retirement Fund of Chicago ("CTPF"). The third-party defendants have moved to dismiss the third party complaint, CTPF has moved to dismiss the counterclaim, and plaintiffs have moved to strike some of the affirmative defenses. For the reasons explained below, the motion to dismiss the third party complaint is granted, the motion to dismiss the counterclaim is denied, and the court strikes all 31 affirmative defenses.

## DISCUSSION

1. Motion to Dismiss Third-Party Complaint

The two count third-party complaint purports to bring claims for: (1) equitable and implied indemnification (Count I); and/or (2) contribution (Count II) against the third party defendants who are the Boards of Trustees of the individual plaintiff retirement funds (the "Boards"). The Boards have moved to dismiss on a number of grounds including that defendants' claims are not properly brought in a third-party complaint, and that neither indemnification nor contribution is available for claims of breach of fiduciary duty.

The third-party complaint is brought under Fed. R. Civ. P. 14(a)(1), which provides that:

A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.

3

"[T]he distinguishing characteristic of a claim brought under Rule 14(a) is that the defendant is attempting to transfer to the third-party defendant the liability asserted against the defendant by the original plaintiff." Forum Ins. Co. v. Ranger Ins. Co., 711 F. Supp. 909, 915 (N.D. Ill. 1989). "A third-party defendant's liability must be derivative of the impleading party's liability." Beale v. Revolution Portfolio, LLC, 2009 WL 1285527 at *2 (N.D. Ill. 2009) (citing U.S. Gen., Inc. v. City of Joliet, 598 F.2d 1050, 1053 (7th Cir. 1979)). Liability is derivative where it is dependent on the determination of liability in the original action. U.S. Gen. Inc., 598 F.2d at 1053.

In the instant case, the Boards argue that defendants' third-party complaint pursues a "blame the victim strategy." According to the Boards defendants are essentially alleging that if they are liable to plaintiffs for imprudently investing, then the Boards are more liable for hiring defendants and not stopping them from breaching their fiduciary duty.

Defendants' response is to repeat throughout their brief[2] that the third party complaint alleges that it was the Boards that chose to participate in the SLP, selected their own investment guidelines, knew precisely how defendants were implementing the guidelines and made the affirmative decision to "stay the course." For example, defendants' brief argues:

> The Northern defendants do not believe the investment choices were imprudent. . . . But if plaintiffs are right that the collateral investment strategies the Boards chose were obviously imprudent, then they and their trustees bear sole responsibility for that imprudence because they made the choice to accept a certain level of risk in return for the potential investment rewards. [p. 2; emphasis in the original.]

> . . .

_____

[2]Defendants' 35 page brief is presented in 11 point font in violation of Local Rule 5.2(c)(1) and this court's standing order.

> Although the Boards now contend that Northern Trust failed to follow those guidelines, the Third Party Complaint alleges exactly the opposite (¶16) and claims that it was the Boards that affirmatively decided to adopt the very strategies they now say were imprudent . . . . [p. 8]
>
> .   .   .
>
> Based on these factual allegations, the Northern defendants seek equitable and implied indemnification against the Boards in Count I of the their Third Party Complaint on the ground that <u>the Boards alone are responsible for the investment choices they made and they alone caused the losses for which they seek recovery</u>. [p. 9; emphasis added.]

As is readily apparent from the examples quoted above, defendants' theory is not that if they are found liable, then the Boards are liable to them. Rather, defendants' theory is that if plaintiffs have been harmed at all, it is by the Boards' actions, not by defendants' action. This is a defense, not a third-party claim.

As observed by Judge Pell in <u>Parr v. Great Lakes Express Co.</u>, 484 F.2d 767, 769 (7th Cir. 1973):

> We do not understand the function or purpose of this count. If the accident was solely and proximately caused by someone else's negligence this would seem to be a complete defense to the original action and would not seem to be the basis of a third-party action, which presupposes liability on the part of the original defendant which he is attempting to pass on to the third-party defendant.

