IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY, <br><br> Defendants. | The Hon. Robert W. Gettleman, *Judge Presiding.* <br><br> Magistrate Judge Susan E. Cox <br><br> Case No. 09-CV-07203 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR AN ORDER CONFIRMING THAT
PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY BASED
UPON THE SECURITIES LENDING FEE HAS NOT BEEN DISMISSED**

Defendants, The Northern Trust Company ("NTC") and Northern Trust Investments, Inc. ("NTI") (collectively "Northern Trust"), submit this brief in opposition to plaintiffs' motion seeking clarification of this Court's May 6, 2011 Memorandum Opinion and Order, Dkt. No. 71 ("May 2011 Order"), which granted in part and denied in part Northern Trust's motion to dismiss the Amended Class Action Complaint.

Plaintiffs acknowledge that the Court's May 2011 Order dismissed in its entirety Count III of their complaint (alleging breach of a duty of good faith and fair dealing) and that it dismissed their breach of contract claim in Count II to the extent that it was based on the assertion that Northern Trust had breached its contractual obligations by failing to negotiate a

lower fee for NTC's services as securities lending agent for certain collective funds. But plaintiffs contend that the Court did ***not*** dismiss the breach of fiduciary duty claim they asserted in Count I based on the identical theory—that defendants had an obligation to negotiate a lower securities lending fee for those funds. For the reasons outlined below, this Court's May 2011 Order necessarily and properly rejected ***all*** of plaintiffs' fee-based claims.

## BACKGROUND

The main thrust of plaintiffs' Amended Complaint is that Northern Trust imprudently invested securities lending cash collateral and thereby caused investment losses to two different types of Northern Trust customers.[1] One category consists of customers who loaned their own securities ("direct lending customers"). The other consists of customers who did not lend their own securities, but rather invested in certain Northern Trust collective funds that engaged in securities lending ("Lending Collective Funds"). NTC acted as securities lending agent both for its direct lending customers and for the Lending Collective Funds, each of which paid NTC a fee for its services equal to an agreed-upon percentage of the net revenue generated by the investment of securities lending collateral. The Lending Collective Funds in which plaintiffs invested paid a higher fee than some direct lending customers had negotiated. Plaintiffs allege that this fee differential also gives rise to claims for breach of fiduciary duty, breach of contract, and breach of a duty of good faith and fair dealing.

Specifically, in Count I of their Amended Complaint, plaintiffs allege that defendants had a fiduciary duty to negotiate the lowest possible securities lending fee for the Lending Collective Funds and that it breached that duty by entering into a lending agreement under which the Lending Collective Funds agreed to pay NTC a fee equal to 40% of their net securities lending

---

[1] On March 29, 2012, plaintiffs filed a Second Amended Complaint. The allegations relating to the fee claim were, however, unaffected by that amendment. Therefore, we refer only to the Amended Complaint in this memorandum.

revenues. Am. Compl., Dkt. No. 32 at ¶¶ 133, 134-36.[2] Plaintiffs make the very same claim, using virtually identical language, in Count II of their Amended Complaint, alleging that Northern Trust breached a contractual obligation by negotiating securities lending fees that were higher than those paid by direct lending customers. Am. Compl., Dkt. No. 32 at ¶¶ 145-46. Plaintiffs repeat the same claim in Count III as well on the theory that Northern Trust breached a claimed duty of good faith and fair dealing. Am. Compl., Dkt. No. 32 at ¶¶ 150-51.

