**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br>  v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>                  Defendants. | Judge Robert W. Gettleman, *Judge Presiding*<br><br>Magistrate Judge Susan E. Cox<br><br>Civil Action No. 09-7203 |

**NORTHERN TRUST'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL**

**PRELIMINARY STATEMENT**

The Court's October 21, 2011 discovery Prioritization Order was designed to allow plaintiffs to take much of the discovery they claimed to need in order to file their class certification motion while deferring the massive costs of potentially unnecessary full-blown merits discovery. Defendants have complied with that Order, and under that Order alone, [Redacted].

Now, more than a year after entry of the Prioritization Order and months after defendants produced documents pursuant to search protocols disclosed to plaintiffs in March 2012, plaintiffs effectively seek reconsideration of that Order. Regarding documents called for by categories 1, 6, 7, and 9 of the Order, plaintiffs want the Court to remove the Order's provisions limiting production to *those documents concerning eight specific investors*. And plaintiffs continue to seek discovery of so-called "consolidation" documents, which the Order disallowed.

Plaintiffs have not even tried to meet the Court's standards for reconsideration. And the relief they seek would totally defeat the Order's stated purpose of allowing certain "class plus" discovery while avoiding the far greater costs of all-out merits discovery. [Redacted] That undue burden alone requires denial of the motion.

Moreover, plaintiffs have not justified imposing such enormous additional costs on Northern Trust. They seek sweeping merits-related discovery about how securities lending cash collateral was invested in certain "collateral pools," but such portfolio management discovery will have no bearing on class certification issues. That is because, while defendants will vigorously dispute certification on multiple grounds, they do not intend to argue that decisions to buy, sell, or hold particular securities affecting all clients exposed to collateral pool yields were

made on a client-by-client basis. The motion should be denied for this additional reason as well.

## BACKGROUND

On July 1, 2011, plaintiffs served document requests seeking full-fledged merits discovery—including virtually every document relating to every single investment decision made over several years for all of the Northern Trust collateral pools and all Northern Trust non-ERISA clients—well before resolution of the question whether the case could proceed as a class action. (*See* Farrow Decl. Ex. C (at Exhibit B thereto).) The requests were vastly overbroad for a number of reasons: they pertained not only to the four named plaintiffs and the two collateral pools to which they were exposed, but to *all* Northern Trust non-ERISA clients and *all* collateral pools, as if the broadest possible class had been certified; they concerned the merits of the case in addition to class certification issues; and they sought virtually every document on scores of other subject matters. Defendants made these very objections in their discovery responses. (*See, e.g.*, Decl. of Brook R. Long ("Long Decl.") Ex. 2, at 10-12, 18-24.)

At a status hearing on September 26, 2011, after giving the parties an opportunity to address the question of the breadth of discovery, the Court asked the parties to attempt to construct a plan for "prioritization" of "class-plus discovery," asking whether there was "something less than . . . full-on merits but more than bifurcated that we could do in this action to sort of save on costs?" (Sept. 26, 2011 Hr'g Tr., Farrow Decl. Ex. C (Exhibit A thereto), at 4:18, 5:4-6.) The Court stated that "this is going to be a very expensive litigation for everyone," advising that the staging of discovery could "in this kind of case . . . be tremendously useful," and would be "worth thinking about for no better reason than economy." (*Id.* at 10:1-6, 10:19.) The parties accordingly filed prioritization proposals for the Court's consideration. (Farrow Decl. Exs. B-C.)

During a hearing on those proposals, the Court commented on the scope of plaintiffs' document requests, explaining that "if you take them literally it really is virtually every document that was drafted about this program over the period of time alleged in the complaint." (Oct. 13, 2011 Hr'g Tr., Long Decl. Ex. 3, at 44:14-17.) The Court pointed out that "it would be very burdensome for the defendants to produce virtually every email between these actors for a three-year period about any particular security" and that this would entail "an enormous amount of material, most of which is going to have very little to do with this case." (*Id.* at 28:7-14.) And the Court opined that "I just don't think every email about every single thing that happened with respect to this particular program in these pools …. could possibly be relevant." (*Id*. at 29:11-16.)

