**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, | Case No. 09-7203 <br><br> Hon. Robert W. Gettleman <br><br> Magistrate Judge Susan E. Cox <br><br> JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY, | |
| Defendants. | |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO COMPEL**

Plaintiffs respectfully submit this reply memorandum in support of their motion to compel filed on December 3, 2012. By that motion, Plaintiffs seek an order compelling the production of additional documents responsive to Category 9 and Categories 1, 6, and 7 of the Court's October 21, 2011, "Prioritization Order" (ECF No. 126). In addition, as part of the post-prioritized discovery authorized by the Court, the motion seeks an order compelling the production of documents concerning any potential consolidation of the assets of one or more of the securities lending collateral pools onto Northern Trust's balance sheet.

## PRELIMINARY STATEMENT

Defendants do not deny that they intentionally withheld from production documents the Court ordered produced pursuant to Categories 1, 6, 7 and 9 of the Prioritization Order. Rather, they claim that unilaterally restricting their production to documents that expressly referenced by name one of the Plaintiffs or the "sample set" of other Class members (collectively, the "Plans") was the only way to avoid the purported burden of complying with the Prioritization Order. But unsubstantiated cries of "burden" are no substitute for satisfying discovery obligations, much less complying with the Court's Order. Plaintiffs demonstrated in their motion that through Defendants' application of a "client-specific search filter," they failed to produce almost any of the "internal discussions" expressly called for by Category 9 of the Prioritization Order. As a result, 15 months after the entry of the Prioritization Order, Plaintiffs have obtained virtually no discovery concerning Northern Trust's "internal discussions" about their investment of the Plans' assets, the decision to declare a collateral deficiency, or risk management—all central issues in this case and highly relevant to Plaintiffs' motion for Class certification.

Defendants provide no justification for withholding those documents, or for limiting their production to documents that expressly reference the Plans. Instead, Defendants' primary excuse

1

for failing to comply with the Prioritization Order is that it would be burdensome to do so, but they never establish that burden or explain how that purported burden justifies their approach— *i.e.*, conducting the most narrow, restrictive possible search for documents called for by the Prioritization Order. And complaints about the burden of producing additional documents ring hollow where Defendants have produced thousands of documents that Plaintiffs have not requested and the Court did not order produced.[1]

Defendants never argue that the Prioritization Order only requires the production of documents that expressly name the Plans. Nor could they, when the documents Plaintiffs seek— documents discussing Northern Trust's investments and other internal decisions on behalf of the Plans in the Collateral Pools in which the Plans invested—are expressly called for by the Prioritization Order. Nothing in that Order requires that every document include the name of a Plan, and there is no reason to expect that most documents containing "internal discussions" of issues that directly relate to an investment of the Plans' assets would actually mention the Plans by name. As Plaintiffs pointed out, few, if any, internal discussions regarding management of the Collateral Pools (that invested assets on behalf of hundreds of investors) would reference individual investors. Indeed, a central contention of Plaintiffs' argument for Class certification is that Defendants did not take into account particular investors when making investment decisions. Defendants' refusal to produce documents that do not reference specific Plans has the effect of withholding the very documents that would support Plaintiffs' position.

Rather than argue that the Prioritization Order is limited to documents that name the Plans, Defendants' response to the motion is focused on inaccurate and irrelevant procedural

---

[1] If Defendants thought compliance with this Court's Order was too burdensome, then the appropriate response would have been to seek a motion for reconsideration of that Order, not for Defendants to unilaterally decide to not comply with the Order. While the alleged burden of producing electronically stored documents may be a proper basis for *objecting* to discovery requests, it is no basis for *refusing to comply* with a court order.

arguments. These arguments serve only as misdirection from the real issues presented on the motion. For example, Defendants incorrectly argue that the motion seeks reconsideration of the Prioritization Order, but that argument assumes that Plaintiffs' reading of the Order is incorrect —the very issue to be resolved on the motion to compel. Defendants also suggest that Plaintiffs improperly waited until Defendants' production was "complete" before filing their motion, but ignore that Defendants specifically requested that Plaintiffs wait to evaluate the full production before challenging Defendants' narrow reading of the Order.

