**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Judge Robert W. Gettleman, *Judge Presiding* |
| v. | Magistrate Judge Susan E. Cox |
| NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY, | Civil Action No. 09-7203 |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO STRIKE CERTAIN OF PLAINTIFFS' OBJECTIONS
<u>TO DEFENDANTS' DOCUMENT REQUESTS AND TO COMPEL PRODUCTION</u>**

**INTRODUCTION**

Northern Trust Investments, Inc. and The Northern Trust Company (collectively, "Northern") filed the instant motion to strike/compel (the "Motion") because plaintiffs had refused to withdraw certain sweeping and baseless objections to dozens of Northern's document requests, while at the same time claiming that Northern was not entitled to know what kinds of documents plaintiffs intended to withhold pursuant to those objections. In response, plaintiffs make almost no effort to challenge Northern's arguments that the documents sought through the Motion are relevant. Instead, even though the parties have engaged in at least five unsuccessful lengthy meet-and-confer discussions and numerous other communications about the issues herein, plaintiffs claim the Motion is premature. But that is not the law.

Plaintiffs also try to fabricate a mootness argument, claiming that because they have produced *some* documents relating to *some* of the requests, the Court should find that they have fulfilled their discovery obligations and that they should be able to stand on their sweeping and baseless objections. That is also not the law. Indeed, the limiting language plaintiffs use when describing their productions; their refusal to explain what they are withholding; and their failure to represent that they reasonably searched for and produced all of the requested documents, confirm that they are withholding relevant documents. Courts routinely grant motions to compel under these circumstances.[1]

---

[1] Plaintiffs state that Northern has moved on "231 of the 269 document requests" issued by Northern. (Dkt. #245 ("Opp.") at 1.) This misleadingly mischaracterizes the nature of the Motion, which primarily challenges three sets of general, sweeping, and improper objections that plaintiffs have asserted in response to Northern's document requests. Plaintiffs also overstate the number of requests at issue. Northern issued one set of 59 requests jointly on all four plaintiffs (the All-Plaintiff RFP) that focused on a fraction of the hundreds of allegations in plaintiffs' complaint. Northern also served one set of requests to each of the individual plaintiffs (the Plaintiff-Specific RFPs); the requests to each plaintiff were substantially similar, with variations focused on each plaintiff's own conduct. (*See* Dkt. #220, Ex. A.)

1

**ARGUMENT**

I.   **Northern is Entitled to Discovery on its Pending Affirmative Defenses.**

In response to plaintiffs' allegations that they relied on Northern to prudently invest securities lending cash collateral and that Northern imprudently invested the cash collateral in "toxic" and "exotic" securities, Northern has asserted 19 affirmative defenses. (*See* Dkt. #167, pp. 125-146.) The defenses are based on detailed factual allegations, including that plaintiffs were sophisticated investors with fiduciary duties of their own concerning investment of plan assets; that they knew and accepted the risks of securities lending (including investment of cash collateral); that they decided whether to buy and hold their investments; that one or more considered divestment as the economy worsened but assumed the risk of seeing how the investments would turn out; and that they failed to mitigate their damages. (*Id.* pp. 87-146.)

In its initial brief, Northern outlined the nature of plaintiffs' claims and Northern's defenses and showed how certain Plaintiff-Specific RFPs[2] seek documents relevant to those issues. (Dkt. #220 ("Br.") at 2-10.) Northern further described how plaintiffs broadly objected to these Plaintiff-Specific RFPs on the grounds that, in plaintiffs' view, they relate only to Northern's affirmative defenses and dismissed third-party claims, not to plaintiffs' case-in-chief. (*Id.* at 5-7, 11-12.) Because that argument was patently incorrect, Northern filed this Motion. (*Id.*) In response, plaintiffs do not deny that Northern has pending affirmative defenses on which discovery is appropriate. Instead, plaintiffs make three arguments, each of which is meritless: (a) the Motion relates to "third party requests" that are "directed to dismissed claims"; (b) the discovery sought is not relevant because reliance is not an element of their claims; and (c) the requests at issue are "moot" because plaintiffs have produced *some* documents in response to *some* of the requests. (Dkt. #245 ("Opp.") at 12-15.)

---

[2]  Capitalized terms not defined herein have the meaning accorded them in our initial brief.

