**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br>  v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>     Defendants. | Judge Robert W. Gettleman, *Judge Presiding*<br><br>Magistrate Judge Susan E. Cox<br><br>Civil Action No. 09-7203 |

**NORTHERN TRUST'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL**

**INTRODUCTION**

On May 23, 2013, this Court gave plaintiffs a deadline by which to file a motion on "outstanding discovery" that was focused "like a laser beam" on what was "necessary for class certification," and made clear that it was "not going to permit any discovery on anything other than what is necessary to get to class certification." (Dkt. #254-1 at 5-6, 11.) Plaintiffs' motion ignores that order.

Instead of a laser beam, plaintiffs used a blunderbuss, seeking discovery that would cause months of delay and hundreds of thousands of dollars of unnecessary costs. Instead of being "completely focused on getting the class certification motion in front of the district court" (*id.* at 7), plaintiffs have used this motion as a pretext for improperly trying to obtain Northern Trust's confidential client list and fishing for documents relating solely to a baseless liability theory. Instead of heeding the Court's admonition that it was "not likely without a very good reason to expand what I have already defined as appropriate" (*id.* at 13), plaintiffs seek to expand discovery far beyond its appropriate scope without *any* reason. And instead of following the Court's direction to "meet and confer" (*id.* at 14-15), plaintiffs seek new documents and offer novel rationales for discovery that were never discussed with counsel for Northern Trust.

Just last week, Judge Gettleman remarked, "I had expected or hoped for at least a class certification motion by now." (8/28/13 Tr., Ex. A, at 3.) He set the next status hearing for October 9, 2013, stating that "hopefully by then we can set a schedule for class certification." (*Id.* at 4.) The massive new discovery and other relief sought by plaintiffs' motion would render Judge Gettleman's proposed schedule impossible. The motion should be denied.

**ARGUMENT**

I. **Plaintiffs Are Not Entitled to Discovery of the Contracts They Seek.**

    A. **Plaintiffs' Unexcused Delay and Noncompliance with Local Rule 37.2 Require Denial of the Motion.**

In setting a discovery schedule in this complex putative class action case, the Court asked the parties to explore cost savings through a "middle ground" of "class-plus discovery" and ordered simultaneous discovery submissions by October 11, 2011. (9/26/11 Tr., Ex. B, at 4-5, 9-11, 13-14.) Plaintiffs' proposal sought, among other things, "[d]ocuments related to any duty or obligation owed by Northern Trust to participants in the securities lending program, including any internal discussion thereof" (Dkt. #120 at 2-3), an extraordinarily overbroad and burdensome request. In supporting their proposal, plaintiffs never said—as they now argue *for the first time* in their motion to compel—that they needed all client contracts to rebut defense counsel's statement on September 26, 2011 that multiple state laws would apply in this common law case. (*See* Dkt. #261, at 4-5.) Nor is such an overbroad request necessary for that purpose in any event. Had plaintiffs wanted that information, they could have asked for it. They did not.

After receiving plaintiffs' and Northern Trust's proposals,[1] the Court ordered production of "contracts and emails concerning any duty or obligation defendants owed to the four named plaintiffs and a sample set of four other investors [a number selected by the Court] to be agreed upon by the parties." (Dkt. #126 at (1), hereafter, the "Prioritization Order".) Redacted

---

[1] Northern Trust's October 11, 2011 submission proposed production of "certain responsive contracts and e-mails to the extent they pertain to the four named plaintiffs, and a sample set of other investors to be agreed-upon by the parties (versus hundreds of putative class members based on the broadest possible class definition)." Northern Trust did not propose the size of a sample (*see* Dkt. #121 at 4-5), in part because plaintiffs had not explained why they needed the discovery (which at that time would have included an ESI search for every Northern Trust client), or how it could be related to class certification.

2

Redacted

Redacted

In the twenty-one months following the Prioritization Order, plaintiffs never asked this Court to reconsider that order nor said that what they really wanted to know was what state laws governed the securities lending agreements. Even during the parties' telephonic conference on this issue on June 11, 2013—and despite the Court's instructions to focus on what was "necessary for class certification"—plaintiffs said nothing about needing these contracts for their governing law provisions and rejected Northern Trust's suggestions to limit discovery to something short of production of "all contracts." (Jacobs Decl. at ¶17.)

