**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>                    Defendants. | Judge Robert W. Gettleman,<br>*Judge Presiding*<br><br>Magistrate Judge Susan E. Cox<br><br>Civil Action No. 09-7203 |

**INDEX OF EXHIBITS TO NORTHERN TRUST'S OPPOSITION**
**TO PLAINTIFFS' MOTION TO COMPEL**

| **Exhibit Description** | **Exhibit** |
|---|---|
| Transcript of Hearing before Judge Gettleman, August 28, 2013 | A |
| Transcript of Hearing before Judge Cox, September 26, 2011 | B |

# Exhibit A

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3  LOUISIANA FIREFIGHTERS' RETIREMENT    )
    SYSTEM, PUBLIC SCHOOL TEACHERS'       )
 4  PENSION & RETIREMENT FUND OF          )
    CHICAGO, on behalf of themselves      )
 5  and others similarly situated, et al., )
                                          )
 6              Plaintiffs,               )
                                          )  No. 09 C 7203
 7         vs.                            )  Chicago, Illinois
                                          )  August 28, 2013
 8  NORTHERN TRUST INVESTMENTS, N.A.,     )  9:00 a.m.
    et al.,                               )
 9                                        )
                Defendants.               )
10
                  TRANSCRIPT OF PROCEEDINGS - STATUS
11
             BEFORE THE HONORABLE ROBERT W. GETTLEMAN
12  APPEARANCES:
    For the Plaintiffs:          BERNSTEIN, LITOWITZ, BERGER &
13                               GROSSMANN, LLP
                                 1285 Avenue of the Americas
14                               New York, New York 10019
                                 BY:  MR. AVI JOSEFSON
15
                                 SCHNEIDER WALLACE COTTRELL BRAYTON
16                               KONECKY LLP
                                 180 Montgomery Street, Suite 2000
17                               San Francisco, California 94104
                                 BY:  MR. MARK T. JOHNSON
18
                                 KELLER ROHRBACK, LLP
19                               1201 Third Avenue, Suite 3200
                                 Seattle, Washington 98101
20                               BY:  MR. RAYMOND J. FARROW

21  For the Defendants:          WINSTON & STRAWN LLP
                                 35 West Wacker Drive
22                               Chicago, Illinois 60601
                                 BY:  MS. CARYN L. JACOBS
23                                    MR. TODD EHLMAN

