**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO, THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC POLICE & FIRE RETIREMENT SYSTEM, and THE BOARD OF TRUSTEES OF THE CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>  v.<br><br>NORTHERN TRUST INVESTMENTS, N.A., and THE NORTHERN TRUST COMPANY,<br><br>      Defendants. | Judge Robert W. Gettleman, *Judge Presiding*<br><br>Magistrate Judge Susan E. Cox<br><br>Civil Action No. 09-7203<br><br>Redacted |

## DECLARATION OF CARYN L. JACOBS

I, Caryn L. Jacobs, declare:

  1.  I am a partner at Winston & Strawn LLP ("Winston"), and I serve as counsel of record for Northern Trust Investments, Inc. and The Northern Trust Company (jointly, "Northern Trust") in this case. I am a resident of Illinois and am over the age of 18. I state the following based on personal knowledge and on information that I learned and materials I reviewed in connection with my representation of Northern Trust in this case.

### Client Contracts and Identities

  2.  On July 1, 2011, plaintiffs served their First Request for the Production of Documents (a true and correct copy of which is attached hereto as Exhibit 1), including Request No. 1, which sought "All documents concerning any duty or obligation owed by Defendants to

direct or indirect participants in the [Northern Trust securities lending program]." Northern Trust served its responses and objections (a true and correct copy of which is attached hereto as Exhibit 2) on August 5, 2011, raising objections to Request No. 1 including prematurity, overbreadth, and undue burden, but agreeing to produce responsive documents subject to those and other objections.

3. During the parties' negotiations on those document requests, Request No. 1 was advanced by plaintiffs as requiring the production of *all* client contracts. At no point during any of the correspondence or the multiple meet and confer discussions the parties had prior to the Court's ruling on this discovery (including conferences in which I participated on August 10, August 22, and September 20, 2011) did plaintiffs inform Northern Trust that their need for these contracts was to identify the differences in state law governing each client's securities lending contract or to determine the location of clients for purposes of attempting to perform a choice of law analysis.

4. On October 21, 2011, the Court entered a discovery prioritization order (the "Prioritization Order") providing that discovery was to be prioritized in advance of class certification on issues including "contracts and emails concerning any duty or obligation defendants owed to the four named plaintiffs and a sample set of four other investors to be agreed upon by the parties." (Dkt. #126 at 1.)

5. The parties subsequently exchanged correspondence and conducted meet and confer discussions regarding the selection of the "sample set" under the Prioritization Order. By letter dated November 8, 2011 (a true and correct copy of which is attached hereto as Exhibit 3), plaintiffs' counsel Rebecca Boon demanded that, among other things, defendants identify the "Direct Lenders" and "Indirect Lenders" in each Collateral Pool or Commingled Lending Fund

as of September 14, 2008, and the value of each such lender's investment as of September 14, 2008 "so that Plaintiffs can promptly propose the requisite samples."

6.  On November 22, 2011, the parties had a meet and confer call to discuss this demand among other things, in which Winston attorneys Todd Ehlman and Nathan Kipp, and plaintiffs' counsel Rebecca Boon, Brett Van Benthysen, Derek Loeser, Ray Farrow, Ben Gould, and Mark Johnson participated. On December 5, 2011, in response to Northern Trust's expressed concerns on the November 22, 2011 call regarding protecting client information under the Illinois Banking Act, Ms. Boon proposed that Northern Trust provide certain information plaintiffs sought with "unique identifiers as placeholders for the names of Defendants' clients." A true and correct copy of Ms. Boon's December 5, 2011 email is attached as Exhibit 4.

7.  After discussions with Northern Trust personnel on how this information could be gathered, we agreed to this request in a meet and confer call on December 13, 2011. In neither the November 8, 2011 demand, nor the plaintiffs' comments during the November 22, 2011 and December 13, 2011 meet and confers, nor Ms. Boon's request on December 5, 2011, nor any other communication during this period, did plaintiffs ask for information on the state law governing each client's securities lending contract or for each client's location.

8.  Redacted

9.  Redacted



Redacted

10. In early February 2012, plaintiffs' counsel used the Redacted Redacted to select four clients as the "sample set" under the Prioritization Order, whose identities were subsequently disclosed to plaintiffs after compliance with notice procedures under the Illinois Banking Act.

