# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

LOUISIANA FIREFIGHTERS' RETIREMENT
SYSTEM, THE BOARD OF TRUSTEES OF THE
PUBLIC SCHOOL TEACHERS' PENSION AND
RETIREMENT FUND OF CHICAGO, THE BOARD
OF TRUSTEES OF THE CITY OF PONTIAC
POLICE & FIRE RETIREMENT SYSTEM, and THE
BOARD OF TRUSTEES OF THE CITY OF
PONTIAC GENERAL EMPLOYEES RETIREMENT
SYSTEM, on behalf of themselves and all others
similarly situated,

       Plaintiffs,

       v.

NORTHERN TRUST INVESTMENTS, N.A., and THE
NORTHERN TRUST COMPANY,

       Defendants.

Case No. 09-7203

Hon. Jorge L. Alonso

Magistrate Judge Susan E. Cox

**MEMORANDUM OF LAW IN SUPPORT OF SETTLING PLAINTIFFS'
UNOPPOSED MOTION FOR AN ORDER: (1) PRELIMINARILY APPROVING
CLASS ACTION SETTLEMENT; (2) PRELIMINARILY CERTIFYING
SETTLEMENT CLASS AND APPOINTING CLASS COUNSEL FOR THE
SETTLEMENT CLASS; AND (3) APPROVING PROPOSED PLAN FOR NOTICE**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     LITIGATION AND SETTLEMENT HISTORY ................................................3

        A.      Description of the Action......................................................................3

        B.      Discovery and Discovery-Related Motion Practice................................5

        C.      Settlement Negotiations .........................................................................6

III.    ARGUMENT .......................................................................................................7

        A.      The Proposed Settlement Warrants Preliminary Approval.....................7

                1.      The Standard for Preliminary Approval ......................................7

                2.      The Settlement Is the Result of Good-Faith, Arm's-Length
                        Negotiations Conducted by Well-Informed and Experienced
                        Counsel .........................................................................................9

                3.      The Substantial Benefits for the Settlement Class, Weighed
                        Against Litigation Risks, Support Preliminary Approval.........11

        B.      Preliminary Certification of the Settlement  Class for Settlement Purposes
                Is Appropriate .....................................................................................12

                1.      The Settlement Class Satisfies the Requirements of Rule 23(a)...............13

                        a.      The Settlement Class is so Numerous that Joinder is
                                Impracticable................................................................13

                        b.      There are Questions of Law and Fact  Common to the
                                Settlement Class............................................................14

                        c.      Settling Plaintiffs' Claims Are Typical of Those of the
                                Settlement Class............................................................15

                        d.      Settling Plaintiffs Will Fairly and Adequately Represent the
                                Settlement Class............................................................16

                2.      The Settlement Class Satisfies the  Requirements of Fed. R. Civ. P.
                        23(b)(3) ......................................................................................16

        C.      Notice to the Settlement Class Should Be Approved ...........................19

IV.     THE PROPOSED SCHEDULE OF EVENTS ................................................22

i

V.    CONCLUSION..............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alliance to End Repression v. City of Chi.*,
   561 F. Supp. 537 (N.D. Ill. 1982) ............................................................9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..........................................................13, 16, 17

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ............................................................8, 9

*Bailiff v. Vill. of Downers Grove*,
   No. 11-3335, 2011 WL 6318953 (N.D. Ill. Dec. 16, 2011)....................................17

*Barragan v. Evanger's Dog & Cat Food Co.*,
   259 F.R.D. 330 (N.D. Ill. 2009)..........................................................14

*Baxter v. Kawasaki Motors Corp.*
   259 F.R.D. 336 (N.D. Ill. 2009).........................................................17

*BP Corp. N. Am. Inc. Sav. Plan Inv. Oversight Comm. v. N. Trust Invs.*,
   08-cv-06029 (N.D. Ill. filed Oct. 21, 2008 ) ..............................................5

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................7

*De La Fuente v. Stokely–Van Camp, Inc.*,
   713 F.2d 225 (7th Cir.1983) ............................................................15

*Flood v. Dominguez*,
   No. 08-153, 2010 U.S. Dist. LEXIS 70858 (N.D. Ind. July 14, 2010)....................................13

*Gaspar v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996)...........................................................15

*Goldsmith v. Tech. Solutions Co.*,
   No. 92-4734, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) .........................7

*Hispanics United of DuPage Cnty. v. Vill. of Addison*,
   988 F. Supp. 1130 (N.D. Ill. 1997) ......................................................7, 9

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ............................................................7

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ............................................................15

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
  244 F.R.D. 469 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009) ...................................18

*Langendorf v. Skinnygirl Cocktails, LLC*,
  No. 11 CV 7060, 2014 U.S. Dist. LEXIS 154444 (N.D. Ill. Oct. 30, 2014) ..........................15

*Ledford v. City of Highland Park*,
  No. 00-4212, 2000 U.S. Dist. LEXIS 11101 (N.D. Ill. July 27, 2000)...................................8

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ...........................................................................................10

*Messner v. Northshore Univ. Healthsystem*,
  669 F.3d 802 (7th Cir. 2012) ...............................................................................................18

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................................10

*Mullane v. Cen. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..............................................................................................................22

*Muro v. Target Corp.*,
  580 F.3d 485 (7th Cir. 2009) ...............................................................................................15

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................................10

*Oplchenski v. Parfums Givenchy, Inc.*,
  254 F.R.D. 489 (N.D. Ill. 2008)...........................................................................................14