Nor can defendants state a claim for implied indemnity or equitable contributions. Implied indemnity generally rises where the parties have failed to include an indemnity provision in an agreement and there is reason for the court to read one in. <u>Mizuho Corporate Bank v. Corey & Assoc., Inc.</u>, 341 F.3d 644, 652 (7th Cir. 2003). "[I]mplied indemnity actions lie only where one party is in some sense `at fault,' and the other party is blameless though liable – typically because of strict liability, <u>respondeat</u> <u>superior</u>, implied warranty, or some other legal principle that imposed liability regardless of fault." <u>Id</u>. A claim of implied indemnity arises

under Illinois law only where the indemnitee (in the instant case defendants) was guiltless with respect to the underlying claim.  Id.

In the instant case, if the defendants are found liable to plaintiffs, it can be based only on defendants' own breaches of fiduciary duties, not on any legal principle that makes them liable for the Boards' actions.  Defendants can be liable to plaintiffs based only on their own guilt. Because they cannot be both blameless and liable, they have no claim for implied indemnity.[3]

Count II of the third-party complaint alleging contribution fairs no better.  Recognizing that they do not qualify for relief under the Illinois Joint Tort Feasors Contribution Act, 740 ILCS 100/2, because breach of fiduciary duty allegations do not constitute tort claims, see Kinzer v. City of Chicago, 539 N.E.2d 1216, 1220 (Ill. 1989), defendants assert a claim for equitable contribution.  Under this theory, "the right to contribution arises due to the compulsory payment by a joint obligor of more than his share of a common obligation."  Flynn v. Levy, __ F.Supp.2d __, 2011 WL 6793997 (N.D. Ill. 2011) (quoting Ruggio v. Ditkowsky, 147 Ill.App.3d 638, 642 (2d Dist. 1986).  The right to equitable contribution typically arises in the context of co-insurers, but Illinois courts have found a right to equitable contribution outside the insurance context when the parties have a joint financial obligation to a third party created by agreement or statute.  Flynn, 2011 WL 67937997 at *4; Canadian Pacific Ry Co. v. Williams-Hayward Protective Coating, 2004 WL 2108413, *3 (N.D. Ill. 2004).

---

[3]The result is the same under Louisiana law, which defendants argue applies to the Louisiana Firefighters Retirement System's claims, Carter v. Dietz, 505 So.2d 106, 108 (La. App. 1987), and Michigan law, Oberle v. Hawthorne Metal Prods. Co., 480 N.W.2d 330, 333 (Mich. Ct. App. 1991), Lakeside Oakland Dev., LC v. H&J Beef Co., 644 N.W.2d 765, 772 (Mich. Ct. App. 2002) which the parties agree applies to the Pontiac plaintiff's claims.

In the instant case, there is no statute or agreement that could create a joint obligation by the Boards and defendants to plaintiffs. Any duty the Boards may owe to plaintiffs arises from their positions as trustees. Any duty owed by defendants comes from their contractual agreements and their position as investment managers. Indeed, as the Boards point out, rather than suggesting a joint obligation by the Boards and defendants to plaintiffs, the agreements signed by defendants contain indemnification clauses requiring the <u>defendant</u> to indemnify the plans from any losses caused by defendants' failure to make a reasoned determination of the quality and suitability of Collateral Investment; or defendants' failure otherwise to perform its duties and responsibilities. Thus, there is no joint obligation owed to plaintiffs by the Boards and defendants. <u>See</u> <u>Del Monte Fresh Produce, N.A., v. Kinnavy</u>, 2010 WL 1172565 at *24 (N.D. Ill 2010) (Parties' obligations must arise out of same source.), and Count II fails to state a claim.

Accordingly, for the reasons described above, the Boards' motion to dismiss the third-party complaint is granted.