Northern Trust moved to dismiss all of these claims. We pointed out that each of the named plaintiffs who invested in one or more Lending Collective Funds had signed a Collective Fund Custody Agreement ("CFCA") in which it specifically agreed that a 40% securities lending fee would be charged to the particular Funds in which it invested. We demonstrated that Northern Trust owed no fiduciary or contractual obligation to the named plaintiffs to negotiate a lower fee split—even if NTC sometimes negotiated lower securities lending fees with certain direct lending customers. We also argued that plaintiffs' consent to the fees barred any claim they might assert under *any* legal theory, pointing out that none of the named plaintiffs claimed to have been inadequately informed or misled into believing that the Lending Collective Funds would pay fees that were as low as those NTC had negotiated with some of its direct lending customers. In fact, three of the four plaintiffs could not have been misled because they were also direct lending customers and had themselves negotiated lower fee splits for the services NTC

---

[2] In fact, documents plaintiffs attached to their original complaint belie the allegation that all of the Lending Collective Funds paid a 40% fee; they show that different Lending Collective Funds paid different securities lending fees, which ranged from 25% to 40%. *See* Class Action Compl., Dkt. No. 1 at Ex. 5 p. 21.

provided to them directly as their lending agent. *See* Defs' Memo. in Supp. of Mot. to Dismiss, Dkt. No. 50 at 7-10; Defs' Reply Memo. in Supp. of Mot. to Dismiss, Dkt. No. 67 at 2-6.[3]

In their three-page response to these arguments, plaintiffs did not differentiate among their three different fee-related legal theories based on breach of fiduciary duty, breach of contract, and breach of a duty of good faith and fair dealing. *See* Pls' Memo. in Opp. to Defs' Mot. to Dismiss, Dkt. No. 65 at 23-25. Instead, plaintiffs argued that NTI, as trustee under the instrument governing the Lending Collective Funds (the "Declaration of Trust"), had a fiduciary obligation to negotiate "reasonable" securities lending fees with NTC in its capacity as securities lending agent; plaintiffs contended, without citing any authority or facts, that the 40% fee that was paid by the Lending Collective Funds in which they invested was not "reasonable" because it was higher than the fees that some direct lending customers had negotiated.[4] Plaintiffs also claimed that it was irrelevant that they had signed contracts expressly agreeing to the allegedly unreasonable fees because Northern Trust had not specifically disclosed that it had negotiated lower fees with some direct lending customers. *Id.*

In its decision, the Court dismissed plaintiffs' claim "in Count II" that defendants breached their contractual duties by negotiating fees that were higher than those negotiated by some of the direct lending customers. The Court noted that the CFCAs expressly authorized the fees in question and that the fees were both disclosed and agreed to by plaintiffs. Significantly, the Court concluded that "[t]he fact that defendants had negotiated smaller fees with certain

---

[3] As Northern Trust pointed out, plaintiff Public School Teachers' Pension & Retirement Fund of Chicago ("CTPF") had negotiated a 15% fee split, while the Pontiac entities had negotiated a 35% fee. Defs' Reply Memo. in Supp. of Mot. to Dismiss, Dkt. No. 67 at 5.

[4] Significantly, plaintiffs did not allege, nor did they argue, that the services NTC provided to the Lending Collective Funds were the same as those provided to direct lending customers. Nor did plaintiffs acknowledge the fact that securities lending fees for large direct lending customers are often part of a negotiated package of fees for various services, making an apples-to-apples comparison impossible. *See* Defs' Reply Memo. in Supp. of Mot. to Dismiss, Dkt. No. 67 at 5 n. 5.

direct participants (including some of the instant plaintiffs) does not compel defendants to negotiate a similar fee with all customers." May 2011 Order at 8. The Court closed by reiterating that "Plaintiffs were told and agreed to the fees in question. They cannot claim that defendants breached a contract by charging the agreed upon fee." *Id*.

When Northern Trust answered the Amended Complaint on June 30, 2011, it made very clear that it interpreted this Court's May 2011 Order as dismissing ***all*** of the fee claims, regardless of legal theory. *See* Declaration of Todd J. Ehlman ("Ehlman Dec.") at ¶ 4.A (attached hereto). Thus, Northern Trust's response to the paragraphs in Count I raising the fee claim as a breach of fiduciary duty claim stated that "[c]laims based on the fee of 40% have been dismissed and therefore no answer is required." *Id*. Northern Trust also objected on the same ground to any discovery aimed at plaintiffs' fee-based claims, however denominated. *Id.* at ¶ 4.B. Northern Trust took these positions because the Court's May 2011 Order rejected the central premise of all of plaintiffs' fee claims, regardless of the legal theory asserted—namely, that because Northern Trust "had negotiated smaller fees with certain direct participants," it had a duty "to negotiate a similar fee with all customers." May 2011 Order at 8.