> The Court thereafter prioritized discovery to:
>
> > (1) contracts and emails concerning any duty or obligation defendants owed to the four named plaintiffs *and a sample set of four other investors* to be agreed upon by the parties; . . . (6) data on any realized losses and loss calculations for the four named plaintiffs *and a sample set of four other investors* to be agreed upon by the parties and their investments; (7) documents pertaining to withdrawal and redemption restrictions related to (a) the four named plaintiffs *and a sample set of four other investors* to be agreed upon by the parties and (b) the two collateral pools named in the plaintiffs complaint plus an additional third collateral pool to be named by the plaintiffs; . . . and (9) internal discussions, including emails, involving those individuals listed in defendants' Federal Rule of Civil Procedure 26(a) disclosure, which address acceptance of collateral, investment of collateral, decisions to declare collateral deficiencies, risk management decisions, and the effect of market and economic conditions on these issues. *These discussions are further limited to issues related to (a) the four named plaintiffs and a sample set of four other investors* to be agreed upon by the parties and (b) the two collateral pools named in the plaintiffs' complaint plus an additional third collateral pool to be named by the plaintiffs.

(Oct. 21, 2011 Order, Farrow Decl. Ex. D (emphasis added).) The Court made clear that it limited discovery on "non-party investors to a sample set of four investors, as opposed to full discovery on the hundreds or thousands of non-party investors." (Nov. 10, 2011 Order, ECF No.

134.) The Court explained that "the whole point" of the Prioritization Order was to "avoid the expense of no holds bar[red] discovery." (May 9, 2012 Hr'g Tr., Farrow Decl. Ex. N, at 10:23-25.)

Plaintiffs now ask this Court to reconsider that Order. For example, plaintiffs' original prioritization proposal sought certain documents relating to Northern Trust's obligations to *all* securities lending participants (Farrow Decl. Ex. B, at 2-3), and not just the four named plaintiffs. The Order limited this request to eight clients: "the four named plaintiffs and a sample set of four other investors." (Oct. 21, 2011 Order, Farrow Decl. Ex. D ¶ 1.) And plaintiffs originally sought prioritization of certain documents relating to "internal discussions" about collateral pool risk management and investment decisions relating to *all* "securities lending participants" (Farrow Decl. Ex. B, at 3), which the Order similarly limited to the same eight clients, (Oct. 21, 2011 Order, Farrow Decl. Ex. D ¶ 9). Thus, the Order expressly rejected plaintiffs' demand that "all documents, including those related to absent class members . . . should be produced at once" (Farrow Decl. Ex. B, at 3), permitting discovery under categories 1, 6, 7, and 9 of the Order only as to the four named plaintiffs and four non-party Northern Trust clients.[1] And the Order did not allow any discovery on plaintiffs' request for "documents relating to plaintiffs' allegations that a realized loss in the collateral pools might ultimately require Northern Trust to consolidate those pools on its own books" (Farrow Decl. Ex. B, at 3).

On February 7, 2012, plaintiffs selected the "sample set" of the four non-party investors called for by the Order. (*See* Long Decl. Ex. 4, at 1.) Defendants thereafter gave plaintiffs a detailed description of their planned ESI search terms, procedures, and custodians and explained

---

[1] It should be noted that there is currently no way to determine the identity of all "absent class members," per plaintiffs' request, in any event. A class has not and should not be certified in this case. And even assuming, for argument's sake, that a class were to be certified some day in this case, its scope—and thus the identity of the relevant clients and collateral pools—is still unknown and unknowable at this time.

that additional search terms would be used to implement the Order's limitation of categories 1, 6, 7, and 9 to the eight named clients. (*See* Farrow Decl. Ex. F, at 4.) While plaintiffs proposed some changes to the planned searches, they did not demand information about, or object to, defendants' manner of implementing the Order's limitation of categories 1, 6, 7, and 9 to eight specific clients. (Long Decl. ¶ 8; *see* Farrow Decl. Ex. F, at 4, and Ex. G.)