Similarly, Defendants suggest that Plaintiffs are untimely attempting to "resurrect" discovery concerning the potential consolidation of the Collateral Pools onto Northern Trust's books. They are wrong. Plaintiffs requested such documents in response to the Court's directive that the parties discuss the additional discovery Plaintiffs seek prior to Class certification, and Plaintiffs properly sought relief from the Court after Defendants refused to produce that discovery. *See* May 9, 2012 Hr'g Tr, Farrow Decl. Ex. N, at 11:14-12:3.

Once these procedural straw men are exposed and set aside, Plaintiffs' motion presents two basic issues: (1) whether Defendants' "client-specific search filter" is unduly restrictive and frustrates the production of documents that are called for by the Order; and (2) whether Northern Trust must produce documents concerning the potential consolidation of the collateral pools on its balance sheet prior to Class certification. Plaintiffs' motion establishes the importance of these documents. Defendants have failed to provide a substantive response that explains why documents that reveal Defendants' conduct and motivations and that are directly relevant to establishing certain elements of Rule 23 (including commonality, typicality, predominance and superiority) should not be produced at this time.

## ARGUMENT

**I.      The Order Is Not Limited to Documents That Specifically Reference the Plans**

Category 9 of the Prioritization Order requires Defendants to produce "internal discussions" about investments and other decisions relating to management of the select Collateral Pools if those discussions concern "issues related" to the Plans.  Since September 2011, Defendants have taken the position that their "internal discussions" about the investment of Plan assets are not relevant to class certification.  This contention is contrary to the clear mandate of the Supreme Court that a court's analysis of a class certification motion "will frequently entail some overlap with the merits of the plaintiff's underlying claims."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982)).  Consistent with the Supreme Court's guidance, the Court expressly included such "internal discussions" in the Order, which Defendants acknowledge was intended to cover discovery related to both class certification and the merits of Plaintiffs' claims.

Undeterred by the Court's express rejection of their argument and the Order's plain terms, Northern Trust asserts that the vast majority of their "internal discussions" are not subject to production at this stage, because an "internal discussion" only concerns "issues related" to a Plan if the document expressly references that Plan.  Defendants implemented that position by applying their "client-specific" search filter.  Excluded from the production, therefore, are any internal discussions about the investment of the Plans' assets that directly impact the Plans but do not mention the Plans by name.  Defendants concede that this is the approach that they have

taken, and do not dispute that the result is a production that omits *virtually all contemporaneous internal discussions of how to invest the Plans' assets*.[2]

The only reason Defendants proffer as to why such documents should not be produced at this time, notwithstanding the Prioritization Order's plain terms, is an unsubstantiated claim of burden. Specifically, Defendants contend that it would be unduly burdensome for them to review documents that do not contain an express reference to the name of a Plan in order to identify internal discussions that concern issues related to the Plans. According to Defendants, "the only feasible way to identify, review, and produce a document relating to a particular client … is to use terms associated with that client." Defs'. Mem. at 7. However, the Prioritization Order does not call for the production of documents relating to *particular clients,* but rather, orders the production of "internal discussions … which address … *issues"* that are in turn "related to" the Plans. The distinction between a "document relating to a particular client" and documents that contain "discussions" of "issues" that "relate[] to" those clients is critical, and highlights why Defendants' production does not satisfy the requirements of the Order.

Significantly, *Defendants never contend that the only documents responsive to Category 9 are those that expressly name one of the Plans*. Rather, they assert that it is not reasonable to require them to identify responsive documents, because the only way to do so is to "review all documents related to the four categories at issue, produce those with references to the eight clients, and then determine which documents lacking client references related to the eight

---

2 Defendants assert that a large percentage of their *entire production* consists of internal documents. *See* ECF No. 214, Long Decl. ¶15; Defs.' Mem. at 12-13. But Defendants never contend (because they cannot) that their production of internal documents includes *contemporaneous email discussions* from Northern Trust's investment or risk management personnel. Indeed, Northern Trust has produced less than a dozen emails for certain custodians responsible for investment research and risk management. *See* ECF No. 205, Farrow Decl. ¶3. Defendants also have no response to the fact that the vast majority of the internal documents they did produce were all sent to or from Northern Trust's client-facing personnel as they internally discussed how to respond to concerned clients *after* the devastating losses in the Collateral Pools. *Id.*

clients, all at exponentially greater cost."[3] Defs.' Mem. at 7-8. This argument is both wrong and unsupported by any facts.