      **A.**      **Plaintiffs' Discovery Objections are not Justified by their Misleading Mischaracterization of the Plaintiff-Specific RFPs.**

Plaintiffs first try to justify their objections by mischaracterizing Northern's Plaintiff-Specific RFPs as relating *only* to Northern's third-party claims or initial affirmative defenses, which the Court dismissed on February 23, 2012. They wrongly refer to these requests—described simply as a "First Request"—as "Third-Party Requests" (although this phrase is found nowhere in the requests).[3] Based on this false premise, they argue that the dismissal of Northern's third-party claims and initial affirmative defenses somehow voided these requests, requiring Northern to "redraft and serve new requests." (Opp. at 13.) This argument is baseless.

As an initial matter, the Plaintiff-Specific RFPs (*see* Dkt. #223 ("App."), Exs. 2a, 3a, 4a, 5a) never even refer to Northern's third-party claims or initial affirmative defenses. To the contrary, these were generic discovery requests relating to the entire case. So when plaintiffs first took the position that these requests were limited to Northern's own claims, Northern quickly set plaintiffs straight, showing that the requests were *not* directed to any one pleading.[4]

---

[3] Plaintiffs' suggestion that Northern did not properly serve the Plaintiff-Specific RFPs on the current plaintiffs, or directed the requests only to plaintiffs' boards in their "individual capacities" (Opp. at 1, 12), is wrong. These requests were served on each plaintiff with no limitation. (*See* Dkt. #223, Ex. 2a (served on plaintiff the Board of Trustees of the Public School Teachers' Pension & Retirement Fund of Chicago), Ex. 3a (served on plaintiff the Board of Trustees of the City of Pontiac Police & Fire Retirement System), Ex. 4a (served on plaintiff the Board of Trustees of the City of Pontiac General Employees Retirement System), Ex. 5a (served on plaintiff Louisiana Firefighters' Retirement System ("LAFF")).) Further, the requests were phrased to make it clear that they were directed at plaintiffs, not just at the third-party defendants. (*See, e.g.*, *id.*, Ex. 5a, Definitions, ¶ 27 (defining "you" and "your" to include both LAFF and its board).) Although irrelevant to this Motion, plaintiffs are also wrong in stating that Northern's counterclaim was dismissed "with prejudice." (Opp. at 1; *see also* Dkt. #199.)

[4] For example, since at least September 20, 2011, Northern has repeatedly informed plaintiffs that the Plaintiff-Specific RFPs were related to plaintiffs' case-in-chief, among other claims. (App., Ex. 7 at 1 (9/20/11 letter from Northern's counsel), Ex. 10 at 1-2 (10/26/11 letter from Northern's counsel), Ex. 12 at 2 (11/9/11 letter from Northern's counsel), Ex. 14 at 2-4 (11/22/11 email chain between parties' counsel).) Northern also clearly laid out its position that the Plaintiff-Specific RPFs relate to Northern's currently-pending affirmative defenses. (*Id.*, Ex. 18 at 7-8 (8/17/12 letter from Northern's counsel).) For these and other reasons, plaintiffs' argument that Northern "refused" to identify which document requests were directed to their case-in-chief (Opp. at 13) is also incorrect.

Although Northern served its requests before its third-party claims and initial affirmative defenses were dismissed, there is no authority for plaintiffs' novel position that the dismissal of those claims voided Northern's outstanding discovery. When pleadings are modified, pending discovery requests are not rendered null and void if the requests pertain to pending issues in the case; the parties simply implement the discovery as to the remaining active issues.[5] Here, as Northern made clear both in discussions with Plaintiffs leading up to the filing of this Motion and in the Motion itself, Northern has not sought documents on the grounds that they relate to dismissed matters, but because they concern pending issues in the case, including: (a) plaintiffs' case-in-chief (Br. at 11-12); (b) Northern's *pending* affirmative defenses, which plaintiffs did not even try to move to dismiss or strike and which include substantially all of the allegations underlying the dismissed third-party claims (*compare* Dkt. #167, pp. 87-146 *with* Dkt. #79, Third-Party Compl., pp. 1-31); and (c) Northern's defenses (which need not be pled).[6] Indeed, the Court observed that the theory behind the dismissed third-party claims "is a defense, not a third-party claim." (Dkt. #155 at 5.) Plaintiffs' "redraft and re-serve" argument thus fails.