---

[2] Redacted

Plaintiffs have never explained their delay in raising this issue, which alone requires denial of this motion at this late stage of prioritized discovery.[3] And their conduct violates Local Rule 37.2's requirement of good faith efforts to resolve discovery disputes, including to consider compromise solutions.[4] Rather than making a good faith effort to negotiate a resolution with defendants, plaintiffs persisted in making overbroad demands and have refused to compromise, or even explain—until they filed this motion—why they felt they needed the discovery at issue. Now, well beyond any reasonable deadline to do so, they ask the Court to compel Northern Trust to locate and produce all contracts relating to Redacted Redacted And by failing to tell Northern Trust why they want the discovery, plaintiffs obstructed our ability to explore less burdensome ways to give plaintiffs equivalent information, as we have done in the past to expedite discovery. (Jacobs Decl. at ¶23.) For these reasons alone, this motion should be denied.

### B. Plaintiffs' Requests Are Overly Broad and Unduly Burdensome.

Even if the Court does not deny the motion due to plaintiffs' inexcusable delay and failure to comply with discovery rules, plaintiffs' request for the information they seek can be satisfied in a much faster and far less expensive and burdensome manner than requiring Northern Trust to gather every legal agreement for hundreds of investors. Taking plaintiffs at their word

---

[3] *See generally Medicines Co. v. Mylan Inc.*, No, 11-CV-1285, 2013 WL 120245 (N.D. Ill. Jan. 9, 2013) (denying motion to compel filed nine months after opponent's objections and days before discovery cut-off where movant offered no explanation for delay); *see also e360 Insight, Inc. v. Spamhaous Project*, 658 F.3d 637, 644-45 (7th Cir. 2011) (ruling court did not abuse discretion in denying motion to compel where movant waited three months to file motion); *Corre Opportunities Fund, LP v. Emmis Communications Corp.,* No. 12-CV-0491, 2013 WL 1500461, at * 2 (S.D. Ind. Apr. 10, 2013) (denying discovery where movant "waited to bring a motion to compel until the eve of a discovery deadline").

[4] "Failure to comply with the local rules is not merely a 'harmless technicality,' but can be a 'fatal' mistake." *Servin v. GATX Logistics, Inc.*, 187 F.R.D. 561, 563 (N.D. Ill. 1999) (Gettleman, J.) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994)); *see, e.g.*, *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Serv.'s North America, L.L.C.*, No. 03-CV-760, 2004 WL 3021842, at *4 (N.D. Ill. Dec. 30, 2004) (Keys, Mag. J.) (discovery denied for failure to comply with Local Rule 37.2).

that they want the requested contracts to try to rebut an argument they believe *Northern Trust* will make that varying choice of law provisions vitiate the commonality, typicality, and predominance elements of Rule 23,[5] Redacted

Redacted Such a solution is the very type of order contemplated by Federal Rule 26(b)(2)(C)(iii), which requires courts to "limit the . . . extent of discovery" where "the burden or expense of the proposed discovery outweighs its likely benefit."

As to the "indirect" lending clients, Northern Trust is willing to moot that request entirely by representing that it does not intend to argue, in opposing class certification concerning "indirect" investments, that indirect lending contracts are governed by varying state laws. *See Norfolk County Retirement Sys. v. Ustian*, No. 07-CV-7014, 2010 WL 1489996 (N.D. Ill. Apr. 13, 2010) (cited by plaintiffs at page 5 of their brief; holding that a party's decision to refrain from making an argument mooted the discovery sought thereon).

This more focused manner of providing the information plaintiffs say they need complies with this Court's directions to the parties. In contrast, plaintiffs' demand for "all contracts" is pure overkill and Redacted

---

[5] Plaintiffs are correct that the variety of applicable state common and statutory laws is one of many reasons why class certification is inappropriate in nationwide cases governed by state law, an argument Northern Trust may well make (among many others) against class certification.