24  Official Court Reporter:     JENNIFER S. COSTALES, CRR, RMR
                                 219 South Dearborn Street, Room 1706
25                               Chicago, Illinois 60604
                                 (312) 427-5351
```

1       (Proceedings in open court.)

2               THE CLERK:  09 C 7203, Louisiana Firefighters'

3   Retirement versus Northern Trust.

4               MS. JACOBS:  Good morning, Your Honor.

5               Caryn Jacobs and Todd Ehlman on behalf of Northern

6   Trust.

7               MR. JOSEFSON:  Good morning, Your Honor.

8               Avi Josefson for the plaintiffs.

9               MR. JOHNSON:  Mark Johnson, Schneider Wallace Cottrell

10  Konecky, for plaintiffs.

11              MR. FARROW:  And Ray Farrow, Keller Rohrback, for

12  plaintiffs.

13              THE COURT:  All right.  I noticed from the docket that

14  you still have some motion practice before Judge Cox.

15              MR. JOSEFSON:  Yes, Your Honor.

16              THE COURT:  What's going on there?

17              MR. JOSEFSON:  The plaintiffs recently filed a second

18  motion to compel discovery.  That was after Judge Cox directed

19  the parties to sit down and discuss additional discovery related

20  solely to class certification.  We negotiated some of the issues.

21  We filed a motion on the others.  The defendants will be filing

22  their opposition to that on September 3rd.  And Judge Cox

23  indicated that after that opposition is filed she'll indicate

24  whether she wants additional briefing from the plaintiffs.  So

25  the earliest that motion will be fully briefed will be the 3rd,

1  and we may have additional briefing on that at her request.

2  THE COURT:  Well, I had expected or hoped for at least a

3  class certification motion by now.  I take it we're not going to

4  get that for a while?

5  MR. JOSEFSON:  We're not in a position to file it now.

6  And I don't think until we know the resolution of this motion and

7  what additional discovery we're receiving related to class

8  certification that we're in a position to schedule a realistic

9  date for the filing of the motion.

10  MS. JACOBS:  Your Honor, we're opposing the motion.  We

11  actually have scaled back what we wanted to do.  We deferred to

12  the judge and scaled back our discovery so that we're done with

13  document discovery at this point.  I think I agree with

14  Mr. Josefson, that depending on what she does it will be more or

15  less time before they're going to say they're ready to file.

16  THE COURT:  I mean, this is going on for a long time.

17  This case is four years old almost.

18  MR. JOSEFSON:  Your Honor, we would very much like to

19  have this filed if we had the discovery we needed.  Unfortunately

20  we're filing motions to try and get some of the same discovery

21  that Judge Cox ordered produced in her prior to motion to compel,

22  and we're filing a second motion for some of the same discovery.

23  She indicated at the last conference she thought our motion had

24  merit.  She was inclined toward our positions.  We think it's

25  reasonable discovery that we're seeking.  But, you know, until we

1   have it or know we're not getting it, it's hard for us to assess

2   the timing of the motion.

3           MS. JACOBS:  Your Honor, I disagree with that

4   characterization.  But obviously we're not arguing in front of

5   you.  We don't think it's necessary at all for class

6   certification.  That's the position we're going to be taking when

7   we file our opposition.

8           THE COURT:  Well, I don't know what to do about this.

9   I'll put this out to early October, and hopefully by then we can

10   set a schedule for class certification.  So, you know, if you get

11   a ruling and you're able to file your motion before that, just

12   notice it up, and we'll start the process.  Otherwise this is

13   just going nowhere.  So let's say October 9th at 9 o'clock just

14   for status.  All right.  I'll see you then, folks.

15           MR. JOSEFSON:  Thank you, Your Honor.

16           MS. JACOBS:  Thank you, Your Honor.

17           MR. JOHNSON:  That will be at 9:00 o'clock, Your Honor?

18           THE COURT:  9:00 o'clock.

19           MR. JOHNSON:  Thank you.

20     (Proceedings concluded.)

21                 C E R T I F I C A T E
          I, Jennifer S. Costales, do hereby certify that the

22   foregoing is a complete, true, and accurate transcript of the
    proceedings had in the above-entitled case before the Honorable

23   ROBERT W. GETTLEMAN, one of the judges of said Court, at Chicago,
    Illinois, on August 28, 2013.

24

25                     */s/ Jennifer Costales, CRR, RMR*
                    Official Court Reporter
                    United States District Court

# Exhibit B

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3  LOUISIANA FIREFIGHTERS'      ) No. 09 C 7203
    RETIREMENT SYSTEM, et al.,   )
 4                               )
                    Plaintiffs,  )
 5                               )
             vs.                 ) Chicago, Illinois
 6                               )
    NORTHERN TRUST INVESTMENTS,  )
 7  N.A., and THE NORTHERN TRUST )
    COMPANY,                     ) September 26, 2011
 8                  Defendants.  ) 9:00 a.m.

 9                   TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE SUSAN E. COX, MAGISTRATE JUDGE
10
    APPEARANCES:
11
    For the Plaintiffs:    MS. LAURA R. GERBER
12                         (Keller Rohrback, LLP,
                            1201 Third Avenue, Suite 3200,
13                          Seattle, Washington  98101)

14                         MR. AVI JOSEFSON
                           (Bernstein, Litowitz,
15                          Berger & Grossmann, LLP,
                            2835 North Sheffield Avenue, Site 409,
16                          Chicago, Illinois  60657)

17                         MS. ELIZABETH HOSKINS DOW
                           (Bailey & Glasser, LLP,
18                          1003 Western Avenue,
                            Joliet, Illinois  60435)
19
    For the Defendants:    MS. CARYN L. JACOBS
20                         MR. TODD J. EHLMAN
                           (Winston & Strawn, LLP,
21                          35 West Wacker Drive,
                            Chicago, Illinois  60601)
22


23
                           PATRICK J. MULLEN
24                        Official Court Reporter
                 219 South Dearborn Street, Room 2128,
25                      Chicago, Illinois  60604
                           (312) 435-5565
```