11. Throughout this entire period of discussions and correspondence subsequent to the Prioritization Order's issuance regarding the sample set selection process, plaintiffs never once asked Northern Trust to furnish information about the governing law provisions in each client's securities lending contract or for each client's location.

12. Redacted

4

5

Redacted

13. Redacted

14. Redacted

15. Redacted

16. Redacted

Redacted

17. The only meet and confer discussion concerning plaintiffs' May 17, 2013 demand for all client contracts (Josefson Decl. Ex. N at 2) took place on June 11, 2013 by telephone, and was attended by Winston attorneys Todd Ehlman and Brook Long and plaintiffs' counsel Avi Josefson, Rebecca Boon, Mark Johnson, Ray Farrow, and Laura Gerber. I am informed by Mr. Ehlman and Mr. Long that plaintiffs never once during that conference made any reference to client contracts being governed by the laws of different states or the need for the contracts or client names or locations so that plaintiffs could determine governing law (versus unarticulated differences among contracts generally). While Northern Trust indicated that it would consider a narrowed discovery request from plaintiffs short of *all* client contracts, plaintiffs refused to advance discussions by proposing any narrowed request or revealing the argument they are now making. Thus plaintiffs' purported need for discovery of governing law provisions or the location of clients for choice of law purposes was never properly raised with Northern Trust before plaintiffs filed their motion to compel, and Northern Trust was never given the opportunity to discuss with plaintiffs how to provide that more limited information in a less burdensome manner.

18. Redacted

19. Redacted

20. Redacted

21. Redacted

22. Redacted

Redacted

      23.    At several points during discovery negotiations in this case, Northern Trust has, in the spirit of cooperation, furnished extensive information and documentation in response to informal requests from the plaintiffs, outside of formal discovery channels such as document requests and interrogatories. Such instances included but were not limited to the following:

    a. On December 15, 2011, a letter from Winston attorney Nate Kipp furnished certain information concerning collateral sections and commingled lending funds in response to informal demands that plaintiffs made by letter.

    b. On January 10, 2012, another letter from Mr. Kipp identified certain securities as to which there had been a realized loss in particular collateral sections, in response to informal demands that plaintiffs made by letter.

    c. On January 22, 2013, Northern Trust produced certain asset lists and realized loss event data in response to informal demands that plaintiffs made by letter.

    d. On April 12, 2013, Northern Trust produced information regarding the functions of certain committees in response to informal demands that plaintiffs made by letter.

e. On June 20, June 27, August 2, and August 20, 2013, Northern Trust produced extensive documentation and data in response to plaintiffs' demands in their letter of May 17, 2013, including documents regarding clients' and collective funds' respective portions of collateral deficiencies, realized losses, and cash contributions from Northern Trust.

f. In a letter from Winston attorney Brook Long on July 19, 2013, and in various phone conversations Mr. Long had with plaintiffs' counsel Rebecca Boon and Laura Gerber, Northern Trust furnished information in response to questions plaintiffs raised regarding the interpretation and scope of the information produced by Northern Trust in response to the May 17, 2013 letter and other requests from plaintiffs.

**The "Consolidation" Issue**

24. On October 11, 2011, plaintiffs sought discovery on the "consolidation" issue. (Dkt. #120 at 3.) The Prioritization Order did not allow such discovery. (Dkt. #126.)

25. The documents plaintiffs cite in support of their previously denied and newly renewed demands for prioritized discovery on the "consolidation" issue were produced to them more than a year before their current motion to compel, and many months before their *earlier* motion to compel on the very same issue.

26. Redacted

9

Redacted

27. Redacted

28. Redacted

29. Plaintiffs' December 3, 2012 motion to compel sought documents pertaining to the consolidation issue. (Dkt. #203 at 5, 11-12.) On February 27, 2013, the Court issued an order denying separate discovery on the consolidation issue but granting plaintiffs' motion as to certain discovery sought under Category 9 of the Prioritization Order. (Dkt. #248.)