*In re Ready-Mixed Concrete Antitrust Litig.*,
  261 F.R.D. 154 (S.D. Ind. 2009)..........................................................................................18

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993) ...................................................................................................16

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ........................................................................................14, 15

*Scholes v. Stone, McGuire & Benjamin*,
  839 F. Supp. 1314 (N.D. Ill. 1993) ........................................................................................9

*Sec'y of Labor v. Fitzsimmons*,
  805 F.2d 682 (7th Cir. 1986) (en banc) ...............................................................................16

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ...............................................................................................14

*Susquehanna Corp. v. Korholz*,
  84 F.R.D. 316 (N.D. Ill. 1979)...........................................................................10

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
  309 F.3d 978 (7th Cir. 2002) ............................................................................13

*Walco Invs., Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996)........................................................................16

*Williams v. Quinn*,
  748 F. Supp. 2d 892 (N.D. Ill. 2010) ..................................................................7

*Williams-Green v. J. Alexander's Rest., Inc.*,
  277 F.R.D. 374 (N.D. Ill. 2011)........................................................................17

## STATUTES

The Employee Retirement Income Security Act of 1974, Section 404
  29 U.S.C. § 1104.................................................................................................3

Mich. Comp. Laws § 38.1133...................................................................................3

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)............................................................................................4

Fed. R. Civ. P. 23 ........................................................................................... *passim*

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995)............................................8

v

## I.    INTRODUCTION

Settling Plaintiffs[1] respectfully submit this Memorandum of Law in support of their unopposed motion for entry of an order that will, among other things, (i) preliminarily approve the proposed Settlement set forth in the Stipulation and Agreement of Partial Settlement of Class Action dated February 17, 2015 (the "Stipulation") entered into by Settling Plaintiffs and The Board of Trustees of the City of Pontiac General Employees Retirement System (the "Pontiac General Board")[2] on their own behalf and on behalf of the Settlement Class[3] and defendants Northern Trust Investments, N.A. (currently, Northern Trust Investments, Inc., collectively referred to as "NTI") and The Northern Trust Company ("NTC") (NTI and NTC collectively referred to as "Northern Trust" or "Defendants"); (ii) preliminarily certify, for settlement purposes only, the proposed Settlement Class, and Settling Plaintiffs as class representatives, and appoint the firms of Keller Rohrback, LLP, Schneider Wallace Cottrell Konecky and Wotkyns, LLP, and Bernstein Litowitz Berger & Grossmann, LLP as class counsel for the Settlement Class; (iii) approve the form and manner of giving notice of the proposed settlement to the Settlement Class; and (iv) providing for the setting of a date for the hearing on final approval of the Settlement (the "Settlement Hearing").[4]

The proposed Settlement now before the Court for preliminary approval is the product of over four years of hard-fought litigation, which included substantial motion practice and

---

[1] Settling Plaintiffs are Louisiana Firefighters' Retirement System ("Louisiana Firefighters"), The Board of Trustees of the Public School Teachers' Pension and Retirement Fund of Chicago (the "Chicago Teachers Board"), and The Board of Trustees of the City of Pontiac Police and Fire Retirement System (the "Pontiac Police and Fire Board").

[2] Plaintiff Pontiac General Board, which has no Indirect Lending claims, is a party to the Stipulation and this motion solely in its capacity as an alleged class representative. When required, Settling Plaintiffs and the Pontiac General Board are jointly referred to as "Plaintiffs."

[3] The definition of the Settlement Class is set forth at pp. 12-13 below.

[4] Unless otherwise noted, all capitalized terms used herein shall have the meanings ascribed to them in the Stipulation.

extensive fact discovery as well as intense arm's-length negotiations between experienced counsel and the involvement of a seasoned and respected mediator. It provides for the payment of Twenty-Four Million Dollars ($24,000,000) in cash, plus interest earned thereon, for the benefit of the Settlement Class in resolution of the Indirect Lending claims of Settlement Class Members against Defendants. The proposed Settlement is a partial settlement only – the prosecution of the Action will continue with respect to claims relating to Direct Lending.

Settling Plaintiffs and Settling Plaintiffs' Counsel believe that the proposed Settlement is fair, reasonable and adequate and in the best interests of the Settlement Class. The Settlement provides a substantial and immediate benefit to the Settlement Class in the form of the cash payment of $24 million. This benefit must be considered in the context of risks that further protracted litigation might lead to no recovery, or to a smaller recovery, from Defendants in this Action with respect to Indirect Lending claims. Defendants have mounted a vigorous defense at every stage of this litigation and would have continued to do so, asserting multiple affirmative defenses and alleging limitations on their liability, and they would also assert that the financial crisis of 2008 was unforeseeable and that it, not their allegedly imprudent investment decisions, was responsible for any losses allegedly suffered by the Settlement Class Members. In light of these risks and as discussed further in detail below, Settling Plaintiffs and Settling Plaintiffs' Counsel believe that the proposed Settlement is in the best interests of the Settlement Class and merits preliminary approval.[5]

---

[5] See, Joint Declaration of Derek W. Loeser, Mark T. Johnson and Avi Josefson in Support of Settling Plaintiffs' Unopposed Motion for an Order (1) Preliminarily Approving Class Action Settlement; (2) Preliminarily Certifying Settlement Class and Appointing Class Counsel for the Settlement Class; and (3) Approving Proposed Plan for Notice ("Joint Declaration" or "Joint Decl.") being filed concurrently herewith.