2.      CTPF's Motion to Dismiss the Counterclaim

The defendants have brought a counterclaim against CTPF, alleging that CTPF breached

its obligations under the SLA to ensure that the collateral and the CTPF Custom Collateral Fund

is sufficient to repay borrowers when loans or securities are recalled.  The count alleges that

there was a collateral deficiency in the CTPF Custom Fund during the period in question, that

defendants repeatedly notified CTPF that it was responsible for making-up those losses under the

SLA, but that CTPF has consistently refused to pay its obligations.  Defendants seek a

declaration that CTPF is required to make those payments and an order compelling it to do so, to

ensure sufficient funds to disclose CTPF's obligation to repay collateral borrowers when the

loans and/or the loan securities are returned.

CTPF has moved to dismiss on several grounds, the most simplistic being that it is not a

party to the contract allegedly breached.  The SLA that is the subject of the counterclaim was

entered into by defendant NTC on the one side, and the City Treasurer of Chicago and the CTPF

Board on the other.  It is axiomatic that non-parties to a contract are not liable for its breach.

Swiss Reinsurance America Corp. v. Access General Agency, Inc., 571 F. Supp2d. 882, 885

(N.D. Ill. 2008).

Defendants counter by arguing that CTPF has sued them for breach of the same contract,

and they are simply countersuing against the entity that sued them.  According to defendants

"[i]f CTPF can sue [defendants] for allegedly breaching the agreement, then it necessarily

follows that [defendants] can counterclaim against CTPF for breaching its obligations under the

very same agreement."  This, of course, is erroneous.  If the wrong party has sued defendants,

then the proper course would be to either move to dismiss Count II of the complaint, or to seek

an order requiring a substitution of the correct plaintiff, not a counterclaim for breach of contract against a non-party to the contract.

CTPF suggests in its reply brief that it is suing as a third-party beneficiary of the SLA, but it cites to no such allegation in the amended complaint and the court has found none. This leaves a serious question as to whether CTPF is the proper plaintiff for the breach of contract claim in Count II of the amended complaint. There is no question, however, that the counterclaim cannot state a claim for breach of the SLA against CTPF. Accordingly, the motion to dismiss the counterclaim is granted. The parties are directed to meet and confer to determine whether Count II of the amended complaint must be amended to reflect the proper plaintiff; and to report to the court at the next status conference.

3.    Affirmative Defenses

Finally, plaintiffs have moved to strike some (15-19, 24, 25) of the 31 affirmative defenses raised by defendants, arguing that they essentially recycle the ill-fated theme of the third party-claim by blaming plaintiffs for defendants' failures. This court applies a three-part test to affirmative defenses subject to a motion to strike (Davis v. Elite Mortgage Services, 592 F. Supp.2d 1052, 1058 (N.D. Ill. 2004)):

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of the Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge – in other words, if it is impossible for the defendant to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken.

To survive a Rule 12(b)(6) challenge, affirmative defenses must plead sufficient facts to suggest plausibly a right to relief. Twombly, 550 U.S. at 555-56. This court, like most district courts, applies Twombly's standards to motions to strike affirmative defenses (see Reimer v.

9

Chase Bank USA, N.A., 274 F.R.D. 637 (Cole M.J., collecting cases). None of the 31 asserted affirmative defenses presents any factual predicate. They do not incorporate by reference the answer or the allegations of the third-party complaint or counterclaim. As such, they are simply conclusory allegations. They fail under Fed. R. Civ. P. 8, and are stricken.[4]

### CONCLUSION

For the reasons described above, the third party defendants' motion to dismiss the third-party complaint is granted. The motion to dismiss the counterclaim is granted, and plaintiffs' motion to strike the affirmative defenses is granted, and all 31 affirmative defenses are stricken.


**ENTER:      February 23, 2012**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[4]Defendants' principal argument in opposition to the motion to dismiss the affirmative defenses is that the allegations of the third-party complaint should be implicitly read into the defenses to provide the factual predicate the court has found lacking. Because the court has dismissed the third-party complaint, and in any event no such implicit incorporation by reference is permitted, defendants are granted leave to replead affirmative defenses consistent with the findings of this opinion.