As plaintiffs concede in their brief, for more than a year Northern Trust has consistently taken the position that this Court's May 2011 Order eliminated any and all claims relating to the 40% fee. During that time, Northern Trust responded to extensive discovery relating to the non-fee claims, plaintiffs filed a Second Amended Complaint without mentioning any supposed need to "clarify" the May 2011 Order, and Northern Trust undertook the considerable effort of answering that new pleading and alleging affirmative defenses and a counterclaim. Ehlman Dec. at ¶ 4.B.i-v. Nevertheless, it was not until July 2012 that plaintiffs finally decided to seek

5

clarification from this Court. *Id.* at ¶ 5-6. For the reasons outlined below, plaintiffs' motion should be denied.

## ARGUMENT

### I. The Court's May 2011 Order Rejected The Central Premise Of All Of Plaintiffs' Fee-Based Claims.

Plaintiffs argue that the Court's May 2011 Order cannot be read as dismissing any portion of their breach of fiduciary duty claim because the Court supposedly "sustain[ed] the breach of fiduciary duty claim in full." Pls' Mot. to Clarify, Dkt. No. 178 at 8. In fact, however, there is no indication in the Order that the Court intended to sustain the fee claim under a breach of fiduciary duty theory, while dismissing it under a contract theory. In sustaining the breach of fiduciary duty claim, the Court discussed *only* the issue of investment prudence and did not mention—much less uphold—any allegations of breach of fiduciary duty based on the negotiation of securities lending fees. May 2011 Order at 5.

Plaintiffs rely on the fact that the Court's opinion expressly discusses the fee claim only in the context of their breach of contract theory (Count II). *Id.* at 5, 8-9. But they ignore the Court's reasoning, which rules on the crucial duty issue raised in **both** Counts I and II, holding that the mere fact that Northern Trust had negotiated lower fees with certain direct lending customers did not impose an obligation on Northern Trust to negotiate lower fees for the Lending Collective Funds in which plaintiffs invested. *Id.* at 8. As plaintiffs themselves acknowledge, such a purported obligation provided the linchpin not only for their contract claim, but for their breach of fiduciary duty claim as well: the "gravamen of the fee component of Plaintiffs' breach of fiduciary duty claim is that Defendants breached their fiduciary duties to indirect participants by negotiating a securities lending fee that was more favorable to Northern Trust than the fees it had negotiated with direct participants." Pls' Mot. to Clarify, Dkt. No. 178

6

at 3.[5] By rejecting the "gravamen" of plaintiffs' breach of fiduciary duty claim, the Court necessarily rejected plaintiffs' fee claims in their entirety.

The Court concluded by stating that defendants' motion to dismiss was "granted in part and denied in part" and directing defendants to answer "Counts I and II of the amended complaint, *consistent with this opinion*." May 2011 Order at 9 (emphasis added). Given the Court's unequivocal rejection of plaintiffs' claim that Northern Trust had an obligation to negotiate lower fees for the Lending Collective Funds because it negotiated lower fees with some direct lending customers, the only reasonable conclusion that could be drawn from the Court's direction is that the fee claims had been dismissed in their entirety, no matter where they appeared in the complaint. Indeed, if the Court had concluded—as plaintiffs now contend—that plaintiffs had offered a viable breach of fiduciary duty theory, then the Court would have addressed Northern Trust's *other arguments* for dismissal of plaintiffs' fee-based breach of fiduciary duty claims, including its argument that plaintiffs had consented to the alleged breach and that claims by two of the plaintiffs were barred by the statute of limitations. *See* Defs' Memo. in Supp. of Mot. to Dismiss, Dkt. No. 50 at 8-9; Defs' Reply Memo. in Supp. of Mot. to Dismiss, Dkt. No. 67, at 4-6. The Court did not need to address those issues precisely because it had already rejected the "gravamen" of plaintiffs' theory of breach of fiduciary duty.