After [Redacted] [Redacted], defendants accepted some of plaintiffs' proposals and disclosed revised search protocols (including the foregoing client-specific search terms) to plaintiffs. (Long Decl. ¶¶ 8, 11-12; Farrow Decl. Ex. H.) On March 19, plaintiffs asked for information about the client-specific search terms (Farrow Decl. Ex. I), which defendants supplied on March 27 and April 20. (Farrow Decl. Exs. J, at 2-3, and K.)[2] On April 26, plaintiffs expressed disagreement with the use of client-specific search terms (Farrow Decl. Ex. L),[3] but did not raise this issue with this Court until the filing of this motion on December 3, 2012.[4]

---

[2] Due to confidentiality provisions of the Illinois Banking Act, specific non-party client-identifying information was provided to plaintiffs on April 20, 2012. (*See* Long Decl. ¶ 9; Farrow Decl. Ex. K.)

[3] Contrary to assertions in the Motion to Compel (Pls.' Mem., at 4 n.2), nothing prevented plaintiffs from raising this issue with the Court months ago. If they truly (albeit wrongly) believed that "by definition" the "internal discussions" called for by the Prioritization Order "would never name a Plan or a Plan employee" (Pls.' Mem., at 4), plaintiffs could have moved months ago, since their views regarding the production were predetermined and unrelated to the actual content of the production.

[4] Apart from the discovery at issue in this motion, the parties are still discussing what other documents plaintiffs claim to need before moving for class certification, many of which defendants have already agreed to produce.

# ARGUMENT

### I. Governing Legal Standard.

The Federal Rules do not provide for "unlimited discovery" and in fact vest trial judges with "broad discretion to tailor discovery narrowly and dictate its sequence." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012) (citation omitted). The "court has the ability to limit discovery if it determines that: (1) the discovery sought is unreasonably cumulative; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the expense or burden of the proposed discovery outweighs its likely benefit." *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 C 9421, 2007 WL 4224340, at *2 (N.D. Ill. Nov. 21, 2007) (citing Fed. R. Civ. P. 26(b)(2)) (Cox, Mag. J.). Such limitations are particularly appropriate where the party seeking discovery has not shown that its denial will result "in actual and substantial prejudice" to its interests. *WH Holdings, LLC v. Ace American Ins. Co.*, No. 09 C 7133, 2010 WL 3732149, at *3 (N.D. Ill. Sept. 17, 2010) (quoting *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995)). That is the case here.

These principles apply with even greater force in a putative class action like this, where pre-certification discovery is sought on issues and parties that may *never* be part of the case. This Court has recognized that class actions present a "potential for abuse" of discovery and that "district courts are generally given the authority to broadly control the conduct of parties and counsel in class actions." *E.E.O.C. v. Yellow Transp., Inc.*, No. 09 C 7693, 2010 WL 2891673, at *3 (N.D. Ill. July 21, 2010) (Cox, Mag. J.). These principles compel denial of plaintiffs' motion.

### II. The Plaintiffs Seek an Unwarranted Reconsideration of the Prioritization Order.

In essence, plaintiffs seek reconsideration of the Court's carefully crafted Prioritization Order more than a year after its entry and well after defendants incurred enormous expense in

complying with the Order as written. They do this first, by asking the Court to ignore a key element (the eight-client limitation) in that Order, and second, by trying to resurrect discovery (the "consolidation" issue) that the Court already considered and rejected. Yet plaintiffs did not and cannot meet the test for reconsideration, namely, that in issuing the Order, the Court committed "manifest errors of law or fact." *Kmart Corp. v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4977228, at *1 (N.D. Ill. Dec. 1, 2010) (Cox, Mag. J.) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)).