## II. Defendants Cannot Demonstrate A Burden That Would Excuse Their Failure To Comply With The Order

If Defendants' position is that compliance with the Prioritization Order presents an undue burden, they must, at a minimum, demonstrate that burden. They have not done so. Indeed, while Defendants' brief is replete with vague references to potential "enormous and unfair costs to Northern Trust," Defendants do not submit any concrete evidence to support that position.[4] The law is clear that where a party seeks to avoid a discovery obligation on the grounds that compliance would be burdensome, that party must establish the existence of the burden. *See, e.g.*, *In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *6 (N.D. Ill. Apr. 8, 2010) (party resisting discovery must establish undue burden); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360 (N.D. Ill. 2005) (same). [5] Here, Northern Trust "must do more than say that this discovery is overly burdensome, it must support this argument with **specific evidence as to the**

---

[3] Defendants suggest that Plaintiffs' reading of the Prioritization Order would require the production of "every single document about a collateral pool" in which the Plans invested. Defs.' Mem. at 8. This is wrong, and Plaintiffs have never taken that position as demonstrated by Plaintiffs' acceptance of Defendants' final proposed search terms.

[4] Defendants merely reference the number of documents produced and an estimate of the cost of producing the discovery Plaintiffs have received to date. As noted, the vast majority of this production consists of documents Plaintiffs have not requested. Defendants then provide an estimated "extrapolation" of the potential costs of producing documents sought by this motion. Because Defendants misstate what Plaintiffs are seeking (purportedly "every single document about a collateral pool") and provide no facts with which to assess their "estimated extrapolation," it is impossible to determine the extent to which their estimate is exaggerated. However, among other things, Defendants' estimate appears to include documents already produced.

[5] Defendants' cited cases regarding the Court's general authority to limit discovery are inapposite. In *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2007 WL 4224340, at *2 (N.D. Ill. Nov. 21, 2007), the Court *permitted* second Rule 30(b)(6) depositions of the same individuals on a showing of additional need. Here, Plaintiffs are not seeking to depose witness multiple times, they are moving to compel the production of key discovery called for by the Order that Defendants have refused to produce. This has plainly resulted in prejudice to Plaintiffs. *Contra WH Holdings, LLC v. Ace American Ins. Co.*, 2010 WL 3732149, at *3 (N.D. Ill. Sept. 17, 2010) (denying motion to compel where respondent *had already produced all responsive documents*); *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995) (no showing of actual prejudice).

***nature of that burden.***" *Martin v. Bureau of Collection Recovery*, 2011 WL 2311869, at \*5 (N.D. Ill. June 13, 2011) (emphasis added). Defendants do not attempt to meet this requirement.

Nor could they. The Court took pains to reduce Defendants' burden of production in response to Category 9 by, among other things, limiting that production to individuals listed on Defendants' Rule 26(a) Disclosures. As Plaintiffs showed, the individuals Defendants listed include just a handful of the individuals Northern Trust has identified as having responsibility for investment decisions. *See* Pls.' Mem. at 9, Farrow Decl. ¶ 3 (10 of 24 individuals listed had investment or risk management responsibilities). Defendants simply ignore this accommodation.

Defendants also cannot explain how internal discussions among just a handful of their investment personnel concerning the specific topics identified in the Prioritization Order could possibly be burdensome to produce. Nor can they rely on their production of thousands of documents that Plaintiffs did not request and the Court did not order produced—documents that Defendants intend to use to oppose Class certification—as a basis to withhold documents that are plainly called for by the Court's Order. *See* ECF No. 205, Farrow Decl., ¶¶ 3-4, & 6.