B.     **The Discovery Sought is Relevant to Pending Issues in the Case.**

Although the Motion provides several different rationales for the discovery Northern seeks (Br. at 5-7, 11-12), plaintiffs take issue with only one of them. According to plaintiffs,

---

[5] *See generally Jarvis v. United States*, 45 Fed. Cl. 19, 21 (Fed. Cl. 1999) (where plaintiff had served document requests relating to all three of his claims, he could compel discovery relevant to the first claim, even though the other two claims had been dismissed; re-service of document requests not required); *cf. Wallis v. Centennial Ins. Co., Inc.*, No. 2:08-cv-2558, 2012 WL 5456076, at *3 (E.D. Cal., Nov. 7, 2012) (finding that discovery requests served during an appeal, when the district court was divested of jurisdiction, were properly served and that "Defendants [were] not required to re-serve the discovery").

[6] Mere defenses do not have to be affirmatively pled. *See* Fed. R. Civ. P. 8(c) (requiring such pleading only as to an "affirmative" defenses); *see also, e.g.*, *Senne v. Vill. of Palatine*, No. 10 C 5434, 2013 WL 68703, at *4 (N.D. Ill. Jan. 4, 2013) (striking the defense of lack of damages from answer "not due to any lack of merit, but because it is not an affirmative defense"); *Int'l Tax Advisors, Inc. v. Tax Law Assocs., LLC*, No. 08 C 2222, 2011 WL 612093, at *4 n.6 (N.D. Ill. Feb. 15, 2011) (finding copyright invalidity "is a denial, not an affirmative defense," so it need not be pled).

reliance is not an element of any pending claims, and thus cannot support any discovery requests. (Opp. at 14.) But this argument ignores plaintiffs' own allegations that they maintained their participation in securities lending "in reliance" on Northern. (*See* Br. at 2; Dkt. #159 ¶¶ 85, 129.) That alone entitles Northern to discovery to rebut reliance.

And if plaintiffs bought or held their investments in reliance on a *non-Northern* person, that would rebut proximate causation, which plaintiffs do not deny *is* an element of their fiduciary duty claim. *See Alpha School Bus Co. v. Wagner*, 910 N.E.2d 1134, 1158 (Ill. App. Ct. 2009). At least two securities lending cases have allowed the kind of discovery sought here as relevant to causation. In *Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 257 (S.D.N.Y. 2012), the court held that, "[t]o the extent that plaintiffs' losses resulted from account holders' independent decision to hold the notes based on their own analysis and despite [defendant's] advice, plaintiffs' claims fail"; thus, plaintiffs could not "prevent [defendant] from presenting evidence with respect to individual accounts to rebut plaintiffs' showing of causation and damages." The same reason led the court in *City of Farmington Hills Employee Retirement System v. Wells Fargo Bank, N.A.*, No. 10-4372, slip op. at 7-11 (D. Minn. Mar. 23, 2012), to grant similar discovery to the defendant.[7] To the extent the discovery shows that plaintiffs knew the true facts, made their own decisions with open eyes, and did not credit Northern in their decision-making, it also relates to numerous pending affirmative

---

[7] Plaintiffs do not challenge this aspect of the *AFTRA* decision, and their argument that *Farmington Hills* is inapposite because it involved fraud (which they say *does* require proof of reliance) and not breach of fiduciary duty (which they say *does not* require such proof) misses the mark. (Opp. at 11 & n.5.) *Farmington Hills* involved a statutory consumer fraud claim that did *not require proof of reliance*. *Farmington Hills*, slip op. at 8. Because causation *was* an element of that claim, however, the court held that plaintiff's "other investments and other investment advice may be relevant to Defendant's argument that it was not the cause of [the plaintiff's] claimed damages" and were thus discoverable. *Id.* at 10-11. The same is true here.

5

defenses, such as mitigation of damages, ratification, assumption of risk, comparative fault, independent superseding cause, waiver, acquiescence, and estoppel.

More fundamentally, plaintiffs allege that Northern was their fiduciary, and that they "placed their trust and confidence in Northern Trust by virtue of, among other things, Northern Trust's superior knowledge." (Dkt. #159 ¶ 129.) In light of these allegations, whether reliance is technically an element of a fiduciary duty claim is irrelevant. "The 'essence' of a fiduciary relationship is dominance of one party by the other," where one party "gains superiority and influence" over the other, and there is a "gross disparity" in the "knowledge" they have. *Benson v. Stafford*, 941 N.E.2d 386, 397-98, 400 (Ill. App. Ct. 2010). The documents sought here—concerning such issues as plaintiffs' sophistication; similar investments and engagement in securities lending with other managers; and knowledge of markets, the economy, and securities lending industry practices—pertain directly to these standards.[8] For these reasons, and because plaintiffs do not debate Northern's other relevance arguments, the RFPs are clearly proper.