5

Redacted

Redacted

**C. Plaintiffs Are Not Entitled to Production of Unredacted Documents, Which Would Result in Further Excessive Burden and Expense.**

Even if plaintiffs could show that they are entitled to discovery of every putative class member's contracts relating to securities lending—which they cannot—they are not entitled to

---

[6] *Brodsky v. Humana, Inc.*, No. 08-CV-50188, 2009 WL 1956450, at *1 (N.D. Ill. July 8, 2009) (denying discovery where relevance did not outweigh 160-hour estimate of burden to produce); *Belair v. Target Corp.*, No. 2:12-CV-00119, 2013 WL 308883 (M.D. Fla. Jan. 25, 2013) (same where burden to amend interrogatory response would require more than 12 hours to complete); *Aramburu v. Boeing Co.*, 885 F. Supp. 1434 (D. Kan. 1995) (same where burden of producing personnel files would require 240 hours); *First National Bank v. First National Bank of the South*, No. 6:07-2182, 2008 WL 2636866 (D.S.C. July 3, 2008) (same where customer communications would require over 300 man-hours to gather).

6

contracts without redaction of client names.[7] Plaintiffs say they need to see the names in the contracts because the contracts "do not specify the location of Northern Trust's clients," which plaintiffs say they could ascertain from the clients' names and thereby "address Defendants' assertion that this case implicates the laws of all 50 states." (Dkt. #261 at 5.) Again, plaintiffs' failure to make this argument before filing this motion requires denial of this request outright (*see* Section I.A above). But the argument also has *no* legitimate basis in law or logic, and underscores plaintiffs' true goal—to cause Northern Trust unnecessary burden and expense.

Requiring a mass production of unredacted securities lending contracts would cause more delay, significant costs, and broad disruption of Northern Trust's business in part because it would trigger the notice provisions of the Illinois Banking Act. That Act provides bank customers with a statutory right to confidentiality and imposes penalties against financial institutions that violate that right. *See generally* 205 Ill. Comp. Stat. 5/48.1; *People v. Nesbitt*, 938 N.E.2d 600, 606 (Ill. App. 2d Dist. 2010). Under the Act, unless an exception applies, "a bank may not disclose" to third parties "any financial records or financial information obtained from financial records relating to that customer of that bank." 205 Ill. Comp. Stat. 5/48.1(c).[8] One exception to such non-disclosure is where records are sought by "court order," but in that event the bank must notify the customer about the imminent disclosure. *Id.* at 5/48.1(c)-(d).

As we already informed this Court when plaintiffs previously (and unsuccessfully, *see* Dkt. #134) tried to obtain confidential records of Northern Trust clients without client-identifying redactions, the burdens associated with this process on a mass scale would be

---

[7] Contrary to plaintiffs' suggestion at note 8 of their brief, Northern Trust never proposed making relevance redactions.

[8] "Financial records" includes any "item containing information pertaining to any relationship established in the ordinary course of a bank's business between a bank and its customer," *id.* 5/48.1(a)(4), which would include the contracts sought here.

7

prohibitive. The process of identifying to whom the mass mailing would go, who should send the mass mailing, preparing and sending the mass mailing tailored to each client's circumstances, and preparing Northern Trust personnel to handle the inevitable avalanche of client complaints, questions, and concerns would take weeks and interrupt and undermine Northern Trust's business (even to the extent of possible loss of business). (*See generally* Dkt. #127 at 7-8.) Because these non-party clients are protective of their confidential information, such a mass mailing would likely trigger attempts to intervene and involvement of third-party lawyers.

History proves the point. When Northern Trust followed the mailing option regarding just *two* non-party clients in the *Diebold* case—both of whom had previously filed securities lending actions against Northern Trust and undergone discovery—one of those clients retained outside counsel who raised objections that *took ten weeks to resolve* and required negotiating and entering a supplemental protective order. (Dkt. #128 at ¶17.) If hundreds of such notices were to be sent, Northern Trust and the Court would be deluged by such objections.[9] Where the information plaintiffs say they want about governing law can be provided so much more easily and succinctly through the data Northern Trust is willing to compile, plaintiffs could not possibly need or want these documents other than to gain access to Northern Trust's clients and cause Northern Trust excessive burden, harassment, and expense.

In addition to harassing Northern Trust and interfering with its business, this request is plainly a pretext for trying to get Northern Trust's confidential client list,[10] something plaintiffs' counsel—who represent only the named plaintiffs and not a class—have no right to obtain even

---

[9] Plaintiffs' suggestion (Dkt. #261 at n.6) that Northern Trust has no interest in protecting its clients' confidential information is gratuitous and unsupported.

[10] Indeed, plaintiffs actually ask for such a list should the Court deny their request for client contracts. (Dkt. #261 at n.10.)