1           THE CLERK:  09 C 7203, Louisiana Firefighters' versus

2   Northern Trust.

3           MS. JACOBS:  Good morning, Your Honor.  Caryn Jacobs

4   on behalf of defendants Northern Trust.  Todd Ehlman is here as

5   well, and Maureen Mosh, assistant general counsel of Northern

6   Trust, is in the court.

7           THE COURT:  Okay.

8           MS. JACOBS:  We are also third-party plaintiffs and

9   counterplaintiffs.

10          THE COURT:  Good morning.

11          MR. JOSEFSON:  Good morning, Your Honor.  Avi

12  Josefson on behalf of the plaintiffs.

13          MS. GERBER:  Good morning.  Laura Gerber on behalf of

14  the plaintiffs.

15          MS. DOW:  Elizabeth Dow on behalf of the plaintiffs.

16          THE COURT:  Good morning to all of you.  Well, you

17  bounced around a little bit, but now you're with me.  As I

18  understand it from reviewing your submissions, Judge Gettleman

19  didn't set any kind of cutoff in this case.

20          MS. JACOBS:  Correct, Your Honor.  Judge Gettleman

21  referred the case to a magistrate --

22          THE COURT:  Right.

23          MS. JACOBS:  -- for all discovery matters, and that

24  included setting a schedule.

25          THE COURT:  Okay.

1            MS. JACOBS:  And we didn't get that far with Judge

2   Mason.

3            THE COURT:  No.  So the issues, as I see it, are

4   first whether we're going to proceed with merits or simply

5   class-only discovery and, secondly, depending on that decision,

6   the length of the discovery period that the parties think will

7   be adequate to address the issues in the case and, third, your

8   proposed protective orders.  Am I right?  Is there anything

9   else that we need to resolve today?

10            MS. JACOBS:  Your Honor, I think as to the protective

11   orders and ESI protocols the parties probably are going to be

12   able to reach an agreement.

13            THE COURT:  Okay.

14            MS. JACOBS:  So hopefully that can be done by

15   ourselves without your input needed.

16            THE COURT:  Okay.  See, on the ESI issue, I do

17   subscribe to the pilot project in the Northern District, and I

18   will enter the form standing order on ESI which sort of gives

19   you guidelines -- I'm sure you're all familiar with it -- in

20   terms of governing how you proceed.  It's on the web.  It's on

21   my website, and it's also on the court's website.  I mean,

22   they're fairly broad principles, but they give you some

23   parameters.

24            I'll put this case, for reporting purposes, I'll put

25   it in the program, Vernita, so make a note of that.

1       THE CLERK:  Yes, Judge.

2       THE COURT:  I guess let me give you some thoughts.  I

3   certainly understand from the defense point of view why you're

4   reluctant to do full-board discovery, you know, in a putative

5   class action.  The problem I see, which I think Judge Gettleman

6   alluded to and Judge Mason as well, is that when you bifurcate,

7   what ends up happening is the parties spend a lot of time and

8   energy and, most importantly, money from their clients'

9   perspective on what is or what isn't truly merits versus class,

10  and I have found the one time I did it that way I ended up with

11  a lot of disputes along those lines.

12      So I was wondering if there wasn't some middle ground

13  that we could reach here, which I've also done in a couple of

14  class actions that I've managed that were large and complicated

15  as this one seems somewhat to be.  Were you -- were there --

16  and I'm open to some suggestions.  You all know this case

17  extraordinarily well, I would imagine, by this time.

18      Some sort of, you know, class-plus discovery where we

19  would be -- are there topics that truly could be left to a

20  later period until there's certification in the case and

21  everyone, you know, you're passed that stuff, or is it

22  impossible given the allegations in the case and the defenses

23  and the counterclaims?