30. In subsequent correspondence and meet and confer discussions, the parties discussed parameters for an additional ESI search under Category 9, as discussed in the February 27, 2013 order. At the conclusion of those discussions, the parties reached agreement on particular custodians, ESI search procedures, and ESI search terms, on March 27, 2013. Attached as Exhibit 18 is an email from Rebecca Boon to Brook Long on March 27, 2013 reflecting the parties' agreement. As this correspondence shows, Northern Trust agreed to search emails among a list of 25 individuals, which went beyond the 10 identified custodians that would have been covered by Category 9 itself. (*See* Dkt. #248 at 2.) Defendants agreed to include in their ESI search some terms related to the consolidation issue, specifically the string "consolidat\* OR fin46 OR 'FIN 46' OR 'fin-46'". (*See* Josefson Decl. Ex. J.) At no point during the discussions or correspondence leading to this agreement did plaintiffs suggest that the ESI search would need to include all Global Enterprise Risk Committee (GERC) members, all NTGI Risk Committee members, all Executive Committee members, or all directors on the Board, and at no point did plaintiffs indicate that the ESI search would require terms or procedures directed toward those committees.

31. Plaintiffs' motion to compel now demands "Internal communications, including communications to, from or among Northern Trust's Board of Directors, Executive Committee, the NTGI Risk Council, and the members of the GERC." [Redacted]

11

32. Redacted

33. At a May 23, 2013 status hearing before this Court, the plaintiffs specifically stated that they wished to file papers that would focus on issues raised in their May 17, 2013 letter, which letter made no mention of the consolidation issue. *See* 5/23/2013 Tr. at 13 (Dkt. #254-1) ([Plaintiffs' counsel Mark Johnson:] "[I]f the defendants are going to advise the court in writing of things that they think are necessary for class certification, we would be happy to provide something in writing to the court as well *in terms of identifying the categories that we identified in the May 17th letter*." (emphasis added)); *id.* at 14 ([The Court:] "I would like you to meet and confer on whatever outstanding requests *are in your letter*, and after that you may file . . . any motion that you have directed to outstanding discovery from your end relevant to the class certification motion." (emphasis added)). The Court then set a June 21, 2013 deadline for plaintiffs to file their motion as discussed at the May 23 hearing. (*See* Dkt. #253.)

34. Plaintiffs requested from the Court and were granted on June 19, 2013 an extension of the deadline from June 21, 2013 to July 22, 2013. (Dkt. #255.) In requesting

Northern Trust's consent to that request, plaintiffs never indicated by correspondence or otherwise that they would be seeking additional prioritized discovery on the consolidation issue or other issues beyond the May 17 letter.

35. Yet again, plaintiffs requested from the Court and were granted on July 22, 2013 an extension from July 22, 2013 to August 12, 2013. (Dkt. #257.) Plaintiffs' request for Northern Trust's consent to that extension was discussed in a voice mail from Avi Josefson to Todd Ehlman on July 19, 2013, and in subsequent phone conversations between Avi Josefson and Brook Long on July 19, 2013, and between Todd Ehlman, Brook Long, and Avi Josefson on July 22, 2013. The basis Mr. Josefson expressed in those discussions for an extension was the need to resolve a discussion between Northern Trust and plaintiffs on a particular issue arising from Laura Gerber's May 17, 2013 letter, related to the production of data regarding client "contributions" to collateral pools for realized losses. That issue was ultimately resolved amicably, and Northern Trust has produced the documents and data at issue. In seeking Northern Trust's consent to an extension of the July 22 deadline, the plaintiffs never mentioned the consolidation issue or informed Northern Trust that they would be seeking additional prioritized discovery on it. Indeed, even at that point, the plaintiffs never indicated they would be seeking any additional prioritized discovery beyond the issues raised by the May 17, 2013, letter.

36. The consolidation issue was newly resurrected by plaintiffs as a subject of prioritized discovery in a letter from Rebecca Boon on July 26, 2013, several days *after* the previous deadline for plaintiffs' motion to compel. (Josefson Decl. Ex. O.)

13

37. After Northern Trust responded in writing on July 30, 2013 (Josefson Decl. Ex. I), plaintiffs never convened an in-person or telephonic meet and confer session on the consolidation issue.

38. The parties did meet and confer on a separate discovery issue on August 1, 2013. However, I am informed by Mr. Ehlman and Mr. Long, who participated in that call, that plaintiffs did not propose to discuss the consolidation issue on that call, nor did they request that defendants produce a privilege log regarding the consolidation issue on that call.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of September, 2013.

/s/ Caryn L. Jacobs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies under penalty of perjury that a copy of the foregoing DECLARATION OF CARYN L. JACOBS with exhibits was served on counsel of record for all parties electronically via the CM/ECF system and via email on September 3, 2013.

Dated: September 3, 2013                                                                 /s/ Brook R. Long