## II.    LITIGATION AND SETTLEMENT HISTORY

### A.    Description of the Action

On November 17, 2009, plaintiff Louisiana Firefighters filed a putative class action complaint in this Court alleging that Defendants, among other things, imprudently invested collateral received to secure the loan of securities in connection with Northern Trust's securities lending program.  (Doc. 1.)  That complaint asserted claims of breach of fiduciary duty, breach of contract, and breach of a duty of good faith and fair dealing against Defendants.[6]

On July 16, 2010, Plaintiffs Louisiana Firefighters, Chicago Teachers, the Pontiac Police and Fire Board and the Pontiac General Board filed an Amended Class Action Complaint ("Amended Complaint") which alleged that Defendants, among other things, improperly invested collateral received to secure the loan of securities from the Commingled Lending Funds and/or collateral received to secure the loan of securities from the portfolio of a client that participated directly in Northern Trust's securities lending program, and that Defendants had charged and collected impermissibly high securities lending fees from the Commingled Lending Funds.  (Doc. 32.)  The Amended Complaint asserted claims for breach of fiduciary duty, breach of contract, and breach of a duty of good faith and fair dealing against Defendants.

---

[6] On January 29, 2010, Chicago Teachers and the City of Atlanta Firefighters' Pension Plan filed a putative class action complaint, in a separate action (No. 10-cv-00619, N.D. Ill.), against NTI and NTC.  That complaint alleged that Defendants, among other things, imprudently invested collateral received to secure the loan of securities in connection with Northern Trust's securities lending program, and it asserted claims for breach of fiduciary duty, breach of contract, and breach of a duty of good faith and fair dealing; on October 22, 2010, that case was dismissed without prejudice to the claims in the instant case.  On March 17, 2010, the Pontiac Police and Fire Board filed a putative class action, in a separate action (No. 10-cv-11083, E.D. Mich.), against NTI and NTC.  On April 23, 2010, the Pontiac Police and Fire Board filed a Corrected Class Action Complaint, and on June 25, 2010, it filed a First Amended Class Action Complaint.  Those complaints alleged that Defendants, among other things, imprudently invested collateral received to secure the loan of securities in connection with Northern Trust's securities lending program, and they asserted claims for breach of duty of care based on ERISA § 404 (29 U.S.C. § 1104), breach of duty of care and duty of loyalty based on Mich. Comp. Laws § 38.1133, negligence, breach of contract, and breach of a duty of good faith and fair dealing; on December 9, 2010, that case was dismissed without prejudice.

On September 3, 2010, Defendants moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 51.) On May 6, 2011, the Court issued a Memorandum Opinion and Order that granted in part and denied in part Defendants' motion to dismiss, finding that Plaintiffs' claim for breach of the duty of good faith and fair dealing was subsumed in the breach of contract claim under Illinois law and dismissing it on that ground. (Doc. 71.)

Defendants answered the Amended Complaint on June 30, 2011 (Doc. 77) and, on July 14, 2011, they filed an amended answer (Doc. 79) in which they denied the claims asserted in the Amended Complaint, and they added a counterclaim and a third-party complaint. On September 26, 2011, motions were filed to dismiss the counterclaim and the third-party complaint and to strike certain of the affirmative defenses. (Doc. 108.) On February 23, 2012, the Court issued a Memorandum Opinion and Order that granted the motions to dismiss the counterclaim and third-party complaint and struck all affirmative defenses asserted in Defendants' answer. (Doc. 155.)

On March 29, 2012, Plaintiffs filed the Second Amended Class Action Complaint (the "Second Amended Complaint") (Doc. 159) alleging that Defendants, among other things, improperly invested collateral received to secure the loan of securities from the Commingled Lending Funds and/or collateral received to secure the loan of securities from the portfolio of a client that participated directly in Northern Trust's securities lending program, and that Defendants had charged and collected impermissibly high securities lending fees from the Commingled Lending Funds in breach of fiduciary duty, contract, and a duty of good faith and fair dealing. Defendants answered the Second Amended Complaint on June 5, 2012, again denying all allegations of wrongdoing and asserting multiple affirmative defenses and a counterclaim against the Chicago Teachers Board. (Doc. 167.) On July 3, 2012, Chicago

4

Teachers Board moved to dismiss the counterclaim (Doc. 172), which motion was granted on November 6, 2012 (Doc. 199).

On July 24, 2012, Plaintiffs moved the Court for an order confirming that the May 6, 2011 Memorandum Opinion and Order that granted in part and denied in part Defendants' motion to dismiss the Amended Complaint did not dismiss Plaintiffs' breach of fiduciary duty claim that was based upon the securities lending fees charged by Defendants. (Doc. 178.) On September 12, 2012, the Court issued an order clarifying that the breach of fiduciary duty claim regarding the lending fees had been dismissed and denying Plaintiffs' motion. (Doc. 186.)

### B. Discovery and Discovery-Related Motion Practice

Discovery in this Action commenced in May 2011 with the required Rule 26 discovery conference. Beginning in July 2011, the parties served voluminous document production requests on each other. Discovery has been extensive. Over the course of the following thirty months, the parties engaged in numerous discovery conferences, hearings, and motions. (*See e.g.*, Docs. 91, 105, 204, 264, 291.) In response to discovery requests, Defendants have produced, and Plaintiffs have reviewed, over 224,000 pages of documents, which include documents and written discovery responses re-produced in this Action from the *Diebold v. Northern Trust Invs.*, 09-cv-1934 (N.D. Ill.) ("Diebold Action"), *BP Corp. North America Inc. Savings Plan Inv. Oversight Comm. v. Northern Trust Invs.*, 08-cv-06029 (N.D. Ill.), and *FedEx Corp. v. The Northern Trust Co.*, 08-cv-02827 (W.D. Tenn.). This discovery also included deposition transcripts of fact witnesses, expert reports, and deposition transcripts of expert witnesses. Additionally, in response to the discovery requests propounded by Defendants, Settling Plaintiffs and the Pontiac General Board have produced over 167,000 pages of documents.