Plaintiffs concede, for purposes of their motion, that the Court properly dismissed the fee claim in Count II because defendants had no contractual obligation to negotiate a "similar fee

---

[5] Plaintiffs' theory was, in turn, based on their assertion that Northern Trust was effectively negotiating with itself because its schedule of securities lending fees for the various Lending Collective Funds was set forth in the Securities Lending Authorization Agreement between NTI, as trustee of the Collective Funds, and NTC, as securities lending agent. Plaintiffs argued that the Declaration of Trust imposed both a contractual and a fiduciary duty on NTI to negotiate "reasonable" or even the lowest possible securities lending fees. *See* Pls' Mem. in Opp. to Defs' Mot. to Dismiss, Dkt. No. 65 at 23. The Court properly rejected this argument in dismissing plaintiffs' fee claim by focusing instead on the fact that each plaintiff specifically *agreed* to the fees in question before investing in the Lending Collective Funds.

7

with all customers." Pls' Mot. to Clarify, Dkt. No. 178 at 5. They argue, however, that the contract analysis is different than the fiduciary duty analysis. *Id.* at 6-9. But the Court's holding that "[t]he fact that defendants had negotiated smaller fees with certain direct participants (including some of the instant plaintiffs) does not compel defendants to negotiate a similar fee with all customers" is not limited to any particular legal theory. Furthermore, as defendants pointed out in their motion to dismiss, under traditional fiduciary law, a fiduciary has no obligation to ensure that the fees it charges are "reasonable," let alone that it is charging the lowest possible fee. Defs' Memo. in Supp. of Mot. to Dismiss, Dkt. No. 50 at 9-10. As the Seventh Circuit has explained, where fees are concerned, the "rule in trust law is straightforward: A trustee owes an obligation of candor in negotiation, and honesty in performance, but may negotiate in his own interest and accept what the settlor or governance institution agrees to pay." *Jones v. Harris Assocs. L.P.*, 527 F.3d 627, 632 (7th Cir. 2008), *rev'd on other grounds*, 130 S. Ct. 1418 (2010). Thus, "[t]he existence of the fiduciary duty does not imply judicial review [of fees] for reasonableness…." *Id.* at 633. This "straightforward" principle is fatal to the only fee claim plaintiffs allege in Count I of their Amended Complaint—that Northern Trust violated its fiduciary duty by failing to charge the Lending Collective Funds in which plaintiffs invested a fee that was as low as the fees NTC charged to certain direct lending customers.

In their brief, plaintiffs contend that all "transactions in which fiduciaries have direct dealings with their beneficiaries"—including fee agreements—"are subject to special scrutiny" and that the "burden is on the fiduciary to show that the transaction was fair." Pls' Mot. to Clarify, Dkt. No. 178 at 10. Indeed, plaintiffs go so far as to contend that a fee agreement must be "presumed to be fraudulent" until the fiduciary proves by "clear and convincing evidence" that it was "fair and equitable." *Id.* at 12. But this is a completely new argument that plaintiffs

8

did *not* make in their original three-page opposition to defendants' motion to dismiss the fee claim. Plaintiffs cannot belatedly seek reconsideration of the Court's ruling now, more than a year after it was issued, based on arguments they failed to make the first time around and therefore waived. Moreover, plaintiffs' new argument is simply wrong. None of the cases plaintiffs cite involved fee agreements; instead, all of them involved a fiduciary who, without the agreement of the beneficiary, either misappropriated assets belonging to the trust or the beneficiary or purchased them at a bargain price.[6]

In each of the cases plaintiffs cites, the fiduciary had an obligation to put the interests of the beneficiary first and therefore bore the burden of proving that any self-dealing transaction involving the beneficiary's property was fair to the beneficiary. But, as the Seventh Circuit explained in *Jones*, that is not the standard that applies to a fiduciary who is negotiating its own fees. On the contrary, the ordinary (and entirely sensible) rule is that, when it comes to their own fees, fiduciaries are entitled to negotiate in their own self-interest. That is particularly true in a case like this, where the fee was agreed upon up-front, *before* the defendants entered into any relationship that could be deemed to give rise to fiduciary obligations to plaintiffs.