In fact, the Court took great pains to grant very generous "class plus" discovery to plaintiffs while avoiding unnecessarily burdensome "no holds bar[red]" merits discovery relating to "hundreds or thousands of non-party investors." To this end, the Court rejected plaintiffs' demand for prioritized discovery about *all* decisions impacting *all* investors in these collateral pools. Instead, the Court expressly ordered that discovery on the "internal discussions" about certain collateral pool issues be "*further limited* to issues related to (a) *the four named plaintiffs and a sample set of four other investors* to be agreed upon by the parties…." (October 21, 2011 Prioritization Order, Farrow Decl. Ex. D, ¶ 9 (emphasis added).) Categories 1, 6, and 7 were similarly limited.

Defendants' search protocols fully and fairly implemented those four categories, which necessarily meant that the ESI search parameters had to include client-specific terms. (Long Decl. ¶3(b) & Ex. 1.) Plaintiffs try to attack that premise, but the only feasible way to identify, review, and produce a document relating to a particular client per the Court's Order is to use terms associated with that client. Any other method would render the Court's eight-client limitation meaningless and vitiate any possible cost savings. Without that limitation, defendants would have had to review *all* documents related to the four categories at issue, produce those

with references to the eight clients, and then determine which documents lacking client references related to the eight clients, all at exponentially greater cost.

Even this would not have been enough for plaintiffs. They take the extraordinary position that the Order's eight-client limitation—*expressed in writing four times in the Order*—should be ignored in toto. Regarding category 9, for example, plaintiffs argue that *every single document about a collateral pool* "relates" to *each and every investor* in the collateral pool. (*See* Pls.' Mem. 8 (arguing that "the decision to purchase . . . notes issued by . . . 'structured investment vehicles' for the STEP collateral pool plainly 'relates to' all Plans invested in the STEP pool.").) Such a reading, however, would excise the Court's eight-client limitation from the Order; resurrect the very kinds of requests that the Court rejected as overbroad and of little or no relevance to the case; and require production of documents unrelated to class certification (*see* Part III herein) at enormous and unfair costs to Northern Trust (*see* Part V herein).

The same is true regarding plaintiffs' request for documents on the so-called "consolidation" issue. Over a year ago, plaintiffs tried to convince the Court that such discovery should be prioritized (Farrow Decl. Ex. B, at 3 & n.1), and the Court rejected that request (*see* Farrow Decl. Ex. D). Far from being manifestly erroneous, this ruling was correct (see Part III herein) and needs no reconsideration.

**III.     The Additional Discovery Plaintiffs Seek Is Unnecessary for a Motion for Class Certification.**

In lieu of full-blown merits discovery, the Court allowed only certain prioritized discovery at this stage of the case. It did so in order to "forge a compromise between total no holds bar[red] discovery and … class plus discovery" so that plaintiffs could obtain the discovery needed to file a motion to certify a class. (*See* May 9, 2012 Hr'g Tr., Farrow Decl. Ex. N, at 10:3-18.) Plaintiffs have not shown that the discovery sought here is needed for such a motion.

The gist of plaintiffs' argument is that categories 1, 6, 7, and 9 of the Prioritization Order must be read to require production of certain purely internal Northern Trust documents, mainly concerning portfolio management decisions, relating to every (or no) Northern Trust client. Even if this were right (and it is not), documents responsive to such an expansive reading of the Order would have no bearing on class certification. Such discovery into the specifics of Northern Trust's own internal conduct *unrelated to any client*—such as a decision to buy or sell a security as to which all securities lending clients in a particular collateral pool are exposed—is not needed in order to brief class certification. That is because, as represented to plaintiffs and this Court, defendants do not plan to oppose certification by arguing that such decisions varied by putative class member. Not surprisingly, plaintiffs cite no case justifying the discovery sought here at the pre-certification phase of a putative class action where class-related discovery has been prioritized.[5]