In any event, even if the required production were burdensome, Defendants must show that the burden outweighs the importance of the documents sought. Fed. R. Civ. P. 26(b)(2)(C)(iii); *see Loy v. Motorola, Inc.*, 2004 WL 2967069, at \*5 (N.D. Ill. Nov. 23, 2004) (plaintiff entitled to class certification discovery where "Defendant has failed to meet its burden to show that discovery sought by Plaintiff is either unreasonably burdensome or irrelevant."). Because the documents here go to the heart of Plaintiffs' case and are highly relevant to class certification, *see* Pls.' Mem. at 10-12, Defendants could not make that showing even if they attempted to do so (which they did not).

Defendants are also wrong to suggest that their implementation of the "client-specific search filter" was the "only feasible" means of complying with the Prioritization Order. Rather, Defendants unilaterally chose ***the most limited, restrictive means possible*** of producing documents in response to Category 9.[6] The use of a filter that produced only documents that explicitly mentioned the Plans foreseeably omitted the overwhelming majority of the documents discussing the investment of the Plans' assets and the Collateral Pools. This decision was highly significant here because a central thesis of Plaintiffs' argument for Class certification is that Northern Trust made its investment decisions, risk management decisions, and decisions to declare collateral deficiencies without regard for any individual investor in the Collateral Pools. The filter Defendants employed necessarily prevented the production of any documents that would reflect internal discussion of these decisions without reference to specific investors; that is, documents that would support Plaintiffs' position.

Defendants' argument also ignores the fact that other means exist of identifying and producing documents called for by Category 9. As Defendants concede, they could simply have reviewed the documents containing "internal discussions" of the investments at issue to determine which discussions "related to" the Plans. Defs'. Mem. at 7-8. Defendants have offered nothing but conclusory assertions as to why such a review would be unfeasible. Defendants also could have narrowed their review by using search terms to *exclude* documents that mentioned only Class Members other than the Plans.[7] Moreover, as this District and counsel for Defendants

---

[6] Defendants' assertion that Plaintiffs ceded to their "client-specific search filter," (Defs'. Mem. at 5), is belied by the record. Northern Trust refused to disclose these terms to Plaintiffs until April 20, 2012, months after Defendants purported to disclose their electronic search terms to Plaintiffs. Farrow Decl. Ex. K. Six days later, Plaintiffs objected to Defendants' search filter, providing a myriad of reasons as to why the terms would exclude production of relevant documents. Farrow Decl. Ex. L.

[7] Northern Trust's "note [that] there is currently no way" to ascertain the identity of Class Members outside of the Plans, (Defs'. Mem. at n.1), is plainly contradicted by the fact that Defendants previously provided a list to

have expressly recognized, modern electronic discovery provides nuanced tools that could further assist in the production of relevant, responsive documents, and expedite the entire process. *See Kleen Prod. LLC v. Pckg. Corp. of America*, 2012 WL 4498465 (N.D. Ill. Sept. 28, 2012) (recognizing predictive coding as a viable search option); Winston & Strawn LLP, *Lunch Briefings: eDiscovery and Technology Assisted Review: What You Need to Know Now*, Oct. 24, 2012,[8] (touting benefits of predictive coding, including its advantages over attorney review); *see also Moore v. Publicis Groupe SA*, 2012 U.S. Dist. LEXIS 23350 (S.D.N.Y. Feb. 24, 2012), *aff'd*, 2012 U.S. Dist. LEXIS 58742 (S.D.N.Y. Apr. 26, 2012) (approving use of predictive coding in appropriate cases). Rather than employing any such tools, Defendants opted for the blunt instrument of a search filter that would eliminate most of the documents the Court ordered produced, and which were most likely to support Plaintiffs' position. Defendants' self-serving conclusion that no other method but the one they chose (over Plaintiffs' objections) exists for producing the documents called for by the Court's Order is baseless and unsupported. Accordingly, Defendants have failed to establish that limiting their review to documents that reference the Plans was either the only feasible approach, or even a reasonable approach.