### C. Plaintiffs Cannot Support their Mootness Argument.

Plaintiffs also argue that any dispute over their sweeping objections is "largely" moot because the affected Plaintiff-Specific RFPs "substantially" overlap with All-Plaintiff RFPs under which plaintiffs have produced documents. (Opp. at 14-15.) This argument cannot justify plaintiffs' improper objections, however, and the objections should be stricken. First, neither Northern nor this Court is required to assume that a proper production has been made in the face of broad improper objections that plaintiffs refuse to withdraw. Plaintiffs' equivocal language also dooms their mootness argument. Because plaintiffs *never* represent that they reasonably

---

[8] *Blue Cross Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*, No. 11-2529, slip op. (D. Minn. Apr. 18, 2012), discussed at page 11 of plaintiffs' opposition, is not to the contrary. *Blue Cross* does not address the interplay between reliance and causation in a fiduciary duty claim, *see id.* at 18 n.4, nor does it appear that the plaintiffs there had alleged reliance, as plaintiffs have in this case (Dkt. #159 ¶ 85).

6

searched for and produced all responsive documents, they cannot show that this Motion was unnecessary. *See, e.g.*, *E3 Biofuels, LLC v. Biothane, LLC*, No. 8:11CV44, 2012 WL 2523048, at *11 (D. Neb. June 29, 2012) (plaintiff's statement that "'responsive documents have been or will be produced'" was insufficient; plaintiff ordered "to definitively state whether all documents have been produced"); *F.D.I.C. v. Cuttle*, No. 11-CV-13442, 2012 WL 5990284, at *3 (E.D. Mich. Nov. 30, 2012) (production of some, but not all, responsive documents insufficient).

In any event, plaintiffs' claim of substantial overlap between the All-Plaintiff and Plaintiff-Specific requests is patently false. The All-Plaintiff RFPs focus largely on cited allegations against Northern in plaintiffs' complaint (*see* App., Ex. 1a), while the Plaintiff-Specific RFPs largely focus on each plaintiffs' own conduct (such as its governance, organizational structure, and investment monitoring; certain of its non-Northern investments; its risk tolerances; its decision making about, and monitoring of, the investments in this case; and whether it mitigated damages or objected to the investments) (*see, e.g.*, *id.*, Ex. 2a; Br. at 6-7 (listing RFPs)).[9] Finally, plaintiffs' supposed "assur[ance]" that they "will not withhold documents in response to *proper* requests" does not moot the Motion as to these RFPs, because plaintiffs maintain that these RPFs are *not* proper. (Opp. at 7 n.3, 15 (emphasis added).)

## II. Northern is Entitled to Discovery Relating to More Than the Specific Lending Funds in which Plaintiffs Invested or Collateral Pools to which they were Exposed.

Northern's initial brief explained that, as to certain specific All-Plaintiff and Plaintiff-Specific RFPs, plaintiffs asserted sweeping objections through which they refused to produce

---

[9] Plaintiffs cite only one specific example of alleged "overlap" (Opp. at 14 n.8), which mischaracterizes the requests involved. All-Plaintiff RFP 4 seeks "[a]ll documents relating to securities lending in general, including, but not limited to, investment in and securities lending by the Commingled Lending Funds and the Direct Securities Lending Program," while Plaintiff-Specific RFP 10 seeks "[a]ll materials including, but not limited to, books, treatises, presentations, instruction material from internal or external classes, and articles relating in any way to securities lending." (App., Ex. 1a, Req. 4, Ex. 2a, Req. 10.) The latter request is specifically aimed at books, presentations, etc.—language that plaintiffs omit from their brief. (Opp. at 14 n.8.) In any event, plaintiffs objected to both requests.

7

documents that did not relate "specifically" to plaintiffs' "participation" or "investment of cash collateral" in Northern's securities lending program "through" the Lending Funds or Collateral Pools. (Br. at 7 & n.7.) The brief demonstrated how these objections would allow plaintiffs to withhold relevant documents, such as documents showing that plaintiffs: relied on non-Northern personnel in making and maintaining their investments; did not believe it was imprudent to purchase securities that they now say were "toxic" and "exotic"; did not view issuers such as Lehman to be unstable; knew and approved of industry standards that could validate Northern's decisions; and held contemporaneous views about the markets that corroborated those of Northern. (*Id*. at 7-9, 12-15.) Plaintiffs' opposition provides no support for their improper objections.