8

in an ordinary case,[11] much less in a case like this where the confidentiality of such information is statutorily protected. None of the cases plaintiffs cite concerned client identities protected from disclosure by state statute or the burdens of providing notice to hundreds of entities.[12] Nor do plaintiffs cite a single case showing that client names are "necessary for class certification" under the circumstances at issue here.[13]

Their assertion that knowing a client's location would allow them to determine what law applies to that client's securities lending agreement makes no sense. Redacted



---

[11] *See Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2006 WL 1455464 (E.D.N.Y. May 23, 2006) (denying discovery of client names in connection with class certification); *Bradford v. WR Starkey Mortg., LLP*, No. 206-CV-86, 2007 WL 2302514, at *2 (N.D. Ga. 2007) (denying motion to compel documents pertaining to putative class members as "improper . . . prior to class certification").

[12] For example, in *Marks v. Global Mortgage Group, Inc.*, 218 F.R.D. 492 (S.D. W. Va. 2003), cited at page 8 of plaintiffs' brief, the court held that such pre-disclosure notice was not required under the Gramm-Leach-Bliley Act before a lender could disclose, pursuant to "judicial process," non-public personal financial information of its customers.

[13] *Jones v. National Council of Young Men's Christian Associations of the United States of America*, No. 09 C 6437, 2011 WL 1312162 (N.D. Ill. Mar. 31, 2011) concerned merits discovery, not discovery related to class certification. In *Martin v. Bureau of Collection Recovery*, 2011 WL 2311869 (N.D. Ill. June 13, 2011) and *Loy v. Motorola, Inc.*, No. 3-C-50519, 2004 WL 2967069 (N.D. Ill. Nov. 23, 2004), the defendants did not make any specific showing of burdens they would incur in responding to the plaintiffs' discovery requests. That is in stark contrast to this case, in which Northern Trust both has demonstrated that it would incur tremendous burdens and has offered to provide the information sought through less burdensome means. *Donnelly v. NCO Fin. Sys.*, Inc., 263 F.R.D. 500 (N.D. Ill. 2009), is wholly inapt because in that case, the only source of the information sought was from contacting putative class members (which were names of persons cold-called, and not a list of defendant's confidential clients).

9

Redacted

Plaintiffs' "location" argument fails for the further reason that a client's location may have nothing to do with the choice of law to which it agreed. Redacted

And Redacted any one party's location is by no means conclusive on choice of law, an analysis that can be extraordinarily complex and involve numerous factors. *See, e.g., Rosman Adjustment Corp. v. Bernay*, No. 12-CV-453197, 2013 WL 453197, at *5 (N.D. Ill. Feb. 6, 2013) (Kennelly, J.) (for choice of law in alleged fiduciary duty case, analyzing location of injury and conduct causing injury and parties' domicile, residence, place of incorporation, and center of relationship)**.**

In any event, what law would apply to every putative class member cannot possibly be resolved on a motion to certify, nor have plaintiffs ever argued as much (although the fact that such an analysis ultimately has to be done to resolve the merits of each putative class member's claim rebuts any claim that the issues in this case can quickly and easily be decided in common). Northern Trust's proposal quickly and efficiently resolves plaintiffs' request and eliminates any possible *legitimate* value of confidential client names to plaintiffs.[14]

---

[14] Although unnecessary to class certification, where the securities lending contracts do not contain a choice of law provision, Northern Trust would be willing to undertake the additional burden of supplementing the "direct" lending Coded Client List with the state or country (if outside the United States) of a client's location to further obviate the burdens and delays of producing unredacted contracts.

## II. Plaintiffs Are Not Entitled to Discovery Dealing with the "Consolidation" Issue.

Plaintiffs' motion to compel additional discovery relating to a liability issue they call the "consolidation" issue fails at the outset because plaintiffs never conducted a telephonic or in-person "meet and confer" on the new "consolidation" issues raised in the instant motion. (Jacobs Decl. at ¶¶ 33-37.) Their failure to do so violates provisions of Local Rule 37.2 and this Court's standing order that expressly require both sides to have an actual discussion and provides reason enough to deny any further discovery on this issue.

### A. No Discovery Should Be Had on a Non-Viable Theory.

In seeking extensive ESI and document discovery on the "consolidation" issue, plaintiffs ignore the fact that this Court has already twice denied discovery into this area. (Dkt. ##126, 248.) Plaintiffs have not even tried to articulate the "very good reason" that the Court demanded for any request "to expand [discovery beyond] what I have already defined as appropriate." (Dkt. #254-1 at 13.)