24      You know, I don't want to just say class only because

25  I just don't think that that's very workable, usually.  I think

1   it does disadvantage the plaintiff somewhat and, as I said, it

2   just creates a lot of work usually for the judge trying to sort

3   out what's class versus what's not.  What do you think about

4   that?  Is there something less than, less than full-on merits

5   but more than bifurcated that we could do in this action to

6   sort of save on costs?

7           MS. JACOBS:  Yes, Your Honor.  In fact, we have

8   already been doing that in another class action involving

9   securities lending.  Just to bring you up to speed, Your Honor,

10  Judge Hibbler has a putative class action relating to

11  securities lending by certain commingled funds.  It's the

12  Diebold class action.  Half the lawyers in that case are also

13  lawyers for the plaintiffs in this case, and in that case the

14  judge ordered that we prioritize class-related discovery.

15          This case is even bigger and broader and more

16  complicated than Judge Hibbler's case.  Judge Hibbler's case is

17  an ERISA commingled fund putative class which we think should

18  never be certified.  This case is a public fund putative class,

19  so we're talking about 50 state laws, et cetera, and on top of

20  that they layer over and above individual portfolio management

21  decisions of each of the putative class members, which are

22  these giant public pension funds.

23          So it's not just that a public pension fund may have

24  invested in the commingled fund that engaged in securities

25  lending.  It's beyond that, that their own individual

6

1  proprietary portfolio securities are implicated where each of

2  those giant public funds also engaged in individual contract

3  negotiations with Northern Trust relationship managers, of

4  which there are many.

5          THE COURT:  About how the funds are managed?

6          MS. JACOBS:  About how they would invest those

7  portfolios.  It's a classic individual case and should never be

8  certified.

9          THE COURT:  From your perspective.  I'm sure the

10 plaintiffs have a different perspective.

11         MS. JACOBS:  I'm sure the plaintiffs will disagree,

12 but a class should never see the light of day here, which is

13 one of the reasons why we're so in favor of bifurcation or

14 alternatively prioritization, as was ordered by Judge Hibbler.

15 I have that transcript here if you want to look at it.  Judge

16 Gettleman, we've looked at his orders.  He has ordered class

17 and discovery prioritization as well, and I could hand those up

18 to you.

19         THE COURT:  No, I know that's true.

20         MS. JACOBS:  I believe -- and I'm prepared to talk

21 about this today -- that we could easily do prioritization

22 here, honestly, and we've been doing it in Diebold with no

23 disputes.  We've never once run in front of the court on a

24 prioritization issue.

25         Beyond that, I would suggest that each side in these

1   big cases -- because here discovery is going to be two-way.

2   Okay?  This is two-way discovery, unlike the Diebold case where

3   the plaintiff is an individual and, therefore, has limited

4   discovery.

5           THE COURT:  Limited to produce.

6           MS. JACOBS:  Here, even without the counterclaims and

7   the third-party complaint, we have very significant discovery

8   against the plaintiffs themselves, who are these public pension

9   funds.  As you may recall from the BP case, you know, that case

10  alone had 200,000 documents.  That's one putative class member.

11  They want hundreds of those BP cases to be certified.

12          So we think we can do the prioritization, and I have

13  proposals which I've given to the plaintiffs and I could

14  address them with you, Your Honor, if you'd like to hear that.

15          MR. JOSEFSON:  I think counsel's answer highlights

16  why bifurcation is impossible here and prioritization, the way

17  the defendants view it, is difficult or close to impossible.

18  We don't even agree on what it is that Judge Hibbler did in

19  Diebold.  I'm not one of the counsel in that case, but my

20  co-counsel is.  He rejected bifurcation and asked the parties

21  to discuss prioritization.  He didn't say to prioritize class

22  discovery.  So, you know, the parties work on prioritization,

23  and that's fine.  They've done it there.