### C.       Settlement Negotiations

The parties first began discussing a potential partial resolution of this Action in late 2012.
On May 9, 2013, a private mediation was conducted by Judge Morton Denlow (Ret.), a former
United States Magistrate Judge for the United States District Court, Northern District of Illinois.
At the mediation, the parties made presentations to each other and to Judge Denlow regarding the
strengths and weaknesses of their respective positions.  While the parties were unable to reach a
resolution at the mediation, they continued to discuss the possibility or reaching a partial
resolution of the Action.

In early January 2014, the parties agreed in principle to partially resolve this action,
specifically, any and all claims asserted with respect to Indirect Lending.[7]  The resolution of the
Indirect Lending claims in the Action was conditioned on there also being a resolution of the
claims in the Diebold Action which asserts Indirect Lending claims on behalf of entities that are
governed by ERISA.

After the agreement-in-principle was reached, the parties engaged in extensive and
arduous negotiations of the specific terms of the Settlement, including the notice program to
Settlement Class Members, which culminated in the execution on February 17, 2015 of the
Stipulation presented to the Court on this motion.

In light of the substantial benefits achieved (the payment of $24,000,000 for the benefit
of the Settlement Class), the cost and risks of continuing the litigation of the Indirect Lending
claims against Defendants through trial and appeals, and the fact that the proposed Settlement is
the result of arm's-length negotiations, it is respectfully submitted that the Settlement warrants

---

[7] To the extent that Settlement Class Members participated in both Indirect and Direct Lending, nothing
in the proposed Settlement in any way impairs or limits the claims they have with respect to Direct
Lending.

the Court's preliminary approval so that notice can be provided to the Settlement Class. It is further submitted that the Court should, for purposes of the Settlement only, preliminarily certify the Settlement Class, certify Settling Plaintiffs as class representatives and appoint the three firms that have served as Co-Lead Counsel in this case, by agreement of all of Settling Plaintiffs' counsel, as class counsel for the Settlement Class.

## III.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

#### 1.    The Standard for Preliminary Approval

It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) ("Federal courts favor the settlement of class actions"); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (discussing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). In *Goldsmith v. Technology Solutions Co.*, No. 92-4734, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995), the court stated:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.

*Id.* at *6 (citations and quotation marks omitted); *see also Hispanics United of DuPage Cnty. v. Vill. of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) ("Compromise is particularly appropriate in complex class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given to class members in a reasonable manner, and judicial approval must be obtained. Review

of a proposed class action settlement is a two-step process. *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). The first step is a preliminary review of the terms of the proposed settlement to determine whether notice of the proposed settlement should be sent to class members. *Id.* Following dissemination of the notice and an opportunity for class members to be heard, the Court should then hold a final fairness hearing to determine whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Id.*

At the preliminary approval stage, the Court's function is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. The question before the Court is therefore limited to "whether the proposed settlement is within the range of possible approval." *Id.* (internal quotation marks omitted); *see also Ledford v. City of Highland Park*, No. 00-4212, 2000 U.S. Dist. LEXIS 11101, at *5 (N.D. Ill. July 27, 2000) ("The . . . question is whether the proposed consent order falls within the range of reasonableness such that it can preliminarily be found to be a fair settlement.").

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

MANUAL FOR COMPLEX LITIGATION § 30.41, at 237 (3d ed. 1995).

Settling Plaintiffs now request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement. Settling Plaintiffs respectfully submit that the Settlement meets the standard for preliminary approval. The Settlement proposed is the product of serious, informed, non-collusive negotiations, and does not have any obvious deficiencies. As summarized below, and as will be detailed further in the subsequent motion for

final approval of the Settlement, the proposed Settlement is well "within the range of possible approval." *Armstrong*, 616 F.2d at 314.[8]

### 2. The Settlement Is the Result of Good-Faith, Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel

The Settlement was achieved only after arm's-length negotiations between well-informed and experienced counsel after four years of litigation and substantial discovery, and it is the opinion of counsel who achieved the Settlement that it is fair and reasonable to members of the Settlement Class. Each of these factors strongly supports preliminary approval of the Settlement.

First, courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See*, *e.g.*, *Armstrong*, 616 F.2d at 325 (in determining the fairness of a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel"); *Hispanics United*, 988 F. Supp. at 1170 (same); *Alliance to End Repression v. City of Chi.*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, Co-Lead Counsel – three law firms that are nationwide leaders in class action litigation (*see* Joint Decl. ¶¶ 1-3 and Exhibits 1-3 thereto) – have made a considered judgment based on adequate information derived from substantial discovery that the Settlement is not only fair, reasonable and adequate but a highly favorable result for the Settlement Class.

---

[8] At the fairness hearing, the Court should finally approve the Settlement if the Court finds it to be fair, reasonable, and adequate. The Seventh Circuit has set forth an eight-factor test for this determination: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *See Armstrong*, 616 F.2d at 314 (quoting 3B Moore's Federal Practice ¶ 23.80[4] at 23-521 (2d ed. 1978)); *see also Hispanics United*, 988 F. Supp. at 1149-50; *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314 (N.D. Ill. 1993). Also at the fairness hearing, the Court will be asked to approve the proposed Plan of Allocation of the Settlement Fund.