*Jones* explains that "the question a court will ask, if the fee is contested" is not whether the fee was reasonable but rather "whether the client made a voluntary choice *ex ante* with the benefit of adequate information." *Jones*, 527 F.3d at 633. As we pointed out in briefing the motion to dismiss, plaintiffs do not allege in their Amended Complaint that their decision to

---

[6] In *Prodomos v. Everen Secs., Inc.*, 341 Ill.App.3d 718, 793 N.E.2d 151, 156 (1st Dist. 2003), a faithless agent misappropriated its principal's investment opportunity for its own benefit. In *Home Fed. Sav. & Loan Ass'n v. Zarkin*, 89 Ill.2d 232, 432 N.E.2d 841, 848 (1982), a land trustee bought real property belonging to the trust at a bargain price. In *In re Estate of Miller*, 334 Ill.App.3d 692, 778 N.E.2d 262, 264-66 (5th Dist. 2002), an elderly man gave his sister a power of attorney, which she used to transfer his assets to herself. *Janowiak v. Tiesl*, 402 Ill.App.3d 997, 932 N.E.2d 569, 478 (1st Dist. 2010), is also inapposite because it involved the propriety of a release provided by a beneficiary to a trustee.

invest in the Lending Collective Funds and to sign the CFCAs setting a 40% fee for securities lending services was not voluntary or that it was made without the benefit of adequate information.[7]  Defs' Memo. in Supp. of Mot. to Dismiss, Dkt. No. 50 at 7-10; Defs' Reply Memo. in Supp. of Mot. to Dismiss, Dkt. No. 67 at 5.  Accordingly, there was and is no basis for a claim that defendants violated their fiduciary duties by charging fees that plaintiffs specifically agreed to pay.

## II.  Plaintiffs' Arguments About Disclosure And Consent Are Irrelevant And Wrong.

As they did in opposing defendants' motion to dismiss, plaintiffs cite *Clayton v. James B. Clow & Sons*, 154 F.Supp. 108, 116 (N.D. Ill. 1957), for the proposition that "the beneficiary of a trust is not bound by his consent to a breach of trust unless the consent was given with full knowledge of all the facts."  Plaintiffs argue that Northern Trust cannot rely on plaintiffs' written consent to the securities lending fees in the CFCAs because consent is an affirmative defense and Northern Trust bears the burden of showing that it made a full and fair disclosure, which (according to plaintiffs) would include disclosure of the fact that it had negotiated securities lending fees that were lower than 40% with certain direct lending customers. This argument should be rejected for two reasons.

First, under plaintiffs' own cases consent is relevant only if there was a breach of fiduciary duty in the first place.  Here, for all of the reasons outlined in Part I above, the Court properly concluded that Northern Trust did not breach any fiduciary duty by charging a 40% fee to the Lending Collective Funds in which plaintiffs invested.  As the Court expressly held,

---

[7] Plaintiffs could not plausibly make such an assertion.  All three of the plaintiffs that were direct lenders knew that they themselves had negotiated rates lower than 40%.  Defs' Memo. in Supp. of Mot. to Dismiss, Dkt. No. 50 at 10; Defs' Reply Memo. in Supp. of Mot to Dismiss, Dkt. No. 67 at 5.  And the fourth plaintiff (Louisiana Firefighters' Retirement System), which invested only in Lending Collective Funds, is a large and sophisticated entity that clearly had the ability to "shop" for the best possible deal. Defs' Reply Memo. in Supp. of Mot. to Dismiss, Dkt. No. 67 at 5-6.