In contrast, the Court's Prioritization Order appropriately limited categories 1, 6, 7, and 9 to documents relating to eight specific clients[6] because such documents, by shedding light on the issue of variations among putative class members, could be very relevant to the propriety of class certification. As defendants argued (*see, e.g.*, Oct. 13, 2011 Hr'g Tr., Long Decl. Ex. 3, at 17:17-24), each potential class member's unique knowledge, risk tolerance, standards of prudence, investment strategies, and other circumstances *are* relevant to whether such individualized issues would dominate proof at trial and render certification inappropriate. Judge

---

[5] The two cases plaintiffs cite at pages 10-11 of their Memorandum are wholly inapposite. Neither decision even concerned discovery, much less an order prioritizing discovery. Neither purported to determine what kinds of discovery was relevant to class certification issues or purported to weigh (at the discovery phase) the relative burden and probative value of prioritized discovery.

[6] Defendants had proposed that the Court permit discovery on a sample set of putative class members over and above the four named plaintiffs (*see* Farrow Decl. Ex. C, at 4), and the Court's Order set the number of such a sample at four. Plaintiffs' motion does not challenge the number of sample clients.

- 9 -

Gettleman himself recently commented that he "could see where there could be problems in class certification with a class like this. A lot of people, a lot of these plaintiffs have different situations." (Nov. 14, 2012 Hr'g Tr., Long Decl. Ex. 5, at 5:18-20.) The Court's Order clearly and rightly permits production of these kinds of documents.

In any event, the question is *not* whether evidence about defendants' conduct is admissible at a trial on the merits.[7] The question is whether full-fledged discovery into the merits of purely internal portfolio management decisions about a collateral pool's securities that did not vary from client to client is relevant to class certification. The Court's Prioritization Order correctly answered that question in the negative.

That the discovery sought by plaintiffs is unnecessary is buttressed by the proceedings in the *Diebold* case, pending before this Court and United States District Judge Norgle. In that case, seeking certification of a class of ERISA clients that invested in certain Northern Trust index funds that engaged in securities lending, plaintiffs (represented by many of the same law firms appearing in this case) moved for class certification in February 2012 and fully briefed their motion *without* requiring the vast production sought here. (*See* Mot. for Class Certification, Feb. 27, 2012, ECF No. 124, No. 09-cv-1934 (N.D. Ill.).) Indeed, the *Diebold* plaintiffs and defendants agreed to *stay* all further document discovery on merits-related issues (such as portfolio management decisions) until after the Court rules on plaintiffs' pending motion for

---

[7] In trying to justify sweeping discovery into non-client-specific documents, plaintiffs argue generally that defendants' conduct should be the primary focus of class certification. To the extent plaintiffs suggest that their own conduct is irrelevant to that issue, they are flat-out wrong. Defendants have asserted *nineteen* affirmative defenses against plaintiffs based on fifty-nine pages of factual allegations, the adequacy of which plaintiffs did not even try to challenge. (Answer, June 5, 2012, ECF No. 167, at pp. 87-146.) Judge Gettleman, moreover, acknowledged that defendants' allegations about plaintiffs' knowing participation in the investment decisions at issue were "defenses." (Mem. Op. & Order 5, Feb. 23, 2012, ECF No. 155.) And even in the *AFTRA* case on which plaintiffs rely, the Court ruled that evidence of plaintiffs' own conduct was admissible at trial. *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 257 (S.D.N.Y. 2012).

class certification, and Judge Norgle entered an order staying that discovery. (*See* Order on Joint Stipulated Motion, Nov. 5, 2012, ECF No. 183, No. 09-cv-1934 (N.D. Ill.).) Redacted

Redacted

Redacted Plaintiffs' contention that they now need an enormous amount of additional pre-certification discovery thus rings hollow.