Even assuming that Defendants had no other method of complying with the Court's Order, withholding responsive documents for months over Plaintiffs' express objections was improper. Defendants could have sought relief or guidance from the Court, or accepted Plaintiffs' request to discuss alternatives to the client search filter. Instead, Defendants first concealed the parameters of the filter and then, when Plaintiffs promptly objected to the filter, insisted that Plaintiffs' "suppositions about documents that 'will not be produced' would be more appropriately addressed after our production of documents pursuant to the Prioritization Order is

---

Plaintiffs that purportedly contained this information in connection with the parties' negotiations regarding the sample set. *See* Farrow Decl. Ex. O at Ex. B (Jan. 13, 2012 Kipp Letter).

[8] Available at http:// www.winston.com/ siteFiles/News/102412eLunchPPTFINAL.pdf.

substantially complete."[9]  Farrow Decl. Ex. M.  Having asked Plaintiffs to wait to review the production, Defendants cannot now complain that Plaintiffs' motion is untimely.

With respect to Categories 1, 6, and 7 of the Prioritization Order, Defendants similarly ignore the merits of Plaintiffs' motion, and focus solely on the purported burden that would result from lifting their "client search filter" with respect to these categories of discovery.  For the reasons set forth above, Defendants have failed to substantiate their claim of burden, let alone show that such burden would outweigh the benefit to Plaintiffs of the discovery sought.  The contested discovery in response to Categories 1, 6, and 7 is relevant to class certification, and production should be compelled.

### III.      The Documents Sought By The Motion Are Relevant To Class-certification

Even if Defendants had some basis to say that the documents Plaintiffs seek are not expressly called for by the Prioritization Order, those documents should nonetheless be produced as relevant to class certification.  The Order was intended to give Plaintiffs "the discovery needed to file a motion to certify a class" and the Court's inclusion of internal discussions about investment decisions, risk management, collateral deficiencies, and the management of the collateral pools in that Order rejected Defendants' contention that such discussions have no bearing on Class certification.  Defs'. Mem. at 8.  Plaintiffs specifically sought production of "[d]ocuments related to the common management of the collateral pools—the securities purchased, the analysis driving the decision to buy and hold the securities, and the losses caused by those investments" in their prioritization proposal to the Court.  *See* ECF No. 206, Ex. B, at 2.

---

[9]   Defendants' recitation of the parties' interactions on this issue is inaccurate.  Plaintiffs met and conferred with Defendants in good faith to agree upon a list of search terms. During the search term negotiation, Defendants refused to reveal the specifics of the filter until more than two months after the parties began negotiating search terms.  As noted, Plaintiffs promptly objected to the use of the client search filter.  Farrow Decl. Ex. L.

Notwithstanding this history, Defendants still contend that the documents they have withheld from production are not relevant to class certification, stating that "discovery into the specifics of Northern Trust's own internal conduct *unrelated to any client*—such as a decision to buy or sell a security as to which all securities lending clients in a particular collateral pool are exposed—is not needed in order to brief class certification." Defs'. Mem. at 9 (emphasis original). Defendants' assertions about Plaintiffs' "need" are mistaken and miss the point. First, this statement serves only to highlight the dispute in this motion and in Plaintiffs' anticipated Class certification motion: Defendants contend that a decision to purchase securities for *all the clients* in a given Collateral Pool is "unrelated to *any* client" in that Pool; Plaintiffs contend that discussions of an investment made for a group of clients relates to each of those clients, and that whether Northern Trust's decisions took into account client-specific factors is relevant to class certification.[10] Second, by focusing only on Plaintiffs' need for documents showing buys and sells, Defendants completely ignore Plaintiffs' need for documents relating to Northern Trust's risk management program—an issue that does not relate directly to any decision to buy and sell securities.

The case law is clear that it is "Defendants' internal conduct" that should be the focus of class certification. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"); *Johnson v. Rohr-Ville Motors, Inc.*, 189 F.R.D. 363, 369 (N.D. Ill. 1999) (same). Specifically, "Plaintiffs must show that it is possible to use common evidence to prove that Defendants' conduct injured the members of the proposed class." *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 355 (N.D. Ill. 2012) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591

---

[10] Contrary to Defendants' mischaracterizations, Plaintiffs do not contend that all of Northern Trust's investment decisions regarding all clients and all collateral pools are called for by the Prioritization Order.