      **A.     Plaintiffs' Mootness Argument is Meritless.**

Plaintiffs' main response to this part of the Motion is to claim that it is moot. But because plaintiffs continue to refuse to withdraw their broad, improper objections, this issue is far from moot. Neither Northern nor the Court is required to simply trust that plaintiffs have produced the required responsive documents while standing on improper objections.

Further, plaintiffs' mootness argument is deficient (and indeed circular) because it is based on their claim that they already agreed to produce all non-privileged documents "relating to Northern's securities lending program" (Opp. at 5-6, 8-9 (emphasis omitted)), a phrase they have never fully explained, but which they clearly interpret far more narrowly than Northern. For example, plaintiffs' September 24, 2012 letter to Northern purported to "assure[]" Northern that they "will produce all 'documents relating to [the securities lending program]'" (Opp. at 9 (emphasis omitted)), but also stated that they "continue to believe that documents that are not responsive to their participation in Northern's securities lending program *through the Collateral*

8

*Pools and Commingled Lending Funds* as defined in the Complaint are not relevant in this case." (App., Ex. 22 at 5 (emphasis added)). That is the very dispute at issue here.

In fact, in numerous meet-and-confer communications, the parties consistently disagreed about what is "relevant to Northern's securities lending program," including, for example: plaintiffs' tolerance for buying and holding mortgage-backed securities ("MBS"), floating rate notes ("FRNs"), and structured investment vehicles ("SIVs") through investment managers other than Northern; plaintiffs' views on the likelihood that issuers such as Lehman would default; or plaintiffs' knowledge and views about securities lending or the markets. (*E.g.*, App., Ex. 18 at 4-8, Ex. 22 at 4-8.) Even in their opposition here, plaintiffs continue to argue that they will not withdraw their objections to producing these and similar categories of documents because they view such documents as irrelevant. (Opp. at 10-11.) For plaintiffs to argue that this Motion is moot because they produced everything that *they* think is relevant begs, but does not resolve, the question. *See Allen v. Pac. Coast Feather Co.*, No. 5:10-CV-484, 2012 WL 1441428, at *3 (E.D.N.C. Apr. 26, 2012) (party seeking discovery "need not take [respondent's] word that the production sought would not provide any additional useful information on the issue").

Plaintiffs also continue to refuse to explain what they are and are not producing, and they never represent that they made a full production of the documents sought. In fact, when Northern tried to find out whether plaintiffs were producing the documents at issue in this Motion despite their written objections, plaintiffs refused to answer, claiming Northern was not entitled to that information. (Br. at 10.) Even now, neither plaintiffs' brief nor Mr. Josefson's declaration represents that plaintiffs reasonably searched for and made a full production of the documents sought by this Motion. (Their burden objections alone make clear that they have not, see section II.C below.) Without that representation, an explanation of what plaintiffs mean by

9

"relating to Northern's securities lending program," and disclosure of the kinds of documents they are withholding, plaintiffs' mootness argument fails. *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-CV-2662, 2011 WL 939226, at *9 (D. Kan. Feb. 25, 2011) (where respondent agreed to produce documents only "subject to" objections, discovering party was "left guessing as to whether [respondent] produced all documents, or only produced some documents and withheld others"). Indeed, courts reject such "hide the ball" tactics:

> Were [respondent] correct that Rule 34 allows litigants to make undisclosed partial document productions, discovery would break down in practically every case. A litigant with any viable objection to a discovery request would make that objection and then produce whatever portion of otherwise responsive documents it wished to produce. Under this approach, a party would have no obligation to indicate that its production was partial and the opposing party would have no way of knowing the production was partial. Absent an indication of what, exactly, the responding party was objecting to, courts would have no way of assessing the propriety of the objections. Instead, courts would be flooded with motions to compel by litigants seeking to confirm that undisclosed responsive documents did not exist. And courts would then be forced to ask counsel, over and over again, "Do other documents exist?"