Under plaintiffs' fictional theory, Northern Trust portfolio managers "were incentivized to avoid incurring realized losses by selling securities that presented an unacceptable level of risk . . . because Northern Trust would be required to consolidate the entire Collateral Pools onto its books." (Dkt. #159 at ¶77.) But plaintiffs have never cited a single document, case, or accounting principle requiring consolidation of an off-balance sheet entity (such as the collateral pools here) on a corporation's balance sheet simply because that entity sustains a loss. That is because none exists; the theory has no basis in accounting reality.

Plaintiffs purport to support this bogus theory by relying on three documents produced to them *from 15 to 21 months ago* (Jacobs Decl. at ¶¶ 25-28)—well before they filed their previous (and unsuccessful) motion to compel on the "consolidation" issue (Dkt. #204)—which alone

11

compels denial of this motion. Redacted

Redacted

- Redacted

- Redacted

- Redacted

Redacted

Redacted   As this Court rightly observed, the motive that plaintiffs identified—"if it existed"—"would likely have been discussed internally among the investment decision-makers whose internal communications . . . are now discoverable" (Dkt. #248), and those sources have already been searched. Federal law does not allow plaintiffs to conduct discovery into a non-viable theory, particularly in light of the heavy burden that discovery would cause in this case (*see* Section II.D below).[16]

---

[15] Redacted

[16] *See Society of Lloyd's v. Estate of McMurray*, No. 99-CV-6111, 2001 WL 471939, at *4 (N.D. Ill. Mar. 26, 2011) ("any discovery pursuant to a non-viable claim would be irrelevant"); *see also Davis v. Leal*, 43 F.Supp.2d 1102, 1113 n.14 (E.D. Cal. 1999) ("[t]o permit discovery on a non-viable recovery theory is to sanction discovery abuse").

### B. The "Consolidation" Issue is Irrelevant to Class Certification.

The parties are supposed to be focusing "like a laser beam" on discovery "necessary for class certification." Yet plaintiffs never even try to explain how discovery on the consolidation issue is "necessary" to how they plan to present their class certification motion (for example, how it could affect such issues as numerosity, typicality, or predominance under Rule 23). Instead, they rely solely on language in the Court's modification of the Prioritization Order that "defendants' motive to limit losses . . . because of this risk [of consolidation] . . . may be relevant." (Dkt. #261 at 11.) But the Court issued that February 26, 2013 order during the "class-plus" stage of discovery (a phrase used in the order itself), when the Court was allowing some discovery into liability issues. That ruling did not hold that discovery on this liability issue was "necessary to class certification," the current standard for discovery. And Northern Trust's representation that it "do[es] not intend to argue that consolidation discussions varied among putative class members" (Dkt. #213 at 12) doubly confirms that this discovery "is not necessary to class certification."[17]

### C. Plaintiffs' Motion is Untimely and Would Cause Unnecessary Delays and Duplication of Effort.

Plaintiffs' delays in bringing their motion are epic and would unfairly and unnecessarily multiply Northern Trust's discovery costs. Throughout this case, after plaintiffs have asked for discovery and Northern Trust has incurred the cost and effort of providing it, plaintiffs have sought more discovery on the same topic that they could have sought in their original request, doubling the time and cost of discovery. Two examples relate specifically to this motion:

---

[17] Plaintiffs also appear to read the February 26, 2013 order as somehow giving them leave to return to the Court and ask for more documents on the "consolidation" issue after Northern Trust finished production under the order. There is no basis for such an assumption, however, especially given the Court's subsequent narrowing of discovery to issues strictly "necessary to class certification."

13

- When plaintiffs negotiated and agreed to search terms and protocols for implementing the Court's February 26, 2013 order, the parties specifically agreed to terms directed to finding documents on the "consolidation" issue. (Jacobs Decl. at ¶30.) Northern Trust underwent the expensive and arduous process of collecting additional custodian e-mail data, educating contract lawyers, and reviewing and producing documents. Now plaintiffs want the Court to order Northern Trust to re-do that search with more custodians based on three documents that were produced to plaintiffs well before plaintiffs' earlier motion to compel, the Court's February 26, 2013 order, the formulation of search terms and custodians, and the conduct of the searches.[18]

- When plaintiffs asked for additional committee minutes from Northern Trust in October 2012 and when Northern Trust made the effort to locate and produce the extensive materials requested, plaintiffs possessed sets of minutes they now use in this motion to demand that Northern Trust go back and conduct *yet another* search for committee materials they neglected to ask for the first time. (*Id*. at ¶ 26.)