24          Here we've had meetings since the conference before

25  Judge Mason where he also rejected bifurcation and asked us to

```
 1   discuss prioritization.  We don't even agree on what relates to
 2   class certification.  Our view of class certification is that
 3   all these plans simply had pulled Northern Trust and managed
 4   the same portfolio in the same way, and the question is how
 5   that portfolio is managed.
 6           If it was managed the same way for everyone, that
 7   goes to our issue of class certification, and our understanding
 8   from the defendants is that they want to focus on the
 9   individual communications with plan members, which we
10   understand to go to their opposition to class certification,
11   but not our request that the class should be certified and that
12   there's common management.
13           But a couple other points on what counsel mentioned,
14   the individual plaintiffs here have very significant losses.
15   Unlike the plaintiff in Diebold, these individual plans,
16   Chicago Teachers, Louisiana Firefighters, have significant
17   exposure.  We've told counsel before we think this case
18   continues regardless of whether it's a class action or not.  So
19   merit discovery is inevitable.  Our clients are entitled to
20   this information.  They have sustained claims, and they can go
21   forward on these facts regardless of class certification.
22           But in any event, we see such overlap between the
23   merits of how these portfolios were managed and the class issue
24   of showing these portfolios were managed in the same way to all
25   class members that we don't see any possible way to separate
```

1  them.  I'm not going to touch on class certification.

2  Obviously, we think it's appropriate.

3          THE COURT:  It's not going to be up to me.

4          MR. JOSEFSON:  But in any event we don't think these

5  are issues that go away even if the class is denied, because

6  our clients have claims that are valuable claims and are

7  important to them.

8          With regard to BP, obviously we're not counsel in

9  that case.  We're familiar with it.  Even though it relates to

10  the same securities lending program, we think the allegations

11  here are different.  There were questions in BP as to whether

12  the client had ever -- the plaintiff had ever determined to go

13  into securities lending, whether that was a decision they had

14  made and whether they understood that, the nature of their

15  investments.

16          That's not an issue that we've put forward.  We put

17  forward simply the question of the management of the lending

18  program.  So regardless of how all the different class members

19  got to securities lending, our question is simply, you know,

20  was it managed appropriately once they were there and how they

21  got there isn't relevant, at least to our point of view.  If

22  counsel wants to develop that as their position, that's fine,

23  but our view is the thrust of the merits of the case and the

24  merits of the class certification overlap significantly.

25          THE COURT:  Well, I guess I would like to see what

1  your proposals are only because I just see that this is going

2  to be a very expensive litigation for everyone, and I'm sure

3  you're mindful of that in representing, you know, public funds.

4  If there's a way that we could at least stage discovery, I

5  think that it's worth thinking about for no better reason than

6  economy.

7           I also think if there's any potential for settlement

8  that, you know, it would be useful in that regard, too, because

9  you may not be able to agree, and if you can't agree then I'll

10  make the decision and you'll live with it.  But I'd like to see

11  from your perspective your best, your best proposal for how we

12  should proceed pre-filing, which he hasn't set so he's waiting

13  for me to make these decisions before he sets, you know,

14  deadlines for your motion, but how you would like to stage it.

15          I'll look at the proposal from the defense, and I'll

16  see if it's workable.  Then if I conclude that it's too

17  complicated or too difficult, then, you know, we'll simply set

18  a discovery cutoff.  But I'd like to see you try because I do

19  think in this kind of case it can be tremendously useful.

20          I don't -- you know, I'm not going to, I'm not going

21  to bifurcate.  I'm not going to say class discovery only, but I

22  do think that there is a potential middle ground here.  So have

23  one more meeting, if you wouldn't mind, and then why don't you

24  submit to me your proposal.  I doubt you'll be able to agree,

25  so give me your two proposals within seven days.  Then I'll

1   make a decision.

2           MS. JACOBS:  Your Honor, could we have a little more

3   time for that?  I am completely out of the pocket for about the

4   next ten days.

5           THE COURT:  Okay.  How about 14 days?

6           MS. JACOBS:  Thank you, Your Honor.

7           THE COURT:  I'm on duty this week, and I've just

8   gotten some calls that indicate that it's not going to be what

9   I would call a light week.  So that's fine.  Then if I have any

10  questions, let me set a status within like maybe three days

11  after that.

12          MS. JACOBS:  Okay.

13          THE COURT:  Just if I have any questions.  And on the

14  protective order, I think it's important that you set out very

15  specifically what it is you believe is confidential.  I mean, I

16  agree with the plaintiff on that.  Otherwise, it doesn't pass

17  muster in the Seventh Circuit.