Co-Lead Counsel's belief is based on their deep familiarity with the factual and legal issues in this Action and the risks associated with continued litigation.

As noted above, Settling Plaintiffs' Counsel have vigorously prosecuted the Action for over four years. They have investigated Plaintiffs' claims, prepared and filed detailed complaints, drafted detailed briefing in response to Defendants' motion to dismiss and other motions, and conducted substantial discovery, including the review of over 224,000 pages of documents. Thus, there can be no question that at the time the Settlement was reached, counsel had a clear understanding of the strengths and weaknesses of the Indirect Lending claims. Accordingly, the stage of the litigation supports approval of the Settlement. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021-22 (N.D. Ill. 2000) (noting that at the time of settlement, plaintiffs' counsel had analyzed the strengths and weaknesses of available claims and "had ample opportunity to reach an informed judgment concerning the merits of the proposed settlements").

Finally, the extensive and arm's-length nature of the settlement negotiations, recounted above, creates a presumption that the terms of the Settlement are fair. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate) (citing *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979)).

### 3. The Substantial Benefits for the Settlement Class, Weighed Against Litigation Risks, Support Preliminary Approval

The $24 million fund created for the benefit of the Settlement Class by the Settlement is a substantial recovery, both in the aggregate and for individual class members. As will be explained in greater detail in advance of the Settlement Hearing, this recovery is particularly beneficial to the Settlement Class in light of the risks posed by continuing litigation, including the possibility of a jury ultimately finding no liability.

While Settling Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that the Indirect Lending claims presented a number of substantial risks to establishing both liability and damages and that there was no certainty that Settling Plaintiffs would have prevailed at trial. Because this litigation is continuing as to certain claims, Settling Plaintiffs believe that providing specific details on the risks that they might have faced in pursuing the settled claims to trial or opining on the degree of those risks could affect the ongoing litigation. Suffice it to say that Defendants have mounted a vigorous defense to Plaintiffs' claims at every stage of this litigation and have asserted multiple affirmative defenses set forth in 221 paragraphs spanning nearly 60 pages. (Doc. 167.) The asserted defenses blame Plaintiffs for their securities lending losses and include, among other defenses, comparative fault, independent superseding cause, failure to mitigate, waiver, ratification, acquiescence, assumption of the risk and estoppel. Defendants also assert alleged limitations on their liability based on certain provisions in the trust documents and custody agreements. Defendants also assert that because most of the Commingled Lending Funds were index funds, there can be no damages in this case if those funds met their objectives of adequately tracking their indexes (which Defendants claim they did), notwithstanding specific losses from securities lending by the funds. Finally, with respect to the main liability question, Defendants assert that the financial crisis of

11

2008 was unforeseeable and that the financial crisis, not Defendants' allegedly imprudent investment decisions, was largely responsible for any losses the Settlement Class Members suffered. Additionally, if the Action were to continue with respect to the Indirect Lending claims, Settling Plaintiffs would, among other things, run the risk of an adverse summary disposition of those claims before trial, as well as the risk of failing to prevail at trial, or if successful at trial, the risk of reversal on appeal from any such verdict.

In light of these risks, Settling Plaintiffs and their counsel believe the $24 million Settlement represents a favorable outcome for members of the Settlement Class. Among other things, the Settlement will avoid the cost and expense of continuing the litigation with respect to the Indirect Lending claims and will achieve immediate relief for members of the Settlement Class.

### B.   Preliminary Certification of the Settlement Class for Settlement Purposes Is Appropriate

In connection with preliminary approval of the Settlement, Settling Plaintiffs also request that the Court preliminarily certify the proposed Settlement Class. The proposed Settlement Class consists of:

> all entities that are not governed by ERISA and that participated in Indirect Lending during the Settlement Class Period (*i.e.*, the period beginning January 1, 2007 through and including October 31 2010) and are alleged to have been damaged as a result of their participation in Indirect Lending at issue in the Action.

Stipulation ¶ 1(bbb). Excluded from the Settlement Class are: (i) entities that previously released or were caused to release Northern Trust from liability for alleged injury, damage, or loss arising from Indirect Lending during 2007-2009; (ii) Defendants and their successors, their respective officers and directors (former, current and future), members of the Immediate Families of the respective officers and directors (former, current and future), and the legal representatives, heirs,

successors or assigns of any such excluded person, and any entity in which any Defendant has or

had a controlling interest; and (iii) entities which exclude themselves by submitting a Request for

Exclusion that is accepted by the Court.  *Id*.

A settlement class, like other certified classes, must satisfy all the requirements of Rules

23(a) and (b).  *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir.

2002).  The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement

class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would

present intractable management problems . . . is not a consideration when settlement-only

certification is requested.").

As demonstrated below, certification of the Settlement Class for purposes of the

Settlement is appropriate here because the proposed Settlement Class satisfies all the

requirements of Rule 23(a) and Rule 23(b)(3).

### 1.     The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the

class; and (4) the representative parties will fairly and adequately protect the interests of the

class."  Fed. R. Civ. P. 23(a).

#### a.  The Settlement Class is so Numerous that Joinder is Impracticable

Class certification under Rule 23(a)(1) is appropriate where a class contains so many

members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1).    The

"numerosity" requirement is usually met if there are more than forty class members.  *See, e.g.*,

*Flood v. Dominguez*, No. 08-153, 2010 U.S. Dist. LEXIS 70858, at *8 (N.D. Ind. July 14, 2010)

("[g]enerally speaking, when the putative class consists of more than 40 members, numerosity is

met"); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) ("Generally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied.").