Northern had no obligation to give the Lending Collective Funds the benefit of the lower securities lending fees it had negotiated with certain direct lending customers (including three of the four plaintiffs). May 2011 Order at 8. And plaintiffs have never claimed that Northern Trust breached its fiduciary duty by tricking or coercing them into agreeing to the fees that were clearly set forth in the CFCAs. Because there was no breach of trust, the question of whether plaintiffs consented to a breach of trust is beside the point.

Second, even if the Court needed to reach the issue of consent (which it did not), Northern had no obligation, when negotiating with potential investors in its Lending Collective Funds, to affirmatively volunteer the fact that it had negotiated a lower fee split with some direct lending customers. Indeed, it is absurd for CTPF or either Pontiac entity to make such an argument because they themselves clearly *knew* that direct lending customers were sometimes able to negotiate lower fee splits, since they themselves had done so. In any event, plaintiffs cite no principle that requires a fiduciary to disclose not only what the fees will be for the particular products in which the would-be client is considering investing, but also the fees it charges for its services in an entirely different context. So long as the fee the client will be required to pay is known, the would-be client has all it needs to make an informed investment decision.[8]

Plaintiffs here are all sophisticated investors, who decided to invest a portion of their portfolios in collective index funds. They had their choice among a variety of different funds that Northern Trust or other investment managers offered, including some that engaged in

---

[8] Plaintiffs point out that the case we cited for this proposition in the motion to dismiss briefing was reversed by the Second Circuit in *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*, 595 F.3d 86 (2d Cir. 2010). In that case, the court reversed the grant of a motion to dismiss a securities fraud complaint because it concluded that the defendant had mischaracterized its fees in violation of SEC regulations applicable to mutual funds; the court held that such a mischaracterization could be material to investors. *Id.* at 91-95. In this case, there is no claim that the charges were in any way mischaracterized.

securities lending and some that did not. They knew what the securities lending fees would be for the Lending Collective Funds in which they chose to invest and specifically agreed to the payment of those fees. If plaintiffs thought the fees were too high, they could have and should have shopped for different collective index fund products offered by other providers.[9] But what plaintiffs should not be permitted to do—and what the Court has already concluded they cannot do—is to agree to pay the fully-disclosed fee and then, years later, sue on the theory that Northern Trust somehow had an obligation to give them a better deal.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion should be denied.

Respectfully submitted,

Dated: August 14, 2012                          /s/ Caryn L. Jacobs

Caryn L. Jacobs                                 Michele Odorizzi
WINSTON & STRAWN LLP                            MAYER BROWN LLP
35 South Wacker Drive                           71 South Wacker Drive
Chicago, Illinois 60601                         Chicago, Illinois 60606
(312) 558-5600                                  (312) 782-0600
cjacobs@winston.com                             modorizzi@mayerbrown.com

*Counsel for Defendants Northern Trust Investments, Inc. and The Northern Trust Company*

---

[9] According to the amended complaint in *Glass Dimensions, Inc. v. State Street Corp.*, No. 10-cv-10588 (D. Mass. filed Apr. 8, 2010), Am. Compl., Dkt. No. 14 at ¶¶ 8, 36, one of Northern Trust's competitors, State Street Bank, charged its lending collective funds considerably more, taking a fee equal to 50% of the net securities lending revenues.

12

**CERTIFICATE OF SERVICE**

  I, Caryn L. Jacobs, an attorney of record in this case, hereby certify that the foregoing Defendants' Memorandum in Opposition to Plaintiffs' Motion for an Order Confirming that Plaintiffs' Claim for Breach of Fiduciary Duty Based Upon the Securities Lending Fee has not Been Dismissed was served upon all counsel of record in this case via this Court CM/ECF system on August 14, 2012.


/s/ Caryn L. Jacobs