Plaintiffs' renewed effort to obtain prioritized discovery into the so-called "consolidation" issue—which the Order already rejected—also fails. Making the very same argument they lost in October 2011, plaintiffs say that Northern Trust should have sold unspecified collateral pool securities at a (presumably small) loss before certain securities experienced defaults (causing presumably greater losses) in the fall of 2008, but Northern Trust did not do so in the fear that triggering such losses would require consolidating the collateral pools on Northern Trust Corporation's balance sheet. They claim they are entitled to discovery on this assertion at this stage of the case.

This argument is wholly unsupported and cannot justify such discovery. Redacted

Redacted

---

[8] Redacted

- 12 -

[Redacted] Moreover, any discoverable documents would pertain only to the very internal portfolio management decisions on which discovery could make no difference to class certification. Defendants do not intend to argue that any consolidation discussions varied among putative class members. This discovery must therefore be denied.

Finally, plaintiffs fail to mention that *in July 2012*, in a spirit of compromise, defendants offered to produce "any documents reflecting that the risk of or concern about consolidation of the Collateral Pools or their assets on Northern Trust's balance sheet caused, motivated, or incentivized Northern Trust not to sell such assets at a loss or incur realized losses but rather to decide to hold or maintain such assets." (Farrow Decl. Ex. R, at 3.) Although this compromise offer was tied *directly* to plaintiffs' own allegations, (*see* 2d Am. Compl. ¶¶ 8, 10, 132, 149, ECF No. 159), plaintiffs rejected it, (Farrow Decl. Ex. S, at 2-3). If the Court is inclined to reconsider its ruling denying discovery on this issue, it should permit discovery *only* along the lines of this compromise offer, and not as set forth in plaintiffs' proposed order. (*See* ECF No. 204-1.) That proposed order—seeking "all documents concerning the potential consolidation of any of the securities lending collateral pools"—far exceeds plaintiffs' theory by not tying the consolidation discussions to collateral pool portfolio management decisions.

**IV.    Defendants Have Produced A Substantial Volume of Internal Discussions, Including Documents Pertaining to Collateral Pool Management.**

Plaintiffs incorrectly state that they have not received any significant production of purely internal Northern Trust documents. (Pls.' Mem. 1-4.) [Redacted]

[Redacted]

Redacted

Redacted

[Redacted content]

Plaintiffs' assertion that production of "internal discussions . . . has been minimal, sporadic, and the product of happenstance" (Farrow Decl., at 5 n.1) lacks any factual basis.

## V. The Discovery Plaintiffs Seek Is Unduly Burdensome and Outweighs Any Purported Need.

Redacted

[Redacted content]

- 14 -



Redacted

The lack of any legitimate need for the massive discovery sought, coupled with the enormous burden, expense, and delay associated with it, should compel denial of this motion in full.[9]

---

[9] While the Motion should be denied in full, the relief it seeks is also vastly overbroad. Client limitations aside, the Prioritization Order surely does not contemplate production of *all* documents within the literal language of its categories, which would far exceed what is conceivably relevant in the case even on the merits. This Court has pointed out that such requests for "every" document are overbroad and of little or no relevance to a case. (Oct. 13, 2011 Hr'g Tr., Long Decl. Ex. 3, at 28:7-14, 29:11-16.) As an example, under Category 1, not *all* emails about *all* duties and obligations to clients could conceivably be relevant, as Northern Trust in its business with its clients discharges myriad duties totally unrelated to the securities lending collateral reinvestment. Redacted

## **CONCLUSION**

For all of the reasons stated above, Northern Trust respectfully requests that this Court deny plaintiffs' Motion to Compel.

Dated:  January 10, 2013                                Respectfully submitted,

                                                          /s/ Caryn L. Jacobs

Caryn L. Jacobs
Todd J. Ehlman
Brook R. Long
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600
(312) 558-5700 – Facsimile

Michele L. Odorizzi
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois  60606
(312) 782-0600
(312) 701-7711 – Facsimile

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies under penalty of perjury that a copy of the foregoing DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL was served on counsel of record for all parties electronically via the CM/ECF system and via email on January 10, 2013.

Dated: January 10, 2013                                                   /s/ Brook R. Long