(1997)).[11]   Plaintiffs must also meet the requirement of predominance, by showing "that common issues not only exist, but outweigh individual questions."  *See Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 838 (N.D. Ill. 2008) (internal quotations and citations omitted). Consistent with this authority, the Prioritization Order refutes Defendants' position and expressly calls for production of discovery of Northern Trust's "internal conduct."

Notwithstanding the plain language of the Order, Defendants contend that this discovery is not needed because they purportedly do not plan to oppose certification by arguing that their investment decisions "varied by putative class member."  Defs'. Mem. at 9-10.  Defendants' arguments on this point are unavailing.  First, as noted above, Plaintiffs bear the burden on their motion to certify the Class and must support that motion by pointing to common facts and issues that predominate over individual issues.  *See, e.g.*, *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Accordingly, Plaintiffs must satisfy Judge Gettleman as to the requirements of Rule 23 irrespective of any arguments Defendants may raise or not raise, and they are entitled to discovery to meet their burden.  *See Loy*, 2004 WL 2967069, at *5 ("Plaintiff is entitled to proceed with discovery to determine if a class should be certified under Rule 23."); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (discovery often useful in deciding whether a suit should proceed as a class action).  Because the focus on class certification is on Defendants' conduct, it is proper for Plaintiffs to obtain discovery concerning the conduct that gives risk to the claims of the Class.

Second, Defendants have not stipulated to any aspect of Class certification.  On the contrary, they have repeatedly taken the position that "[a] class has not and should not be

---

[11] *See also CE Design v. Beaty Const., Inc.*, 2009 WL 192481, at *4-5 (N.D. Ill. Jan. 26, 2009) (commonality met where "defendant engages in a standardized course of conduct vis-à-vis the class members and plaintiffs' alleged injury arises out of that conduct."); *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("[c]ommonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members.").

certified in this case."  Defs'. Mem. at n.1.  The fact that Defendants have sworn to vigorously oppose such certification weighs against limiting discovery on the basis of Defendants' vague promises of narrow arguments that they may not raise in the future.  For example, Defendants will likely argue, as they did in *Diebold*, that

█████████████████████████████████████████████████████████████████

        *See* Northern Trust's Opposition to Class Certification, at 22, ECF No.  152, No. 09-cv-1934 (N.D. Ill.).  Plaintiffs are entitled to the requested discovery regarding Northern Trust's investment process to develop responses to that argument and similar arguments regarding Northern Trust's conduct that Defendants are likely to present.  As noted above, it is Plaintiffs' contention that Defendants' decisions did not take into account any individual investment objectives or risk tolerances of the Class members.  The exclusion of such evidence on the motion for class certification will deprive Plaintiffs of the opportunity to make their strongest case in support of Class certification.[12]

        Similarly, the documents concerning Northern Trust's consideration of the potential consolidation of collateral-pool losses onto its balance sheet are also relevant to class certification.  Plaintiffs allege that Northern Trust failed to mitigate losses by prudently selling securities because incurring any realized loss presented a risk that the entire collateral pool would have to be consolidated on Northern Trust's books.  ¶¶ 8, 78-79.  Thus, this risk of consolidation created a conflict of interest that prevented Northern Trust from prudently managing the Collateral Pools and thereby caused harm to Plaintiffs and the Class.  *Id.*

---

[12] Defendants further argue that the documents requested here are not relevant to class certification because those documents were not produced in pre-certification discovery in the *Diebold* case.  Any agreements reached by the parties in *Diebold*, which involves different Plaintiffs, different counsel and different collateral pools is clearly not binding on the Plaintiffs here.

13

Defendants refused to produce discovery concerning this consolidation issue as part of the post-prioritized class certification discovery authorized by the Court (ECF No. 205, Ex. N) on the ground that such material "could make no difference to class certification." Defs'. Mem. at 11.