*Haeger v. Goodyear Tire & Rubber Co.*, No. CV-05-02046, 2012 WL 5896190, at *38 (D. Ariz. Nov. 8, 2012). Thus, in *Robinson Steel Co., Inc. v. Caterpillar, Inc.*, No. 2:10-CV-438, 2012 WL 3245987, at *11 (N.D. Ind. Aug. 6, 2012), where the plaintiff had "not indicated whether it [was] withholding documents and information on the basis of its written objections," the court ordered it to "identify which, if any, of its objections it is 'standing on' to withhold documents and/or information responsive to [the] discovery requests" and to "specifically identify what document and/or information is being withheld. If no documents or information are being withheld, [the plaintiff] shall state that in its response." Such an order should be entered here.

As a matter of simple logic, moreover, plaintiffs cannot moot this Motion by claiming they produced *some* of the documents called for by *some* of the categories of documents

10

Northern seeks (*see* Opp. at 5-6).[10] Although plaintiffs refuse to say what they have withheld, our own review of plaintiffs' production reveals numerous missing categories. For example, all four plaintiffs have produced virtually no communications about non-Northern investments, and plaintiff Louisiana Firefighters' Retirement System has produced almost no substantive internal communications (and none about its securities lending activities with JP Morgan). For all of these reasons, plaintiffs have not shown that this Motion is moot.

> B. **Plaintiffs Cannot Credibly Argue that they Need "Clarification" of their Own Allegations About the Securities at Issue in This Lawsuit.**

Plaintiffs also argue that they need Northern to "clarify" the RFPs that seek documents about the "Subject Securities" (or the investments "at issue" in the case). They say that these terms are ambiguous and that the parties have not sufficiently conferred about their meaning, so the Motion is premature. (Opp. at 9-10.) This argument makes no sense.[11]

The RFPs at issue seek documents relating to *plaintiffs' own allegations.* Plaintiffs' complaint identifies numerous securities and types of securities that they claim were imprudent

---

[10] Plaintiffs' failure to provide citations for any of these documents severely undermines their argument. And plaintiffs' description of the kinds of documents they have produced does not encompass all of the categories of documents sought by Northern's requests. (*Compare* Br. at 6-9 *with* Opp. at 5-6.) For example, none of plaintiffs' categories reflects production of documents relating to plaintiffs' knowledge of the level of risk of the securities or security types at issue in this suit; documents relating to plaintiffs' risk tolerances with respect to securities lending; or documents relating to the information upon which plaintiffs relied when making and holding the investments at issue in this case.

[11] It is difficult to credit a prematurity argument where the parties have exchanged numerous detailed communications about the disputed discovery. (*See* Dkt. #220, Ex, B ¶¶ 5-9.) The types of meet-and-confer efforts that courts typically find insufficient concern parties mentioning disputes in passing or failing to engage at all—and even then, courts often choose to consider the motion to compel on its merits. *E.g.*, *Reid v. Neighborhood Assistance Corp. of Am.*, No. 11 C 8683, 2012 WL 5995752, at *2 (N.D. Ill. Nov. 30, 2012); *Kernats vs. Comcast Corp.*, No. 09 C 3368, 2010 WL 8742753, at *1 (N.D. Ill. Jan. 14, 2010); *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. El Paso CGP Co.*, No. 04 C 7872, 2005 WL 2737072, at *5 n.2 (N.D. Ill. Oct. 18, 2005). In the lone case cited by plaintiffs on this issue (Opp. at 9-10), the moving party had "provided no evidence that he attempted to resolve any discovery disputes as required before filing his motions." *Stewart v. Eiler*, No. 08-1033, 2009 WL 1650087, at *3 (C.D. Ill. June 8, 2009). That is not the situation here; Northern repeatedly tried to resolve the parties' disputes (*see* Dkt. #220, Ex, B ¶¶ 5-9).

11

to buy and hold, including MBS, FRNs, SIVs, asset-backed securities, and securities of issuers such as Lehman. (*E.g.*, Dkt. #159 ¶¶ 41, 47-48, 52, 56, 80.) The RFPs define "Subject Securities" as "all securities that, in this case, plaintiffs claim should not have been bought, or that should have been sold, including, without limitation, certain commercial or residential mortgage-backed securities, asset-backed securities, subprime securities, floating rate or variable rate securities, and securities issued by Lehman Brothers Holdings, Inc. ('Lehman'); Sigma Finance Corporation ('Sigma'); Theta Corporation ('Theta'); Capmark Financial Group; CIT Group, Inc.; GreenPoint Mortgage; or Sallie Mae." (*E.g.*, App., Ex. 2a, Definitions, ¶ 24.) By definition, therefore, only *plaintiffs* can identify a "Subject Security." *Northern* cannot clarify plaintiffs' own allegations for them; if those allegations are so vague that plaintiffs cannot respond to discovery on them, this matter should be dismissed.