Enough is enough. Particularly given the irrelevance of this discovery to class certification, Northern Trust should not be required to re-do prior searches on a vastly broader scale.

### D. Plaintiffs' Request to Greatly Expand Discovery is Not Laser-Focused and Would Impose Unacceptable Delays and Costs for No Benefit.

The expansion of discovery that plaintiffs seek on the "consolidation" issue is so significant that plaintiffs themselves do not even bother to argue lack of burden. In fact, the costs would be gargantuan, the delays excessive, and the benefits nil. As just one example, plaintiffs seek internal communications among members of the Board of Directors and its

---

[18] Remarkably, plaintiffs even try to blame Northern Trust for not warning them that "documents concerning the consolidation issue would not be found" via the search terms and custodians that both sides negotiated. (Dkt. #261 at 11.) But Northern Trust is not aware of *any* documents on plaintiffs' fictional theory; as shown at pages 11-12 above, the three documents plaintiffs cite discussing consolidation have nothing to do with that theory. Nor do plaintiffs say how Northern Trust could possibly know what would be found from ESI search terms *before* the results are reviewed, or why Northern Trust must anticipate what discovery plaintiffs are fishing for. Because plaintiffs already had the documents they now cite to justify expanding those searches before the searches were formulated, it was *plaintiffs'* duty to take those documents into account in negotiating the search terms and custodians from the start. Having failed to do so, they cannot ask Northern Trust to re-run the searches on a new and massively expanded scale. (*See* Jacobs Decl. ¶¶31-32.) Finally, plaintiffs' assertion—made for the first time in this motion to compel—that "Northern Trust has refused to provide a privilege log" on this issue (Dkt. #261 at 11) is untrue. Plaintiffs did not request such a log on this issue, did not convene a meet-and-confer to request one, and do not seek such relief in this motion. (*See* Jacobs Decl. ¶¶36-38.) The Court has not ordered, nor have the parties agreed to, a deadline for the production of privilege logs. And we know of no privileged documents that relate to plaintiffs' theory in any event.

Executive Committee, the NTGI Risk Council, and the GERC relating to the "consolidation" issue. (Dkt. #261 at 14.) Even if those board members or senior management were involved in decisions about whether to hold or sell securities at issue here—and there is no reason to believe they were— Redacted Even if responsive documents were found after all this effort (which is extremely unlikely), they would have nothing to do with class certification.

The same is true for plaintiffs' effort to expand ESI discovery beyond the Court's order that limited such discovery to *internal* communications to include *external* communications with KPMG, the SEC, or other outsiders. (Dkt. #261 at 14.) Even assuming this vague request would not require adding new custodians, the search process alone would take weeks. Yet there would be no conceivable benefit. Plaintiffs provide *zero* reason to believe that any of these entities had discussions with Northern Trust about its internal decisions to hold or sell a security in a collateral pool (see pages 11-12 above), or that this discovery is needed at the class certification stage. The same is true for the request for minutes and materials relating to senior committees without portfolio management functions (Dkt. #261 at 14).

## **CONCLUSION**

The motion to compel should be denied in full or, alternatively, discovery should be ordered as proffered by Northern Trust herein.

Dated: September 3, 2013 Respectfully submitted,

/s/ Caryn L. Jacobs

Caryn L. Jacobs
Todd J. Ehlman
Robert L. Michels
Brook R. Long
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
CJacobs@winston.com
TEhlman@winston.com
RMichels@winston.com
BLong@winston.com

Michele L. Odorizzi
Justin A. McCarty
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
MOdorizzi@mayerbrown.com
JMcCarty@mayerbrown.com

Attorneys for The Northern Trust Company and Northern Trust Investments, Inc.

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies under penalty of perjury that a copy of the foregoing NORTHERN TRUST'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL with exhibits was served on counsel of record for all parties electronically via the CM/ECF system and via email on September 3, 2013.

Dated: September 3, 2013                                          /s/ Brook R. Long