18          MR. JOSEFSON:  And, Your Honor, we've made quite a

19  bit of progress on the protective order since meeting with

20  Judge Mason two weeks ago.

21          THE COURT:  Good.

22          MR. JOSEFSON:  I think there are two minor issues

23  we're on the verge of resolving.

24          THE COURT:  Okay.

25          MR. JOSEFSON:  So we should be there very shortly.

```
 1              THE COURT:  And on ESI, the most important thing from
 2   my perspective, having now written on this topic a couple of
 3   times and having dealt with it, is the scope of your
 4   preservation.  You know, spend some time talking about that
 5   because a lot of these disputes occur because there's
 6   misunderstandings at the beginning about what each side views
 7   as the other side's duty to preserve the ESI.
 8              The protocol adopted by the Court will give you some
 9   guidelines on that, but your own protocol that you engage in
10   should be very specific about that, particularly in a case, as
11   counsel points out, where you are likely to have a lot of --
12   you know, it's not one-sided discovery here.  You're going to
13   have a lot of discovery of the funds as well.  So it's
14   important that everybody is on the same page about what it is
15   you want to preserve, you know, and why.  Then if there are
16   disputes about the scope of preservation, it's better that we
17   deal with those early on as opposed to later when you have
18   issues.  Okay?
19              So I'm probably not telling you anything that you
20   haven't already figured out, but it seems to me that a lot of
21   the problems that evolve in these kinds of cases occur because
22   there's not enough thought into that from the get-go.  So I'd
23   like to, if you have an agreement, I'd like to make it part of
24   a court order so that there are no misunderstandings.  If you
25   don't have an agreement but you have areas on which you've
```

1  agreed to disagree, I'm happy to make those calls as well.  But

2  I'd like to get that in place relatively soon, so be thinking

3  about that over the next couple of weeks as well.

4          MR. JOSEFSON:  On that issue, Your Honor, the parties

5  have met and conferred and made a good deal of progress.

6          THE COURT:  Good.

7          MR. JOSEFSON:  There's another meet-and-confer we're

8  going to have this afternoon, so we'll continue to do that.

9          THE COURT:  Do you have discovery liaisons at your --

10 you know, of the technical people?

11         MR. JOSEFSON:  Yes.

12         THE COURT:  Well, the protocol will ask you to

13 designate people so that if I ever have questions, God forbid,

14 I call them into court and ask them, because lawyers frequently

15 don't know the answers.  I know I never did, you know, and I

16 practiced in a time where this wasn't nearly as, you know,

17 important as it is now.

18         MR. JOSEFSON:  I think both sides have had technical

19 folks on these calls --

20         THE COURT:  Good.

21         MR. JOSEFSON:  -- and made certain that (inaudible).

22         THE COURT:  That's good.  Okay.  So let's see if we

23 can't maybe reach some agreement, and I will see you when,

24 Vernita?

25         THE CLERK:  Judge, the 14 days actually brings us to

1   Tuesday, the 11th.

2              THE COURT:  Okay.

3              THE CLERK:  So do you want to see them on Thursday,

4   the 13th?

5              THE COURT:  Yes, yes, but let's make it at -- what do

6   I have that day?  Because let's put it at the end of the call

7   in case we need some time.

8              THE CLERK:  You only have one thing for 9:30.

9              THE COURT:  But that's a motion day, so I'll see you

10  at 10:00 if that's convenient.

11             MS. JACOBS:  Thank you, Your Honor.

12             THE COURT:  Thank you.  All right.

13             MR. JOSEFSON:  Thank you, Your Honor.

14    (Proceedings concluded.)

15              C  E  R  T  I  F  I  C  A  T  E

16             I, Patrick J. Mullen, do hereby certify that the

17  foregoing is a true and accurate transcript produced from an

18  audio recording of the proceedings had in the above-entitled

19  case before the Honorable SUSAN E. COX, one of the magistrate

20  judges of said court in Chicago, Illinois, on September 26,

21  2011.

22

23                                /s/ Patrick J. Mullen

24                      _____

                                  Official Court Reporter
25                               United States District Court
                                 Northern District of Illinois