Here, based on the information provided by Defendants, the Settlement Class consists of approximately 100 geographically dispersed entities. Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### b. There are Questions of Law and Fact Common to the Settlement Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017.

Here there are multiple questions of law and fact common to the Settlement Class, including:

a. Whether Defendants are fiduciaries to Settlement Class Members;

b. Whether Defendants discharged their fiduciary duties and contractual duties to the Settlement Class Members when investing the cash collateral on behalf of the Commingled Lending Funds and managing those investments;

c. Whether and how the alleged potential conflict created by Defendants' compensation scheme influenced their decision making; and,

d. Whether Defendants' actions proximately caused losses to Settlement Class Members and, if so, the appropriate relief to which Settlement Class Members are entitled.

These common questions are fundamental to the resolution of the Indirect Lending claims and, therefore, readily satisfy the commonality requirement. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant

gives rise to the same kind of claims from all class members, there is a common question.");

*Langendorf v. Skinnygirl Cocktails, LLC*, No. 11 CV 7060, 2014 U.S. Dist. LEXIS 154444, at *7

(N.D. Ill. Oct. 30, 2014) ("To satisfy the commonality requirement, a single common question

will do.").

### c. Settling Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the

claims of the class. Fed. R. Civ. P. 23(a)(3). A claim is typical if it "arises from the same event

or practice or course of conduct that gives rise to the claims of other class members and . . . [the]

claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998);

*Rosario*, 963 F.2d at 1018. "Typical" does not mean "identical." *Gaspar v. Linvatec Corp.*, 167

F.R.D. 51, 57 (N.D. Ill. 1996). "'[T]he typicality requirement may be satisfied even if there are

factual distinctions between the claims of the named plaintiffs and those of other class members,'

the requirement 'primarily directs the district court to focus on whether the named

representatives' claims have the same essential characteristics as the claims of the class at

large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v.

Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)).

Here, the claims of Settling Plaintiffs are typical of the claims of the Settlement Class

because they are based on the same theories and the same course of alleged wrongful conduct by

Defendants. Settling Plaintiffs allege that they, like the rest of the Settlement Class, were injured

by Defendants' allegedly improper investment of collateral received to secure the loan of

securities from the Commingled Lending Funds. Accordingly, Settling Plaintiffs' claims are

"typical" of the claims of absent Settlement Class Members.

### d. Settling Plaintiffs Will Fairly and Adequately Represent the Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." The adequacy determination is two-pronged: "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)). There is no antagonism or conflict of interest between Settling Plaintiffs and the other members of the proposed Settlement Class. Settling Plaintiffs and the other members of the Settlement Class share the common objective of maximizing their recovery from Defendants. *See, e.g., Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 U.S. Dist. LEXIS 7829, at *24 (S.D. Ohio Jan. 26, 2011); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 329 (S.D. Fla. 1996). Moreover, Settling Plaintiffs and Settling Plaintiffs' Counsel have already demonstrated their ability and willingness to vigorously pursue the interests of all members of the Settlement Class throughout this litigation. Therefore, Rule 23(a)(4) is satisfied.

### 2. The Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23(b)(3)

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites. First, common questions of law or fact must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Second, the class action mechanism must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* However, as previously noted, with respect to the "superiority" prong of Rule 23(b)(3), "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

16

In determining whether the "predominance" requirement is met, a court looks to "whether [the] proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also Bailiff v. Vill. of Downers Grove,* No. 11-3335, 2011 WL 6318953, at \*5 (N.D. Ill. Dec. 16, 2011); *Williams-Green v. J. Alexander's Rest., Inc.,* 277 F.R.D. 374, 383 (N.D. Ill. 2011). "[W]hen the case involves standardized conduct towards the members of the class, predominance often is satisfied. The existence of standardized conduct also favors a finding of superiority . . . ." *Baxter v. Kawasaki Motors Corp.* 259 F.R.D. 336, 343 (N.D. Ill. 2009) (citations omitted).

Common questions of law and fact predominate here because Defendants engaged in standardized conduct with respect to the management of the Commingled Lending Funds and the securities lending program that affected all members of the Settlement Class in the same manner, making the class cohesive. *Amchem*, 521 U.S. at 623. The common questions presented in this case, examples of which are set forth at p. 14 above, predominate both in terms of number and their importance to the resolution of the Indirect Lending claims. These questions focus almost exclusively on the conduct of the Defendants, which was the same with respect to all members of the proposed Settlement Class. Plaintiffs allege that decisions about selecting investments for the Commingled Lending Funds were entirely made by Northern Trust, with no role for any participant in Northern Trust's Indirect Lending program. All Settlement Class Members allegedly suffered losses arising from the same alleged breaches of fiduciary duties by Defendants. Whether Defendants breached those duties and whether those breaches caused losses to the Settlement Class Members are the core issues relating to Defendants' liability to every member of the proposed Settlement Class, and those questions can be answered without resort to any inquiry unique to any member of the class.

Any questions potentially relating to individual Settlement Class Members, such as calculation of damages, are not sufficient to undermine the propriety of certification of the Settlement Class, "It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 815 (7th Cir. 2012).