That position is simply incorrect. As noted above, Defendants' decisions are central to Class certification. Moreover, Defendants have taken the position that Plaintiffs were fully apprised of the relevant investment decisions, and cite in their brief affirmative defenses that turn on Plaintiffs' knowledge. The existence of an undisclosed conflict of interest that impacted investment decisions is clearly relevant to assessing whether Northern Trust's disclosures to its clients were complete and fulsome and whether Plaintiffs' knowledge included an understanding of that conflict. Such a conflict plainly presents a common issue that affected all members of the Class. *See, e.g.*, *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 348 (S.D.N.Y. 2010) ("common questions predominate with regard to all plaintiffs' … conflict of interest … claims."); *In re First Am. Corp. Erisa Litig.*, 258 F.R.D. 610, 618 (C.D. Cal. 2009) ("whether [defendants] breached their fiduciary duties by failing to avoid conflicts of interest" and "whether [defendants] breached their fiduciary duties by failing to provide complete and accurate information to Plan participants regarding [the investments at issue]" are questions of fact and law common to the class).

Finally, Defendants contend that they should not be compelled to produce documents concerning consolidation because Plaintiffs rejected a compromise offer previously proposed by Defendants. Defs'. Mem. at 12. Defendants characterize their proposed compromise as adequate to address Plaintiffs' allegations regarding the risk of consolidation, when, in fact, that proposal was grossly insufficient. Specifically, Defendants only offered to produce "documents reflecting that the risk of or concern about consolidation of the Collateral Pools or their assets on

14

Northern Trust's balance sheet **caused, motivated, or incentivized** Northern Trust not to sell such assets at a loss or incur realized losses but rather to decide to hold or maintain such assets." (emphasis added.) This offer conditioned any production on Northern Trust's own subjective interpretation of the document, including Northern Trust's determination as to whether any single document demonstrates that a concern about consolidation actually impacted an investment decision. This "compromise" effectively limits the documents that would be produced to outright admissions of a conflict. It would exclude any documents simply discussing consolidation as a consequence of the sale of certain assets in the Collateral Pools, even though such documents would establish facts supporting the existence of a conflict of interest and motivation for imprudently retaining those assets. It also excludes documents that would provide a basis for seeking additional discovery, including documents that could be used to elicit testimony from Northern Trust personnel. As Plaintiffs explained to Defendants, such a limitation on the production of this category of documents is unacceptable.

Moreover, if Plaintiffs are wrong about the consolidation issue and no conflict existed— *i.e.*, if Defendants never actually discussed the risk of consolidation in connection with the decision to sell or retain a security—there will be no responsive discovery to produce and Plaintiffs' request is moot. The fact that Defendants have refused to produce these documents, rather than simply representing that consolidation was never discussed and no conflict can exist, supports Plaintiffs' position regarding the relevancy of these documents.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' Memorandum in Support of their Motion to Compel, that motion should be granted, and this Court should issue an order compelling Defendants to produce the documents requested therein.

15

Respectfully submitted,

By: /s/ Mark T. Johnson

**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**

Todd M. Schneider
Mark T. Johnson
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

**KELLER ROHRBACK L.L.P.**

Derek W. Loeser
Raymond J. Farrow
Laura R. Gerber
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Tel: (312) 373-3880
Fax: (312) 794-7801
Illinois Bar No. 6272453

**SULLIVAN, WARD, ASHER &
PATTON, P.C.**

Gerard Andree
1000 Maccabees Center
25800 Northwestern Highway
Southfield, Michigan 48037
Tel: (248) 746-0700
Fax: (248) 746-2760

David Wales
Rebecca Boon
Brett Van Benthysen
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

**BAILEY & GLASSER LLP**

Elizabeth Hoskins Dow
3601 McDonough Street
Joliet, Illinois 60431
Tel: (815) 730-8213
Fax: (304) 342-1110
Illinois Bar No. 6216262

*Counsel for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies under penalty of perjury that a copy of the foregoing PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL was served on counsel for all parties electronically via the CM/ECF system on February1, 2013.

By: <u>/s/ Mark T. Johnson</u>
Mark T. Johnson