Moreover, plaintiffs' claim—unsupported by any certification—that they only just learned the identity of the impaired securities is inaccurate, as is their unsupported and untrue claim that Northern "refused" to disclose these identities. (Opp. at 10.) Plaintiffs have known these facts for months or even years. They identified them in their pleadings in 2009. Over a year ago, they asked *Northern* to conduct searches using security-specific search terms.[12] More than 16 months ago, Northern produced quarterly collateral pool holding reports. And even before filing suit, plaintiffs had received documents from Northern identifying impaired securities. (*E.g.*, CTPF_00018375 ("Securities Lending Update" stating that Lehman, Sigma, Theta, CIT, Sallie Mae, and Greenpoint caused realized losses in STEP); PONTIAC-0000194 (similar document for Core USA).) Thus, plaintiffs cannot credibly suggest they only recently became capable of identifying impaired securities. And even if one could credit plaintiffs'

---

[12] In a March 2, 2012 letter, plaintiffs proposed that Northern should search for, among other things, the following terms: CIT, Capmark, Greenpoint, Sallie, Lehman, Sigma, Theta, GE, ISTAR, SLM, Countrywide, "Fifth Third," "asset backed security," ABS, MBS, and RMBS. (Ex. B at 5-6.)

12

conclusory assertion that they only just learned the identity of *every* impaired security, that cannot excuse their feigned confusion over the meaning of their own allegations.

Plaintiffs also mischaracterize Northern's requests as seeking documents "regarding Plaintiffs' investments in entire classes of securities that are not at issue in this action," such as "all investments in fixed-income bonds." (Opp. at 10-11.) Plaintiffs cite no request seeking such documents, nor is there one. To the contrary, that is why Northern used plaintiffs' allegations as the basis for this discovery. Northern is entitled to the requested discovery on these issues.

### C. Plaintiffs Have not Shown Undue Burden.

Plaintiffs say the "burden of searching an entire portfolio" for information regarding a particular security or type of security is "massive." (Opp. at 12.) But plaintiffs have not even tried to support this argument with facts, and their own conduct proves the contrary. For example, plaintiffs have already run ESI searches for such terms as "SIV," "Sigma," "Theta," "structured investment," "Gordian," "Lehman," "CIT," "Capmark," "Greenpoint," and "Sallie." (App., Ex. 18 at 2, Ex. 22 at 1.) Thus, they have *already* purportedly collected and reviewed some of the categories of documents that they now say would be unduly burdensome to produce. Moreover, plaintiffs claim they rely on outside investment managers for all their investment decisions. (Opp. at 12.) If true, it is implausible that plaintiffs could have so many documents relating to the securities, security types, and issuers they criticize that it would be an undue burden to collect, review, and produce them. So this argument also fails.

### D. Documents Concerning Certain Non-Northern Investments, Securities Lending, and Other Matters are Relevant and Discoverable.

Plaintiffs also object to the discovery sought in this part of the Motion by claiming it relates only to reliance, which they say is not at issue. (Opp. at 11.) We refuted that argument in section I.B above and the discovery is, in any event, pertinent to many other issues in the case.

(*See* Br. at 13-15.) These include the defense of compliance with industry standards and rebuttal of plaintiffs' allegation that investment in securities of these types and issuers was patently imprudent (because plaintiffs found these kinds of investments to be prudent to buy and hold); existence of a fiduciary relationship (because plaintiffs' other investments and knowledge from non-Northern sources bear on the nature of their relationship with Northern); and mitigation of damages (because plaintiffs should have taken action once they learned they were exposed to investments they say were patently imprudent). Plaintiffs did not even respond to these arguments. The relevance of the requested documents is clear.

### III. Plaintiffs Improperly Refuse to Produce Documents Rebutting the Complaint.

The Motion also pointed out that plaintiffs improperly objected to a number of All-Plaintiff RFPs that quote certain allegations of the complaint and seek documents that impeach those allegations. (Br. at 9, 15 (listing the RFPs at issue).) Clearly, such documents are discoverable.[13] Yet, while plaintiffs claim that they "'have no intention of withholding relevant documents on the basis that they 'run contrary' to their allegations,'" they still maintain that their objections to these requests—including on relevance—are valid, and they condition their offer to produce on the documents being otherwise "relevant." (Opp. at 7-8 (emphasis omitted).)