A class action is also "superior to other available methods of fairly and efficiently adjudicating" the claims of investors with Indirect Lending claims. First, the fact that answering the common question of whether the investments in the Commingled Lending Funds were imprudent for all members of the Settlement Class in one proceeding would essentially establish liability on behalf of every class member, demonstrates that a class action is the superior means for resolving the Indirect Lending claims. It is most efficient to have the claims of individual Settlement Class Members litigated through this Action. The geographically dispersed nature of the Settlement Class, the inefficiency of multiple law suits, and the size of individual recoveries in comparison to the cost of litigation, further support a finding that a class action is superior here. *See, e.g.*, *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 481 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009) (a class action was superior because it allowed for class treatment of "claims that otherwise would be uneconomical to litigate individually," involved "a large number of investors who are geographically dispersed," would "resolve a common legal grievance based on defendants' same course of conduct," and "judicial resources would be used most efficiently" by certifying the class); *see also In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 173 (S.D. Ind. 2009) ("when a 'case appears . . . to involve large numbers of defendants' customers who allegedly were overcharged pursuant to a common scheme,' a class action is the superior method of litigation"). In sum, the requirements of Rule 23(b) are satisfied.

18

### C. Appointment of Co-Lead Counsel as Class Counsel for the Settlement Class is Appropriate.

Rule 23(g) requires that once a class is certified, unless a statute provides otherwise, the court must appoint class counsel. As demonstrated above, certification of the Settlement Class is warranted and Settling Plaintiffs respectfully submit that appointment of Co-Lead Counsel, the firms of Keller Rohrback, LLP, Schneider Wallace Cottrell Konecky and Wotkyns, LLP and Bernstein Litowitz Berger & Grossmann, LLP as class counsel for the Settlement Class is also appropriate. As set forth above, these firms have, and they will continue to, fairly and adequately represent the interests of the Settlement Class. Each of these firms has extensive experience in complex class action litigation (*see* Joint Decl. ¶¶ 1-3 and Exhibits. 1-3 thereto), and. each of these firms has also demonstrated its ability and willingness to commit substantial resources to the prosecution of the Indirect Lending claims asserted and the skill and knowledge necessary to effectively pursue those claims. Accordingly, appointment of these firms as class counsel to the Settlement Class is warranted under Rule 23(g).

### D. Notice to the Settlement Class Should Be Approved

As outlined in the proposed Preliminary Approval Order, Co-Lead Counsel will cause Settlement Class Members to be notified of the pendency of the Action, the preliminary certification of the Settlement Class and the proposed Settlement by mailing the Settlement Notice to all Settlement Class Members identified by Defendants based on their client records ("Identified Settlement class Members").[9] The Settlement Notice informs Settlement Class Members of the nature of the Action, the definition of the Settlement Class, the basic terms of the Settlement (including the relief provided and the scope of the release), the proposed Plan of Allocation of the Settlement Fund, the binding nature of the Settlement on Settlement Class

---

[9] As Settlement Class Members were or are customers of NTI, this procedure is designed to reach as many Settlement Class Members as reasonably practical.

Members, and the intent of Co-Lead Counsel to seek on behalf of all Settling Plaintiffs' Counsel attorneys' fees and Litigation Expenses (which may include an application for reimbursement of the reasonable costs and expenses incurred by the Settling Plaintiffs directly related to their representation of the Settlement Class). It also describes the procedures for requesting exclusion from the Settlement Class or objecting to the Settlement and/or the motion for fees and expenses, and states the date, time and place of the Settlement Hearing.

As part of the proposed notice program, prior to the mailing of the Settlement Notice, Defendants will mail to all Identified Settlement Class Members a notice advising them of the proposed Settlement and, that, in order for them to be eligible to participate in the distribution of the Settlement proceeds, identifying information as well as certain investment data relating to them must be provided to the Settlement Administrator (and may be provided to Settling Plaintiffs' Counsel) (the "Banking Notice"). The Banking Notice will inform Identified Settlement Class Members of the date on which the information will be provided. Should any Identified Settlement Class Member instruct Defendants not to provide the information, Northern Trust will honor that instruction, and that Identified Settlement Class Member will not be eligible to participate in the distribution of the Net Settlement Fund. With respect to those Identified Settlement Class Members who permit their information to be provided to the Settlement Administrator, the Settlement Notice sent to them will be accompanied by a personalized Cover Letter setting forth the amount of the particular class members' investment in each of the Commingled Lending Funds in which it was invested as of each of certain selected dates during the Settlement Class Period (the "Relevant Dates"). This data will form the basis for calculating the class member's proportionate share of the Settlement proceeds under the plan of allocation that is approved by the Court. If the class member agrees with the information set forth in the

Cover Letter, it need not take any further action to be eligible to receive a distribution. If, however, the Identified Settlement Class Member takes issue with the data included in the Cover Letter, it will have the opportunity to challenge its accuracy. The procedures for making such a challenge (an "Investment Challenge") are set forth in the Settlement Notice.

The proposed Preliminary Approval Order also requires that the Summary Notice be published once in *The Wall Street Journal* and to be transmitted once over the *PR Newswire* with ten business days of the mailing of the Settlement Notice. The Summary Notice will, among other things, advise entities that did not receive the Settlement Notice by direct mail (*i.e.*, they were not identified by Defendants as Settlement Class Members) that, if they believe that they meet the definition of the Settlement Class, they have the right to make a Status Challenge, which, if successful, would put them in parity with Identified Settlement Class Members. Finally, the proposed notice program also includes the establishment and maintenance of a Settlement website, from which Settlement Class Members and others can obtain copies of the notices and other information pertaining to the Settlement.