Each of the affected RFPs seeks information about a quoted portion of an allegation, with additional clarification from Northern about the kinds of documents it seeks. For example:

- All-Plaintiff RFP 13 seeks documents relating to plaintiffs' allegation that certain securities were "long-term in nature and were therefore inappropriate," clarifying that

---

[13] Fed. R. Civ. P. 26(a)(1) (providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim ***or defense***" (emphasis added)); *see also, e.g.*, *Pennfield Oil Co. v. Alpharma, Inc.*, No. 8:09CV345, 2010 WL 2243342, at *2-3 (D. Neb. June 1, 2010) (granting motion to compel production of "documents that support or rebut" an allegation); *Bennett v. Interfor Pacific, Inc.*, No. C10–5277, 2011 WL 2551409, at *2 (W.D. Wash. June 27, 2011) (same, as to documents that "may support or refute [the plaintiff's] alleged emotional distress"); *Henry A. v. Willden*, 271 F.R.D. 184, 190 (D. Nev. 2010) (same, as to documents that "support or refute Plaintiff's claims").

14

- these should include "documents relating to the standard under which the securities were 'inappropriate' for each Plaintiff."

- All-Plaintiff RFP 25 seeks documents relating to plaintiffs' allegation that Northern "'ignored' the 'failure of the mortgage lenders, the collapse of financial institutions, and disclosures of massive losses by major banks,'" clarifying that these should include documents about "the actions Defendants should have taken."

- All-Plaintiff RFP 46 seeks documents relating to plaintiffs' allegation that they lacked the "ability to freely exit the SLP or the Commingled Lending Funds," clarifying that these should include documents about "unsuccessful efforts (if any) made by Plaintiffs to effectuate such exits."

- All-Plaintiff RFP 48 seeks documents relating to plaintiffs' allegation that their claims are "typical" of class member claims, clarifying that these should include "documents relating to such members' investment policies, objectives, portfolios, holdings, and risk tolerance."

As to these and the other All-Plaintiff RFPs at issue here, plaintiffs said they would produce otherwise "relevant" documents "[s]ubject to" their "objections." (App., Ex. 1b.)

These limitations on production are troubling, as there is no way to understand what is and is not being searched, reviewed, and produced. Plaintiffs' position that Northern is not entitled to information about the kinds of documents that plaintiffs plan to withhold exacerbates this problem. As shown above, courts have rejected such tactics, and Northern is not required to "take [plaintiffs'] word" that it will receive a full production of relevant documents. *See Allen*, 2012 WL 1441428, at *3. Because these requests are facially relevant to plaintiffs' core allegations, the Court should compel plaintiffs to produce documents called for by the requests as written.[14]

---

[14] Plaintiffs argue that Northern's Motion with respect to All-Plaintiff RFP Request No. 12 is either moot or premature because the parties agreed on its scope. (Opp. at 7-8.) This is incorrect. Plaintiffs continue to limit this request to "documents that relate to the investment of plan assets through the Collateral Pools" (App., Ex. 22 at 7), an undue limitation on production, as shown above. Given plaintiffs' refusal to withdraw their objections and their undue limitations on production, the parties are at an impasse.

15

Dated: March 18, 2013               Respectfully submitted,

/s/ Caryn L. Jacobs

Caryn L. Jacobs
Todd J. Ehlman
Robert L. Michels
Brook R. Long
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:  (312) 558-5600
Fax:  (312) 558-5700
CJacobs@winston.com
TEhlman@winston.com
RMichels@winston.com
BLong@winston.com

Michele L. Odorizzi
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Tel:  (312) 782-0600
Fax:  (312) 701-7711
MOdorizzi@mayerbrown.com
JMcCarty@mayerbrown.com

Attorneys for The Northern Trust Company
and Northern Trust Investments, N.A.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on March 18, 2013, the foregoing Defendants' Reply in Support of Their Motion to Strike Certain of Plaintiffs' Objections to Defendants' Document Requests and to Compel Production was filed electronically with the Clerk of Court using the CM/ECF system. Copies of the document will be served on all counsel of record automatically by operation of the Court's CM/ECF filing system.

/s/ Caryn L. Jacobs