The form and manner of providing notice to the Settlement Class satisfy all the requirements of Rule 23 and due process. Rule 23(c)(2)(B) requires that notice of pendency of a class action certified under Rule 23(b)(3) must be "the best notice that is practicable under the circumstances, including individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1). To satisfy due process, the notice must be "reasonably calculated, under all the circumstances, to apprise

21

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The notice program set forth in the proposed Preliminary Approval Order meets these standards: it provides the best practicable notice under the circumstances and is reasonably calculated to reach substantially all members of the Settlement Class. Settlement Notices will be directly mailed to all Settlement Class Members that Defendants identified from their records and that mailing will be supplemented by publication of the Summary Notice in a widely circulated newspaper and over the internet.

## IV.     THE PROPOSED SCHEDULE OF EVENTS

In connection with the preliminary approval of the Settlement, Settling Plaintiffs ask the Court to establish dates by which notice of the Settlement will be provided to members of the proposed Settlement Class, and dates by which such persons may object to the Settlement or request exclusion from the Settlement Class. A request to set the date and time for the final Settlement Hearing will be presented to the Court after orders preliminarily approving the proposed settlements in this Action and in the Diebold Action have been entered. The following schedule is proposed and is consistent with the Preliminary Approval Order, submitted herewith:

| Event | Time for Compliance |
|---|---|
| Setting the date for the Settlement Hearing: the "Settlement Hearing Scheduling Order" or "Scheduling Order" | At the Court's earliest convenience after the orders preliminarily approving the settlements in this Action and in the Diebold Action have been entered. |
| Mailing of Banking Notice by Defendants | Within 10 business days after entry of the Settlement Hearing Scheduling Order in this Action or in the Diebold Action, whichever is later. |

| | |
|---|---|
| Provision by Defendants to the Settlement Administrator of the required information for Identified Settlement Class Members | Not later than 26 business days after entry of the Settlement Hearing Scheduling Order in this Action or in the Diebold Action, whichever is later. |
| Mailing of Settlement Notice by Co-Lead Counsel | Within 40 business days of entry of the Settlement Hearing Scheduling Order in this Action or in the Diebold Action, whichever is later. |
| Publication of Summary Notice by Co-Lead Counsel | Within 10 business days of the mailing of the Settlement Notice |
| Deadline for filing opening papers in support of final approval of the proposed Settlement, the proposed Plan of Allocation and Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. | Not later than 35 calendar days prior to the Settlement Hearing in this Action or the Settlement Hearing in the Diebold Action, whichever is earlier |
| Deadline for Settlement Class Members to file objections to the Settlement and notice of intention to appear at Settlement Hearing and to submit requests for exclusion from the Settlement Class. | To be received not later than 21 calendar days prior to the Settlement Hearing in this Action or the Settlement Hearing in the Diebold Action, whichever is earlier |
| Deadline for responses to objections, and reply papers respecting final approval of the Settlement, the proposed Plan of Allocation and the motion for an award of attorneys' fees and reimbursement of Litigation Expenses. | Not later than 7 calendar days prior to the Settlement Hearing in this Action |
| Deadline for parties to file proof of mailings and publication. | Not later than 7 calendar days prior to the Settlement Hearing in this Action |
| Settlement Hearing | To be determined. |

## V.     CONCLUSION

For the foregoing reasons, Settling Plaintiffs respectfully request that the Court issue an

Order in substantially the form submitted herewith:

23

(1)     Preliminarily certifying the Settlement Class, certifying Settling Plaintiffs as class representatives and appointing the firms of Keller Rohrback, LLP, Schneider Wallace Cottrell Konecky and Wotkyns, LLP, and Bernstein Litowitz Berger & Grossmann, LLP Counsel as class counsel for the Settlement Class;

(2)     Preliminarily approving the proposed Settlement; and

(3)     Establishing a plan for notice of the Settlement and providing Settlement Class Members with an opportunity to exclude themselves from or object to the Settlement.

Dated: February 18, 2015                    Respectfully submitted,

                                            BERNSTEIN LITOWITZ BERGER &
                                            GROSSMANN LLP

                                            By  */s/ Avi Josefson*
                                                    Avi Josefson
                                            875 North Michigan Avenue, Suite 3100
                                            Chicago, IL 60611
                                            Tel: (312) 373-3880
                                            Fax: (312) 794-7801
                                            Illinois Bar No. 6272453
                                            avi@blbglaw.com

                                             - and –

                                            Katherine M. Sinderson
                                            Rebecca E. Boon
                                            1285 Avenue of the Americas, 38th Floor
                                            New York, New York 10019
                                            Tel: (212) 554-1400
                                            Fax: (212) 554-1444
                                            katherinem@blbglaw.com
                                            rebecca.boon@blbglaw.com

KELLER ROHRBACK L.L.P.
Lynn L. Sarko
Derek W. Loeser
Raymond J. Farrow
Laura R. Gerber
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
rfarrow@kellerrohrback.com
lgerber@kellerrohrback.com

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider
Mark T. Johnson
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

*Co-Lead Counsel for Settling Plaintiffs*

## CERTIFICATE OF SERVICE

I, Avi Josefson, an attorney, hereby certify that a copy of the foregoing "**Memorandum of Law in Support of Settling Plaintiffs' Unopposed Motion for an Order: (1) Preliminarily Approving Class Action Settlement; (2) Preliminarily Certifying Settlement Class and Appointing Class Counsel for the Settlement Class; and (3) Approving Proposed Plan for Notice**" was served on counsel for all parties electronically via the CM/ECF system on February 18, 2015.

Dated:  February 18, 2015      By:    */s/ Avi Josefson*
                                  Avi Josefson